Case 1:24-cv-04832-PAE     Document 12-1     Filed 08/26/24     Page 1 of 5

## EMPLOYMENT AGREEMENT

This Agreement signed the 8 day of February, 2021, by and between Greenlight Capital, Inc., a Delaware corporation, (the "Company") and James Fishback (the "Employee").

1.  Employment:  Company agrees to employ the Employee and the Employee agrees to serve the Company, upon the terms and conditions set hereinafter.

2.  Term:  This employment commences on the 8 day of February, 2021, and shall continue until such time as either party delivers to the other party a two week written notice terminating the employment (except as described below) (the "Employment Period").  Employee may be terminated with or without cause at any time.  Employee may be discharged for cause such as dishonesty, conviction of any crime, using or being under the influence of alcohol while working, illegally using or being under the influence of drugs, gross negligence, substantial insubordination and/or any other serious cause.  Any notice of termination for cause shall be in writing and shall state cause of discharge, and shall not be subject to the two week notice period.

3.  Duties:  Under the direction of the senior officers of the Company ("Officers"), Employee shall devote his best efforts and substantially all of his business time and attention (except for vacation periods and reasonable periods of illness or other incapacity) to the business of the Company and its affiliates and will faithfully and diligently carry out such duties and have such responsibilities as the Officers shall direct.  Employee shall report to the Officers and shall faithfully and diligently comply with all of their reasonable and lawful directives.  For purposes of the Agreement, the term "affiliates" means any corporation, limited partnership, limited liability company, or other entity which controls, is controlled by, or is under common control with the Company.

    Employee shall not engage in any activity which would encroach upon Employee's devotion to the Company's business or which would reflect poorly on the Company, except as expressly provided in Section 7.

4.  Compensation and benefits:  Base salary is determined annually by separate agreement and is payable in equal installments, semi-monthly.  The Company may award one or more bonuses to Employee upon direction and approval of the Officers.  The total compensation shall be determined by separate agreement on an annual basis.  Employee must be employed by the Company on the date bonus awards are made in order to be eligible to receive a bonus award.  Employee agrees that upon a bonus being awarded, two-thirds of the bonus award shall be paid to Employee within thirty (30) days of the date of the bonus award and one-third of the bonus award shall not vest, meaning Employee shall not be entitled to

Case 1:24-cv-04832-PAE    Document 12-1    Filed 08/26/24    Page 2 of 5

receive it from the Company, unless and until Employee remains employed by the Company on the third anniversary of the date of the bonus award, and, if Employee remains employed by the Company on the third anniversary of the date of the bonus award, the remaining one-third of the bonus award shall be paid to Employee within thirty (30) days of the third anniversary of the date of the bonus award. Nothing in this Agreement shall be deemed to alter the terms and provisions of the Company's pension and/or profit sharing plans.

In addition to the compensation described in the foregoing paragraph, Employee shall be entitled during the employment term to the following benefits:

(i)    such health insurance and other benefits as are available from time to time to the Company's salaried employees generally;

(ii)    vacation, sick leave, and personal time in accordance with the Company's vacation and absence policies as in effect from time to time, provided that Employee shall have no less than two weeks vacation each year, with salary;

(iii)    reimbursement, upon prompt submission of documentation in accordance with the Company's regular expense policies, for reasonable business expenses incurred on the Company's behalf by Employee;

(iv)    participation in any savings plan, 401(K) plan, profit sharing plan, or pension plan as is available from time to time to the Company's salaried employees generally, after the first full year of employment.

5.    Confidential Information:

(i) To assist Employee in the performance of his duties, the Company agrees to provide to Employee special training and information regarding the Company's business methods and access to certain Confidential Information (as defined below) and materials belonging to the Company, its affiliates, and to third parties, including but not limited to investors and prospective investors of the Company who have furnished such information and materials to the Company under obligations of confidentiality.

(ii) Except as expressly permitted by the Company in writing, Employee agrees that he shall not (either during his employment by the Company or thereafter) disclose to any person not connected with the Company or use for his own benefit or for the benefit of any person other than the Company any Confidential Information either disclosed to or developed by the Employee during his employment by the Company. For purposes of this agreement, "Confidential Information" shall include, but not be limited to, all investor lists, prospective

investor lists, investments (except where publicly disclosed), investment methodologies, methods of dealing, investment track records, investment recommendations, investment performance, performance records of any individual investment position, performance records of any Company fund, performance records of Employee, information that supports the performance record of any Company fund or of Employee, and other confidential business information related to the conduct of the Company's business and/or the business of any of the Company's affiliates.

(iii) In the event of termination of Employee's employment with the Company, Employee agrees to deliver promptly to the Company all Confidential Information, equipment, documents, notes, reports, files, books, correspondence, lists, and other written or graphic reports and the like relating to the Company's or any affiliate's business which are or have been in his possession or under his control.

(iv) Nothing contained in this Agreement supersedes, conflicts with, or otherwise alters the Employee's rights or obligations under existing statute, law, rule, regulation or order relating to the reporting to applicable governmental authority of a violation of any law, rule, or regulation as required by law.

6. Investment Policy: Employee agrees that, except as expressly permitted by the Company in writing, his personal investing during the Employment Period will abide by the Company's Investment Policy in its Compliance Manual, as amended from time to time.

7. Other Businesses: During the Employment Period, Employee agrees that he will not, directly or indirectly, except with the express written consent of the Company's President, become engaged in, render services for, or permit his name to be used in conjunction with, or directly or indirectly counsel or consult with, any business other than the business of the Company and its affiliates.

8. Covenant Not to Solicit:

(i) In consideration of the training and access to Confidential Information provided by the Company, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during the Employment Period and for a period of two years immediately following his termination (whether voluntary, involuntary or otherwise) with the Company, Employee shall not induce or attempt to persuade an employee or associate of the Company or any of its affiliates to leave or materially lessen his involvement with the Company or such affiliate or solicit or attempt to solicit any financial advisory or investment management business from any investor in any fund managed by the Company or any of its affiliates. Subject to the foregoing, Employee is not, however, restricted from being employed by or engaged in the investment advisory or investment management business.

(ii) Employee understands and acknowledges that the Company has made substantial investments to develop its business interests and goodwill, and to provide special training and Confidential Information to Employee for the performance of Employee's duties under this Agreement. Employee agrees that the limitations as to time and scope of activity to be restricted in this Section 8 are reasonable and are not greater than necessary to protect the goodwill or other business interests of the Company. Employee further agrees that such investments are worthy of protection, and that Employer's need for the protection afforded by this Section 8 is greater than any hardship Employee might experience by complying with its terms.

9. Consideration, Severability, and Waiver: Employee acknowledges and agrees that the covenants and other provisions set forth in this Agreement are reasonable, including with respect to duration and subject matter, and that he is receiving valuable and adequate consideration for such covenants under this Agreement. The parties acknowledge that it is their intention that all such covenants and provisions be enforceable to the fullest extent possible under applicable law. If any such provision is found to be invalid, such finding of invalidity shall not affect the validity of the remaining provisions. Failure by either party to insist upon performance of any particular term or condition hereof shall not be deemed a waiver of any right or responsibility set forth in this Agreement, nor shall it excuse the future performance of any such term or condition, but the obligations of both parties with respect to each and every term of this Agreement shall continue in full force and effect.

10. Successors and Assigns: This Agreement shall be binding upon any successors or assigns of the Company, and unless clearly inapplicable, reference herein to the Company shall include any successors or assigns. This Agreement shall not be assignable by Employee.

11. Rights and Remedies: Each of the parties to this Agreement will be entitled to enforce his or its rights under this Agreement specifically, to recover damages (including, without limitation, reasonable fees and expenses of counsel) by reason of any breach of any provision of this Agreement and to exercise all other rights existing in his or its favor. The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach or threatened breach of Sections 2, 3, 5 or 8 of this Agreement and that, notwithstanding the provisions of Section 12 of this Agreement, the Company may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive relief in order to enforce or prevent any violations of such provisions. Such injunction or decree shall be available without the posting of any bond or other security.

12. Arbitration: Any dispute, controversy or claim arising out of or relating to this Agreement or Employee's employment with the Company, whether arising during

Case 1:24-cv-04832-PAE    Document 12-1    Filed 08/26/24    Page 5 of 5

the term of employment or at or after its termination, shall be settled by arbitration in New York, New York (or, if applicable law requires some other forum, then such other forum) in accordance with the rules then obtaining of the American Arbitration Association. If the parties to any such controversy are unable to agree upon an arbitrator or arbitrators, then an arbitrator shall be appointed in accordance with such rules.

13. Notice: Any notice required to be given to the Company hereunder shall be addressed to the Company and delivered to its office or mailed by certified mail, return receipt requested, to its office at 140 East 45th Street, Floor 24, New York, NY 10017. Any such notice required to be given to the Employee hereunder shall be addressed to said Employee at the address registered by the Employee with the Company.

14. Amendment: The terms of this Agreement may be modified only by a writing signed by both Employee and an authorized representative of the Company.

15. Miscellaneous: Neither party's waiver of a breach by the other party of any provision of this Agreement nor a party's failure to enforce any such provision with respect to that party shall operate or be construed as a waiver of any subsequent breach by that party of any such provision or of such party's right to enforce any such provision with respect to the other party. No act or omission of the Company shall constitute a waiver of any of its rights hereunder except for a written waiver signed by an authorized representative of the Company. No act or omission of Employee shall constitute a waiver of any of his rights hereunder except for a written waiver signed by Employee. This Agreement shall in all respects be governed by the substantive laws of the State of New York without regard to its or any other state's conflict of law rules. This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties hereto with respect to the matters described herein, and supersede any and all prior and/or contemporaneous agreements and understandings, oral or written, between the parties. Employee acknowledges that Employee has not relied upon any representation or statement not set forth in this Agreement.

In witness whereof the parties have hereto executed this Employment Agreement on the 8 day of Feb , 2021.

Greenlight Capital, Inc.
("Company")

By: _____
Daniel Roitman
Chief Operating Officer

Employee _____