UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Greenlight Capital, Inc., DME Capital                  :
Management., LP,                                        :
                                                       :          Case No.: 24-cv-04832-PAE
                               Plaintiffs,             :
                                                       :
           –  against –                                :
                                                       :
James T. Fishback,                                     :
                                                       :          ORAL ARGUMENT
                               Defendant.              :          REQUESTED
-------------------------------------------------------------X

---

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTION TO: (i) DISMISS PURSUANT TO FRCP 12(b)(6);
### (ii) COMPEL ARBITRATION PURSUANT TO FAA § 4; AND
### (iii) STRIKE PURSUANT TO FRCP 12(f).

---

**ABRAMS FENSTERMAN, LLP**
Justin T. Kelton
Amanda P. Small
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
Tel: (718) 215-5300
Fax: (718) 215-5304
*Counsel for Defendant*
*James T. Fishback*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   FACTUAL BACKGROUND ................................................................................... 2

III.  GOVERNING LEGAL STANDARDS .................................................................... 2

    A.   Legal Standard On A Motion To Dismiss. ................................................... 2

    B.   Legal Standard On A Motion To Compel Arbitration. .................................. 3

    C.   Legal Standard On A Motion To Strike. ....................................................... 3

IV.   ARGUMENT AND AUTHORITIES ...................................................................... 4

    A.   The Court Should Dismiss Plaintiffs' Second, Third, and Fourth Causes of Action For Failure To State A Claim ............................................................ 4

        1.   Plaintiffs Fail To Plead A Cause Of Action For Unfair Competition ......... 4

        2.   Plaintiffs Fail To Plead A Cause Of Action For Tortious Interference With Prospective Economic Advantage. ........................................................... 8

            a.   No Relationships With Specific Third Parties ............................... 8

            b.   No Interference .............................................................................. 9

            c.   No Improper Means ....................................................................... 9

            d.   No Damages ................................................................................. 11

        3.   Plaintiffs Fail To Plead A Cause Of Action For Defamation Or Defamation *Per Se*. ................................................................................... 11

            a.   Plaintiffs Fail To Identify The Supposedly Defamatory Statements With Sufficient Particularity. ..................................................... 12

            b.   Allegedly Inflating One's Title Or Job Performance Is Not Reasonably Susceptible To Defamatory Connotation. ................ 12

            c.   No Special Damages Or Defamation *Per Se*. ............................. 14

    B.   The Court Should Compel Arbitration Of Plaintiffs' Claims Because They Are Subject To Mandatory Arbitration Under The Parties' Employment Agreement. 16

        1.   The Parties Agreed To Arbitrate. ............................................................. 16

i

2.     The Arbitration Agreement Is Broadly Drafted To Cover Alleged Conduct Occurring Either During Or After Employment, And Issues Relating To The Employment Relationship Or The Employment Agreement Itself. .. 18

C.     The Court Should Strike The Unnecessary And Highly Prejudicial Allegations From Plaintiffs' Complaint. ................................................................................. 19

1.     Summary Of Plaintiff's Causes Of Action ............................................... 20

2.     Plaintiffs' Attacks On Mr. Fishback's Job Performance At Greenlight Are Irrelevant And Should Be Stricken. .......................................................... 21

3.     Plaintiffs' Allegations About A "Gift Matching" Incident Are Irrelevant And Should Be Stricken. ........................................................................... 22

4.     Plaintiffs' Allegations That Greenlight Intended To Terminate Mr. Fishback's Employment—But Did Not Do So—Are Irrelevant And Should Be Stricken. ............................................................................................. 22

5.     Plaintiffs' Allegations Regarding Mr. Rehm Are Irrelevant And Should Be Stricken. .................................................................................................. 23

6.     Plaintiffs' Allegations That Mr. Fishback's Prior Legal Actions Were "Frivolous" Are Irrelevant And Should Be Stricken. ............................... 23

7.     Plaintiffs' Allegations About Mr. Fishback's Contemplated (But Not Consummated) Attendance At A Greenlight Investor Dinner Are Irrelevant And Should Be Stricken. .......................................................... 24

V.     CONCLUSION ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
   307 F.3d 24 (2d Cir. 2002) ......................................................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 2

*Berman v. Sugo LLC*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) ........................................................................ 5

*Bernstein v. O'Reilly*,
   2019 WL 10995110 (S.D.N.Y. Sept. 26, 2019) ........................................................ 15

*CA, Inc. v. Simple.com, Inc.*,
   621 F. Supp. 2d 45 (E.D.N.Y. 2009) .......................................................................... 7

*Cambridge Cap. LLC v. Ruby Has LLC*,
   565 F. Supp. 3d 420 (S.D.N.Y. 2021) ..................................................................... 8, 9

*Camp Summit of Summitville, Inc. v. Visinski*,
   2007 WL 1152894 (S.D.N.Y. Apr. 16, 2017) .......................................................... 12

*Chen-Oster v. Goldman, Sachs & Co.*,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020) ........................................................................ 3

*City Calibration Centers, Inc. v. Health Consultants, Inc.*,
   2024 WL 1345330 (E.D.N.Y. Mar. 29, 2024) .................................................. 8, 9, 10

*Clarus Med., LLC v. Myelotec, Inc.*,
   2005 WL 3272139 (D. Minn. Nov. 30, 2005) .......................................................... 18

*Davis v. Boeheim*,
   24 N.Y.3d 262 (2014) ................................................................................................ 13

*Design Strategies, Inc. v. Davis*,
   384 F. Supp. 2d 649 (S.D.N.Y. 2005) ........................................................................ 7

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
    31 N.Y.3d 441 (N.Y. 2018) ........................................................................................... 7

*Eng v. Casey*,
    2014 WL 5824640 (S.D.N.Y. Nov. 7, 2014) ............................................................... 20

*Erving v. Virginia Squires Basketball Club*,
    468 F.2d 1064 (2d Cir. 1972) ..................................................................................... 17

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996) ................................................................................................. 11

*GateGuard, Inc. v. MVI Sys. LLC*,
    2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021) ........................................................... 17

*Gaughan v. Rubenstein*,
    261 F. Supp. 3d 390 (S.D.N.Y. 2017) .......................................................................... 4

*G-I Holdings, Inc. v. Baron & Budd*,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002) .......................................................................... 3

*Gianni Versace, S.p.A. v. Versace*,
    2003 WL 470340 (S.D.N.Y. Feb. 25, 2003) ............................................................ 8, 9

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    402 F.Supp.2d 434 (S.D.N.Y. 2005) .......................................................................... 20

*Int'l Publ'g Concepts, LLC v. Locatelli*,
    2015 WL 321852 (Sup. Ct. N.Y. Cnty. Jan. 15, 2015) .............................................. 23

*Jack Russell Music Ltd. v. 21st Hapilos Digital Distribution, Inc.*,
    2024 WL 3184676 (S.D.N.Y. June 26, 2024) ............................................................ 13

*Kesner v. Dow Jones & Co.*,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021) .................................................. 11, 13, 14, 15

*Kid Car NY, LLC v. Kidmoto Technologies LLC*,
    518 F. Supp. 3d 740 (S.D.N.Y. 2021) .......................................................................... 5

*Lesesne v. Brimecome*,
    918 F. Supp. 2d 221 (S.D.N.Y. 2013) .......................................................................... 8

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) ........................................................................................... 14, 15

*Lions Gate Entertainment Corp. v. Icahn*,
    2011 WL 1217245 (S.D.N.Y. Mar. 30, 2011) ............................................................ 9

*Low v. Robb*,
    2012 WL 17372 (S.D.N.Y. Jan. 20, 2012) ................................................................. 4

*Medcalf v. Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013) ..................................................................... 14

*Miness v. Alter*,
    262 A.D.2d 374 (2d Dep't 1999) ........................................................................... 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................... 19

*Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*,
    509 F. Supp. 3d 38 (S.D.N.Y. 2020) ..................................................................... 16

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) .................................................................................. 11

*Prout v. Vladeck*,
    326 F.R.D. 407 (S.D.N.Y. 2018) ............................................................................. 4

*RBG Mgmt. Corp. v. Village Super Market, Inc.*,
    692 F. Supp. 3d 135 (S.D.N.Y. 2023) ................................................................. 8, 9

*Remy Amerique, Inc. v. Touzet Distrib., S.A.R.I*,
    ., 816 F. Supp. 213 (S.D.N.Y. 1993) ..................................................................... 17

*Soumayah v. Minnelli*,
    41 A.D.3d 390 (1st Dep't 2007) ............................................................................ 23

*Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*,
    2018 WL 1027754 (S.D.N.Y. 2018) ....................................................................... 8

*State of N.Y. v. Oneida Indian Nation of N.Y.*,
    90 F.3d 58 (2d Cir. 1996) ........................................................................................ 3

*Suburban Graphics Supply Corp. v. Nagle*,
    5 A.D.3d 663 (2d Dep't 2004) ................................................................................. 7

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001) .................................................................................... 6

*TileBar v. Glazzio Tiles*,
    2024 WL 1186567 (E.D.N.Y. Mar. 15, 2024) .................................................... 8, 10

v

*Trodale Holdings, LLC v. Bristol Healthcare Inv'rs. L.P.*,
  2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ........................................................ 3

*Vogel v. TakeOne Network Corp.*,
  2023 WL 5276857 (S.D.N.Y. Aug. 16, 2023) ...................................................... 6

*Williams v. Grp. Russo's Payroll, Inc.*,
  *2023* WL 3042236 (E.D.N.Y. Apr. 21, 2023)................................................. 4, 20

*Wright v. Belafonte*,
  2014 WL 13111397 (S.D.N.Y. Mar. 11, 2014) .................................................. 15

Rules

Fed. R. Civ. P. 8 ................................................................................................ 20

FRCP 12(b)(6) ............................................................................................. 1, 2, 4

FRCP 12(f) ....................................................................................................... 1, 3

Defendant James T. Fishback respectfully submits this Memorandum of Law in Support of his Motion: (i) to dismiss Plaintiff's second, third, and fourth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6); (ii) to compel arbitration pursuant to the Federal Arbitration Act and the arbitration clause of the parties' Employment Agreement; and (iii) to strike allegations contained in the complaint that are scandalous, salacious, and irrelevant to any cause of action, pursuant to FRCP 12(f).

## I.    <u>PRELIMINARY STATEMENT</u>

This lawsuit is unbelievably petty. Greenlight, a massive hedge fund, complains that its former employee, Mr. Fishback, is getting too much credit for Greenlight's macro investment returns that occurred during his tenure. Instead of simply making its case to investors, Greenlight seeks to "make a federal case out of it," but there is simply nothing here.

There are many infirmities with Greenlight's Complaint, as set forth below. Two glaring errors jump off the page. *First*, disputes over the relative importance of a team member's contributions to the team's success are simply not actionable. Plaintiffs' theory that because Mr. Einhorn is the final decisionmaker, every other employee "generate[s] nothing," is illogical and would open the floodgates to companies suing employees for virtually *anything* they say about success at their jobs. Indeed, the notion that Mr. Fishback committed a tort by using Greenlight's "reputation . . . to [] obtain credibility in the finance world" would prohibit the very concept of a resume. (Complaint ¶ 26). *Second*, for all its financial prowess, Greenlight cannot identify one single cent of damages caused by Mr. Fishback. Not one investor lost. Not one deal scuttled. Not one contract terminated.

In addition to being meritless, Greenlight's claims are subject to mandatory arbitration pursuant to a written employment agreement between the parties. They cannot proceed before this Court. So why would a sophisticated party like Greenlight, represented by one of the largest law

firms in the world, file such a lawsuit?  Revenge.  Plaintiffs simply cannot tolerate the fact that a former employee dared to start his own hedge fund and questioned his treatment at Greenlight's hands.

Plaintiffs' *246-paragraph*, *58-page* complaint is a screed masquerading as claims.  It is full of false, misleading, and gratuitous smears against Mr. Fishback that seek not to obtain legitimate relief, but rather to inject into a public pleading scandalous and irrelevant accusations.  They serve only the improper purposes of disparaging Mr. Fishback, seeking to prejudice him in the eyes of the jury, and vexatiously multiplying these proceedings.  In the event that any claim remains before this Court (which none should), Plaintiffs' inappropriate and abusive allegations should be stricken from the record.

## II.    FACTUAL BACKGROUND

Mr. Fishback respectfully refers to the factual allegations set forth in the Complaint (Kelton Decl. Ex. 1), which the Court is required to accept for purposes of a motion under FRCP 12(b)(6).

## III.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard On A Motion To Dismiss.

Under FRCP 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.**    <u>**Legal Standard On A Motion To Compel Arbitration.**</u>

"Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation, FAA § 3, and compel arbitration."  *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (citing Federal Arbitration Act § 4).

"In reviewing a motion to compel arbitration, a court must therefore determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) if federal statutory claims are asserted … whether Congress intended those claims to be nonarbitrable."  *Id.* (internal citations and quotations omitted).  "In accordance with the strong federal policy favoring arbitration as an alternative means of dispute resolution, any doubts concerning arbitrable issues are resolved in favor of arbitrability."  *Id.* (citing *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996).

**C.**    <u>**Legal Standard On A Motion To Strike.**</u>

Under FRCP Rule 12(f), courts "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  While motions to strike are not favored, courts may strike allegations "if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal undertones."  *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).

"[T]o prevail on a motion under Rule 12(f), the moving party must show that (i) no evidence in support of the allegations would be admissible;  (ii) that the allegations have no bearing on the issues in this case;  and (iii) that to permit the allegations to stand would result in prejudice to the movant."  *Trodale Holdings, LLC v. Bristol Healthcare Inv'rs. L.P.*, 2017 WL 5905574, at *15 (S.D.N.Y. Nov. 29, 2017) (internal citations and quotations omitted).  "Courts have found allegations to be prejudicial when they are amorphous, unspecific, and cannot be defended against

and where allegations, if publicized harm [the defendant] in the public eye and could influence perspective jury members." *Low v. Robb*, 2012 WL 17372, at *9 (S.D.N.Y. Jan. 20, 2012) (brackets in original) (internal citations and quotations omitted).

Consistent with this framework, Courts within the Second Circuit routinely strike irrelevant personal character attacks. *See, e.g., Prout v. Vladeck*, 326 F.R.D. 407, 410-11 (S.D.N.Y. 2018) (striking paragraphs in defendants' preliminary statement to counterclaims that were "broad, *ad hominem* character attacks" on plaintiff's "integrity"); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 429 (S.D.N.Y. 2017) (striking allegations that were "plainly irrelevant and serve no purpose other than to reveal embarrassing and personal information about Defendants and non-parties"); *Williams v. Grp. Russo's Payroll, Inc.*, 2023 WL 3042236, at *9 (E.D.N.Y. Apr. 21, 2023) (striking "rumors" that would "likely be excluded").

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Court Should Dismiss Plaintiffs' Second, Third, and Fourth Causes of Action For Failure To State A Claim.

The Court should dismiss the second cause of action (unfair competition), third cause of action (tortious interference with prospective economic advantage), and fourth cause of action (defamation and defamation *per se*) for failure to state a claim pursuant to FRCP 12(b)(6).

### 1.    Plaintiffs Fail To Plead A Cause Of Action For Unfair Competition.

Plaintiffs' unfair competition claim is based on the theory that Mr. Fishback "misappropriated Plaintiffs' track record" by stating that he was the head of macro—the exact same title applied to him *by Mr. Roitman* (Complaint ¶ 105)[1]—and played a key role in Greenlight's macro investing profits. (*See* Complaint ¶¶ 211, 214, 216). Blowing these statements

---

[1]    The fact that Mr. Fishback (and Greenlight) used a "head of macro" title while he was still working at Greenlight belies the theory that the title was part of a scheme to wrongfully compete.

way out of proportion, Plaintiffs complain that this "create[s] the impression that Greenlight's ability to make successful macro investments is now non-existent or seriously impaired because Fishback is no longer at the firm." (Complaint ¶ 161). At its core, Plaintiffs' theory is that a former employee touting their contributions to a firm's success is so diminishing to the company that it constitutes unfair competition. Nonsense. Teams can have more than one influential member, even where they are structured as a hierarchy with an "ultimate decisionmaker." Associating oneself with the success of the team on which you worked is not fraudulent or harmful to the company. The law of unfair competition is not intended to address squabbles over credit between members of a team.

Unfair competition is a flexible doctrine, but it is not limitless. "New York common law recognizes two theories of common-law unfair competition: palming off and misappropriation. Palming off is the sale of goods of one manufacturer as those of another. The second theory prohibits individuals from misappropriate[ing] the results of the skill, expenditures, and labors of a competitor." *Kid Car NY, LLC v. Kidmoto Technologies LLC*, 518 F. Supp. 3d 740, 760 (S.D.N.Y. 2021) (citations and quotations omitted). "Although claims of unfair competition often allege misappropriation of trade secrets or ideas, a claim may be based on misappropriation of information not rising to that level, such as client lists, internal company documents, and business strategies." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (internal citations and quotations omitted).

"[T]o plead a claim for unfair competition, a plaintiff must allege 'that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential

relationship.'" *Vogel v. TakeOne Network Corp.*, 2023 WL 5276857, at *7 (S.D.N.Y. Aug. 16, 2023) (citing *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001)).

Plaintiffs do not meet this standard. In arguing that Mr. Fishback supposedly misappropriated their "track record," Plaintiffs do not—and cannot—assert that Mr. Fishback obtained access to the information at issue through fraud or deception. Quite the contrary, to the extent that Mr. Fishback gained any information about Plaintiffs' track record, he did so by virtue of his status as an employee of Greenlight who was actively involved in Greenlight's macro trading business. Any claim that he later used information about Greenlight's success for promotional purposes is not the same as showing that he obtained access to information through improper means.[2]

Plaintiffs' claims that Mr. Fishback possesses some unidentified "confidential information" are also inadequate. *First*, claiming a degree of credit for business success is not the same as using trade secrets, client lists, or business strategies to unfairly compete. Plaintiffs' theory of the case is therefore insufficient to show abuse of a fiduciary or confidential relationship. *Second*, Plaintiffs generally argue that Mr. Fishback's public statements have been inaccurate, which is incompatible with any claim that he is disclosing actual confidential business secrets or strategies.

Plaintiffs also fail to plausibly plead causation or damages. "The proper measure of damages for unfair competition is the loss of profits sustained by reason of the improper conduct."

---

[2] The same is true of the parties' disputes regarding Mr. Fishback's role at Greenlight. Mr. Fishback has alleged that he was the head of Greenlight's macro trading operation. As support for this claim, Mr. Fishback has referenced an email from Greenlight executive Daniel Roitman to a Senior Manager of the GLG Group in which Mr. Roitman stated that Mr. Fishback is "our head of macro." (Complaint ¶ 105). Greenlight disputes that Mr. Fishback had this role. But that dispute does not rise to the level of unfair competition.

*Suburban Graphics Supply Corp. v. Nagle*, 5 A.D.3d 663, 666 (2d Dep't 2004) (citations omitted). "Another way of stating this rule is that damages in unfair competition cases should correspond to 'plaintiff's losses [that] were a proximate result of defendants' conduct." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 449 (N.Y. 2018). Thus, damages for unfair competition are based on the profits that the plaintiff would have made but for the defendant's misconduct. *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 675 (S.D.N.Y. 2005) (internal quotations and citations omitted); *see also CA, Inc. v. Simple.com, Inc*., 621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009) ("In order to recover for unfair competition under New York law, special damages must be alleged. . . . In this context, special damages refers to "direct financial loss, lost dealings, or an accounting of the profits" caused by the anticompetitive acts at issue. . . . In other words, the damages suffered must be in the form of actual economic harm to the plaintiff's business.") (citations and quotations omitted).

No such damage exists. Plaintiffs cannot identify any actual loss caused by Mr. Fishback's alleged "misappropriation" of Plaintiffs' "track record." Nowhere in the unfair competition cause of action (or elsewhere in the complaint) do Plaintiffs identify an investor lost, a deal scuttled, or a penny of lost profit. They merely allege, in conclusory fashion, that Mr. Fishback's statements "have misled investors into thinking that Fishback is responsible for the successful performance of Plaintiffs' macro investment portfolio," and that he caused Plaintiffs "to suffer substantial money damages, as well as injury that cannot be calculated, and irreparable harm to its business, reputation, and goodwill." (Complaint ¶¶ 217, 220). These vague allegations are far too speculative and conclusory to plead actual damages caused by unfair competition. Accordingly, Plaintiffs' second cause of action for unfair competition should be dismissed.

### 2. Plaintiffs Fail To Plead A Cause Of Action For Tortious Interference With Prospective Economic Advantage.

Plaintiffs' tortious interference claim is also woefully deficient.  The complaint lacks any reference to any relationship interfered with, any improper means, causation, or damages.

To state a claim for tortious interference with prospective economic advantage under New York law, "a plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *TileBar v. Glazzio Tiles*, 2024 WL 1186567, at *24 (E.D.N.Y. Mar. 15, 2024);  *see also RBG Mgmt. Corp. v. Village Super Market, Inc.*, 692 F. Supp. 3d 135, 149 (S.D.N.Y. 2023).  "The plaintiff must also allege that it would have entered into an economic relationship but for the defendant's wrongful conduct."  *City Calibration Centers, Inc. v. Health Consultants, Inc.*, 2024 WL 1345330, at * 24 (E.D.N.Y. Mar. 29, 2024).  Plaintiffs make virtually no attempt to meet these requirements.

### a.  No Relationships With Specific Third Parties

A properly pleaded cause of action for tortious interference with prospective economic relations "must allege relationships with specific third parties with which the respondent interfered."  *Gianni Versace, S.p.A. v. Versace*, 2003 WL 470340, at * 2 (S.D.N.Y. Feb. 25, 2003); *see also Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227-28 (S.D.N.Y. 2013) (dismissing tortious interference claim as inadequately pled because it failed to identify the potential customers at issue).  Indeed, "to survive a motion to dismiss, the plaintiff must allege that it was actually and wrongfully prevented from entering into or continuing in a specific business relationship." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 474 (S.D.N.Y. 2021);  *see also Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, 2018 WL 1027754, at *5

(S.D.N.Y. 2018) ("courts in this District are clear that where a party cannot identify specific third party relationships that were disrupted, a tortious interference claim cannot lie.").

Ignoring black-letter law, Plaintiffs make no attempt to identify any specific business relationship that was allegedly interfered with. They only recite the conclusion that "Plaintiffs have existing business relationships with their investors and prospective investors." (Complaint ¶ 226). But they never name a single investor—let alone one whose relationship with Greenlight was disrupted. This is fatal to their claim. *See Cambridge Capital LLC*, 565 F. Supp. 3d at 474.

b. No Interference

Plaintiffs also fail to explain *how* Mr. Fishback's alleged conduct interfered in any relationships. *Gianni Versace, S.p.A*, 2003 WL 470340, at *2. To be actionable, interference "must be direct interference with a third party, that is, the defendant must direct some activities toward the third party and convince the third party not to enter into a business relationship with the plaintiff." *Id*. (internal citations and quotations omitted).

Again, Plaintiffs ignore this pleading requirement. They never allege conduct by Mr. Fishback directed toward a third party that convinced that party to avoid Greenlight. *City Calibration Centers, Inc.*, 2024 WL 1345330, at * 24. This failure also warrants dismissal of Plaintiffs' tortious interference claim.

c. No Improper Means

Additionally, Plaintiffs do not satisfy the "improper means" requirement, which generally requires conduct amounting to a crime or an independent tort, or that Mr. Fishback engaged in the conduct for the *sole purpose* of inflicting harm on Plaintiffs. *RBG Mgmt. Corp.*, 692 F. Supp. 3d at 149; *See also Lions Gate Entertainment Corp. v. Icahn*, 2011 WL 1217245, at *2 (S.D.N.Y. Mar. 30, 2011) (the "conclusory statement[] that [Defendant] 'knew'" that threatened legal action

was baseless was insufficient to show that defendant "acted 'solely' out of malice or used improper means.").

Plaintiffs do not fit within the narrow "wrongful means" exception, which covers the use of "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and extreme and unfair economic pressure." *City Calibration Centers, Inc.*, 2024 WL 1345330, at *24 (internal citations and quotations omitted). This doctrine does not apply "where a defendant acts with a permissible purpose, such as normal economic self-interest." *Id*. In such circumstances, "wrongful means have not been shown, even if the defendant was indifferent to the [plaintiff's] fate." *City Calibration Centers, Inc.*, 2024 WL 1345330, at * 24 (internal citations and quotations omitted).

Plaintiffs do not claim that Mr. Fishback's alleged interference in any relationship—which, again, is never specified—amounted to a crime. And for the reasons set forth in this motion, Plaintiffs' allegations about Mr. Fishback fail to plead a viable independent tort.

Finally, Plaintiffs concede that Mr. Fishback did not act for the *sole purpose* of harming Plaintiffs. Rather, Plaintiffs allege that Mr. Fishback's conduct was intended to promote his new investment firm, Azoria. Thus, at *most*, Plaintiffs allege that Mr. Fishback's acts were undertaken for "normal economic self-interest," which is insufficient to show improper means. *City Calibration Centers, Inc.*, 2024 WL 1345330, at *24; *see also TileBar*, 2024 WL 1186567, at *24 (dismissing claim for tortious interference with prospective economic advantage because the pleading "suggests that Defendants' conduct was motivated by economic considerations and self-interest").

d.  No Damages

As with all of their tort claims, Plaintiffs also fail to identify damages attributable to any supposed "interference," since they fail to identify any loss of an actual or potential business relationship.  This, too, warrants dismissal.

**3.  Plaintiffs Fail To Plead A Cause Of Action For Defamation Or Defamation *Per Se*.**

Plaintiffs' defamation cause of action fails because Plaintiffs fail to sufficiently identify several of the allegedly defamatory statements, and to the extent that they do identify statements, they focus on claims that Mr. Fishback allegedly made about his role at Greenlight, which simply do not denigrate the company, let alone damage it.

"Defamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 169-170 (S.D.N.Y. 2021) (*citing Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996)).  "Under New York law, to state a claim for defamation, a plaintiff must allege (1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Kesner*, 515 F. Supp. 3d at 170 (brackets in original) (*citing Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).

Plaintiffs fail to meet this standard because their references to certain supposedly defamatory statements are insufficient, the statements are not reasonably susceptible to defamatory connotation, and Plaintiffs fail to either allege special damages or sufficiently plead defamation *per se*.

a.  <u>Plaintiffs Fail To Identify The Supposedly Defamatory Statements With Sufficient
Particularity.</u>

Plaintiffs' vague and grouped references to certain statements by Mr. Fishback lack the

particularity required to state a cause of action for defamation.  "While defamation need not be

plead *in haec verba*, a pleading is only sufficient if it adequately identifies the purported

communication, and an indication of who made the communication, when it was made, and to

whom it was communicated."  *Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894,

at *10 (S.D.N.Y. Apr. 16, 2017).

Plaintiffs do not explicitly state which statements they consider actionable.  Instead,

Plaintiffs generally assert that Mr. Fishback made misrepresentations "on dozens of occasions."

(Complaint ¶ 240).  They allege that those misrepresentations included claims "that he was the

'Head of Macro,' that he was responsible for managing Plaintiffs' macro trading operations, that

he was responsible for Plaintiffs' macro trading profits, returns, and performance, and that no one

else at Greenlight has the ability to run macro trading."  (*Id.*)  They also allege that Mr. Fishback

"committed defamation by making public statements that he was subject to scrutiny and criticism

for his political views at Greenlight."  (Complaint ¶ 241).

Many assertions attributed to Mr. Fishback are general claims, rather than specifically

identifiable statements.  And Plaintiffs carefully avoid disclosing which of their 246-paragraphs

are the bases for their defamation claims.  The Court and Mr. Fishback should not be required to

guess.

b.  <u>Allegedly Inflating One's Title Or Job Performance Is Not Reasonably Susceptible To
Defamatory Connotation.</u>

The theory of Plaintiffs' defamation claims is based on an extremely slippery slope that is

unsupported by case law.  Plaintiffs contend that by allegedly puffing his credentials, Mr. Fishback

defamed Plaintiffs by implying that they do not have the ability to run their company.  The Court

should reject the notion that anyone who allegedly overstates their role at their former job defames their employer.

"At the motion to dismiss stage, the court must decide whether the statements, considered in the context of the entire publication, are reasonably susceptible of a defamatory connotation, such that the issue is worthy of submission to a jury." *Kesner*, 515 F. Supp. 3d at 170 (internal citations and quotations omitted). To be reasonably susceptible of a defamatory connotation, a statement must expose a person to public contempt, hatred, ridicule, aversion or disgrace. *Jack Russell Music Ltd. v. 21st Hapilos Digital Distribution, Inc*., 2024 WL 3184676, at *3 (S.D.N.Y. June 26, 2024) (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014)).

Plaintiffs' allegations that Mr. Fishback inflated his title or job performance are not reasonably susceptible to defamatory connotation. And *Plaintiffs themselves* called Mr. Fishback "our head of macro" in at least one public-facing document. (*See* Complaint ¶ 105). Obviously, since Plaintiffs told others that Mr. Fishback was the head of macro at Greenlight, that statement cannot be susceptible of a defamatory connotation. Even aside from Plaintiffs' own use of the term, there is no basis to believe that an employee allegedly overstating his position would cast his former employer in a negative light or harm it in the operation of its business. None of the specific statements attributed to Mr. Fishback, which concern his own past contributions, actually say anything negative about David Einhorn's ability to run the firm in the future.[3] Thus, the statements at issue are not susceptible to defamatory connotation.

---

[3]    By contrast, Plaintiffs' false and irrelevant allegations that Mr. Fishback "actually generated nothing" and "had no track record" at Greenlight are clearly disparaging and defamatory. (Complaint ¶¶ 165, 172).

c.   No Special Damages Or Defamation *Per Se*.

Plaintiffs' defamation claims should also be dismissed because they fail to allege either special damages or defamation *per se*.

"[T]o recover on a defamation claim, a plaintiff must either plead special damages or that the statements are defamatory *per se*. Special damages are those that involve the loss of something having economic or pecuniary value which must flow directly from the injury to the reputation caused by the defamation. Statements that are defamatory *per se* are actionable without pleading and proof of special damages. Two such categories of defamatory *per se* statements are those that charge the plaintiff with a serious crime and those that tend to injure another in his or her trade, business or profession." *Kesner*, 515 F. Supp. 3d at 171 (internal citations and quotations omitted). Defamation *per se* is "limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities.'" *Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992); *see also Medcalf v. Walsh*, 938 F. Supp. 2d 478, 487 (S.D.N.Y. 2013) (same).

Plaintiffs make no attempt to plead special damages. They do not claim that they have suffered any specifically identified economic loss because of Mr. Fishback's alleged defamatory statements. Rather, Plaintiffs' references to supposed damages are purely speculative, vague, and conclusory. For example, in paragraph 244, Plaintiffs allege that investors *could* refrain from investing with Plaintiffs, that the statements impaired Plaintiffs' ability to recruit potential employees, and that "Plaintiffs have been forced to expend time, money, and other resources in order to ascertain the harmful extent of Fishback's actions, and pursue actions to correct his false statements." But Plaintiffs do not actually explain any of this. They identify no investors lost, no

potential employees who turned them down, and no specific expenditure incurred.  Thus, Plaintiffs fail to allege any specific economic damages caused by the alleged defamation.

Plaintiffs also fail to plead defamation *per se*.  There are no allegations explaining *why* any statement by Mr. Fishback "tended to injure [Plaintiffs] in [their] trade," *Kesner*, 515 F. Supp. 3d at 171, or is "incompatible with the proper conduct of the business, trade, profession or office itself," *Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (N.Y. 1992).  Instead, Plaintiffs resort to the conclusory and formulaic assertion that "Fishback's statements have also impugned Plaintiffs' reputation in their profession, business, and/or trade, and are therefore defamatory per se."  (*See* Complaint ¶ 245).  This allegation is insufficient to show that Plaintiffs were harmed either by his statements about his role at Greenlight or by his unspecified political claims.  *See, e.g.*, *Bernstein v. O'Reilly*, 2019 WL 10995110, at *5 (S.D.N.Y. Sept. 26, 2019) (statements that someone is a "politically and financially motivated liar" are loose and hyperbolic, and "they do not constitute actionable defamation per se . . . ."); *Wright v. Belafonte*, 2014 WL 13111397, at *8 (S.D.N.Y. Mar. 11, 2014) ("Statements ascribing political views are not defamatory *per se*."), *report and recommendation adopted*, 2014 WL 1302632 (S.D.N.Y. Mar. 31, 2014), *aff'd*, 687 F. App'x 1 (2d Cir. 2017); *see also Miness v. Alter*, 262 A.D.2d 374, 375 (2d Dep't 1999) ("[A]ccusations of the use of political influence to gain some benefit from the government are not defamatory and do not constitute libel per se.").

Since Plaintiffs have failed to properly plead the damages element for their defamation cause of action, that claim should be dismissed.

**B.**    **The Court Should Compel Arbitration Of Plaintiffs' Claims Because They Are Subject To Mandatory Arbitration Under The Parties' Employment Agreement.**

To the extent not dismissed, the Court should compel arbitration because all of Plaintiffs' claims are covered by the broad arbitration clause contained in the Employment Agreement between Greenlight and Mr. Fishback.

"Section 4 of the Federal Arbitration Act requires courts to compel arbitration in accordance with the terms of the arbitration agreement upon the motion of either party to the agreement, provided that there is no issue regarding its creation." *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 44 (S.D.N.Y. 2020) (internal citations and quotations omitted).  "Moreover, federal policy strongly favors arbitration as an alternative dispute resolution process, so any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, and federal policy requires courts to construe arbitration clauses as broadly as possible.  Unless it may be said with positive assurance that the arbitration clause does not cover the disputed issue, the court must compel arbitration." *Id.* (internal citations and quotations omitted) (brackets in original).

The Second Circuit has established a two-part test for determining whether claims are arbitrable: (1) whether the parties agreed to arbitrate disputes;  and (2) whether the dispute at issue comes within the scope of the arbitration agreement.  *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).  These factors weigh in favor of compelling arbitration here.

**1.    The Parties Agreed To Arbitrate.**

The Employment Agreement includes the following broad arbitration provision:

Arbitration: Any dispute, controversy or claim arising out of or relating to this Agreement or Employee's employment with the Company, whether arising during the term of employment or at or after its termination, shall be settled by arbitration in New York, New York (or, if applicable law requires some other forum, then such

other forum) in accordance with the rules then obtaining of the American Arbitration Association. If the parties to any such controversy are unable to agree upon an arbitrator or arbitrators, then an arbitrator shall be appointed in accordance with such rules.

(Fishback Decl. Ex. 1 ¶ 12).

Plaintiffs have conceded that the Employment Agreement is valid by bringing claims in this action seeking to enforce it. (*See* Complaint, at First Cause of Action). Additionally, Greenlight acknowledged that the arbitration clause of the Employment Agreement is valid by moving to compel arbitration under the Employment Agreement in response to Mr. Fishback's first-filed action against Greenlight, titled *Fishback v. Greenlight Cap., Inc.*, New York County Supreme Court Index No. 160289/2023. (Kelton Decl. Ex. 3 (Greenlight's motion to compel arbitration)). Subsequently, Greenlight and Mr. Fishback stipulated to arbitrate the disputes raised by Mr. Fishback regarding his role at Greenlight. (Kelton Decl. Ex. 4). Thus, Plaintiffs cannot reverse course now simply because they seek to use this Court's public docket as a vehicle to disparage Mr. Fishback. And Plaintiffs make no attempt to explain why—having invoked the arbitration agreement themselves—they brought claims subject to arbitration here.

Although Section 11 of the Employment Agreement provides that Greenlight may apply to a court for "specific performance and/or injunctive relief," that does not obviate Plaintiffs' obligation to arbitrate their claims for damages. *See GateGuard, Inc. v. MVI Sys. LLC*, 2021 WL 4443256, at *7 (S.D.N.Y. Sept. 28, 2021) (compelling arbitration even though arbitration clause included a carve-out for equitable relief); *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.I.*, 816 F. Supp. 213, 218 (S.D.N.Y. 1993) (rejecting interpretation of arbitration agreement that would "transform arbitrable claims into nonarbitrable ones depending on the form of relief prayed for"); *see also Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) (granting motion to compel arbitration where provision addressing obtaining an injunction or other equitable

17

relief was "merely declaratory of existing legal rights" and allowed a party "to preserve the status quo during the pendency of the arbitration"); *Clarus Med., LLC v. Myelotec, Inc.*, 2005 WL 3272139, *2 (D. Minn. Nov. 30, 2005) (where agreement contained "any and all disputes" arbitration clause as well as language stating "notwithstanding . . . each party shall be entitled to seek injunctive and other equitable relief in any court or forum of competent jurisdiction," court compelled arbitration; clause regarding equitable relief did "not mandate that such disputes be brought before a court rather than an arbitrator").

### 2. The Arbitration Agreement Is Broadly Drafted To Cover Alleged Conduct Occurring Either During Or After Employment, And Issues Relating To The Employment Relationship Or The Employment Agreement Itself.

Plaintiffs' claims fall within the extremely broad scope of the arbitration clause, which pertains to any "controvers[ies] [and] claim[s] arising out of or relating to" Mr. Fishback's employment at Greenlight. (Fishback Decl. Ex. 1 ¶ 12). Notably, the arbitration clause was drafted to encompass disputes relating to conduct occurring either during or after Mr. Fishback's employment. (*Id.*). And the arbitration clause is broadly drafted with respect to the subject matter to be arbitrated, including *all* disputes "relating to" Mr. Fishback's "employment with [Greenlight]" or to the Employment Agreement itself. (*Id.*).

Each of Plaintiffs' claims is either "relating to" Mr. Fishback's work for Greenlight or to the confidentiality provisions of the Employment Agreement. The breach of contract claim alleges that Mr. Fishback breached certain confidentiality obligations contained in the Employment Agreement by accessing, saving, and/or using certain confidential information obtained through his employment. (Complaint ¶¶ 4, 17, 76, 85, 96-99, 101, 103, 145, 156, 158, 200-209). That claim is clearly a "dispute, controversy or claim arising out of or relating to this [Employment] Agreement," since the confidentiality obligations at issue are contained within the Employment Agreement.

Plaintiffs' claims for defamation and defamation *per se* are also subject to arbitration under the Employment Agreement. They are based on the theory that Mr. Fishback made false statements about various aspects of his employment—*i.e.*, his role at Greenlight and how he was treated by Greenlight because of his political views. Thus, these disputes relate to "Employee's employment with the Company." (Fishback Decl. Ex. 1 ¶ 12). Indeed, as noted above, Greenlight *itself* previously moved to compel arbitration of disputes relating to Mr. Fishback's role at Greenlight. (Kelton Decl. Ex. 3). Likewise, Greenlight stipulated to arbitrate issues relating to Mr. Fishback's claims about mistreatment he suffered at Greenlight. (Kelton Decl. Ex. 5).

Plaintiffs' claims for unfair competition and tortious interference with prospective economic advantage also "relate to" Mr. Fishback's work for Greenlight. The gravamen of those claims is Plaintiffs' contentions that Mr. Fishback overstated his work for and title at Greenlight, and misappropriated or used confidential information that he obtained while working for Greenlight (purportedly in violation of his Employment Agreement). (Complaint ¶¶ 211-224).

Given the strong policy favoring arbitration, the broad language of the parties' arbitration agreement, and the mandate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), Plaintiffs should be compelled to arbitrate any claims that are not dismissed.

## C.  The Court Should Strike The Unnecessary And Highly Prejudicial Allegations From Plaintiffs' Complaint.

Plaintiffs did not limit themselves to pursuing meritless claims. They also filed a *246-paragraph*, *58-page* complaint that is so overbroad that it could only have been brought for an improper purpose. Plaintiffs' inflammatory and irrelevant smears couched as allegations should be stricken to protect the integrity of these proceedings and to avoid undue prejudice to Mr. Fishback.

"Immaterial matter is that which has no essential or important relationship to the claim for relief, and impertinent material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Williams v. Grp. Russo's Payroll, Inc.*, 2023 WL 3042236, at *9 (E.D.N.Y. Apr. 21, 2023); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F.Supp.2d 434, 437 (S.D.N.Y. 2005).   A scandalous allegation is one that "reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Eng v. Casey*, 2014 WL 5824640, at *1 (S.D.N.Y. Nov. 7, 2014).

### 1.  Summary Of Plaintiff's Causes Of Action

The four causes of action asserted by Plaintiffs are simple.  They can be summarized as follows:

| CAUSE OF ACTION | SUMMARY OF ALLEGATIONS |
|---|---|
| Breach Of Contract | Alleges violations of a confidentiality obligation in Mr. Fishback's employment agreement.  (Complaint ¶¶ 200-209). |
| Unfair Competition | Alleges that Mr. Fishback exaggerated his role at Greenlight to benefit Azoria (Complaint ¶¶ 210-217) and used Greenlight's confidential information.  (Complaint ¶¶ 218-224). |
| Tortious Interference With Prospective Economic Advantage | Alleges that Mr. Fishback interfered with Greenlight's investor relationships by exaggerating his role at Greenlight (Complaint ¶¶ 226-231, 236) and misappropriated Greenlight's confidential information. (Complaint ¶¶ 232). |
| Defamation and Defamation *per se* | Alleges that Mr. Fishback exaggerated his role at Greenlight (Complaint ¶ 240), and made public statements that he was subject to scrutiny and criticism for his political views at Greenlight (Complaint ¶ 241). |

These straightforward claims do not require nearly 250 allegations, many of which are compound and contain multiple subparts.  Indeed, Plaintiff's complaint is about as far from a "short and plain statement of the claim" as imaginable.  *See* Fed. R. Civ. P. 8.  And as explained in detail below, huge swaths of the complaint are dedicated to allegations that are salacious and irrelevant.  These allegations are included solely for the improper purposes of harassing Mr. Fishback,

needlessly multiplying the scope and costs of these proceedings, and prejudicing a potential jury against him.

### 2. Plaintiffs' Attacks On Mr. Fishback's Job Performance At Greenlight Are Irrelevant And Should Be Stricken.

Plaintiffs' gratuitous claims about Mr. Fishback's job performance while he was employed at Greenlight are not relevant to any element of any claim here, and should be stricken as immaterial, impertinent, salacious, and prejudicial. (Complaint ¶¶ 10, 43-51, 65-76, 185, 187).

For example, Paragraph 43 alleges that during Mr. Fishback's employment, he did not meet performance expectations, and did not devote enough time to Greenlight. It also alleges that Mr. Fishback's work was sometimes "delayed, undeveloped, or otherwise incomplete," and claims that Mr. Fishback exhibited "dishonesty" about his work and certain "outside personal ventures." Complaint ¶ 43. Such assertions are utterly immaterial to any of the four causes of action asserted against Fishback—none of which are based on alleged underperformance on the job.[4] (*See* Complaint ¶¶ 200-246).

For the same reason, the allegations that Mr. Fishback was on "thin ice" (Complaint ¶¶ 44, 72-73), made certain mathematical errors (Complaint ¶¶ 45, 47, 49), was unreliable (Complaint ¶ 48), worked slowly (Complaint ¶¶ 50, 51), and was "preoccupied" with his nonprofit Incubate Debate and outside endeavors (Complaint ¶¶ 52, 65-71), are impertinent, immaterial, and prejudicial.

Plaintiffs also mention a so-called "Jelly Donut Assignment," which has no discernable connection to any claim, and is unnecessarily included to paint Mr. Fishback in a negative light

---

[4]    To the extent that Plaintiffs argue that Mr. Fishback calling himself the head of macro harms Greenlight by association because Mr. Fishback allegedly had performance issues, that argument makes no sense. Indeed, Plaintiffs are the ones publicizing the supposed performance issues and, therefore, causing any supposed "harm" by association.

(Complaint ¶¶ 74-75).  The number of hours Mr. Fishback spent on a work assignment has no bearing on whether he breached his employment agreement, unfairly competed with Plaintiffs, interfered with Plaintiffs' potential business relationships, or defamed Plaintiffs.  There is no legitimate reason for these allegations to be in this complaint.

### 3. Plaintiffs' Allegations About A "Gift Matching" Incident Are Irrelevant And Should Be Stricken.

Plaintiffs make a series of allegations about a "gift-matching" incident, none of which has any relevance to this case.  (Complaint ¶¶ 52-64).  Generally speaking, these allegations assert that Mr. Fishback asked Greenlight to make a gift to a charitable organization that Fishback founded, but did not provide documentation satisfactory to Greenlight showing his underlying donation (Complaint ¶¶ 53-57), and that, as a result, Greenlight ultimately declined to make a contribution (Complaint ¶¶ 58-64).  These have no relevance to any claim or defense, and are obviously included for the sole purpose of smearing Mr. Fishback by raising vague questions about Fishback's integrity, and to expand the scope of discovery in this case to include this alleged "incident" that is irrelevant and immaterial to any of Plaintiffs' four causes of action.

### 4. Plaintiffs' Allegations That Greenlight Intended To Terminate Mr. Fishback's Employment—But Did Not Do So—Are Irrelevant And Should Be Stricken.

Plaintiffs' claims that Mr. Fishback "likely deduced" that he was going to be terminated by Greenlight, and that he "resigned first" (Complaint ¶ 80) have no bearing on any claim in this action.  (*See also* Complaint ¶¶ 1, 18-19, 77-83, 173-174, 181).  These allegations are included only to try to embarrass Mr. Fishback and harm his reputation with potential future employers.  For the same reason, the allegations that Fishback "misrepresented" reasons for his departure from Greenlight (Complaint ¶¶ 18-19) are irrelevant and unduly prejudicial.  These allegations should be stricken.

**5. Plaintiffs' Allegations Regarding Mr. Rehm Are Irrelevant And Should Be Stricken.**

Plaintiffs include a wholly irrelevant and speculative story in which they contend that Mr. Jeffrey Rehm acted nefariously when he contacted Plaintiffs for a reference about Mr. Fishback. (Complaint ¶¶ 119-123). These allegations should be stricken because they disparage non-party Mr. Rehm and have no relevance to the claims asserted. *See, e.g.*, *Int'l Publ'g Concepts, LLC v. Locatelli*, 2015 WL 321852, at *8-9 (Sup. Ct. N.Y. Cnty. Jan. 15, 2015) (striking allegations against non-parties as irrelevant). Mr. Rehm's reference check with Greenlight does not support any element of any claim, and could not have caused Greenlight any cognizable damage.

**6. Plaintiffs' Allegations That Mr. Fishback's Prior Legal Actions Were "Frivolous" Are Irrelevant And Should Be Stricken.**

Plaintiffs also falsely assert that prior litigation by Mr. Fishback was "frivolous" or "specious"—although no court has ever found that to be the case. (Complaint ¶¶ 1, 9-10, 13, 122, 127, 129-141). These allegations have nothing to do with Plaintiffs' claims, and are just another attempt to smear Mr. Fishback.[5]

Relatedly, the fact that Mr. Fishback agreed with Greenlight to voluntarily discontinue certain actions without prejudice, so they could be pursued in arbitration, does not support any cause of action. As Plaintiffs' experienced counsel well know, a voluntary agreement to a change of forum says nothing about the merits of the claims. Those allegations can only have been included to create the inflammatory insinuation that Mr. Fishback pursued improper claims— which, again, is untrue. *See, e.g.*, *Soumayah v. Minnelli*, 41 A.D.3d 390, 393 (1st Dep't 2007) (holding that settlement-related allegations "not necessary" and "may instill undue prejudice [in]

---

[5]    For the same reason, Plaintiffs' allegations recapping the procedural history of Mr. Fishback's prior litigation are immaterial, and only serve to confuse a potential jury (Complaint ¶¶ 130-136).

the jury," and therefore deciding that "the most prudent course of action at this juncture is to strike the allegations.").

### 7. Plaintiffs' Allegations About Mr. Fishback's Contemplated (But Not Consummated) Attendance At A Greenlight Investor Dinner Are Irrelevant And Should Be Stricken.

There is also no legitimate reason for Plaintiffs' inclusion of a series of allegations regarding Mr. Fishback's contemplation of potentially attending a Greenlight investor dinner—while he was, in fact, an investor[6]—but which Mr. Fishback ultimately did not attend. (Complaint ¶¶ 14, 142-147).

Plaintiffs allege that Mr. Fishback "threatened" to attend Greenlight's 2024 Annual Partner Dinner (Complaint ¶ 142) and hand letters to investors raising questions about Greenlight's investment strategies (Complaint ¶¶ 144-146). But the undisputed fact is that Mr. Fishback never did so. These allegations therefore cannot serve as a basis for any cause of action.

Moreover, couching Mr. Fishback's email to Greenlight as a "threat"—which Plaintiffs do at least fifteen times—is highly prejudicial. Although Mr. Fishback never handed out the letter that was discussed, he would have been well within his First Amendment rights and his purview as an investor with substantial funds in Greenlight to ask these questions.

Accordingly, paragraphs 14 and 142-147 should be stricken from the Complaint as irrelevant and immaterial to the issues in this action.

## V.    CONCLUSION

Plaintiffs' claims for unfair competition, tortious interference with prospective economic advantage, and defamation/defamation *per se* fail as a matter of pleading and should be dismissed.

---

[6]    Mr. Fishback notes that he only considered attending this dinner *after* he received a save-the-date request from Greenlight, which Greenlight later withdrew. Thus, Greenlight's version of events is materially misleading.

Additionally, Plaintiffs should be compelled to arbitrate their claims. To the extent that any claim survives in this Court, the scandalous, inflammatory, and unnecessary allegations identified herein should be stricken from the record.

Dated:    Brooklyn, New York
          August 26, 2024

                                        **ABRAMS FENSTERMAN, LLP**

                                         _/s/ Justin T. Kelton_____
                                        Justin T. Kelton
                                        Amanda P. Small
                                        1 MetroTech Center, Suite 1701
                                        Brooklyn, NY 11201
                                        Tel: (718) 215-5300
                                        Fax: (718) 215-5304
                                        Email:  jkelton@abramslaw.com
                                        Email:  asmall@abramslaw.com
                                        _Counsel for Defendant_
                                        _James T. Fishback_