**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Greenlight Capital, Inc., DME Capital Management, LP, | |
| Plaintiffs, | No. 24-cv-04832-PAE |
| -vs.- | |
| James T. Fishback, | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE IRRELEVANT AND PREJUDICIAL ALLEGATIONS IMPROPERLY INCLUDED IN PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(f).**

AKIN GUMP STRAUSS HAUER & FELD LLP

Stephen M. Baldini
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel:  212-872-1000
Fax:  212-872-1002
sbaldini@akingump.com

*Counsel for Plaintiffs Greenlight Capital, Inc. and*
*DME Capital Management, LP*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL STANDARD ..............................................................................................................6

ARGUMENT ..........................................................................................................................7

    I.     Fishback Has Not Even Attempted to Argue that No Evidence in Support
of the Allegations Would be Admissible ................................................................7

    II.    Fishback Has Not Shown That the Allegations Have No Bearing on the
Issues in this Case ...................................................................................................8

          A.    Fishback's Relevance Arguments Are Both Premature and Based
on a Misunderstanding of the Live Legal Issues in the Case .......................8

          B.    The Contested Allegations Are Relevant to the Injunctive Relief
Sought ...........................................................................................................9

          C.    At a Minimum, the Contested Allegations Are Necessary to
Establish Context for Fishback's Breach of Contract ...............................13

    III.    Fishback Has Not Shown That the Allegations in the FAC Are Prejudicial ..........14

CONCLUSION ......................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambac Assur. Corp. v. EMC Mortg. Corp.*,
2009 WL 734073 (S.D.N.Y. Mar. 16, 2009) ...........................................................................17

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987)..................................................................................................................9

*Avent v. Solfaro*,
210 F.R.D. 91 (S.D.N.Y. 2002) ..............................................................................................12

*Ayco Co., L.P. v. Feldman*,
2010 WL 4286154 (N.D.N.Y. Oct. 22, 2010) .........................................................................10

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019)........................................................................................................6

*Cabbie v. Rollieson*,
2006 WL 464078 (S.D.N.Y. Feb. 27, 2006)............................................................................14

*Cadet v. Alliance Nursing Staffing of N.Y., Inc.*,
2023 WL 3872574 (S.D.N.Y. Jan. 6, 2023) ...........................................................................12

*Chase Mfg., Inc. v. Johns Manville Corp.*,
84 F.4th 1157 (10th Cir. 2023) ...............................................................................................16

*Citizens Securities, Inc. v. Bender*,
2019 WL 3494397 (N.D.N.Y. Aug. 1, 2019) ...........................................................................9

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
2019 WL 5960202 (S.D.N.Y. Nov. 13, 2019).........................................................................14

*Craig v. Fleming*,
2024 WL 894895 (E.D. Ark. Feb. 29, 2024) ..........................................................................16

*EEOC v. KarenKim, Inc.*,
698 F.3d 92 (2d Cir. 2012).........................................................................................................9

*Egiazaryan v. Zalmayev*,
2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ..........................................................................12

*Emilio v. Sprint Spectrum L.P.*,
68 F. Supp. 3d 509 (S.D.N.Y. 2014).........................................................................................6

*Federated Dep't Stores, Inc. v. Grinnell Corp.*,
    287 F. Supp. 744 (S.D.N.Y. 1968) ...............................................................................17

*Frio Energy Partners, LLC. v. Finance Tech. Leverage, LLC*,
    680 F. Supp. 3d 322 (S.D.N.Y. 2023).............................................................................8

*FTC v. Celsius Network Inc.*,
    2024 WL 1619360 (S.D.N.Y. April 12, 2024) ...........................................................10

*Gen. Petroleum GmbH v. Stanley Oil & Lubricants, Inc.*,
    2024 WL 4143535 (E.D.N.Y. Sep. 11, 2024)...............................................................11

*Gierlinger v. Town of Brant*,
    2015 WL 3441125 (W.D.N.Y. May 28, 2015) ...........................................................13

*Gregory Wayne Designs, LLC v. Lowry*,
    2024 WL 3518584 (S.D.N.Y. July 24, 2024) ...............................................13, 14, 15

*Hunley v. BuzzFeed, Inc.*,
    2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021).............................................................13

*Innoviant Pharm., Inc. v. Morganstern*,
    390 F. Supp. 2d 179 (N.D.N.Y. 2005)..........................................................................10

*Judd v. Langford*,
    2020 WL 2748306 (W.D.N.C. May 27, 2020) ...........................................................16

*Li v. China Merchants Bank Co., Ltd.*,
    2023 WL 2955293 (S.D.N.Y. Apr. 14, 2023)...............................................................16

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)...............................................................................6, 7, 8

*Lucarelli v. DVA Renal Healthcare, Inc.*,
    2009 WL 262431 (S.D. Ohio Feb. 3, 2009)..................................................................17

*Lynch v. Southampton Animal Shelter Found. Inc.*,
    278 F.R.D. 55 (E.D.N.Y. 2011) ..........................................................................6, 13

*Miss America Org. v. Mattel, Inc.*,
    945 F.2d 536 (2d Cir. 1991)............................................................................................9

*Roach v. Morse*,
    440 F.3d 53 (2d Cir. 2006).............................................................................................9

*SEC v. Commonwealth Chem. Sec., Inc.*,
    574 F.2d 90 (2d Cir. 1978)............................................................................................10

iii

*Szulik v. Tagliaferri*,
    966 F. Supp. 2d 339 (S.D.N.Y. 2013)..................................................................................12

*Torre v. Charter Commc'ns, Inc.*,
    493 F. Supp. 3d 276 (S.D.N.Y. 2020)...............................................................................6, 14

*Trodale Holdings, LLC v. Bristol Healthcare Inv'rs. L.P.*,
    2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017)........................................................................7

*Wahlstrom v. Metro-N. Commuter R.R. Co.*,
    1996 WL 684211 (S.D.N.Y. Nov. 25, 1996).........................................................................14

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................................................9

*Zurich v. Am. Life Ins. Co. v. Nagel*,
    538 F. Supp. 3d 396 (S.D.N.Y. 2021)...................................................................................7

**Other Authorities**

Fed. R. Civ. P. 12(f)..............................................................................................1, 6, 7, 12

Plaintiffs, Greenlight Capital, Inc. ("Greenlight") and DME Capital Management, LP ("DME") (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendant James T. Fishback's Motion to Strike Irrelevant and Prejudicial Allegations Improperly Included in Plaintiffs' First Amended Complaint Pursuant to FRCP 12(f) (the "Motion" and, the memorandum of law in support of the Motion, the "Brief").

## PRELIMINARY STATEMENT

Greenlight brings this action against its former employee, James Fishback, for his theft and misuse of Confidential Information[1] in violation of his Employment Agreement with Greenlight. Fishback stole this information to support an investment firm that he secretly created while still employed with Greenlight called Azoria Partners ("Azoria"). Fishback created Azoria as Greenlight was growing increasingly dissatisfied with Fishback's neglect of his responsibilities, and when Fishback finally deduced that he was about to be fired, he resigned and used his final days at the company to steal Confidential Information. He stole that information to help build Azoria. Since leaving Greenlight, he has misused Greenlight's Confidential Information by disclosing it publicly— including on X (formerly Twitter), in pleadings in a legal action, and on podcasts—and by threatening to disclose it to Greenlight's investors at a private event in an attempt to intimidate Greenlight.

Fishback now improperly moves to strike swaths of the FAC and asks this Court to disregard facts that are relevant to demonstrate his motivation for stealing and misusing

---

[1] As discussed in further detail in Plaintiffs' First Amended Complaint (ECF No. 18, "FAC"), Confidential Information refers to certain sensitive and proprietary commercial information defined in the employment agreement that Fishback executed on February 8, 2021 to commence his employment with Greenlight (the "Employment Agreement"). *See id.* ¶¶ 30-32. In the Employment Agreement, Fishback agreed not to disclose or misuse Confidential Information, and to return any Confidential Information upon the termination of his employment. *Id.* ¶ 31.

All capitalized but otherwise undefined terms have the meaning ascribed to them in Plaintiffs' FAC.

Greenlight's Confidential Information. He also asks the Court to strike allegations about his misuse of Confidential Information after his employment, which not only confirm his motives, but are instances where he actually and intentionally breached his Employment Agreement.

Fishback's Motion falls far short of meeting the exacting standard for striking material from a pleading, with its three requirements of inadmissibility, irrelevance, and prejudice. First, Fishback completely fails to even address the admissibility issue for any allegation and thus concedes that he cannot meet that standard. Second, he disingenuously attempts to argue that his conduct at Greenlight—which spurred him to steal the Confidential Information—and disclosures of that Confidential Information since leaving Greenlight are irrelevant. His argument completely ignores that Greenlight is seeking injunctive relief here, and that his motivations for inflicting past harm on Greenlight are relevant to whether Greenlight is likely to suffer irreparable harm absent an injunction. Finally, Fishback should not be heard to complain about prejudice here. All of his points on prejudice effectively boil down to arguing that allegations regarding his poor performance and misuse of stolen Confidential Information somehow "tarnish" his reputation. Far from scandalous, these allegations are typical of those alleged in litigation between employers and former employees, and are important elements of the narrative related to Fishback's improper acts. In any event, any alleged harm to Fishback's reputation would be exclusively due to his own wrongful acts and his contractual violations that gave Greenlight a claim against him. They are properly included in the FAC as a result.

## BACKGROUND

Fishback is a former Greenlight employee. FAC ¶ 1. He struggled with his duties and responsibilities as an employee, and during his first two years at the company, he was repeatedly warned that his performance was lacking and that he needed to make significant improvements. *Id.* ¶¶ 33-41.

2

Fishback did not heed Greenlight's warnings and, in 2023, Greenlight grew increasingly frustrated with his performance. *Id.* ¶¶ 45-53. Greenlight's patience finally ran out in late-July 2023, when Fishback finally submitted his work to Mr. Einhorn on an important assignment that he had been tasked with months earlier. *Id.* ¶ 55. Despite having had almost six months to complete the assignment, Fishback submitted incomplete work product that reflected only a few hours of effort—a small fraction of the time and attention that would have been necessary to satisfactorily complete the assignment. *Id.* ¶¶ 55-56.

Greenlight decided to terminate Fishback immediately after reviewing his submission, and Mr. Einhorn planned to inform Fishback of the termination in a virtual meeting, as Fishback worked remotely. *Id.* ¶¶ 56, 58-59. On the morning of July 31, 2023, Greenlight reached out to Fishback to schedule a meeting between Mr. Einhorn and Fishback for noon that day, with no stated purpose for the meeting. *Id.* ¶ 59. Fishback correctly deduced that he was about to be terminated, asked to delay the meeting, and then tendered his resignation 27 minutes later via email. *Id.* ¶¶ 60-61.

Greenlight eventually learned that while Fishback was neglecting to turn around his performance in his final months at the company, he had also been pursuing a secret plan to start his own investment firm at Greenlight's expense. *Id.* ¶¶ 64-65. Specifically, Greenlight learned that Fishback had done three things in furtherance of his plan while still at the company.

First, Greenlight learned that Fishback had taken concrete steps to form Azoria, which he intended to operate as a hedge fund. *Id.* ¶¶ 66-73.

Second, Greenlight learned that Fishback had participated or attempted to participate in multiple industry events on Greenlight's behalf, but without Greenlight's knowledge and in violation of Greenlight policy, where he misrepresented and inflated his role at Greenlight. *Id.*

3

¶¶ 67-68.  In particular, Fishback misrepresented that he was Greenlight's "Head of Macro" and similar variations of that title.  *Id.*  This was false, as these titles had never existed at the company, and were certainly never given to Fishback.  *Id.*  During his tenure at Greenlight, Fishback's only title was Research Analyst, but Fishback invented a title that conveyed more responsibility and discretion at Greenlight.[2]  *Id.*  Fishback did all of this in secret to misappropriate Greenlight's successes and build credibility for himself and Azoria.  *Id.* ¶¶ 5, 82.

Third, Greenlight learned that Fishback had secretly sent Greenlight's Confidential Information—including its portfolio of investments and records of its profitability—to his personal email account, in violation of his Employment Agreement and Greenlight policies.  *Id.* ¶¶ 74-77.

After Greenlight made these discoveries, it warned Fishback against misrepresenting his role at Greenlight, and retaining or misusing any of Greenlight's Confidential Information.  *Id.* ¶¶ 79, 84-86.  Since leaving Greenlight, however, Fishback has flouted both warnings and has chosen instead to promote himself and Azoria using wrongful tactics on multiple occasions.

In October 2023, Fishback filed a frivolous defamation suit against Greenlight.  The theory of the suit was that it was defamatory for Greenlight to tell the truth to parties inquiring with Greenlight about Fishback's role at the company—that he was a "Research Analyst" and not "Head of Macro."  *Id.* ¶ 87.  More importantly for present purposes, Fishback disclosed Greenlight's Confidential Information in his complaint, when he incorrectly alleged that he "generated over $100 million in profits for Greenlight from the period of February 2021 to August 2023."  *Id.* ¶ 89.  Fishback did this in support of his allegations that he was "an outstanding performer at Greenlight"

---

[2]    Greenlight also learned that Fishback latched onto this particular title because he intended to deceptively frame a single email where he was informally and inconsequentially referred to as "our head of macro" as evidence that he held this as an official title.  *See id.* ¶¶ 79-82.

4

and "excelled in his work," which he alleges support the notion that he was "Head of Macro." *Id.* ¶ 7. Unfortunately for Fishback, none of these statements were true.

Fishback's statements regarding the "$100 million in profits" were wrongful in that they both disclosed Confidential Information (i.e., Greenlight's profitability from certain investment activities) and falsely attributed that profitability to Fishback. *Id.* These statements were coupled with Fishback's other false allegations regarding his title and performance in a defamation suit that was filed to deter Greenlight from responding to any third parties about Fishback's work at Greenlight. Fishback did this so that he could continue to make public misrepresentations about his title and role at Greenlight to promote himself and Azoria to investors without being corrected. *Id.* ¶ 90.

In January 2024, Fishback continued his campaign to intimidate Greenlight by threatening to lurk outside of Greenlight's 2024 Annual Partner Dinner and to distribute letters to the dinner's attendees that criticized Greenlight's investment capabilities. *Id.* ¶¶ 91-94. These criticisms were not only based on false information, but Fishback planned to disclose Confidential Information in these letters in support of his false criticisms. *Id.* Fishback knew that many of Greenlight's investors and business counterparties would be attending this event, and made these threats to interfere with Greenlight's relationships with its investors and business counterparties. *Id.*

More broadly, this was part of Fishback's overarching campaign to exact leverage over Greenlight and perpetuate his own wrongful conduct. In May 2024, Fishback escalated that campaign when he deceived the unwitting hosts of a popular podcast to invite Mr. Einhorn onto their show to debate him. *Id.* ¶¶ 96-99. Fishback proposed debate topics that he knew related to Greenlight's Confidential Information, like its investment positions, knowing that Mr. Einhorn would have no interest in engaging with him given his ongoing harassment campaign against

Greenlight. *Id.* Nevertheless, Fishback used the sham invite to generate significant public interest on X, and launch into a days-long tirade on social media where he continued to disclose and misuse Greenlight's Confidential Information, and misrepresent his title and role with Greenlight. *Id.* ¶¶ 100-105. Again, the goal was the same as it had always been—to generate publicity for himself and Azoria, deceive the public into thinking that he was responsible for Greenlight's successes, and exact leverage over Greenlight.

Fishback's May 2024 social media campaign demonstrated that Fishback was not only willing to disclose and misuse Confidential Information within his knowledge, but that he was still in physical possession of documents containing Confidential Information. This, alongside Fishback's other wrongful conduct, prompted Greenlight to bring the instant action.

**<u>LEGAL STANDARD</u>**

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

To grant a motion to strike under FRCP 12(f) is to award a "drastic remedy." *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 69 (E.D.N.Y. 2011). The Second Circuit has long held that "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). As a result, "[m]otions to strike are viewed with disfavor and infrequently granted." *Emilio v. Sprint Spectrum L.P.,* 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (cleaned up). "In the absence of 'scandalous' material, motions to strike solely 'on the ground that the matter is impertinent and immaterial' are disfavored." *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 290 (S.D.N.Y. 2020) (quoting *Brown v. Maxwell,* 929 F.3d 41, 51 n.42 (2d Cir. 2019)).

Motions to strike "will be denied, unless it can be shown that . . . [i] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the

6

case; and [iii] that to permit the allegations to stand would result in prejudice to the movant."

*Trodale Holdings, LLC v. Bristol Healthcare Inv'rs. L.P.*, 2017 WL 5905574, at *15 (S.D.N.Y.

Nov. 29, 2017) (internal citations and quotations omitted).

## ARGUMENT

### I.    Fishback Has Not Even Attempted to Argue that No Evidence in Support of the Allegations Would be Admissible

Fishback takes issue with two categories of allegations: (1) allegations regarding

Fishback's performance and conduct as an employee,[3] the role that he held,[4] and Greenlight's

eventual determination to terminate him[5] (the "Employment Allegations"); and (2) allegations

regarding Fishback's conduct after leaving Greenlight surrounding his misuse of Confidential

Information[6] (the "Post-Employment Allegations," and together with the Employment Allegations,

the "Contested Allegations").

Fishback's Brief mentions admissibility once—in the recitation of the legal requirements

(*see* Brief at 2)—and then never addresses admissibility again for any allegation.  This omission

alone is fatal to Fishback's Motion.  Showing inadmissibility is an independent requirement for

relief on a motion to strike. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.

1976) ("In deciding whether to strike a Rule 12(f) motion on the ground that the matter is

impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that

no evidence in support of the allegation would be admissible.").  As such, courts deny motions to

strike under FRCP 12(f) for failure to make a sufficient showing under the admissibility prong.

*See, e.g.*, *Zurich v. Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 401 (S.D.N.Y. 2021) (denying

---

[3]    *See* Brief § IV.A (citing FAC ¶¶ 7, 33-41, 45-53, 54-56, 58, 61); Brief § IV.B (citing FAC ¶¶ 42-44).

[4]    *See* Brief § IV.F (citing FAC ¶¶ 5, 10, 66, 68, 80-81).

[5]    *See* Brief § IV.C (citing FAC ¶¶ 3, 60-63, 72-73).

[6]    *See* Brief § IV.D (citing FAC ¶¶ 7, 87-90); Brief § IV.E (citing FAC ¶¶ 8, 91-95).

defendant's motion to strike an exhibit to the complaint and all allegations in the complaint that quoted from or referenced the exhibit because the court could not "conclude that the exhibit would be inadmissible for all purposes"). Because Fishback has failed to make any showing with respect to the admissibility of evidence in support of Plaintiffs' allegations, the Motion should be denied on these grounds alone.

II.   **Fishback Has Not Shown That the Allegations Have No Bearing on the Issues in this Case**

A. Fishback's Relevance Arguments Are Both Premature and Based on a Misunderstanding of the Live Legal Issues in the Case

Instead of showing that there are real issues with admissibility or prejudice (as discussed below), the Motion attempts to drum up a fight about relevancy. But "questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." *Lipsky*, 551 F.2d at 893. Which is why "[t]he Second Circuit has instructed that 'ordinarily' a district court should not 'decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.'" *Frio Energy Partners, LLC. v. Finance Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 352 (S.D.N.Y. 2023) (quoting *Lipsky*, 551 F.2d at 893).

That questions of relevance are not ripe for decision at this preliminary stage of litigation is apparent from Fishback's own Brief, which fails to grasp the full scope of the live legal issues in this case, and in turn, the universe of relevant factual allegations. Here, Fishback suggests that the only disputed legal issue in this case is the breach of Fishback's Employment Agreement. *See* Brief at 4 (arguing that allegations should be stricken because they "have nothing whatsoever to do with whether [Fishback] breached a confidentiality obligation"). That is an erroneous oversimplification of the relevant issues here.

In addition to showing that Fishback breached his confidentiality obligations, Plaintiffs also intend to show that they are entitled to injunctive relief here. Showing entitlement to that relief may require more than just success on the breach claim. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.").[7]

B. The Contested Allegations Are Relevant to the Injunctive Relief Sought

Greenlight is seeking injunctive relief to stop Fishback from using its Confidential Information. "To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (internal quotation marks omitted); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987) ("In brief, the bases for injunctive relief are irreparable injury and inadequacy of legal remedies."). "The factors that are pertinent in assessing the propriety of injunctive relief are the balance of equities and consideration of the public interest." *EEOC v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) (quoting *Winter*, 555 U.S. at 32) (cleaned up).

Here, Plaintiffs intend to show the irreparable harm that they face due to Fishback's breach in order to establish their entitlement to injunctive relief. An employer suffers irreparable harm when a former employee's conduct threatens the employer's customers, goodwill, and reputation. *See Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 546 (2d Cir. 1991). The extent of the harm that will flow from the breach is dependent on, among other things, Fishback's past and ongoing misuse of Greenlight's Confidential Information. *See Citizens Securities, Inc. v. Bender*, 2019 WL

---

[7] Furthermore, Greenlight submits that the Post-Employment Allegations both directly address instances of Fishback's breach of his Employment Agreement, and thus are in fact relevant to breach itself, in addition to the need for injunctive relief.

3494397, at *5 (N.D.N.Y. Aug. 1, 2019) ("An employer suffers irreparable harm when a former employee's conduct threatens the employer's customers, goodwill, and reputation."); *Ayco Co., L.P. v. Feldman*, 2010 WL 4286154, at *6 (N.D.N.Y. Oct. 22, 2010) (finding that plaintiff established irreparable harm when the defendant, a financial advisor, abruptly resigned to take a job with a competitor and convinced several of the plaintiff's clients to move to the defendant's new employer).[8]    As such, the facts surrounding Fishback's state of mind in taking that information, as evidenced by his conduct in the Employment and Post-Employment Allegations, are probative of the harm Greenlight stands to endure in the absence of injunctive relief.  *See FTC v. Celsius Network Inc.*, 2024 WL 1619360, at *4 (S.D.N.Y. April 12, 2024) ("Should [defendant] be found liable … the degree of his scienter may indeed be relevant to the scope of any injunction.") (citing *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978)).

The Employment Allegations explain that Fishback knew Greenlight was growing increasingly dissatisfied with him due to his failure to meet performance expectations.  *See* FAC ¶¶ 7, 33-41, 45-53, 54-56, 58, 61.  They also explain that, instead of improving his performance, Fishback decided to form his own business, Azoria.  *See id.* ¶¶ 71-73.  Finally, they explain that when Fishback deduced that Greenlight was going to fire him before he was prepared to launch Azoria legitimately (*see id.* ¶¶ 60-63, 72-73), he abruptly resigned and resorted to stealing Greenlight's Confidential Information and promoting himself with false titles in order to support his venture's premature and hasty launch.  *See id.* ¶¶ 61, 74-78.

---

[8]    Plaintiffs reserve the right to argue that the Court should presume the existence of irreparable harm here based on Fishback's violations of his Employment Agreement.  *See Innoviant Pharm., Inc. v. Morganstern*, 390 F. Supp. 2d 179, 188 (N.D.N.Y. 2005) ("In cases such as this, involving a person competing with his or her former employer, particularly when such activity is prohibited by a restrictive covenant or is facilitated by the misappropriation of trade secrets or customer information, courts have often taken a somewhat relaxed approach to the irreparable harm inquiry, and in certain circumstances have found it appropriate to presume the existence of such an injury.").

This conduct shows that Fishback has no reservations about taking wrongful actions to harm Greenlight for his own benefit, which is relevant to the need for injunctive relief. To illustrate, consider two hypothetical employees: (1) a faithful employee who retires but inadvertently takes home a confidential document in a stack of personal papers; and (2) an employee who ignores their duties to focus on forming a competing business in secret, and resigns before their imminent firing to use their final days stealing confidential documents from the company. It is common sense that the latter would pose a larger risk of harm to the company based on the employee's conduct. Yet, Fishback not only asks the Court to find the allegations surrounding his conduct irrelevant, but to strike them from the FAC before he has even filed an answer.[9]

The Post-Employment Allegations regarding how Fishback has attempted to use Greenlight's Confidential Information since leaving the company, beyond their obvious relevance as being instances of a breach, are similarly probative of the type of harm that Greenlight faces absent an injunction. *See, e.g.*, *Gen. Petroleum GmbH v. Stanley Oil & Lubricants, Inc.*, 2024 WL 4143535, at *20 (E.D.N.Y. Sep. 11, 2024) ("Moreover, because [defendant]'s conduct since it was first alerted to [plaintiff]'s claims indicates that it intends to persist in using [plaintiff]'s intellectual property and selling the challenged goods unless the Court issues an injunction, the irreparable harm is all the more substantial."). For example, Plaintiffs allege that Fishback threatened to reveal Confidential Information to investors at Greenlight's 2024 Annual Partner Dinner. FAC ¶¶ 8, 91-95. As stated above, the extent of the harm that will flow from Fishback's breach of the Employment Agreement is dependent on Fishback's behavior—specifically, how he decides to

---

[9]    Furthermore, Fishback has yet to file his answer in this case, which deprives Greenlight and the Court of an understanding as to what defenses Fishback may try to assert, which again, may expand the universe of relevant factual issues, including with respect to Fishback's own prior conduct.

11

misuse Greenlight's Confidential Information. Therefore, it is highly relevant how Fishback has misused (or threatened to misuse) such information previously. [10]

In addition, Plaintiffs allege that Fishback filed a frivolous defamation lawsuit against Greenlight. FAC ¶¶ 7, 87-90. The allegations regarding that litigation are relevant because they are directed at another instance of Fishback disclosing Greenlight's Confidential Information—on that occasion, Greenlight's earnings track record, strategically shrouded in a legal pleading. Even if a different court was charged with determining the merits of the defamation suit, there is nothing improper about acknowledging that litigation, especially when it is so integrally connected to Fishback's misuse of Confidential Information. *See Egiazaryan v. Zalmayev*, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) (denying motion to strike portions of counterclaims that alleged defendant had sued another person for libel, faced criminal charges, and had been stripped of immunity by a foreign government); *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 361 (S.D.N.Y. 2013) (denying motion to strike portions of complaint noting that other lawsuits had been filed against company and its principals, where claims against defendant related to his work with the company on transactions that were basis of parallel suits). Fishback cites zero federal decisions in support of his argument to the contrary.

To be clear, Plaintiffs are not asking this Court to decide an issue based on the merits of the claims in the separate litigation. But Plaintiffs would still face a bizarre prejudice if they were

---

[10]     In response, Fishback also argues that he did not threaten to reveal Confidential Information to investors, or that it would be impossible to reveal Confidential Information to investors. *See* Brief at 7-8. First, that is wrong in supposing that investors are in possession of all Confidential Information that employees are in possession of. Second, this is nothing more than an attack on the veracity of Greenlight's allegations—not the relevance of those allegations. This is clearly an improper use of an FRCP 12(f) motion. *See Cadet v. Alliance Nursing Staffing of N.Y., Inc.*, 2023 WL 3872574, at *2 (S.D.N.Y. Jan. 6, 2023) ("[A] motion to strike is not a vehicle through which factual disputes are to be resolved."); *Avent v. Solfaro*, 210 F.R.D. 91, 94 (S.D.N.Y. 2002) ("Factual disputes are best resolved once the parties have conducted discovery and once the Court can better determine the case on its merits, and [a party]'s allegations, therefore, should not be stricken.").

required to make allegations regarding the litigation to support their claim, but restricted from stating their own position, which is that the claims were frivolous.

C. At a Minimum, the Contested Allegations Are Necessary to Establish Context for Fishback's Breach of Contract

Fishback's relevance arguments require ignoring legal issues, and mechanically parsing out and considering each allegation in isolation. The Court should reject his flawed analysis, as the Employment and Post-Employment Allegations are clearly relevant to Plaintiffs' claim for breach and need for injunctive relief.

However, even if the Court finds certain allegations are not technically relevant to the issues in this case, that still does not justify striking those allegations here. Fishback's conduct did not occur in a vacuum. And each and every allegation in the FAC surrounding Fishback's conduct is still necessary in the aggregate to provide context and a basis for understanding how and why he breached his contractual obligations. *See Hunley v. BuzzFeed, Inc.*, 2021 WL 4482101, at \*5 (S.D.N.Y. Sept. 30, 2021) (finding that it was not yet clear whether disputed allegations in the complaint had any bearing on the issues in the case, but denying the motion to strike because the complaint "set[] forth allegations that appear[ed] to 'provide a better understanding of the claim for relief by providing background facts and thus are proper'") (quoting *Gierlinger v. Town of Brant*, 2015 WL 3441125, at \*1 (W.D.N.Y. May 28, 2015)). Indeed, "even assuming some details in the pleadings about [defendant] concern traits or background that are immaterial to the dispute, 'allegations that supply background or historical material or other matter of an evidentiary nature normally will not be stricken from the pleadings unless they are unduly prejudicial to the defendant.'" *Gregory Wayne Designs, LLC v. Lowry*, 2024 WL 3518584, at \*9 (S.D.N.Y. July 24, 2024) (quoting *Lynch*, 278 F.R.D. at 67–68). Here, as shown below, the allegations in the FAC are not unduly prejudicial.

13

Finally, Fishback protests that certain allegations remain in the FAC that are relevant to claims that were removed from the FAC. But the same facts can be relevant to more than one claim. And here, certain of the allegations are in fact relevant to both the remaining and excised legal claims and cannot be separated, given that Fishback's theft of Confidential Information was part of his broader, overarching effort to deceive, plunder, and intimidate Greenlight. "In a case such as this, where the allegations of the various parties and claims are thoroughly intertwined with one another, it would be too difficult and too hasty to excise portions that only superficially seem unrelated to the claims that remain." *Clean Coal Techs., Inc. v. Leidos, Inc.*, 2019 WL 5960202, at \*5 (S.D.N.Y. Nov. 13, 2019).

### III.    Fishback Has Not Shown That the Allegations in the FAC Are Prejudicial

Fishback has not met his burden of proving prejudice resulting from Plaintiffs' allegations. "Material that does not 'cast a positive light upon the defendant' is not necessarily 'so unduly prejudicial to the defendant that striking the paragraphs is warranted.'" *Lowry*, 2024 WL 3518584, at \*9 (quoting *Wahlstrom v. Metro-N. Commuter R.R. Co.,* 1996 WL 684211, at \*3 (S.D.N.Y. Nov. 25, 1996)). "Rather, for the motion to strike to succeed on this basis, the Complaint must include 'a scandalous allegation' 'that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court.'" *Id.* (quoting *Cabbie v. Rollieson*, 2006 WL 464078, at \*11 (S.D.N.Y. Feb. 27, 2006)). And again, showing prejudice is not optional—it is one of three independent requirements that must be met in order to show entitlement to the drastic relief of striking a complaint. *See, e.g., Torre*, 493 F. Supp. 3d at 290 (denying motion to strike where movant established first two of three elements, but did not show that allegations were prejudicial).

The FAC alleges that Fishback failed to meet performance expectations during his employment with Greenlight, and that Greenlight eventually decided to terminate him. *See* FAC

14

¶¶ 3, 7, 33-41, 45-53, 54-56, 58, 60-63, 72-73.  Allegations that Fishback failed to perform adequately in his role at Greenlight—while unfortunate and perhaps perceived negatively by Fishback—are certainly not a scandalous reflection on his character.  *See, e.g.*, *Lowry*, 2024 WL 3518584, at *9 ("That [defendant] was demanding, overly aggressive, and tightly wound, or treated people around him like 'personal servant[s],' are negative characterizations but not scandalous ones.").  Even with respect to the gift-matching incident, the FAC does not unnecessarily speculate as to what Fishback's goals or plan for the donation were—it simply recounts that Fishback's manner of handling the donation request, based on the information available to Greenlight, created reasonable concerns about his ability to be forthcoming with the company and compounded existing dissatisfaction with his employment.  *See* FAC ¶¶ 42-44.

Fishback also argues that the allegation in the FAC that his defamation lawsuit against Greenlight was frivolous is intended "to create the inflammatory insinuation that Mr. Fishback pursued improper claims."  Brief at 7.  Fishback cites no caselaw in support of his argument that referring to allegations as frivolous is "scandalous," which is disingenuous at best, considering that he opens his Brief by stating that "Plaintiffs' FAC is a screed masquerading as a claim."  *Id.* at 1.  Indeed, the defamation suit is relevant here because Fishback used it to disclose Confidential Information, and it would be Greenlight that is prejudiced if it were prohibited from stating its position on the suit.

In addition, the FAC alleges that Fishback threatened to disrupt Greenlight's 2024 Annual Partner Dinner.  Fishback argues that these allegations are highly prejudicial because Greenlight used the word "threat" to describe Fishback's statement that he intended to attend the dinner.  Fishback cites no caselaw for this argument either.  This should come as no surprise, as countless suits are filed in federal courts around the country every day by plaintiffs alleging that their

15

adversaries threatened to take some wrongful action. *See, e.g.*, *Craig v. Fleming*, 2024 WL 894895, at \*4 (E.D. Ark. Feb. 29, 2024) (alleging that defendant "threatened" to take away plaintiff's credit cards, car, clothing and gifts and to stop paying for co-plaintiff's education, housing, car, and medical bills if plaintiff ended their sexual relationship); *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1162 (10th Cir. 2023) (alleging that defendant "threatened to stop selling needed products to its customers if they bought from a new market entrant offering a superior product for less money"); *Judd v. Langford*, 2020 WL 2748306, at \*5 (W.D.N.C. May 27, 2020) (alleging that nurse "threatened" to withhold medication for plaintiff's withdrawal if he would not sign a release form). The argument that a plaintiff cannot plead in a complaint that its adversary "threatened" to take an action without that pleading being "scandalous" is ludicrous.

Further, Fishback's complaints about any "prejudice" here are contradictory, self-serving, and should not be entertained by the Court. As alleged in the FAC, it was Fishback who drew public interest to this dispute, when he deceived the hosts of a popular podcast into inviting Greenlight's President, David Einhorn, to debate Fishback, and used that as a pretext to generate millions of views for his X posts, including by tagging other prominent X accounts in an attempt to garner views, in which he: (1) quite literally begged for a dialogue with Greenlight (*see* FAC ¶¶ 96-99); (2) knowing that he stole Greenlight's Confidential Information, asked, "I don't know what I did, or what you think I did" (*see id.* ¶ 101); and (3) continued to disclose Greenlight's Confidential Information in alongside those antagonistic messages (*see id.* ¶¶ 101-104). Fishback's posts were even covered by *The New York Times*, *Business Insider*, *Yahoo Finance*, *Bloomberg*, and *Morningstar*. *See* FAC ¶ 106. Now that Greenlight has filed a complaint explaining what Fishback did, he should not be heard to complain about prejudice. *See Li v. China Merchants Bank Co., Ltd.*, 2023 WL 2955293, at \*4 (S.D.N.Y. Apr. 14, 2023) ("because the

16

allegations have already been made public in at least one news article, the Court finds that keeping the paragraphs in the Complaint would not prejudice Defendants"); *see also Ambac Assur. Corp. v. EMC Mortg. Corp.*, 2009 WL 734073, at *3 (S.D.N.Y. Mar. 16, 2009) (finding no prejudice where the information in the complaint was "already a matter of public record") (citing *Lucarelli v. DVA Renal Healthcare, Inc.*, 2009 WL 262431, at *6 (S.D. Ohio Feb. 3, 2009); *Federated Dep't Stores, Inc. v. Grinnell Corp.*, 287 F. Supp. 744, 747 (S.D.N.Y. 1968)).

Indeed, the entire purpose of the "prejudice" element is geared toward allegations that would prejudice Fishback in the eyes of a jury. Here, Plaintiffs have not even demanded a jury trial, and so any concerns regarding prejudice here are illusory.

## CONCLUSION

For the reasons set forth above, the Motion should be denied.

New York, New York
Dated: November 4, 2024

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By:    */s/ Stephen M. Baldini*
       Stephen M. Baldini
       Akin Gump Strauss Hauer & Feld LLP
       One Bryant Park
       New York, NY 10036
       Tel:  212-872-1000
       Fax:  212-872-1002
       sbaldini@akingump.com

       *Counsel for Plaintiffs Greenlight Capital, Inc. and DME Capital Management, LP*

17