UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREENLIGHT CAPITAL, INC., *and*
DME CAPITAL MANAGEMENT, LP,

                             Plaintiffs,

                 -v-

JAMES T. FISHBACK,

                             Defendant.

24 Civ. 4832 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This is a breach of contract action filed by plaintiffs Greenlight Capital Management, Inc. and DME Capital Management, LP (collectively, "Greenlight") against former Greenlight employee James T. Fishback ("Fishback"). Greenlight claims that Fishback breached his employment agreement with Greenlight by misappropriating and publishing, both during and after his employment, Greenlight's confidential proprietary information. Greenlight seeks, *inter alia*, monetary damages and an order enjoining Fishback from disclosing its confidential information. Fishback has now moved to strike large swathes—more than four dozen paragraphs—of Greenlight's Amended Complaint. For the reasons that follow, the Court denies the motion in substantial part, but strikes five paragraphs in whole and limited portions of three other paragraphs.

I.  **Factual Background**[1]

Co-founded by David Einhorn in 1996, Greenlight is an investment management firm with billions of dollars in assets under management. Dkt. 18 ¶ 27 ("Amended Complaint" or

---

[1] In resolving the motion, the Court treats all facts alleged in the AC as true. *See, e.g.*,

"AC").[2] It is a citizen of Delaware and New York. *Id.* ¶¶ 19–20. Fishback, a citizen of Florida, is a former Greenlight employee. *Id.* ¶¶ 1, 21. He today manages a competing hedge fund, Azoria Partners ("Azoria"), which, as alleged, he secretly founded while employed at Greenlight, *id.* ¶ 5.

In early 2021, Greenlight hired Fishback as a research analyst. *Id.* ¶ 30. On February 8, 2021, as a condition of his employment, Fishback entered into an employment agreement with the firm. *Id.* ¶¶ 30–31. Section 5 of the agreement prohibited Fishback, without Greenlight's express authorization, from "disclos[ing] to any person not connected with the Company or use for his own benefit or for the benefit of any person other than the Company any Confidential Information either disclosed to or developed by the Employee during his employment by the Company." *Id.* ¶ 31. The agreement defined "Confidential Information," non-exclusively, as:

> all investor lists, prospective investor lists, investments (except where publicly disclosed), investment methodologies, methods of dealing, investment track records, investment recommendations, investment performance, performance records of any individual investment position, performance records of any Company fund, performance records of Employee, information that supports the performance record of any Company fund or of Employee, and other confidential business information related to the conduct of the Company's business and/or the business of any of the Company's affiliates.

---

*Ibrahim v. Fid. Brokerage Servs. LLC*, No. 19 Civ. 3821, 2020 WL 107104, at *1 n.2 (S.D.N.Y. Jan. 9, 2020) ("For purposes of Defendants' Rule 12(b)(6) motion to dismiss and Rule 12(f) motion to strike, the Court must accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." (citation omitted)); *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002) ("In deciding a Rule 12(f) motion, a court 'must accept the matters well-pleaded as true and should not consider matters outside the pleadings.'" (quoting *LNC Investments, Inc. v. First Fid. Bank*, No. 92 Civ. 7584, 1997 WL 528283, at *48 (S.D.N.Y. Aug. 27, 1997))).

[2] On January 1, 2024, DME Capital Management L.P. become the successor in interest of Greenlight Capital Management Inc. AC ¶ 27.

2

*Id.* Fishback was to "deliver promptly" to Greenlight all such confidential information in his possession upon "termination" of his employment. *Id.* The AC alleges that the confidentiality provision protects, *inter alia*, commercially sensitive information that is "critical" to maintaining Greenlight's competitive edge. *Id.* ¶ 27.

As alleged, Fishback's job performance was underwhelming from the outset and declined thereafter. *Id.* ¶¶ 33, 45, 49, 55. Fishback made computational errors, failed to timely complete projects, and turned in insubstantial work product. *Id.* ¶¶ 33–41. During the two-plus years that he was employed at Greenlight, Fishback was repeatedly admonished by supervisors, including in year-end evaluations for 2021 and 2022, that the quality of his work product was well short of expectations, and that he needed to improve in order to keep his job. *Id.* ¶¶ 34–35, 39–41.

Fishback, however, did not seek to improve his performance or rehabilitate his reputation within the firm. Greenlight began to suspect that Fishback, who worked remotely, was so preoccupied with undisclosed personal ventures that he was "not working as a full time employee" of the company. *Id.* ¶¶ 51–52. Fishback's limited output led the firm to question whether he was "doing any meaningful amount of work for Greenlight." *Id.* The final straw came when Fishback disappointed on an important project he was assigned in February 2023. On July 26, 2023, despite having had months to complete this project, Fishback submitted insubstantial work product that "appeared to reflect only a few hours of effort." *Id.* ¶ 55. Greenlight determined to terminate him. *Id.* ¶ 58. On July 31, 2023, Greenlight scheduled a meeting with Fishback to do so. *Id.* ¶ 59. Before the meeting could take place, however, Fishback resigned, citing his desire to "focus" on a nonprofit he had founded, Incubate Debate. *Id.* ¶ 62. The AC alleges that Greenlight resigned to avoid the stigma of termination. *Id.* ¶ 61.

3

The circumstances surrounding Fishback's departure, and his performance deficiencies, prompted Greenlight to investigate Fishback's activity on its computer system. *Id.* ¶¶ 56–57. The ensuing review revealed that, on "dozens" of occasions, Fishback had sent Greenlight's confidential information, including its overall portfolio of investments, information about specific investments, and records of its profitability, to his personal email account. *Id.* ¶¶ 74–78. It further revealed that Fishback had departed Greenlight not to work at a nonprofit, as he had claimed in his resignation email, *id.* ¶ 62, but instead to lead a competing hedge fund that he had surreptitiously started while he was a Greenlight employee—Azoria. *Id.* ¶¶ 71–73.

The AC alleges that Fishback had planned all along to "jumpstart" Azoria by using Greenlight's proprietary information, and that Fishback's "performance issues" arose from this plan. *Id.* ¶¶ 54, 63. It alleges that the reason Fishback did not attempt to salvage his job at Greenlight was that he had by then siphoned enough of its information to get Azoria off the ground. *Id.* ¶¶ 64–65, 74–78. Fishback had taken other "concrete steps" to build out Azoria. *Id.* ¶ 64. These included, on July 4, 2023, registering a domain name for Azoria's website, *id.* ¶ 73, and, in an apparent bid to bolster his credibility as a fund manager, participating or arranging to participate in multiple industry events while holding himself out as Greenlight's "head of macro," a nonexistent post that Fishback, whose title at Greenlight was "research analyst," had never held. *Id.* ¶¶ 66–72. Fishback also publicly cited, purportedly to demonstrate his accomplishments at Greenlight, the firm's confidential information, including fund performance. On August 15, 2023, Fishback's final day at the firm, Greenlight notified Fishback that it had detected his "attempt to misappropriate" confidential information and requested that he delete all such information in his possession. *Id.* ¶¶ 74, 79. Fishback responded, "Deleted." *Id.* ¶ 80.

4

After his departure from Greenlight, the AC alleges, Fishback continued to publish Greenlight's confidential information, in an effort to spark investor interest in Azoria, and in disregard of the firm's demands, through counsel, that he return and/or destroy any confidential information he had retained. *Id.* ¶¶ 84–86. The AC cites multiple examples. On or about May 19, 2024, Fishback published information about Greenlight's investment positions, strategies, profits, and track record in written and audiovisual posts on the social media platform X. *See, e.g., id.* ¶¶ 101, 114. And on May 23, 2024, Fishback appeared on an episode of the *Forward Guidance* podcast, in which he provided an "in-depth discussion" of Greenlight's confidential information and claimed to possess an "internal trading ledger" that he had taken from Greenlight. *Id.* ¶ 102.

## II.  Procedural Background

On June 25, 2024, Greenlight filed the original Complaint. Dkt. 1. It brought a wide range of claims: (1) breach of contract; (2) unfair competition; (3) tortious interference with prospective economic advantage; and (4) defamation and defamation *per se*. Dkt. 1 ¶¶ 199–246. On August 26, 2024, Fishback filed a motion to dismiss, to strike, and/or to compel arbitration of certain claims. Dkt. 10. The next day, the Court directed Greenlight, by September 16, 2024, to file any amended complaint or opposition to the motion. Dkt. 15.

After an extension, on September 23, 2024, Greenlight filed the Amended Complaint. Dkt. 18. The AC eliminates all claims but the one for breach of contract, stating that Greenlight intends to pursue these other claims in arbitration. AC ¶ 2. In the breach of contract claim, the AC alleges that Fishback breached the employment agreement by (1) misusing its confidential information, and (2) retaining such information following his departure from Greenlight. *Id.* ¶¶ 111–31. The AC seeks damages and injunctive relief. *See id.* at 31–32.

5

On October 9, 2024, Fishback filed a motion to strike certain allegations in the AC, Dkt. 19, and a memorandum of law in support, Dkt. 20 ("Fishback Br."). On November 4, 2024, Greenlight opposed. Dkt. 22 ("Greenlight Br."). On November 12, 2024, Fishback filed a reply. Dkt. 23. ("Fishback Reply Br.").

### III. Discussion

Fishback moves to strike more than four dozen paragraphs of the AC. The allegations he seeks to excise relate to: (1) his job performance at Greenlight and the breakdown of the employment relationship; (2) his conduct vis-à-vis Greenlight after he left the firm; and (3) a "gift-matching incident" during his employment. The Court predominantly denies his motion, finding most of the challenged allegations to have properly been included in the AC. However, the Court strikes as extraneous the AC's allegations about the gift-matching incident and its characterization of a prior lawsuit by Fishback against Greenlight.

#### A. Legal Standards Governing Motions to Strike

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." To prevail on such a motion, the movant must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (quoting *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012)). "[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "[S]triking portions of a pleading is a drastic remedy disfavored by the courts, and is sparingly granted."

*Bishop v. Toys "R" US-NY, LLC*, No. 4 Civ. 9403, 2009 WL440434, at *3 (S.D.N.Y. Feb. 19, 2009). As such, "[m]otions to strike under Rule 12(f) are generally disfavored and granted only if there is a strong reason to do so." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 275 (S.D.N.Y. 2020) (citation omitted).

### B.     Application

#### 1. Allegations Related to Fishback's Job Performance and the Employment Relationship

Fishback seeks to strike multiple allegations detailing his performance at Greenlight and the breakdown of the employment relationship. *See* Fishback Br. at 4, 6, 8. The essence of these allegations is that Fishback secretly founded Azoria as Greenlight became increasingly dissatisfied with Fishback's neglect of his job duties. These further allege that, anticipating termination, Fishback siphoned Greenlight's confidential information to Azoria, with the intent to misappropriate Greenlight's competitive edge. *See* AC ¶¶ 3, 7, 33–41, 45–56, 58, 60–63, 72–73.

Fishback argues that neither his job performance nor the declining trajectory of the employment relationship is an element of Greenlight's breach of contract claim and that these factual allegations were included solely to portray him in a negative light. Fishback Br. at 4–5. He asks the Court to strike as necessarily irrelevant all allegations other than those recounting specific instances in which Fishback disclosed confidential information. *Id.* at 7; Fishback Reply Br. at 9.

Rule 12(f) does not, however, require such a blinkered and parsimonious view of relevance at the pleading stage. The Second Circuit has emphasized that ordinarily, a district court should not "strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky*, 551 F.2d at 893. Issues

7

of "relevancy and admissibility," the Circuit has explained, "in general require the context of an ongoing and unfolding trial in which to be properly decided." *Id.* Such is the case here, as the AC's allegations about the breakdown of Fishback's employment relationship, for two reasons, directly "bear[] on the issues in the case," *Winklevoss*, 351 F. Supp. 3d at 721 (citation omitted), such that they cannot be termed necessarily irrelevant.

First, as the AC capaciously alleges, Fishback's job performance—both its early deficiency and decline thereafter—was "intertwined" with his undisclosed plan to establish his own hedge fund by misusing Greenlight's confidential information. AC ¶ 54. The AC's theory is that Fishback neglected his job duties precisely because his attention was diverted toward hatching and executing a plan to misappropriate Greenlight's confidential information, in violation of the employment agreement. *Id.* ¶ 63 (alleging that Fishback "had secretly formed his own hedge fund even prior to Greenlight's attempt to terminate him, and he estimated that he could use Greenlight's reputation and Confidential Information to jumpstart his new venture when that time finally came"); *id.* ¶¶ 45, 49, 66 (alleging that Fishback did not seek to rehabilitate his image within Greenlight because his plan was "to start his own business built off the wrongful misappropriation of Greenlight's reputation and Confidential Information"). And the AC's allegations about Fishback's misappropriation of confidential information ultimately derive from Greenlight's investigation into Fishback's job performance and his departure. *Id.* ¶¶ 59, 62–63, 72–73. This revealed, the AC alleges, that Fishback had falsely portrayed Azoria as a "consulting LLC" in attempting to conceal his misappropriation scheme. *Id.* ¶ 72, Courts routinely decline to strike allegations of this nature—ones "that supply background or historical material or other matter of an evidentiary nature." *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 67–68 (E.D.N.Y. 2011); *see also, e.g., Gregory Wayne*

*Designs, LLC v. Lowry*, No. 24 Civ. 2109 (PAE), 2024 WL 3518584, at *9 (S.D.N.Y. July 24, 2024) (sustaining allegations chronicling interactions with defendant because they could "help explain the deterioration of the parties' professional relationship; the delay and expansion of the renovation projects; and the early termination of the contract"); *Martinez v. Sanders*, No. 2 Civ. 5624, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) (sustaining allegations of plaintiff's prior employment and how she came to work for defendant as "appropriate background evidence that is properly admissible and relevant").

Second, the breakdown in Fishback's relationship with Greenlight, and its having been hastened by his on-the-job misconduct, bears on whether Greenlight would suffer irreparable harm in the absence of the injunctive relief the AC seeks. Simply put, Fishback's disingenuous and deceitful dealings with Greenlight, as pled, make it more likely that, absent an injunction, he would continue to misuse Greenlight's confidential information, in breach of his agreement. For example, the AC alleges that Fishback neglected his job duties at Greenlight to surreptitiously create a competitor hedge fund, in defiance of the firm's policy. That allegation tends to distinguish Fishback from a hypothetical employee who accidentally takes home a confidential document in a stack of personal papers but otherwise adhered to firm policy. Injunctive relief would be less merited against such an employee, relative to Fishback, on the facts alleged. Thus, although these allegations speak ill of Fishback's character, they are properly included insofar as they illuminate his alleged plan to misappropriate confidential information and the prospect that, absent injunctive relief, he would continue to do so. *Cf., e.g., Philip Morris Cap. Corp. v. Nat'l R.R. Passenger Corp.*, No. 19 Civ. 10378, 2021 WL 797671, at *9 (S.D.N.Y. Feb. 26, 2021) (a court "cannot, and need not, decide on the basis of the pleadings alone whether the allegations . . . would be admissible at trial"). These allegations, the Court holds, are clearly

9

relevant to Fishback's alleged breach and the injunctive remedy sought by Greenlight. *Lipsky*, 551 F.2d at 893; *see also Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014) (denying motion to strike allegation that plaintiff made "a race-based discriminatory remark against African Americans" because, although inflammatory, the allegation was germane to counterclaim).

In any event, even assuming *arguendo* that some details in the AC about Fishback's job performance are immaterial to Greenlight's contract-breach claim, he has failed to show that they are unduly prejudicial. Material that does not "cast a positive light upon the defendant" is not necessarily "so unduly prejudicial to the defendant that striking the paragraphs is warranted." *Wahlstrom v. Metro-N. Commuter R.R. Co.*, No. 96 Civ. 3589, 1996 WL 684211, at *3 (S.D.N.Y. Nov. 25, 1996). Rather, for the motion to strike to succeed on this basis, the pleading must include "a scandalous allegation" "that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson*, No. 4 Civ. 9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006). The AC's allegations fall far short of this threshold. Fishback's characterization of the allegations as "salacious," Fishback Br. at 7, is flat-out wrong. The cited paragraphs do not contain any content whatsoever of a sexual or intimate nature. They instead concern business improprieties. Although these reflect badly on Fishback's conduct as a professional, they are a far cry from the sorts of "scandalous allegations" that "reflect[] unnecessarily on the defendant's moral character" or that "use[] repulsive language that detracts from the dignity of the court," which may merit striking. *Cabble*, 2006 WL 464078, at *11. Nor do the allegations reveal, let alone gratuitously, Fishback's personal information. *See Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 429 (S.D.N.Y. 2017). And Fishback's labelling these factual allegations "inflammatory" does

not make them so. *See Lowry*, 2024 WL 3518584, at *9 ("That [defendant] was demanding, overly aggressive, and tightly wound, or treated people around him like 'personal servant[s],' are negative characterizations but not scandalous ones."); *see also, e.g., City of New York v. Fedex Ground Package Sys., Inc.*, 314 F.R.D. 348, 354 (S.D.N.Y. 2016) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing.").

Thus, the Court denies the motion to strike paragraphs 3, 7 (with the exceptions below), 33 to 41, 45 to 56, 58, 60 to 63, and 72 to 73.

### 2. Allegations Related to Fishback's Conduct After His Departure from Greenlight

Fishback also moves to strike as irrelevant the AC's allegations that he disclosed, or threatened to disclose, confidential information after his departure from Greenlight in a bid to gin up publicity, inflate his role in Greenlight's success, and attract investors to Azoria. Fishback Br. at 9–11. The paragraphs at issue allege that Fishback cited confidential information in a defamation suit that he filed against Greenlight, which the AC terms "frivolous." AC ¶¶ 7, 87–90. The AC also alleges that Fishback falsely held himself out as Greenlight's former "head of macro" and cited Greenlight's confidential information as purported evidence of his prominent role in Greenlight's success. *Id.* ¶¶ 5, 10, 66, 68, 80–81. The AC further alleges that Fishback "threatened" to disclose confidential information at Greenlight's 2024 Annual Partner Dinner. *Id.* ¶¶ 8, 91–95. When Greenlight refused him entry to the dinner, the AC alleges, Fishback threatened to stand outside the venue and hand out a "detailed letter" to attendees—Greenlight's investors, counterparties, and service providers—that contained confidential information he had obtained in the course of his employment. *Id.* ¶¶ 92–93.

Except as to Greenlight's characterization of Fishback's prior lawsuit, the Court emphatically rejects Fishback's bid to strike these allegations. Far from irrelevant, these allegations largely plead independent breaches—or attempts by Fishback to breach—his contract with Greenlight. That is

11

because the contract equally barred Fishback, after his employment, from disclosing confidential information he had gained while employed at Greenlight. *Id.* ¶ 31. And the AC expressly pleads Fishback's disclosure of confidential information in his publicly filed defamation suit as an "independent violation" of the employment agreement:

> Fishback stated that he had "generated over $100 million in profits for Greenlight from the period of February 2021 to August 2023." . . . [T]he disclosure of Greenlight's performance history, like profits over a certain time period, is a disclosure of Confidential Information and a violation of the Employment Agreement.

*Id.* ¶¶ 89–90.

Similarly, Fishback's "threat" to publish confidential information, in some detail, to attendees at the Partner Dinner is relevant. It supports the AC's claim that, in breach of the agreement, he retained confidential information after his departure from Greenlight, presumably with the intent to make it public. *See, e.g., id.* ¶ 93 (alleging, *inter alia*, that Fishback intended to disclose both the status of particular trades and Greenlight's involvement in macro derivatives trading). Contrary to Fishback's claim, *see* Fishback Br. at 10 n.4, that Fishback ultimately stood down from carrying through on the threat does not make it irrelevant. The threat itself, if proven, could both help establish Fishback's post-employment possession of confidential information, and support Greenlight's bid for injunctive relief, the latter by showing the gravity of the threat presented by Fishback absent injunctive relief. *See, e.g., id.* ¶ 95. Fishback's alleged falsity in holding himself out as Greenlight's "head of macro" is also relevant. His bolstering of his stature within Greenlight stood to hype the importance of the confidential information, including performance metrics, that he attempted to use to secure support for his competing fund, Azoria. *See, e.g., id.* ¶ 82 (alleging that Fishback "misrepresent[ed] his title in conjunction with his theft of Greenlight's Confidential Information as a way to kickstart Azoria"). His alleged self-promotional

tactics, if established, would also bear on the likelihood and extent of harm to Greenlight absent an injunction.

Fishback's challenge to the AC's Partner Dinner allegations also misses the mark. He argues that an attempted—but thwarted or unconsummated—disclosure of confidential information was not barred by the employment agreement. Fishback Reply Br. at 11. It is not by any means obvious that Fishback is right on that point of contract construction. Regardless, a motion to strike is an improper vehicle to pursue a challenge of this nature. *See, e.g., GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101–02 (2d Cir. 2019) ("[U]se of a Rule 12(f) motion to strike [defendant's] new counterclaims (as distinguished from striking matter in them) was procedurally improper."); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("Rule 12(f) designed for excision of material from a pleading, not for dismissal of claims in their entirety."). After discovery, Fishback will be at liberty either to move at summary judgment to exclude this theory of liability, on the ground that the evidence as to his Partner Dinner conduct, viewed in the light most favorable to Greenlight, could not support a claim of contract breach, or to argue to the jury at trial that the facts established as to this episode do not make out a breach. Raised in a motion to strike, however, his argument about contract construction is improper. In any event, even if the conduct alleged does not amount to a freestanding breach, these allegations are again relevant to viable claims, including by tending to support that Fishback possessed confidential material belonging to Greenlight, and that injunctive relief is warranted given Fishback's threats to breach.

The Court will, however, strike the parts of the AC that address aspects of Fishback's defamation suit other than the lawsuit's disclosure of confidential information. These allege that the suit was "frivolous," AC ¶¶ 7, 87; that Fishback voluntarily dismissed his claims in favor of

arbitration that he did not thereafter pursue, *id.* ¶ 88; and that Greenlight plans to pursue claims for unfair competition, tortious interference, defamation, and defamation in arbitration, *id.* ¶¶ 88, 90. These details are extraneous to the AC's contract breach allegations regarding Fishback's misuse of confidential information. Allegations in a complaint "that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Federal Rule of Civil Procedure 12(f)." *Low v. Robb*, No. 11 Civ. 2321, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012); *see id.* (striking paragraphs referring to ongoing disputes "notwithstanding [plaintiff's] argument that these statements demonstrate a 'pattern of conduct'"); *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 9 Civ. 4050, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (striking paragraphs "based on pleadings and settlements in other case and government investigations"); *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 218 F.R.D. 76, 78–79 (S.D.N.Y.2003) (striking paragraphs that refer to or rely on ongoing disputes).

Accordingly, the Court sustains paragraphs 5, 8, 10, 66, 68, 80 to 81, 87 (with the exception below), 89, and 91 to 95. The Court, however, strikes paragraphs 88 and 90 in full; the terms "frivolous" and "frivolously" from paragraphs 7 and 87 and the subheading immediately preceding paragraph 87; and the second sentence in paragraph 7.

### 3. Allegations Related to the Gift-Matching Incident

Finally, Fishback moves to strike three paragraphs alleging an incident in which Greenlight denied Fishback's request to "match" his donation to a charitable organization. Fishback Br. at 5. As alleged, in late 2022, Fishback requested that Greenlight match his $10,000 donation to an organization he claimed to have founded, but, when pressed, he did not come forward with "bona fide evidence" that he had made the donation, as Greenlight's donation matching program required. AC ¶ 43. The AC adds: "Even more suspiciously, Fishback

14

repeatedly insisted that the matching donation be made by check, and not wire transfer, which is standard for these matching donations. Ultimately, Greenlight did not match this 'donation.'" *Id.* This incident, the AC alleges, "raised questions" as to Fishback's "personal integrity" and "ability to be forthcoming and honest with Greenlight." *Id.* ¶¶ 42, 44. Fishback argues that these allegations should be struck because they are irrelevant to the AC's contract breach claim and instead attack Fishback's integrity. Fishback Br. at 8–9.

On this point, Fishback is correct. The allegations regarding the gift-matching incident lack "real bearing on the case." *G-I Holdings, Inc. v. Baron & Budd*, 238 F.Supp.2d 521, 555 (S.D.N.Y. 2002). Bookended by "unspecific" jabs at Fishback's "integrity," these allegations are unmoored from the AC's recitation of facts about his misuse of confidential information. *See, e.g., Low*, 2012 WL 173472, at *9. Fishback's general "integrity" is not at issue in this case. These allegations "serve[] no purpose except to inflame the reader," *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991), and "gin up resentment . . . on the part of a potential jury," *Low*, 2012 WL 173472, at *10; *see also Gaughan*, 261 F. Supp. 3d at 429 (striking allegations that were "plainly irrelevant" and served "no purpose other than to reveal embarrassing and personal information about Defendants and non-parties"); *Prout v. Vladeck*, 326 F.R.D. 407, 410–11 (S.D.N.Y. 2018) (striking paragraphs that were "broad, *ad hominem* character attacks" on plaintiff's "integrity").

The Court therefore strikes paragraphs 42 to 44.

## CONCLUSION

For the reasons stated above, the Court largely denies Fishback's motion to strike, with limited exceptions. The Court sustains the AC, save that it directs that the following portions be struck: paragraphs 42 to 44, 88, and 90 in full; the terms "frivolous" and "frivolously" from paragraphs 7 and 87 and the subheading immediately preceding paragraph 87; and the second

15

sentence in paragraph 7. The Clerk of Court is respectfully directed to close the motions pending at dockets 10 and 19.

With Fishback's challenge to the pleadings resolved, the Court's intention is to move this case forward with urgency, given the nature of the allegations and the claim that Fishback continues to wrongfully possess confidential information of Greenlight's. The Court directs Fishback to answer the Amended Complaint by Monday, January 6, 2025. By separate order, the Court will schedule an initial pretrial conference.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 19, 2024
      New York, New York