

Brooklyn
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
718.215.5300 | P

Long Island · Brooklyn · White Plains · Rochester · Albany

August 15, 2025

**Via ECF**
The Honorable Paul A. Engelmayer
United States District Court - Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

      Re:    *Greenlight Capital, Inc., et al. v. Fishback*, 1:24-cv-04832-PAE

Dear Judge Engelmayer:

We write on behalf of defendant James Fishback in response to the pre-motion letter filed by Plaintiffs Greenlight Capital, Inc. ("Greenlight") and DME Capital Management, LP (together "Plaintiffs"), relating to Plaintiffs' proposed motion for summary judgment.

As a preliminary matter, Mr. Fishback has carefully considered the Court's words during the July 21, 2025 conference, and in light of the sentiments expressed during that conference, Mr. Fishback respectfully requests to withdraw his application to transition to *pro se* status in this matter. He thanks the Court for its consideration of that request.

With respect to Plaintiffs' proposed motion for summary judgment, to the extent that Plaintiffs seek a permanent injunction, Plaintiffs cannot establish irreparable harm (or an imminent threat of future violation) sufficient to support injunctive relief. *See Sulzer Mixpac AG v. DXM Co*., 2024 WL 3536366, at *6 (S.D.N.Y. July 25, 2024), *opinion clarified*, 2024 WL 5168040 (S.D.N.Y. Dec. 19, 2024). "It is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (citation omitted).

A provision in a contract entitling a party to specific performance in the event of a breach does not establish irreparable harm. *LDC USA Holdings, Inc. v. Taly Diamonds, LLC*, 121 A.D.3d 529, 530 (1st Dep't 2014). "Indeed, courts in this District have been highly skeptical of [contractual] provisions [purporting to consent to injunctive relief], finding that [such clauses] should be treated only as 'persuasive evidence' . . . 'rather than dispositive evidence.'" *Sulzer Mixpac AG*, 2024 WL 3536366, at *6. Here, Mr. Fishback's Employment Agreement does not provide that breach would result in irreparable harm, nor does it purport to provide "consent" to injunctive relief in the event of a breach. Rather, it only provides that Greenlight may "apply" for injunctive relief. Thus, Plaintiffs must prove irreparable harm, and they will not meet that burden.

Furthermore, Plaintiffs cannot show a "continuing imminent threat of irreparable harm" or that the instances alluded to "will be repeated." *Lee v. Tetra Tech, Inc.*, 14 Misc. 3d 1235(A), 836 N.Y.S.2d 500 (N.Y. Sup. Ct. Feb. 28, 2007). Plaintiffs incorrectly assert that Mr. Fishback will use confidential information to allow his new business, Azoria, to compete with Plaintiffs. For a time, Mr. Fishback considered offering hedge fund services through Azoria, but Azoria has pivoted from that approach and is not operating a hedge fund. Instead, it offers ETF products to retail investors on the New York Stock Exchange. It therefore is a fundamentally different business with fundamentally different clients, and is not in competition with Plaintiffs. Thus, no harm is "actual and imminent." *Dexter 345 Inc.*, 663 F.3d at 63.

Mr. Fishback also disputes that any of the alleged breaches referenced in Plaintiffs' letter are material. *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) (to obtain nonmonetary relief for breach a contract, the plaintiff must demonstrate that a breach was material); *Korpak, Ltd. v. Williams Lea Inc.*, 2022 WL 375543, at \*5 (S.D.N.Y. Feb. 7, 2022) (same). "A breach is material if it 'go[es] to the root of the agreement between the parties [and] is so substantial that it defeats the object of the parties in making the contract.'" *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379–80 (S.D.N.Y. 2014) (citing *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir.1997)). "[T]he materiality of a breach is highly fact specific . . . ." *VFS Fin., Inc.*, 17 F. Supp. 3d at 382. "[T]he question of the materiality of a breach 'is usually a question of fact and should be decided as a matter of law only where the inferences are certain.'" *Orlander*, 802 F.3d 289, 298 (2d Cir. 2015) (quoting *VFS Fin.*, 17 F. Supp. 3d at 380).

In Plaintiffs' pre-motion letter, they refer to four examples of alleged breaches[1]: (i) Mr. Fishback's emailing a copy of investment-related materials to himself; (ii) Mr. Fishback's retention of a 2022 IRR Sheet, and sending same to a third party; (iii) Mr. Fishback "disclos[ing] his purported yearly track records at Greenlight from 2021 to 2023; and (iv) sending "letters and updates from Greenlight to its investors that are marked as confidential information and subject to investors' confidentiality obligations" and sending "work product with economic analyses that he provided to Mr. Einhorn at Greenlight to many of the same third parties."

Given the highly fact-specific nature of determinations regarding materiality, Plaintiffs cannot show on a motion for summary judgment that the instances referenced by Plaintiffs were material breaches.

Mr. Fishback retaining a copy of investment-related materials, to which Greenlight voluntarily gave him access during his employment, did not cause any harm to Plaintiffs, and did not benefit Mr. Fishback in any way. They were retained only for convenience because Mr. Fishback and Greenlight had discussed the possibility of reverting to their pre-employment consulting relationship. Plaintiffs do not contend that such materials were used or disclosed.

The IRR Sheet referenced by Plaintiffs included only minimal information—specifically, a list of asset classes in which Mr. Fishback had put on trades in 2022, and the related gross profit. It did not include the type of sensitive confidential information that might be used to try to gain

---

[1]    Because Plaintiffs' letter only refers to these examples in general terms, Mr. Fishback responds to them based on his understanding of what Plaintiffs are referencing. To the extent that Plaintiffs' full motion refers to different alleged violations, Mr. Fishback respectfully reserves his rights to assert additional arguments in opposition to Plaintiffs motion as appropriate.

competitive advantage, such as, for example, specific trades, direction of positioning, the size of the positions, when the positions were initiated, the investment thesis or research underpinning said thesis, or the percentage of return. Rather, the IRR Sheet reflects only a list of investments that Mr. Fishback worked on, much of which information would remain in his memory, in any event, after the end of his employment. Plaintiffs do not allege that they suffered any harm from Mr. Fishback's retention of his IRR Sheet.

To the extent that Plaintiffs allege that Mr. Fishback "disclosed his purported yearly track records at Greenlight from 2021 to 2023," Mr. Fishback believes Plaintiffs to be referencing statements by Mr. Fishback that his macro-related work for Greenlight was highly successful and generated a specific amount of profit. However, Plaintiffs seem to dispute that these statements actually reflect Plaintiffs' confidential information because Plaintiffs dispute that the amount of profit referenced by Mr. Fishback was correct. Furthermore, in Greenlight's Q4 2022 investor letter, which is publicly available, Greenlight disclosed that its macro portfolio returned a specific percentage on its assets under management. Public sources indicate that Greenlight managed roughly $2 billion of assets, and thus, the size of Greenlight's macro returns can be derived by arithmetic.

And finally, Mr. Fishback's reference to a general profit figure (an imprecise round number) is not the type of sensitive information that might be used to gain competitive advantage or for some other harmful reason. It did not say anything about investment theses, investment strategy, or specific positions taken.

Mr. Fishback understands Plaintiffs' reference to unidentified "letters and updates from Greenlight to its investors" to reference Greenlight's investor letters, but Mr. Fishback will contend in opposition to the motion that those letters are published and available to the public. Mr. Fishback understands Plaintiffs' reference to "economic analyses that Mr. Fishback [] provided to Mr. Einhorn at Greenlight" to refer to the fact that, while working for Greenlight, Mr. Fishback sometimes had casual discussions about topics like the Federal Reserve, financial markets, and developments, with peers in the industry and contacts who were either investment professionals or potential clients that Mr. Fishback wanted to procure for Plaintiffs. That is a normal part of working in finance, and something that Plaintiffs' employees often did. Moreover, Mr. Fishback's discussions with peers or prospects about general financial matters do not support a forward-looking permanent injunction because Mr. Fishback no longer works for Plaintiffs, and is free to discuss financial matters going forward as he likes (but, of course, will not discuss Greenlight's confidential information).

Finally, Plaintiffs have not offered evidence that Mr. Fishback benefitted from the alleged breaches in any material way. Specifically, Plaintiffs have not shown that Mr. Fishback obtained any investor or investment, or earned any money, from the alleged breaches. And, as noted above, Azoria is not in competition with Plaintiffs.

Mr. Fishback thanks the Court for its attention to this matter.

Respectfully submitted,

*/s/ Justin T. Kelton*

Justin T. Kelton