ABRAMS FENSTERMAN, LLP
ATTORNEYS AT LAW

Brooklyn
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
718.215.5300 | P

Long Island · Brooklyn · White Plains · Rochester · Albany

September 8, 2025

<u>Via ECF</u>
The Honorable Paul A. Engelmayer
United States District Court - Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

      Re:    <u>*Greenlight Capital, Inc., et al. v. Fishback*, 1:24-cv-04832-PAE;
Opposition to Motion to Compel</u>

Dear Judge Engelmayer:

      We write on behalf of defendant James Fishback in opposition to the pre-motion letter filed by Plaintiffs Greenlight Capital, Inc. ("Greenlight") and DME Capital Management, LP (together "Plaintiffs"), relating to Plaintiffs' motion to compel production of information on ten text messages (the "Texts") redacted by Mr. Fishback pursuant to the work product doctrine (Dkt. No. 57). For the reasons discussed below, Plaintiffs' motion to compel should be denied because: (i) Mr. Fishback has conceded to liability and all relief sought by Plaintiffs (injunctive relief and entitlement to reasonable attorneys' fees), rendering further discovery moot; (ii) even if liability or damages were still at issue (they are not), Plaintiffs have not met their burden to demonstrate that the redacted information is relevant to Plaintiffs' breach of contract claim or to any fee application; (iii) even if any of the redacted information were relevant, it is protected under the work product doctrine; and (iv) Plaintiffs cannot show any substantial need for the information.

    A.    <u>Plaintiffs' Motion To Compel Should Be Denied Because Mr. Fishback Has Conceded In Full, Rendering Discovery Moot.</u>

      Mr. Fishback has conceded to a finding of breach, the complete injunctive relief sought in the complaint, and Plaintiffs' entitlement to reasonable attorneys' fees. (Dkt. No. 58).[1] Thus, Plaintiffs' motion to compel additional discovery from Mr. Fishback should be treated as moot. *See Daniel Def., Inc. v. Remington Arms Co., LLC*, No. CV414-131, 2015 WL 6142883, at *7 (S.D. Ga. Oct. 19, 2015) ("If [defendant] prevails on its summary judgment motion, that would moot its interest in discovering information on how [plaintiff] generated distinctiveness (hence, secondary meaning) for its marks.").

---

[1] Mr. Fishback advised Plaintiffs that he was conceding in this case before Plaintiffs filed their motion to compel.

Indeed, "[i]n the context of discovery disputes, courts have long recognized that when developments in litigation renders discovery questions meaningless, those discovery disputes become moot." *Breslin v. Dickinson Twp.*, 2011 WL 1900462, at *3 (M.D. Pa. May 19, 2011) (citing *Comision Ejecutiva Hidroelectrica Del Rio v. Nejapa Power Co., LLC*, 341 F. App'x 821 (3d Cir.2009) (resolution of merits of case renders discovery dispute moot).

"[M]ootness occurs when '[c]ertain issues that would otherwise have been in dispute became moot, in the sense that the court no longer needed to resolve them,' such that '[t]he question of the defendants' liability to the plaintiff, and all questions subordinate to it, ceased (at least conditionally) to have practical importance.'" *Pegaso Dev. Inc. v. Moriah Educ. Mgmt. LP*, 2020 WL 7081775, at *3 (S.D.N.Y. Dec. 3, 2020).

Here, Mr. Fishback has agreed to give Plaintiffs everything they are seeking in this action (subject only to his right to respond to their fee application). Accordingly, there is no longer any live dispute for the Court to resolve: "Defendant's liability to Plaintiff is no longer in dispute." *Optolum, Inc. v. Cree, Inc.*, 2022 WL 1632916, at *2 (M.D.N.C. Jan. 31, 2022). Because a decision on Plaintiffs' motion to compel would neither affect the rights of the litigants nor alter the legal relationship of the parties, the motion must be denied. *See, e.g.*, *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them"). Any ruling on the motion would constitute "a prohibited advisory opinion" on issues "no longer necessary to resolution of a previously resolved dispute." *Optolum, Inc.*, 2022 WL 1632916, at *2.

Since the question of Mr. Fishback's liability, and all questions subordinate to it, are resolved by Mr. Fishback's consent to liability, injunctive relief, and attorneys' fees, Plaintiffs' request for further discovery is moot, and the Court should deny the motion. *Pegaso Dev. Inc.*, 2020 WL 7081775, at *3; *see also Tennenbaum Cap. Partners LLC v. Kennedy*, 2009 WL 2913679, at *7 (S.D.N.Y. Sept. 11, 2009) (where Plaintiff's motion for summary judgment was granted, defendant's motion to compel discovery denied as moot), *aff'd sub nom. Tennenbaum Cap. Partners L.L.C. v. Kennedy*, 372 F. App'x 180 (2d Cir. 2010); *Empire Res., Inc. v. Davidson Metals Corp.*, 1999 WL 997278, at *3 (E.D.N.Y. Oct. 18, 1999) ("As [Plaintiff] Empire has now obtained judgment on the merits, its motion for discovery sanctions is hereby denied as moot."); *Sea-Land Serv., Inc. v. Citihope Int'l, Inc.*, 176 F.R.D. 118, 122 (S.D.N.Y. 1997) ("The request for an extension of the discovery period is rendered moot by the grant of plaintiff's motion [for summary judgment]."); *Montes v. Thornburgh*, 919 F.2d 531, 538 (9th Cir. 1990) (case became moot when litigant achieved its objective).

**B.     Plaintiffs Have Not Met Their Burden As Movants To Demonstrate That The Redacted Information Is Relevant To Plaintiff's Breach Of Contract Claim.**

On a motion to compel discovery, the movant bears the burden of demonstrating that the information sought is relevant. *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 347 F.R.D. 1, 9 (S.D.N.Y. 2024). Once relevance has been shown, it is up to the responding party to justify curtailing discovery. *Id*. Here, Plaintiffs have not met their burden as movants of demonstrating that the information sought is relevant, thus requiring denial of their motion.

2

As the Court observed during the Conference conducted on September 4, 2025, "this is more at the margin than game changing and more than likely to have something to do with a dimension of the fee analysis than, you know, an 'ah ha' moment as to liability." (Tr. of Conf. Sept. 4, 2025 at 19:3-5). The Court asked the parties about whether evidence might be relevant if it showed Mr. Fishback's "intentionality, vexatiousness, [or] frivolity," or his "state of mind, his intentionality, his litigation tactics." As discussed below, the redacted information is not relevant to the merits of this case.

1. The Redacted Information Would Not Be Relevant To Plaintiffs' Contract Claim.

Plaintiffs sole cause of action in this case was a claim for breach of contract based on the theory that Mr. Fishback disclosed confidential information in violation of his employment agreement. (Dkt No. 18 (First Amended Complaint)). Putting aside that Mr. Fishback has conceded to liability, the imposition of injunctive relief, and attorneys' fees, rendering the issue moot, Plaintiffs have not met their threshold burden to show that the redacted information would be relevant to their contract claim and responsive to their requests for production.[2] Below is a summary of the pertinent portions of the texts at issue:

| Text No. | DESCRIPTION |
|---|---|
| 1 | ███ |
| 2 | ███ |
| 3 | ███ |
| 4 | ███ |
| 5 | ███ |
| 6 | ███ |
| 7 | ███ |
| 8 | ███ |
| 9 | ███ |

---

[2] Each of the Texts were "hits" on search terms to which the parties agreed, but that does not mean that they were actually responsive to a discovery request, as discussed below.

| Text No. | DESCRIPTION |
|---|---|
| 10 | ██████████████████████████████ |

(*See* Fishback Decl. ¶ 13).

Plaintiffs have not identified any of their requests for production ("RFP") to which the redacted information would purportedly be responsive. (*See* Kelton Decl. Ex. A (Plaintiffs' requests for production)). Indeed, the majority of the redacted information would not be responsive to any RFP, for the following reasons:

    a. <u>The Texts Are Not Responsive To RFP Nos. 1-7 or 9-15.</u>

The redacted information does not involve Greenlight information that Mr. Fishback forwarded himself (RFP #4), any Greenlight investment analyses, strategies, methodologies, discussions, recommendations, or decisions (RFP #5), Mr. Fishback's non-Greenlight investment activities prior to August 16, 2023 (RFP #6), disclosure of any Greenlight information (RFP #7 & #12), Mr. Fishback's involvement or contemplated involvement in any conferences, panels, presentations, interviews, podcasts, or similar events (RFP #9), public statements about Greenlight on podcasts or otherwise (RFP #10), communications with Greenlight investors or employees (RFP # 11, 13), Greenlight investments that had previously been made public (RFP #14), or any of the other more *pro forma* and "catchall" requests (RFP #s 1-3, 15).

    b. <u>The Texts Would Only Be At The Outer Margins Of Responsiveness To RFP No. 8</u>

RFP No. 8 is the only RFP that the redacted information could even possibly implicate, but even that is a significant stretch. The redacted portions of Texts Nos. 1, 2, 3, 4, 7, 8, 9 and 10 do not involve any actual discussion of Mr. Fishback's role or title at Greenlight, and the Texts only reference his role in the most cursory and cumulative sense, as described below:

<u>Text Nos. 1, 2, and 7</u>: The Texts include drafts of pleadings in which Mr. Fishback alleged that he was the head of Greenlight's macro trading operation. But it has always been undisputed that Mr. Fishback made this claim, and indeed, Plaintiffs are in possession of the *actual* filings, emails, and other documents in which Mr. Fishback made this claim. There is no additive or non-cumulative value to disclosing incomplete drafts of pleadings from *other proceedings*, that include the same references, before those pleadings were finalized and filed. Nor is there any basis to think that production of those draft pleadings would have any impact on this litigation.

<u>Texts 3, 4, 8, 9, and 10</u>:

- Text 3 includes a draft of an argument that refers generally to Mr. Fishback's macro leadership at Greenlight. As discussed above, it has always been well-known and

undisputed that Mr. Fishback referred to himself as having a significant role in macro trading at Greenlight, and there is no additive or non-cumulative value to disclosing incomplete drafts of a legal argument simply because that legal argument asserts that Mr. Fishback played a significant role in in Greenlight's macro success.

- Text 4 refers to drafts of a pleading relating to claims subsequently asserted in the AAA action, and various potential edits and comments to same, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This Text also included 3 attachments, which are drafts of edits to a paragraph from the draft pleading. Similarly to Text 3, there is no basis for Plaintiffs to discover a draft of a litigation pleading simply because that pleading alleged that Mr. Fishback was a leader of Greenlight's macro trading operation.

- Texts 8, 9, and 10 refer to the disputes over Mr. Fishback's title. While these might arguably be *slightly* more responsive—although they are still at the outer margins, to be sure—they are protected for the reasons discussed herein.

In sum, the vast majority of the redacted information would not be responsive to Greenlight's RFPs (and Greenlight does not argue otherwise). Additionally, the redacted information is irrelevant because it would not bear on the (now moot) question of whether Mr. Fishback breached his employment agreement by disclosing Greenlight's confidential information. Thus, Plaintiffs have not made the threshold showing of relevance required on their motion to compel, and the motion should therefore be denied.

2. Correspondence Reflecting Mr. Fishback's Attitudes Or Potential Tactics Is Irrelevant To The Merits Of This Case.

The Court also inquired whether text messages tending to reflect Mr. Fishback's "attitude" toward Greenlight or toward litigation might be relevant to the merits of this case. They would not.

Evidence regarding attitude or motivation is irrelevant to Plaintiff's breach of contract claim because motive is not an element of a breach of contract claim, and is not grounds for discovery in a contract case. *See, e.g.*, *UMB Bank, N.A. v. Sanofi*, 2017 WL 6398628, *2 (S.D.N.Y. Nov. 22, 2017); *Thyssenkrupp Materials N.A., Inc. v. Western Bulk Carriers A/S*, 2014 WL 335595, *1 (S.D.N.Y. Jan. 22, 2014); *SDG Corp. v. Nordstrom, Inc.*, No. 91 CIV. 8754 (LJF), 1992 WL 183602, at *4 (S.D.N.Y. July 23, 1992); *see also Tang Capital Partners, LP v. BRC Inc.*, 757 F.Supp.3d 363, 406 (S.D.N.Y. 2024).

Thus, even if this was not a moot issue—which it is—information concerning Mr. Fishback's attitudes or potential tactics would not bear on the merits of Plaintiffs' breach of contract claim.

C. **Correspondence Reflecting Mr. Fishback's Attitudes Or Potential Tactics Is Irrelevant To Any Fee Application.**

Separate from the issue of whether the redacted information might be relevant to the merits (which, again, is a moot issue), the Court asked whether evidence that might potentially show Mr.

Fishback's intentionality, vexatiousness, state of mind, or litigation tactics might be relevant to a fee calculation. Again, such information would not be relevant.

As a threshold matter, while Mr. Fishback has conceded liability on Plaintiffs' sole cause of action for breach of contract, he has not conceded—and strongly disputes—that his conduct in this litigation or any other litigation was vexatious or otherwise improper. But in any event, no such evidence would have any impact on a fee calculation in this case.

To be clear, Plaintiffs have not asserted that Mr. Fishback has done anything frivolous or vexatious in this litigation. Quite the contrary: Mr. Fishback has gone to great lengths to streamline the litigation of this case, including, for example, by trying to resolve the case early and offering to agree to the full injunctive relief that was requested in the complaint, waiving his rights to depose Plaintiffs, and ultimately agreeing not to oppose a finding of breach or the injunctive relief sought or an award of attorneys' fees. (Dkt. No. 58). Mr. Fishback was able to resolve virtually all discovery disputes and issues by cooperation and agreement (the sole exception being this motion, which came after he already conceded this case). In short, as a defendant in this case with no control over when or how it was brought, or what its scope was, Mr. Fishback acted reasonably and proactively to bring the case to an expeditious and efficient conclusion. There is nothing about Mr. Fishback's attitude or approach to this case that was unnecessarily contentious or that would require an approach to a fee application that is different than the "standard" factors that the Court and the parties discussed at the September 4 conference. (Tr. of Conf. Sept. 4, 2025 at 10:16-11:5).

Further, it should be noted that most of the redactions at issue (Text Nos. 1, 2, 3, 5, 6, 7, and 10) exclusively concern *other* litigations or disputes among the parties, rather than this case. Specifically, Text 1 concerns a complaint to the New York State Division of Human Rights, Texts 2 and 3 concern a New York State court defamation action, and Texts 5, 6, 7, and 10 concern claims subsequently asserted, or potentially to be asserted, in an AAA arbitration. Finally, Text Nos. 4, 8, and 9 involve discussions that touch in part on both the AAA arbitration and in part on this action.

Mr. Fishback's perceived approach toward litigation in other forums should not impact a fee calculation in this case. Indeed, Plaintiffs have conceded that the attorneys' fees they seek in this case are "limited to work in connection with this federal case." (Tr. of Conf. Sept. 4, 2025 at 9:8-15). Thus, Plaintiffs' fee application would not be impacted by Mr. Fishback's approach, attitude, or tactics with respect to any other case or dispute. Rather, the Court should evaluate Plaintiffs' fee application "based on its knowledge of the case, its own experience, and the type of detail in the billing records provided by Plaintiff." *Costa v. Sears Home Improvement Prods., Inc.*, 178 F. Supp. 3d 108, 113 (W.D.N.Y. 2016).

Moreover, even if information about Mr. Fishback's potential tactics or attitudes could have some theoretical impact on Plaintiffs' fee application in this case (they do not), that would not mean that Mr. Fishback was obligated to produce such information during discovery. Where discovery "would be relevant only as to a potential post-judgment fee application," it would generally "not be proportionate to the current needs of the case" during the discovery phase. *Lokai Holdings, LLC v. Twin Tiger USA, LLC*, 2017 WL 2418302, at *4 (S.D.N.Y. June 2, 2017); *see also Shannon v. Liberty Mut. Grp. Inc.*, 2021 WL 2644742, at *8–9 (D. Conn. June 28, 2021)

6

(collecting cases standing for the proposition that information relevant to a potential future fee application need not be produced during discovery). Indeed, the redacted information, to the extent that it reflects Mr. Fishback's tactics or attitudes or the like, would not be responsive to any of Plaintiffs' RFPs, as discussed above.

For all these reasons, the redacted information does not have any bearing on any future fee application that may be filed by Plaintiffs.

**D.     Even If Any Of The Redacted Information Were Relevant, It Is Protected Under The Work Product Doctrine.**

Even if the redacted information were both relevant and responsive, and even if discovery had not been rendered moot by Mr. Fishback's concession to liability and damages, the redacted information would be protected under the work product doctrine.

1. The Broad Scope Of The Work Product Doctrine

The work-product doctrine is broader than the attorney-client privilege, and broader than what is encompassed in Rule 26. *Apotheco Pharmacy Durham LLC v. Ahmed*, 2025 WL 833047, at *2 (S.D.N.Y. Feb. 19, 2025); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2002 WL 31296430, at *5 (S.D.N.Y. Oct. 11, 2002). Indeed, the work product doctrine "has experienced tremendous growth," and "now extends its protection far beyond *Hickman*'s concern for the files and the mental impressions of an attorney." *Lapaix v. City of New York*, 2014 WL 11343854, at *3 (S.D.N.Y. Aug. 15, 2014). In fact, courts "for the most part have lost the adjective 'attorney' when referring to the work product doctrine, and have found that the doctrine "protects from discovery all documents and materials prepared in anticipation of litigation...." *Id*. Thus, the protection is not limited to documents prepared by or at the direction of counsel, and affords protection "even where there was no involvement by an attorney." *Tower 570 Co. LP v. Affiliated FM Ins. Co.*, 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021).

The doctrine encompasses, among other things, drafts of litigation documents, motions, and proposed communications with parties or potential witnesses, documents reflecting a party's "case strategy and goals in bringing a lawsuit," "[v]ersions of the legal narrative drafts edited by" non-parties, client-prepared documents such as "[a] narrative of events" or a client's draft of his legal claims or arguments, discussions about claims analyses, a party's "confidence factor" with respect to its claim, and "requests [for] advice regarding the strength of [a party's] claims." *See Montesa v. Schwartz*, 2016 WL 3476431, at *8 (S.D.N.Y. June 20, 2016); *Lapaix v. City of New York*, 2014 WL 11343854, at *4 (S.D.N.Y. Aug. 15, 2014); *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *4 (S.D.N.Y. Oct. 4, 2024). Additionally, the protection covers documents prepared by a party or reflecting "the mental process of" a party. *Lapaix v. City of New York*, 2014 WL 11343854, at *4 (S.D.N.Y. Aug. 15, 2014).

2. The Redactions At Issue Here Relate To Information That Falls Within The Work-Product Doctrine.

As discussed below, the redactions to the Texts fall within the broad scope of the work product doctrine.

7

    a) <u>The Information Was Created And Transmitted Because Of Litigation, Concerns Litigation, And Is Otherwise Of A Type That Is Protected.</u>

The language used in certain of the Texts at issue may be ineloquent and colloquial. But that does not detract from the fact that they involved drafts, revisions, and discussions about litigation materials, strategies, and the like.

In Texts 1, 2, 4, and 7, Mr. Fishback transmitted his counsel's drafts of litigation documents to his father and to Isaac Bevers, who is a close friend, confidante, and business partner. Texts 1 and 4 also include discussions about various potential edits and comments to litigation documents, . Thus, these Texts clearly reflect and involve counsel's strategy and drafting, and directly involve counsel's work product and potential edits to same.

In Text 3, Mr. Fishback transmitted to his father a draft of an argument in response to a motion to dismiss filed by Greenlight in the New York State court defamation lawsuit. Thus, this text involves a discussion about litigation strategy, narrative, and argumentation.

In Text 5, Mr. Fishback transmitted to his friend and advisor, Scott Levitt,

In Text 6, Mr. Fishback discussed with Mr. Levitt . Thus, this text involves a discussion about litigation strategy and planning (including disclosure of an attorney's mental impressions and advice). With respect to Mr. Fishback's brief reference to

In Text 8, Mr. Fishback shared a draft of correspondence from Mr. Fishback's counsel Thus, this Text involves both potential litigation strategy and a draft of a litigation-related document which was ultimately to be revised, finalized, and sent by counsel.

In Text 9, Mr. Fishback shared with his friend and business partner, Asaf Abramovich, legal advice from counsel . Additionally, Mr. Fishback shared a draft of correspondence from his counsel , and discussed potential revisions to same. This text also attached an email from counsel to Mr. Fishback regarding . Thus, this Text clearly involves counsel's work product, mental impressions, strategy, and legal advice, and also

involves a draft of a litigation-related document which was ultimately to be revised, finalized, and sent by counsel.

In Text 10, Mr. Fishback shared with Mr. Abramovich a proposed revision to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, this Text involved editing of a litigation-related document which was ultimately to be revised, finalized, and sent by counsel. This text also includes an attachment showing a discussion with Mr. Fishback's counsel about transmittal of the letter, which is both irrelevant and non-responsive to any of Plaintiffs' RFPs.

It is evident from the face of these documents that they were all created because of and concerning actual or contemplated litigation. Mr. Fishback and Greenlight have been involved in litigation since October 23, 2023, when Mr. Fishback filed his complaint with the New York State Division of Human Rights. The two Texts that pre-date the initiation of litigation (Texts 1 and 2, dated September 24, 2023 and October 19, 2023) expressly refer to anticipated litigation, and attach drafts of pleadings prepared by litigation counsel and which were ultimately filed in litigation. And the Texts that post-date the initiation of litigation all expressly refer to pending or contemplated litigation between the parties. Thus, these items were clearly created "because of" litigation.[3] *See United States v. Adlman*, 134 F.3d 1194, 1203 (2d Cir. 1998) (affirming the "because of" test).

      b) <u>The Fact That Mr. Fishback Disclosed Information To Non-Attorneys Does Not Waive Work Product Protection.</u>

Work-product protection is not lost merely because the material is disclosed to a third party. *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *4 (S.D.N.Y. Oct. 4, 2024). The protection is only waived if disclosure of the work product to the third party has substantially increased the opportunity for potential adversaries to obtain the information. *Id.*

Here, Plaintiffs have made no showing that disclosure of any of the information at issue substantially increased the likelihood that adversaries would obtain the information. Quite the contrary, Plaintiffs concede that "Mr. Jay Fishback is the Defendant's father, and the other parties [Mr. Bevers and Mr. Levitt] are Defendant's friends and former business associates." It is undisputed that Mr. Fishback's relationship with his father is exceptionally close and confidential, and his relationships with Mr. Bevers, Mr. Abramovich, and Mr. Levitt are also close, friendly, advisory, and involved maintaining each other's confidence. (Fishback Decl. ¶¶ 4-11). Thus, disclosure to these individuals was not likely to increase the opportunity for potential adversaries to obtain the information.

---

[3] It is irrelevant that certain of these documents were created because of litigation other than the case at bar. *See Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at *7 n.6 (S.D.N.Y. June 27, 2002) ("a party may withhold in one lawsuit the work product that it has created or caused to be created because of another lawsuit in which it has been involved or anticipates being involved"); *Cohen v. City of New York*, 255 F.R.D. 110, 124 (S.D.N.Y. 2008) ("the weight of authority now clearly favors protecting work product that was generated as part of an earlier litigation at least where, as here, that litigation is related to the current suit.").

3. Plaintiffs Lack A "Substantial Need" For This Information.

Finally, Plaintiffs cannot demonstrate any need for the redacted information—much less the required "substantial need"—to overcome work product protection.

Substantial need exists if the documents at issue are "crucial to the determination of whether the defendant could be held liable for the acts alleged, or carr[y] great probative value on contested issues." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010). The burden of showing a "substantial need" is on the movant seeking disclosure. *Id*.

Here, Plaintiffs cannot meet this burden because, as discussed above, Mr. Fishback has conceded to a finding of breach, the complete injunctive relief sought in the complaint, and Plaintiffs' entitlement to reasonable attorneys' fees. (Dkt. No. 58). Thus, the subject Texts will have no probative value as to any contested issue, and no impact on liability or damages in this case. Plaintiffs therefore cannot show any substantial need for the information.

4. Plaintiffs Come Nowhere Near Demonstrating That The Crime-Fraud Exception Applies.

In a skeletal two-sentence argument at the end of Plaintiffs' letter, Plaintiffs suggest that the redacted information may be discoverable under the crime-fraud exception because, Plaintiffs allege, Mr. Fishback "coordinated with his father, Mr. Abramovich, and Mr. Levitt to submit fake 'reference checks' to Greenlight for the purpose of bringing false defamation claims . . . . " That brief assertion, made with no factual citation or analysis,[4] comes nowhere near meeting the heavy burden required to invoke that exception.

In the Second Circuit, a party seeking to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of "probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *Richards v. Kallish*, 2023 WL 8111831, at *10 (S.D.N.Y. Nov. 22, 2023). Critically, alleged "[i]nequitable conduct…does not trigger the crime-fraud exception," rather, the exception "requires higher threshold showings of both intent and materiality…[and] must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance." *Rowe Int'l Corp. v. Ecast, Inc.*, 241 F.R.D. 296, 303–04 (N.D. Ill. 2007).

Plaintiffs utterly fail to meet the foregoing standard. Plaintiffs cite no evidence whatsoever in support of their argument—a failure that requires rejection of their argument. *Richards*, 2023 WL 8111831 at *10 (rejecting application of the exception where "Plaintiff identifies a series of Bates numbers to support her argument, but none of those items have been submitted to the Court."). Nor have Plaintiffs shown that a crime or fraud was committed, or that any of the Texts were "in furtherance of" any alleged crime or fraud. While Plaintiffs vaguely and in conclusory fashion assert that Mr. Fishback engaged in "fraudulent reference checks" with his father, Mr.

---

[4] Plaintiffs should not be permitted to submit new evidence or argument on this issue for the first time on reply. *See*, *e.g.*, *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, 2025 WL 2531513, at *4 (S.D.N.Y. Sept. 3, 2025); *Haider v. Lyft, Inc.*, 2022 WL 1500673, at *4 (S.D.N.Y. May 11, 2022); *Star Ins. Co. v. A&J Constr. of New York, Inc.*, 2018 WL 6177857, at *4 n.4 and n.7 (S.D.N.Y. Nov. 26, 2018).

Abramovich and Mr. Levitt, that assertion—which is not an element of a breach of contract cause of action—is vigorously contested and woefully insufficient to meet Plaintiffs' burden.

    a) <u>Mr. Levitt's Reference Check Occurred Well After Mr. Fishback's New York Defamation Litigation, And Was Not A Basis For Mr. Fishback's AAA Statement Of Claim.</u>

Mr. Fishback has not used or attempted to use the reference check by Mr. Levitt in connection with any claim. Indeed, that reference check, dated March 26, 2024, post-dated Mr. Fishback's New York State defamation lawsuit by five months, and post-dated Mr. Fishback's voluntary discontinuance of that lawsuit by 2 months. *See* Fishback Decl. Ex. A (New York state court action complaint, dated October 23, 2023) *and* Ex. B (stipulation of dismissal, dated January 24, 2024). Mr. Levitt's inquiry was also not a basis of Mr. Fishback's later-filed AAA arbitration Statement of Claims. Thus, there is no factual basis on which Plaintiffs can show that Mr. Levitt's reference check was used by Mr. Fishback "in furtherance of" any crime or fraud.

    b) <u>Plaintiffs Have Not Shown That The Legacy Reference Check Was Part Of A Crime Or Fraud, Or That The Texts With Mr. Abramovich Were In Furtherance Thereof.</u>

The other reference check was made around September 27, 2023 from someone who worked at Legacy Wealth Advisors ("Legacy"), and who subsequently forwarded Greenlight's response to Mr. Abramovich.

Plaintiffs have not even attempted to show that this reference check was part of any crime or fraud. While a defendant in a defamation lawsuit may assert a defense that a plaintiff "invited" defamation, that does not mean that it is "fraudulent" for someone to seek to have a reference checked with a former employer to confirm if the former employer is making inaccurate and potentially defamatory statements about them. There has been no showing nor finding in this or any other forum that Mr. Fishback committed any crime or fraud. Indeed, Mr. Fishback's defamation claim, which was asserted in his New York state defamation complaint, was voluntarily discontinued via stipulation, and has never been adjudicated on the merits.

Moreover, Plaintiffs have not shown that the two Texts with Mr. Abramovich (Texts 9 and 10) were "in furtherance of" any purported crime or fraud. Notably, both Text 9 and Text 10 were in January 2025, nearly *a year-and-a-half-after* the reference check at issue. r. Fishback's statement that ███ cannot fairly be said to be "in furtherance of" a fraud.

At bottom, Plaintiffs utterly fail to provide any factual or legal basis to assert that any of the redacted portions of the Texts was "in furtherance of" any misconduct. Thus, the Court should entirely reject Plaintiffs' terse and unsupported reference to the crime fraud exception.

### E. Conclusion

For all of the foregoing reasons, Plaintiffs' motion should be denied in its entirety. Mr. Fishback thanks the Court for its attention to this matter.

                                                        Respectfully submitted,

                                                        */s/ Justin T. Kelton*

                                                        Justin T. Kelton