Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

T  +1 212.872.1000
F  +1 212.872.1002
akingump.com



**Stephen M. Baldini**
+1 212.872.1062/fax: +1 212.872.1002
sbaldini@akingump.com

September 10, 2025

**VIA ECF**
The Honorable Paul A. Engelmayer
United States District Court - Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

   Re: *Greenlight Capital, Inc., et al. v. Fishback*, 1:24-cv-04832-PAE

Dear Judge Engelmayer:

   On behalf of Plaintiffs Greenlight Capital, Inc. ("Greenlight") and DME Capital Management, LP (together "Plaintiffs"), we submit this letter pursuant to Your Honor's September 5, 2025 order.  Dkt. No. 60.

   As this Court is aware, Plaintiffs filed a letter on Wednesday, September 3, 2025 (Dkt. No. 57), requesting a pre-motion discovery conference in anticipation of a motion to compel defendant James T. Fishback's ("Defendant's") production of ten text messages that were produced with redactions (the "Redacted Texts").  On September 4, the Court held a status hearing regarding outstanding discovery issues in this case.  At the hearing, the Court did not take up the issues raised in Plaintiffs' letter.  Instead, the Court entered a briefing schedule on the discovery dispute identified by Plaintiffs.  In accordance therewith, Defendant filed a letter in opposition to Plaintiffs' motion to compel on September 8 (the "Opposition").  In further support of their motion to compel, Plaintiffs respond as follows.

### A. <u>Relevance</u>

   "Federal district courts have broad discretion in deciding motions to compel."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. Mar. 15, 2016).  Federal Rule of Civil Procedure 26 states," [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . " Fed. R. Civ. P. 26.  "Discovery rules are to be accorded a broad and liberal treatment … to effectuate their purpose that civil trials in federal courts no longer need to be carried on in the dark."  *Ratliff v. Davis Polk & Wardwell*, 345 F.3d 165, 170 (2d Cir. 2003) (internal quotation marks omitted).

   Plaintiffs are at an obvious disadvantage on this motion to compel, as the contents of the documents at issue are redacted.  However, Plaintiffs have reasonable bases to believe that the documents are relevant for multiple reasons described below.



Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
September 10, 2025
Page 2

In his Opposition, Defendant raises the question whether the requested discovery is proportional to the needs of the case. *See* Dkt. No. 61 at 6. But that cannot plausibly be an issue where, as here, the **10** documents at issue are already produced, redacted, and before the Court for in camera review. *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806, at *20 (S.D.N.Y. Oct. 17, 2017) ("The proportionality factors of Rule 26 weigh in favor of disclosure, because [producing party] has not argued that the production would pose a burden, it is the only party with access to the [documents], and the [relevant issue] is significant in these cases").

Any portions of the Redacted Texts that do not contain attorney work product simply must be produced. To the extent that Defendant argues otherwise, he is effectively asking the Court to afford him "relevance redactions" as a consolation prize for his losing work product arguments (examined further below). This is heavily disfavored. *See Ohr Somayach / Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 2021 WL 3038470, at *1 (S.D.N.Y. July 19, 2021) ("[T]he weight of authority in the Second Circuit is clear that 'redactions on grounds of non-responsiveness or irrelevance are generally impermissible.'") (citing *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018)); *John Wiley & Sons. Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege."); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context").

## 1.    The Redacted Texts Are Relevant to Plaintiffs' Breach of Contract Claim

As explained in Plaintiffs' opening letter, the Redacted Texts are relevant to this case, in part, because they evidence Defendant's communications with third parties with whom he shared Greenlight's Confidential Information at various points in time in violation of his Employment Agreement.[1]

The parties to the Redacted Texts (the "Third Parties") were: (1) Mr. Jay Fishback; (2) Mr. Asaf Abramovich; (3) Mr. Isaac Bevers; and (4) Mr. Scott Levitt. Mr. Jay Fishback is Defendant's father, and the other Third Parties are Defendant's friends and former business associates. Each of the Third Parties participated in and witnessed Defendant's misconduct. On at least thirty occasions during his employment, Defendant sent Greenlight's Confidential Information to his father. Defendant also shared Greenlight's Confidential Information with Mr. Abramovich and Mr. Bevers in connection with their efforts to form Azoria, and with Mr. Levitt in connection with a potential investment in Azoria. Based upon this conduct, Plaintiffs have reason to believe the Redacted Texts contain additional transmissions of Greenlight's Confidential Information, consistent with Defendant's pattern of behavior.

For example, Text 3 is a November 28, 2023 conversation between Defendant and his father, Mr. Jay Fishback, discussing the dispute with Greenlight. When looking at the document on the e-discovery

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in Plaintiffs' First Amended Complaint. Dkt. No. 18 ("FAC").



Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
September 10, 2025
Page 3

platform, Relativity, it is apparent that Defendant transmitted Greenlight's Confidential Information—specifically, internal rate of return sheets—to his father in these messages, as they are included within the document family as attachments. But such Confidential Information does not appear in the texts, which means that it was redacted. The fact that Defendant redacted a literal violation of the Confidentiality Provision is telling.

Defendant admits that the Redacted Texts may be responsive to Request No. 8, which calls for the production of "All Documents and Communications Concerning [Defendant's] role or title at Greenlight, including but not limited to [Defendant's] statement that [he was] referred to as Greenlight's 'head of macro,' or any other title besides 'research analyst' or 'analyst.'" Dkt. No. 63-1. In this case, Defendant should be required to produce the Redacted Texts to Plaintiffs immediately—as he should have done in the normal course of discovery.

In an effort to render this motion moot, Defendant attempts to convince the Court that the merits of this case have been resolved. That is not accurate. Although Defendant has asserted that he "does not believe that a motion for summary judgment is necessary, because he is stipulating the relief requested" (Dkt. No. 58), the parties have not entered into a joint stipulation as to Defendant's liability and injunctive relief, much less one that resolves all liability issues. Defendant acknowledges that such a resolution may not be "possible" in his own September 3, 2025 letter to the Court (Dkt. No. 58), given that Plaintiffs intend to seek specific factual findings. Defendant has waived all legal defenses and arguments, but still appears intent on grappling with Plaintiffs on the facts. But Plaintiffs are not in a position to assume that there is going to be absolutely no dispute of fact in briefing summary judgment (although whether those disputes are material or genuine will certainly be another issue).

Defendant's citations to cases wherein discovery disputes were rendered moot by final judgments are inapposite. If the parties cannot agree on a joint stipulation as to Defendant's liability and injunctive relief, Plaintiffs fully intend to move for summary judgment. As the Court is well aware, no decision has yet been reached on any such motion. Indeed, the Court set a summary judgment briefing schedule, which is characteristic of a motion that has *not yet been decided*. Dkt. No. 60. For the reasons set forth below, the Redacted Texts are likely to constitute a key piece of the factual record in support of any motion for summary judgment in this case.

### 2.  <u>The Redacted Texts Are Relevant to Plaintiffs' Potential Fee Application</u>

In any case, the Court has indicated that the Redacted Texts may contain evidence of Defendant's bad faith litigation tactics, which are highly relevant to Plaintiffs' entitlement to attorneys' fees. Defendant attempts to convince the Court that he has not done anything frivolous or vexatious in this litigation and that his approach toward litigation in other forums has no bearing on this case. Nothing could be further from the truth. The Court should not fall for it. This case is part of a complex, intensely litigated, multiple-proceeding dispute which has required Plaintiffs to expend significant legal time and effort to combat Defendant's litigation tactics. That dynamic is critical to assessing the reasonableness of Plaintiffs' attorneys' fees.

3



Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
September 10, 2025
Page 4

As set forth in Plaintiffs' original complaint, long before Plaintiffs commenced this action, Plaintiffs' undersigned counsel sent Defendant multiple letters demanding repayment of two promissory notes documenting two loans that Fishback had taken from Greenlight in 2022 (the "Note Case"). *See* Dkt. No. 1 ("Original Complaint") at n.6. Instead of repaying Greenlight, Defendant filed two offensive actions against Greenlight—a discrimination complaint in the New York State Division of Human Rights (the "Discrimination Complaint") and a defamation lawsuit in New York State court (the "Reference Check Defamation Claims")—that he later withdrew and reasserted in arbitration. *See* FAC ¶¶87-88; Dkt. Nos. 61 at 6, 62-1, 62-2. After applying the proceeds of a redemption of Defendant's interests held by Greenlight to pay off one of the notes and a portion of the other, Greenlight was forced to sue Defendant to seek repayment of the balance in March 2024. *See Greenlight Capital, Inc. v. Fishback*, No. 24-2299 (S.D.N.Y.) at ECF 1. In June 2024, Plaintiffs commenced the instant suit, arising from Defendant's theft of Confidential Information and tortious misrepresentations. *See* Original Complaint.

Based on Defendant's Opposition, it appears some of the Redacted Texts relate to the instant case and some relate to other disputes between the parties. To the extent the Redacted Texts reference this litigation, they are eminently relevant to any forthcoming fee application.

### a. <u>Responding to Defendant's Arguments About His Own Reasonableness in this Case</u>

Defendant's arguments about his own reasonableness are nothing more than a preview of his own opposition to a future fee application.

To be clear, the first time Defendant even potentially agreed to stipulate to a finding of liability was August 2024—approximately 14 months after this case was commenced and a substantial amount of time and money had already been spent on discovery. Further, as Plaintiffs originally set forth in their motion to strike Defendant's Rule 68 offer—and will again argue with respect to fees—the offer Defendant made was not valid. Among other things, it was vague and had no finding of liability. That finding of liability has always been a critical aspect of this case because, among other things, it actually creates the foundation for the Court to enter injunctive relief (Fed. R. Civ. P. 65(d)(1)) and is necessary for Plaintiffs to obtain their fees based on the parties' contract. An offer that did not include a finding of liability was no offer at all.

Indeed, the making of a vague, indefinite offer was far from reasonable—it is consistent with Defendant's approach in litigating this case and others: drawing the litigation out as long as possible while trying to create settlement pressure on Plaintiffs with every tactic available besides building the merits of a case. This pattern of conduct is exactly why the other litigation between the parties is also relevant.

### b. <u>Conduct in Separate (but Related) Litigation is Relevant</u>

Plaintiffs' FAC lays out a pattern of abusive litigation tactics that have caused Plaintiffs to expend significant resources defending against Defendant's claims and prosecuting his wrongful conduct. *See, e.g.*, FAC ¶¶87-90. Plaintiffs contend that Defendant's claims against Plaintiffs were frivolous and/or



involved fraudulent conduct. Such behavior is highly relevant to any fee application. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) (A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [Plaintiff] in response.") (internal citation omitted); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("the hours required to litigate even a simple matter can expand enormously" when an attorney is forced to react to frivolous conduct by an adversary); *Mendoza v. CGY & J Corp.*, 2017 WL 4685100, at *2 (S.D.N.Y. Oct. 17, 2017) (observing that multiplicity of suits between parties bears on complexity determination).

As detailed above, Greenlight was forced to sue Defendant in federal court when he refused to pay back nearly $350,000 in loans he borrowed from Greenlight, which became due and owing upon the termination of his employment, and failed to respond to offered agreements of forbearance. Despite Greenlight's clear entitlement to recover on the loans, Defendant forced the parties to litigate through summary judgment. And now, although Greenlight has obtained a judgment against Defendant for the remaining principal and interest due under the outstanding loan, Defendant has not repaid any amount. Of note, the Notes Case prompted Defendant to strike with frivolous litigation against Greenlight.

Plaintiffs contend that the Discrimination Complaint contained complete fabrications, alleging age discrimination and religious discrimination. *See* Original Complaint ¶138. Defendant initially re-asserted the age discrimination claim in an ongoing arbitration with Plaintiffs, but has now abandoned that claim, along with the equally frivolous religious discrimination claim.

The Reference Check Defamation Claims, filed on or about the same time as the Discrimination Complaint, were based on a fraudulent scheme to assert a false defamation claim against Greenlight. This scheme, which Defendant developed in consultation with his father, involved coordinating with Mr. Abramovich to cause a third-party investment firm to submit a fake reference check (that Defendant himself drafted) to Greenlight. The phony reference check asked about Defendant's role as "Head of Macro" at Greenlight, which was a fake title that Defendant invented for himself, for the sole purpose of suing Greenlight for correcting. After Greenlight responded to clarify the inaccurate title, Defendant filed the Reference Check Defamation Claims. Although Defendant voluntarily dismissed that action, he initially reasserted those claims in arbitration with Plaintiffs and only removed them from his pleadings when discovery in the instant case revealed his fraudulent scheme. In Spring 2024, Defendant convinced Mr. Levitt to send Greenlight another false reference check (similarly, drafted by Defendant) asking about his fake "Head of Macro" title and contributions to Greenlight. This was another attempt to bolster his fraudulent defamation claims before reasserting them in arbitration. Discovery has shown that Defendant also planned to feed Greenlight's response to a media outlet, before the fraudulent plan apparently caused Mr. Levitt to get cold feet. Plaintiffs discovered the details of this scheme only after Defendant produced certain text messages following his own deposition.

The fact that these litigations were separate does not mean they are irrelevant. The notion that Defendant changed his course of conduct when litigating this case makes no sense based on the overlapping factual nexus among the disputes, and that Defendant was continuing to possess and misuse Greenlight's confidential information while using the separate litigation to ward off and intimidate Greenlight.



Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
September 10, 2025
Page 6

Defendant's willingness to fabricate litigation at the same time he was continuing to violate the Confidentiality Provision shows that from the very beginning of this case, he was going to litigate unreasonably.

## B.      Defendant Has Failed to Establish Work Product Privilege Protection

In his Opposition, Defendant reiterates the assertion made in his August 28, 2025 letter to Plaintiffs, i.e., that that he is withholding the Redacted Texts under the work product privilege. Defendant's recitation of the scope of the work product doctrine is so overbroad it would effectively protect any discussion between a litigant and a non-party from disclosure—even where it discusses facts relevant to the underlying case.

"The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (internal quotation marks and citation omitted). A party seeking to assert the work product privilege must establish that the material at issue "'(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" *Pilkington N. Am., Inc. v. Mitsui Sumimoto Ins. Co. of Am.*, 341 F.R.D. 10, 13 (S.D.N.Y. 2022) (citation omitted). "A party's decision to discuss his litigation—even with a close and trusted friend—does not further the purposes behind the work-product doctrine." *Obeid v. Mack*, 2016 WL 7176653, at *9 (S.D.N.Y. Dec. 9, 2016). "The availability of work product protection turns upon whether the communications embody thoughts, mental impressions, or work that was generated after litigation was reasonably anticipated and generated because of the anticipation of litigation." *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *6 (S.D.N.Y. Oct. 4, 2024).

### 1.      None of the Third Parties are Representatives of Defendant or Necessary to the Litigation

Defendant has not provided any explanation, let alone evidentiary support, for why the Third Parties were acting as his representatives, necessary to prepare for litigation, or did anything to help further the case.

As an initial matter, Greenlight did not file this case until June 25, 2024 (*see* Original Complaint), and Defendant could not have anticipated this litigation before that time. Defendant has always maintained that he deleted Greenlight's Confidential Information on his last day of employment at Greenlight and did not retain or use any Confidential Information after leaving Greenlight. While that has shown to be false, both things cannot be true—Defendant could not have simultaneously (i) reasonably believed that he was not misusing Confidential Information and (ii) reasonably anticipated litigation over misuse of Confidential Information.

Therefore, prior to June 25, 2024, the only claims Defendant could reasonably have anticipated litigating were claims by Greenlight to collect on the loans he took from them following his termination of

**Akin**

Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
September 10, 2025
Page 7

employment effective August 2023; his discrimination claims; and his defamation claims arising out of the fraudulent reference check scheme.

As to Mr. Jay Fishback, there has never been any explanation about what skills or role he would have in preparing for litigation. The mere fact that Defendant's relationship with his father is "exceptionally close and confidential" (Dkt. No. 61 at 9) does not render Mr. Jay Fishback necessary in any way to Defendant's anticipated or ongoing litigation.

Mr. Levitt was a former investor in the fund that Defendant purported to manage prior to his employment with Greenlight. Mr. Levitt was never involved with Azoria, beyond an unsuccessful attempt by Defendant to obtain an investment from him, and Mr. Levitt's later impersonation of a potential investor to perform a fake reference check with Greenlight. There is no role Mr. Levitt would have played in helping Defendant in litigation.

Mr. Abramovich was Defendant's co-founder of Azoria. But the Redacted Texts cover the point in time when Mr. Abramovich was separating from Azoria, which was prompted by his own employer's discovery of his involvement in the fake reference check. In fact, Defendant executed an indemnification agreement in favor of Mr. Abramovich and his employer because of that issue. There is absolutely zero reason to argue that Mr. Abramovich was working as Defendant's representative despite their prior affiliation through Azoria, given that they were essentially adversaries at the time of the relevant Redacted Texts.

As to Mr. Bevers, a researcher for Azoria, there was no reasonably anticipated litigation prior to Greenlight's commencement of this offensive suit in June 2024 which would have necessitated involvement of anyone at Azoria. Defendant was bringing claims in his own capacity, and while he alleged that defamatory statements harmed his ability to find investors for Azoria, none of the conduct alleged actually involved anyone at Azoria. Therefore, Mr. Bevers had no role in assisting Defendant with any litigation.

   2. <u>**Each of the Third Parties Was a Witness to, and/or Participated in, Defendant's Underlying Misconduct**</u>

Clearly, Defendant is seeking work product protection for his communications with the Third Parties not because they advised him in litigation, but because they each witnessed and/or participated in his violations of the Confidentiality Provision. Defendant's attempts to shield communications with the Third Parties underscore why his attempted use of the work product doctrine is improper. He is effectively trying to shield communications with witnesses to the relevant facts of the case.

To the extent any of the Redacted Texts contained a shred of work product, the associated privilege has been waived. "District courts in this Circuit have held that disclosure to a third-party witness in the action waives privilege where the witness does not share a common interest with the disclosing party." *Alexander Interactive, Inc. v. Adorama*, Inc., 2014 WL 12776440, at *11 (S.D.N.Y. June 17, 2014) (citations omitted). "[T]he question is not whether the non-adversary has actually revealed the materials to an adversary of the disclosing party . . . but whether, at the time of the disclosure, the disclosing party had



Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
September 10, 2025
Page 8

reason to believe that further disclosure, to its party-opponent, would be 'likely.'" *Hedgeserv Ltd. v. SunGard Sys. Int'l Inc.*, 2018 WL 6538197, at *2 (S.D.N.Y. Nov. 20, 2018) (internal citation omitted).

All of the Third Parties received Confidential Information from Defendant. And Plaintiffs subpoenaed Mr. Abramovich and Mr. Levitt for documents in this case, which became a likely possibility when Defendant shared Greenlight's Confidential Information with them in violation of the Confidentiality Provision. It is likely that the reason Plaintiffs did not obtain the Redacted Texts from Mr. Abramovich or Mr. Levitt is that they deleted or concealed the messages based on their participation in Defendant's wrongdoing.

### 3. Even if the Work Product Privilege Were Applicable, the Crime-Fraud Exception Applies

Defendant insists that he is entitled to withhold, among other things, documents he created or caused to be created as part of other disputes with Plaintiffs. This argument does not hold water. As Plaintiffs alluded to in their opening letter, work product protections are not available where they are used pretextually or where the crime-fraud exception applies. *See United States v. Roe (In re Richard Roe, Inc.)*, 68 F.3d 38, 40 (2d Cir. 1995) ("[I]t is well-established that communications that otherwise would be protected by … the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.") (internal quotation marks and citation omitted); *see also Meyer v. Kalanick*, 212 F.Supp.3d 437 (S.D.N.Y. July 25, 2016) ("The crime-fraud exception applies when there is (i) a determination that the client communication or attorney work product in question was itself in furtherance of the crime or fraud and (ii) probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity.") (internal quotation marks and citation omitted).

All but one of the Third Parties assisted Defendant in manufacturing false claims against Plaintiffs. *See supra* Section A.2.b. This conduct by the Third Parties disqualifies the Redacted Texts from the protections of the work product privilege as a matter of law.

The court's decision in *Meyer v. Kalanick* is instructive. 212 F.Supp.3d 437 (S.D.N.Y. July 25, 2016). There, the court found that Global Precision Research LLC d/b/a Ergo, the investigative firm retained by the defendants to investigate the plaintiff, "was engaged in fraudulent and arguably criminal conduct, and that many of the documents over which Ergo claimed work-product protection were intended to facilitate this fraudulent and arguably criminal activity." *Id.* at 444. Specifically, the court found that "Ergo's investigator, Mr. Santos-Neves, made blatant misrepresentations to individuals that he contacted in order to gain information about plaintiff and plaintiff's counsel." *Id.* Here, Defendant was not merely trying to "gain information" by fraud, but to manufacture an entire lawsuit. To be sure, *Meyer* makes clear that simply tying a communication to litigation is insufficient to garner work product protection. For example, work product protections would not cover "a communication from a client to a lawyer asking for help in cheating an unsuspecting adversary out of money, as well as the lawyer's response to the client 'let's



do it, and here's how!' Such a result would be clearly incompatible with the policies underlying the privilege doctrines and exceptions thereto." *Id.* at 446.

### 4.  Plaintiffs Have a "Substantial Need" For the Redacted Texts

Even if the Court agrees that the Redacted Texts fall within the work product privilege, Plaintiffs have a substantial need for and inability to obtain the information from another source without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).  The sole claim in this case concerns Defendant's misuse of Greenlight's Confidential Information.  For the reasons previously discussed, *see supra* Section A.1., the Redacted Texts bear on this issue.  Plaintiffs are foreclosed from obtaining these communications through any other means, as Defendant did not produce the Redacted Texts until after his own deposition and the close of discovery.  Absent reopening discovery, Plaintiffs have no other way to discover the withheld information from Defendant or third parties.

### C.    Conclusion

For the reasons set forth above and in Plaintiffs' September 3, 2025 letter (Dkt. No. 57), Plaintiffs respectfully request that the Court grant their motion to compel Defendant to produce the Redacted Texts.

Respectfully,

*/s/ Stephen M. Baldini*
Stephen M. Baldini