UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREENLIGHT CAPITAL, INC. *and*
DME CAPITAL MANAGEMENT, LP,

                                          Plaintiffs,

                    -v-

JAMES T. FISHBACK,

                                          Defendant.

24 Civ. 4832 (PAE)

<u>OPINION AND ORDER</u>

PAUL A. ENGELMAYER, District Judge:

        This order resolves a discovery dispute.  Plaintiffs (collectively, "Greenlight") have

moved to compel defendant James T. Fishback to produce certain text messages he exchanged

with his father and personal acquaintances.  Dkts. 57, 64.  Fishback has withheld these, asserting

that they are protected from disclosure by the attorney work product doctrine.  Dkts. 61–63, 65.

For the reasons that follow, the Court grants the motion in part and denies it in part.

## I.        Background

        The Court assumes familiarity with the background of this case.  In brief, Greenlight, an

investment management firm, is suing Fishback, a former research analyst, for breach of his

employment agreement.  *See generally* Dkt. 18 ("First Amended Complaint" or "FAC").

Greenlight alleges that Fishback misappropriated confidential information related to its

investments, in violation of that agreement.  *Id.* ¶¶ 1–6, 111–21.  Greenlight seeks a permanent

injunction against Fishback, ordering him to adhere to the agreement, including by returning any

confidential information still in his possession, plus monetary damages.  *Id.* at 31–32.

        On August 8, 2025, Greenlight filed a letter previewing its anticipated motion for

summary judgment.  Dkt. 54.  On August 15, 2025, Fishback replied, stating that he intended to

oppose Greenlight's motion, but not to cross-move for summary judgment. Dkt. 55. The pre-motion conference was scheduled for September 4, 2025. Dkt. 52.

On September 3, 2025, Greenlight separately requested a conference in anticipation of a motion to compel Fishback to produce unredacted text message exchanges with his father and three other non-parties, all non-attorneys. Dkt. 57 at 1–2. Greenlight stated that Fishback had withheld parts of these exchanges in discovery, invoking the work product doctrine. *Id.* That day, the Court directed Fishback to submit the messages—in unredacted and redacted (*i.e.*, as-produced) form—for *in camera* review, Dkt. 59, and notified the parties that it intended to take up the issue at the next day's conference. Fishback timely submitted unredacted and redacted versions of 10 text message threads.

The same day, Fishback also filed a letter that stated that he intended to resolve this case in part, in that he planned to "waive[] his potential defenses," "will not oppose a finding that he breached his employment agreement, and [] will not oppose the injunctive relief requested" in Greenlight's pre-motion letter. Dkt. 58 at 1. However, as to monetary damages—which Greenlight contends consist of the reasonable attorneys' fees it incurred in this matter, as provided for by Fishback's employment agreement—Fishback "reserve[d] the right to review any fee application [by Greenlight] and respond as appropriate." *Id.*

At the September 4, 2025 conference, the parties, following up on Fishback's stated intention to partly resolve this case, agreed to negotiate a proposed joint stipulation that contained findings of fact and a written injunction. Sept. 4, 2025 Tr. at 5–6. As to the discovery dispute, Greenlight contended that it was not moot, both because the case had not yet settled, and because, to the extent the Court granted its motion to compel, the text messages could affect the language in the stipulation and the amount of a fee award. *Id.* at 7–13. Fishback disagreed. *Id.*

at 14. The Court gave Fishback an opportunity to respond in writing, and Greenlight an

opportunity to reply. *Id.* at 16–18; Dkt. 60.

On September 8, 2025, Fishback opposed Greenlight's motion to compel, Dkt. 61,

appending declarations from Fishback himself, Dkt. 62 ("Fishback Decl."), and from his counsel,

Dkt. 63, as well as exhibits. On September 10, 2025, Greenlight replied. Dkt. 64. On

September 11, 2025, Fishback filed a one-page letter that purported to correct one statement in

Greenlight's September 10 reply. Dkt. 65.

## II.     Applicable Legal Standard

District courts have broad discretion in the management of pretrial discovery. *See In re*

*Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68–69 (2d Cir. 2003). Federal law governs

the applicability of the work product doctrine "in all actions in federal court." *Weber v.*

*Paduano*, 2003 WL 161340, at \*3 (S.D.N.Y. Jan. 22, 2003) (quoting *Mount Vernon Fire Ins. Co.*

*v. Try 3 Bldg. Servs.*, 1998 WL 729735, at \*4 (S.D.N.Y. Oct. 16, 1998)).

The work product doctrine, first articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947),

was partially codified in Federal Rule of Civil Procedure 26(b)(3). The rule defines work

product as "documents and tangible things that are prepared in anticipation of litigation . . . by or

for another party or its representative." *Id.* The party claiming such protection must show that

the material was prepared "because of" the prospect of litigation. *United States v. Adlman*, 134

F.3d 1194, 1202 (2d Cir. 1998). Conversely, documents "prepared in the ordinary course of

business or that would have been created in essentially similar form irrespective of litigation" are

not protected. *Id.* "At its core, the work product doctrine shelters the mental processes of the

attorney, providing a privileged area within which he can analyze and prepare his client's case."

*In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

There are two types of work product: fact and opinion. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Fact work product may be discovered if the party seeking it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection . . . ." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183 (quoting *Adlman*, 134 F.3d at 1197). A party claiming protection over opinion work product "must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.'" *Id.* at 183–84 (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)).

The attorney work product doctrine overlaps with, but is distinct from, the attorney-client privilege. *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *2 (S.D.N.Y. Oct. 4, 2024). "Unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party." *In re Lifetrade Litig.*, 2022 WL 3644357, at *3 (S.D.N.Y. Aug. 24, 2022). Rather, waiver occurs only if the disclosure of work product to a third party "substantially increased the opportunity for potential adversaries to obtain the information." *Spencer-Smith*, 2024 WL 4416581, at *5 (citing *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 14 (S.D.N.Y. 2022)). Because "[c]ommon sense and the practicalities of litigation define the limits" of the doctrine, the need for its protections disappear

once a party creates such risk of adversary access. *In re Steinhardt Partners, L.P.*, 9 F.3d at 235

(citing *Nobles*, 422 U.S. at 239).

## III.    Discussion

The withheld text messages fall into four categories: (A) draft litigation filings; (B) a

summary of an attorney's opinion; (C) views of non-attorneys, including Fishback, that do not

reveal attorneys' thought processes; and (D) draft correspondence involving non-parties.  The

first two categories constitute properly withheld work product.  The material in the latter two

categories, however, is not work product and must be disclosed.

### A.    Draft Litigation Filings Remain Protected Work Product

Between September 24, 2023 and June 12, 2024, Fishback sent drafts of litigation

documents, prepared by counsel, to three non-attorney third parties: his father, Isaac Bevers,

and/or Scott Levitt.[1]  *See* Fishback Decl. ¶ 13.  These materials fall squarely within the attorney

work product doctrine.[2]  *See, e.g.*, *Lapaix v. City of N.Y.*, 2014 WL 11343854, at *2–3

(S.D.N.Y. Aug. 15, 2014) (draft "legal narratives" were work product); *Kyoei Fire & Marine

Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007) (draft affidavit was work

product because it "reflected . . . the mental processes and opinion of counsel").

---

[1] The messages on October 19, 2023, November 28, 2023, June 10, 2024, and June 12, 2024 relate to litigation, or anticipated litigation, in this District or New York State Supreme Court.

[2] On September 24, 2023, Fishback texted his father a draft rider to Fishback's discrimination complaint against Greenlight before the New York State Human Rights Division.  Fishback Decl. ¶ 13.  Although not litigation *per se*, this administrative proceeding was sufficiently adversarial to implicate the work product doctrine, which seeks to preserve the robustness of adversarial systems by protecting attorneys' thought processes.  *See Golden Trade, S.r.L. v. Lee Apparel Co.*, 1992 WL 367070, at *4 (S.D.N.Y. Nov. 20, 1992) (work product doctrine protects materials prepared in anticipation of "future adversarial administrative proceedings"); *cf. Sterling Drug Inc. v. Harris*, 488 F. Supp. 1019, 1027–28 (S.D.N.Y. 1980) (work product doctrine applied to documents prepared by attorney in anticipation of administrative FDA hearing as to drug approval).

Fishback did not waive work product protection over these materials by sharing them with his father, Bevers, or Levitt.  Fishback avers that his relationship with his father is "exceptionally close and confidential," Fishback Decl. ¶ 6; that Bevers is a "close friend" and "business partner," *id.* ¶ 8; and that Levitt is a longstanding "friend and mentor," *id.* ¶ 9.  These persons, Fishback states, have "never violated [his] confidences."  *Id.* ¶¶ 6, 8–9.  There is no record to the contrary.  The Court therefore cannot find that Fishback's disclosures to these persons substantially increased the odds that his adversaries would obtain the protected material.  *See, e.g.*, *United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003) (no waiver where email containing fact work product was forwarded to family member); *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 216 (S.D.N.Y. 2009) (no waiver where client shared work product with relatives); *Spencer-Smith*, 2024 WL 4416581, at *9 ("[I]f the text messages contain attorney work product, the disclosure by [the client] to her mother and long-time partner would not constitute a waiver because such disclosure did not substantially increase the chances that the information would come into the hands of her adversary.").

These materials were properly withheld.

### B.    Fishback's Summary of His Counsel's Legal Opinion Remains Protected Work Product

On May 20, 2024, in a group text message thread among Fishback, his father, and Levitt, Levitt asked Fishback whether Fishback's attorney had reached a conclusion as to a particular aspect of Fishback's litigation.  In two brief responses, Fishback summarized his attorney's assessment.  These responses reflect the "conclusions, opinions, or legal theories of a party's attorney," Fed. R. Civ. P. 26(b)(3)(B), and therefore constitute opinion work product.[3]  For the

---

[3] Earlier in the same thread, Fishback disclosed to Levitt and his father the anticipated timeframe for a certain litigation decision.  Fishback's use of "we" indicates that it reflects not only

reasons addressed above, Fishback did not waive this protection by disclosing his lawyer's conclusions to Levitt.

These messages were properly withheld.

**C.    Opinions of Fishback and Third Parties, and Other Materials Not Prepared in Anticipation of Litigation, Are Not Protected Work Product**

In multiple text message threads with his father, Bevers, and Levitt, Fishback expressed his views on draft filings and other aspects of litigation.  Unlike Fishback's disclosures to third parties of his *counsel's* thought processes, these messages "represent[] a client's own impressions divorced from and uninformed by the preparation of litigation strategy."  *Spencer-Smith*, 2024 WL 4416581, at *9 (similar text messages not work product).  The views expressed in these threads by third parties also do not reveal attorneys' thought processes.  *See id.*  And, as to a number of these messages, Fishback has not shown that the material reflected therein was "prepared in anticipation of litigation."  *Adlman*, 134 F.3d at 1197 (quoting Fed. R. Civ. P. 26(b)(3)); *see United States v. Constr. Prods. Rsch.*, 73 F.3d 464, 473 (2d Cir. 1996).  The work product doctrine thus does not apply to these materials.

Accordingly, the Court directs Fishback to produce unredacted versions of the following messages:

- On September 24, 2023, Fishback sent his father his own views on an excerpt from his administrative complaint against Greenlight.  Fishback also

---

Fishback's views, which do not qualify as work product, but also his attorney's, which are protected.  This message remains protected for the same reasons as those discussed above. However, Levitt's "reaction" to the message is not protected work product, and therefore the single word "Loved" (at timestamp 18:45:03) should be disclosed.

referenced a different "letter to Greenlight," which Fishback has not shown was created in anticipation of, or because of, litigation.[4]

- On October 19, 2023, Bevers responded to Fishback's draft complaint, without revealing any of the complaint's substance or attorney work product.[5]

- On November 28, 2023, Fishback sent his father his own views on a draft legal filing. His father later referenced an individual, whose name does not appear in any of Fishback's materials opposing Greenlight's motion to compel. Fishback has not carried his burden of demonstrating that either exchange is protected work product.[6]

- On May 20, 2024, Levitt's question and responses do not reflect attorney work product.[7] Nor do Fishback's follow-up replies,[8] which reflect his own views on litigation strategy, and would not give Greenlight "an impermissible window into *counsel's* thinking about the litigation." *Spencer-Smith*, 2024 WL 4416581, at *9 (emphasis added); *see also id.* ("[I]f the text messages are not attorney work product reflecting counsel's legal impressions, opinion, or strategy but instead represent [non-attorney's] own impressions or opinions and are not documents created because of the prospect of litigation, they are not work product.").

---

[4] Timestamps of the texts to be produced are as follows: 17:53:54, 18:00:09, and 18:00:12.

[5] 15:59:12.

[6] 12:38:58, 13:02:17, and 13:02:24.

[7] 19:00:02, 19:00:23, 19:00:29, and 19:16:43.

[8] 19:15:52, 19:16:05, and 19:16:17.

- On June 10, 2024, Fishback shared with his father his views on certain litigation.[9]  These views do not reveal his attorney's "mental impressions, conclusions, opinions, or legal theories."  Fed. R. Civ. P. 26(3)(B).  Indeed, many relate to Fishback's broader public relations and/or political strategies vis-à-vis Greenlight.  *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *13 (S.D.N.Y. Mar. 19, 2019) ("It is a stretch to view the purpose of [the] press release [by the party claiming work product protection] to be predominantly for a legal purpose.").  His father's responses are likewise not protected.[10]

### D.    Correspondence Among Third Parties Not Because of or In Preparation for Litigation Is Not Work Product

Multiple text message threads reflect communications between Fishback and non-attorney third parties as to documents that were not prepared "because of" litigation, and therefore do not qualify for work product protection.  *See, e.g.*, *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 497–98 (S.D.N.Y. 2019) (general counsel's notes regarding internal investigation into alleged sexual harassment were not work product because possibility of future litigation was too speculative); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010) (merely considering the "possibility of litigation" was insufficient to obtain work-product protection).  To the extent these messages reflect attorney-client privileged communications, the privilege was waived by disclosure to third parties who did not share a common legal interest.[11]

---

[9] 00:37:23, 00:43:47, 00:43:53, 00:55:54, 01:32:33, 01:32:36, 01:32:42, and 01:32:45.

[10] 13:49:53, and 13:55:54.

[11] New York law governs any claim of attorney-client privilege in this case.  *See* Fed. R. Evid. 501 (state law governs privilege regarding claim for which state law supplies rule of decision);

The Court directs Fishback to produce unredacted versions of the following messages:

- On March 27, 2024, Fishback asked Levitt, copying his father, to send him a certain "reply" because his lawyer was eager to review it.[12]  Although Fishback argues that this text is protected work product because it "implicates the selection of evidence for counsel," Dkt. 61 at 8, Fishback has not shown that this "selection" was for the purpose of litigation, *see Spencer-Smith*, 2024 WL 4416581, at *7 ("A lawyer may be engaged by her client to perform more than one task—some may be related to litigation while others may not.  It is only that work and those communications that are generated 'because of' litigation or the anticipation of litigation . . . that are entitled to work product protection." (quoting *Adlman*, 134 F.3d at 1202)).  To the extent this message contained attorney-client privileged communications, Fishback waived the privilege by disclosing those communications to Levitt.  Levitt's reply is not protected, for the reasons stated at section III(C), *supra*.[13]

---

*Kleeberg v. Eber*, 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019).  The parties' employment agreement "contained a New York choice of law provision," FAC ¶ 25, and neither party has suggested that another state's law applies to attorney-client privilege issues.

"The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship."  *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 34 (N.Y. 2016).  The privilege is waived when the client reveals these communications to a third party, provided that the third party is not necessary to enable the attorney-client relationship (*e.g.*, interpreters) and does not share a common legal interest.  *Id.* at 33–35.

[12] 16:33:16.

[13] 16:36:47.

- On December 31, 2024, Fishback sent his father a draft letter,[14] from Fishback's counsel and addressed to a non-party, related to (among other topics) this litigation. Fishback argues that this "draft of a litigation-related document" reflects "potential litigation strategy." Dkt. 61 at 8. But this vague formulation underscores the absence of work product protection. On its face, the letter aims to assuage the non-party's concerns about reputational exposure in connection with this litigation. That does not qualify for protection, as "the purpose of the [work product doctrine] is to provide a zone of privacy for strategizing about the conduct itself, not for strategizing about the effects of the litigation on the client's customers . . . ." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (citing *Nobles*, 422 U.S. at 238); *cf. Pearlstein*, 2019 WL 1259382, at *13 (emails to external public relations consultant were not sent "for the predominant purpose of seeking or conveying legal advice"). The letter is not protected by the work product doctrine.

- On January 2 and 3, 2025, Fishback sent his father and an acquaintance, Asaf Abramovich, what appear to be updated drafts (addressed to Abramovich) of the letter discussed immediately above.[15] For the same reasons, the work product doctrine does not protect this draft, or Fishback's and Abramovich's

---

[14] 16:59:27.

[15] January 2, 2025: 03:57:59, 03:58:11, 14:41:59, 15:31:11, 16:18:51, 16:19:03, 16:25:31, 16:26:48, 16:35:03, 16:37:34, and 23:46:38 (including any withheld attachments).

January 3, 2025: 16:19:34, 16:20:05, 17:06:16, 17:07:09, 17:07:39, and 17:21:51 (including any withheld attachments).

other messages in this thread.  And by attaching a screenshot of an email from

his counsel regarding this topic, Fishback waived attorney-client privilege

over that communication.  These messages are protected by neither the work

product doctrine nor attorney-client privilege.[16]

### E.    Fishback's Remaining Arguments Opposing Disclosure

Neither of Fishback's remaining arguments has merit.

First, Fishback argues that the motion to compel should be denied because Fishback has

recently "conceded in full," such that a ruling on the motion would constitute a "prohibited

advisory opinion."  Dkt. 61 at 1–2 (cleaned up).  That is wrong.  Fishback has promised only to

concede part of the case (liability for breach of contract, and the entry of injunctive relief, but not

the amount of monetary damages) and has not yet done so, stating only that he "will."  Dkt. 58

at 1.  The parties are currently negotiating a stipulation, but none has yet been entered.  Sept. 4,

2025 Tr. at 6–7, 26–29.  And the disclosures at issue may inform the parties' factual stipulation,

injunction, and the eventual fee award.  *Id.* at 7–13.  Moreover, in the event the parties cannot

reach agreement, a summary judgment briefing schedule is in place.  This discovery dispute is

therefore live and relevant.

Second, Fishback argues that Greenlight has not shown that the redacted messages are

relevant to its claims, whether for breach of contract or an eventual fee application.  Dkt. 61 at 2–

7.  But he does not counter Greenlight's assertion that all four of the third parties on these text

messages also received confidential information from him, in violation of his employment

agreement.  Dkt. 64 at 2–3.  His communications with them, to the extent these do not constitute

---

[16] Because the Court holds that these messages do not constitute protected work product, it does not reach Greenlight's argument that they should be disclosed under the crime-fraud exception. *See* Dkt. 64 at 8–9.

protected work product, are thus relevant, and have the capacity to inform Greenlight's later submissions in this matter. Moreover, "redactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege." *John Wiley & Sons. Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. Mar. 26, 2014). And the incremental burden of producing these messages is negligible.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Greenlight's motion to compel Fishback to produce certain text messages. Fishback is hereby directed to produce the text messages identified in footnotes 3 through 15 by 5 p.m. on September 16, 2025.

The Clerk is respectfully directed to terminate the pending motion at docket 57.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 15, 2025
       New York, New York