# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Greenlight Capital, Inc., DME Capital Management, LP, | |
| Plaintiffs, | No. 1:24-cv-04832-PAE |
| -vs.- | |
| James T. Fishback, | |
| Defendant. | |

## STIPULATED ORDER ENTERING INJUNCTION

WHEREAS, in resolution of Plaintiffs' forthcoming motion for summary judgment on liability and permanent injunctive relief (*see* ECF No. 54), and upon the stipulation of Plaintiffs, Greenlight Capital, Inc. ("Greenlight" or the "Company") and DME Capital Management, LP ("DME"), and Defendant, James T. Fishback, to the entry of this permanent injunction order, the Court issues the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I.       The Parties and Employment Agreement

1.       Greenlight is an investment management firm that was founded in 1996.  After a restructuring on January 1, 2024, DME became the successor in interest of Greenlight's business. DME and Greenlight are both owned and controlled by Mr. David Einhorn.  Mr. Einhorn is the co-founder of Greenlight, and the President of both Greenlight and DME.

2.       The Defendant was an employee of Greenlight from February 8, 2021 to August

15, 2023.  Defendant and Greenlight executed an employment agreement at the beginning of Defendant's employment with Greenlight on February 8, 2021 (the "Employment Agreement").

3.      Plaintiffs assert one cause of action here for breach of Section 5 of the Employment Agreement (the "Confidentiality Provision").  The Confidentiality Provision contains multiple subparagraphs that imposed obligations on Defendant with respect to the use and handling of certain information (defined therein as "Confidential Information") that Defendant would have access to as a Greenlight employee.  The subparagraphs of the Confidentiality Provision in section 5 state:

> (i) To assist Employee in the performance of his duties, the Company agrees to provide to Employee special training and information regarding the Company's business methods and access to certain Confidential Information (as defined below) and materials belonging to the Company, its affiliates, and to third parties, including but not limited to investors and prospective investors of the Company who have furnished such information and materials to the Company under obligations of confidentiality.

> (ii) Except as expressly permitted by the Company in writing, Employee agrees that he shall not (either during his employment by the Company or thereafter) disclose to any person not connected with the Company or use for his own benefit or for the benefit of any person other than the Company any Confidential Information either disclosed to or developed by the Employee during his employment by the Company.  For purposes of this agreement, "Confidential Information" shall include, but not be limited to, all investor lists, prospective investor lists, investments (except where publicly disclosed), investment methodologies, methods of dealing, investment track records, investment recommendations, investment performance, performance records of any individual investment position, performance records of any Company fund, performance records of Employee, information that supports the performance record of any Company fund or of Employee, and other confidential business information related to the conduct of the Company's business and/or the business of any of the Company's affiliates.

> (iii) In the event of termination of Employees employment with the Company, Employee agrees to deliver promptly to the Company all Confidential Information, equipment, documents, notes, reports, files, books, correspondence, lists, and other written or graphic reports and the like relating to the Company's or any affiliate's business which are or have been in his possession or under his control.

> (iv) Nothing contained in this Agreement supersedes, conflicts with, or otherwise alters the Employee's rights or obligations under existing statute, law, rule,

regulation or order relating to the reporting to applicable governmental authority of a violation of any law, rule, or regulation as required by law.

Employment Agreement § 5.

## II.    Defendant's Conduct During His Employment with Greenlight

4.    During his time as a Greenlight employee, Defendant was provided with both electronic and hardcopy access to Greenlight's information, including Confidential Information as provided in the Employment Agreement.

5.    At multiple points during his employment with Greenlight, Defendant electronically accessed and transmitted certain files between Greenlight's systems and his own personal email addresses, without seeking or obtaining authorization from personnel at Greenlight. Those instances include but are not limited to:

   a.  The April 20, 2022 email bearing Bates number FISHBACK037139, which contained a summary of certain Greenlight macro investment positions and the performance of those positions.

   b.  The April 22, 2022 email bearing Bates number FISHBACK037141, and its attachment bearing Bates number FISHBACK037143, which contained a summary of certain Greenlight macro investment positions and the performance of those positions.

   c.  The March 2, 2023 email bearing Bates number FISHBACK028501, which contained a summary of certain Greenlight macro investment positions and the performance of those positions, including year-to-date profits and losses for those positions.

   d.  The August 11, 2023 email bearing Bates number FISHBACK029214, which contained a summary of certain Greenlight investment positions and the

3

performance of those positions, including year-to-date profits and losses for those positions.

    e.   The August 15, 2023 email bearing Bates number FISHBACK029285 (the "Port Sheet Email"), and its attachment bearing Bates number FISHBACK037148, which contained Greenlight's entire portfolio of investments.

6.    During his employment with Greenlight, Defendant was also provided with access to hardcopy documents that he retained in his personal possession outside of Greenlight's offices and electronic storage systems. This included an internal rate of return sheet (the "IRR Sheet"), for 2022, an electronic copy of which was produced bearing Bates number FISHBACK032178.

7.    Defendant tendered his resignation from Greenlight on July 31, 2023, and arranged to end his employment with Greenlight on August 15, 2023. On August 14, 2023, Greenlight, through its Chief Operating Officer, Mr. Daniel Roitman, sent Defendant an email that reminded Defendant of his confidentiality obligations under the Employment Agreement.

8.    Notwithstanding the August 14, 2023 email from Greenlight, Defendant transmitted the Port Sheet Email to his personal email address on August 15, 2023, his final day of employment with Greenlight. Greenlight sent Defendant an email on August 15, 2023 informing the Defendant that he lacked authorization to transmit the Port Sheet Email to his personal email address, and that such transmittal was a violation of Defendant's obligations under the Employment Agreement. Greenlight also requested Defendant to delete the Port Sheet Email, and Defendant responded the same day indicating that he deleted the Port Sheet Email. This statement later proved to be false as Defendant not only did not delete the Port Sheet Email, but the Port Sheet Email was later produced by Defendant in discovery in this case.

9.    Notwithstanding Greenlight's emails on August 14 and 15, 2023, Defendant

remained in possession of the foregoing documents listed in Paragraphs 5-6 following the termination of his employment at Greenlight, and through the date this action was filed. Defendant neither sought nor obtained authorization from personnel at Greenlight to retain any such documents after the termination of his employment.

10.    On at least thirty-three (33) occasions during his employment with Greenlight, Defendant sent electronic communications to one third party individual ("Third Party A") containing information regarding Greenlight's macro investments, macro investment performance, macro investment methodologies, and/or macro investment recommendations.[1] During the same period, Defendant discussed Greenlight's macro investments with Third Party A. Defendant also maintained a personal trading account in his name while employed at Greenlight and did not disclose the existence of such account to Greenlight. Defendant made investments in this account in the same instruments that Greenlight had invested in around the same time. Defendant did not seek or obtain authorization from Greenlight to make any such investments, in violation of the Personal Investment Policy contained in Greenlight's Compliance Manual, which Defendant was bound to comply with pursuant to Section 6 of the Employment Agreement.

11.    At multiple points during his employment with Greenlight, Defendant also electronically accessed and transmitted certain files from Greenlight's systems to another third party individual ("Third Party B"), and other individuals at a third-party Florida investment firm (the "Florida Investment Firm") where Third Party B was employed, including but not limited to

---

[1] *See* FISHBACK038064, FISHBACK038070, FISHBACK038079, FISHBACK038082, FISHBACK038087, FISHBACK038093, FISHBACK038103, FISHBACK038106, FISHBACK038118, FISHBACK038139, FISHBACK038264, FISHBACK038321, FISHBACK038328, FISHBACK038347, FISHBACK038367, FISHBACK038396, FISHBACK038409, FISHBACK038430, FISHBACK038438, FISHBACK038463, FISHBACK038495, FISHBACK038504, FISHBACK038558, FISHBACK038620, FISHBACK038628, FISHBACK038642, FISHBACK038699, FISHBACK038705, FISHBACK038808, FISHBACK038819, FISHBACK039092, FISHBACK039320, FISHBACK043005.

the following:

    a.   The April 27, 2022 email bearing Bates number GL-DME0005474, and its attachment bearing Bates number GL-DME0005475, which was Greenlight's quarterly letter to its investors for the first quarter of 2022, and contained information regarding Greenlight's investment positions and performance.

    b.   The October 19, 2022 email bearing Bates number GL-DME0005523, and its attachment bearing Bates number GL-DME0005524, which was Greenlight's quarterly letter to its investors for the third quarter of 2022, and contained information regarding Greenlight's investment positions and performance.

    c.   The December 2, 2022 email bearing Bates number GL-DME0004316, which contained Defendant's work product regarding economic analyses that he provided to Mr. Einhorn in his role as a Greenlight employee.

    d.   The January 9, 2023 email bearing Bates number GL-DME0004525, which was a Greenlight email to its investors containing information about Greenlight's investment performance for the entirety of 2022.

    e.   The January 17, 2023 email bearing Bates number GL-DME0005558 and its attachment bearing Bates number GL-DME0005559, which was Greenlight's quarterly letter to its investors for the fourth quarter of 2022, and contained information regarding Greenlight's investment positions and performance.

12.    On January 18, 2023, Defendant electronically accessed and transmitted a file between Greenlight's systems to another third party individual ("Third Party C") in the email bearing Bates number GL-DME0005568 and its attachment bearing Bates number GL-DME0005569, which was Greenlight's quarterly letter to its investors for the fourth quarter of

2022, and contained information regarding Greenlight's investment positions and performance. On or about January 18, 2023, Defendant sent Third Party C a text message containing an image of Greenlight's investment positions and their performance from a presentation to Greenlight's investors.  LEVITT000076.

13.    Defendant neither sought nor obtained authorization from personnel at Greenlight to transmit the information in Paragraphs 10-12 to any third parties.

### III.    Early 2023 Attempt to Form Hedge Fund

14.    In early 2023, Defendant took steps toward forming and promoting a new hedge fund with one of Defendant's former professors ("Third Party D") while he was still employed by Greenlight without disclosing such actions to Greenlight.

15.    On three (3) different occasions between February 7, 2023 and March 27, 2023, Defendant sent Third Party D documents and communications containing information regarding Greenlight's investment positions and performance.

a.    On or about February 7, 2023, Defendant sent Third Party D a copy of Greenlight's quarterly letter to its investors for the fourth quarter of 2022, which contained information regarding Greenlight's macro investment positions and performance. *See* FISHBACK038716.

b.    On March 2, 2023, Defendant sent Third Party D an image in a text message containing a list of Greenlight's current macro investments, including their year-to-date profits and losses, and statements regarding the performance of certain Greenlight investments in 2021, 2022, and 2023.  *See* FISHBACK038868.

c.    On March 27, 2023, Defendant sent Third Party D an image in a text message containing a list of Greenlight's current macro investments, and discussed the profitability of certain macro investments.  FISHBACK038967.

16.    Defendant consulted with a family member ("Third Party E") regarding the formation of this new hedge fund with Third Party D.  On at least one occasion during this time period, on March 9, 2023, Defendant sent electronic communications to Third Party E containing information regarding Greenlight's investments, including statements about the "biggest trade" that he was working on at that time and the instruments through which that investment was being made.  FISHBACK038878.  Defendant did not ultimately form a hedge fund with Third Party D.

## IV.    Founding of Azoria

17.    Later in 2023, Defendant took steps toward forming and promoting another new investment business ("Azoria") while he was still employed by Greenlight without disclosing such actions to Greenlight.  For instance:

a.    Defendant contemplated forming a hedge fund in early summer 2023.

b.    Defendant discussed the launch of Azoria with his father via text message on June 28, 2023, including the name "Azoria" itself, logos for Azoria, potential partners and/or investors of Azoria, and amount of investments to be raised by launch.  *See* FISHBACK042469.

c.    On July 4, 2023 Defendant registered the domain name for "azoriapartners.com," which is the website later used by Azoria.  The same day, Defendant also sent images containing the IRR Sheet to a third party.  *See* FISHBACK039134.

d.    Throughout July and the first half of August 2023, Defendant discussed Azoria with two future Azoria employees (*see* FISHBACK042488, FISHBACK039184). *See* FISHBACK039230,        FISHBACK039245,        FISHBACK039282, FISHBACK042517, FISHBACK042534.

e.    On August 2, 2023, Defendant emailed three individuals from the Florida Investment Firm, including Third Party B, to notify them that he resigned from

Greenlight and would be "starting a macro fund in the coming months (Azoria Partners)."

    f.    On August 6, 2023, Defendant solicited two potential investors for Azoria, and made statements regarding Greenlight's profitability during the time in which Defendant was employed by Greenlight. *See* FISHBACK039318, FISHBACK039319.

18.    Third Party B ultimately became a co-founder of, and Defendant's partner at, Azoria. Third Party B also executed an agreement to invest in Azoria.

## V.    Defendant's Conduct After His Employment with Greenlight

19.    Defendant continued his efforts to form and promote Azoria after the termination of his employment with Greenlight.

20.    On multiple occasions, Defendant solicited third party investors in email communications in which he disclosed his purported track record at Greenlight[2], expressed in both aggregate dollar amounts and percentage returns per year. Such communications include but are not limited to documents bearing Bates numbers FISHBACK029746, FISHBACK032158, FISHBACK032407, FISHBACK034010, FISHBACK032460, FISHBACK038311, FISHBACK038507, FISHBACK039134, FISHBACK039278, FISHBACK039325, FISHBACK039351, FISHBACK039873, FISHBACK040000.

21.    In 2024, Defendant sent multiple communications to Third Party C containing images of his 2022 IRR Sheet in the documents bearing Bates numbers FISHBACK037144, FISHBACK037145, LEVITT000076. In Defendant's original document production, he did not produce text messages with Third Party C, and the images of the IRR Sheet were not shown in the

---

[2] Mr. Einhorn had discretion over all investments that Defendant worked on at Greenlight, and as a result, Defendant has no personal track record from Greenlight.

emails he produced between himself and Third Party C. When asked about the emails with Third Party C at his deposition, Defendant testified that he did not send images of the IRR Sheet to Third Party C. Plaintiffs thereafter obtained third-party discovery from Third Party C showing images of the IRR Sheet in emails between Defendant and Third Party C. Defendant only produced the emails between Defendant and Third Party C showing the IRR Sheet after Plaintiffs inquired and notified Defendant that it had received the same from Third Party C. Defendant disposed of the hard copy of the IRR Sheet in or around August 2024, after Plaintiffs commenced this action.

22.    Defendant neither sought nor obtained authorization from personnel at Greenlight to transmit the information in Paragraphs 17-21 to any third parties.

## CONCLUSIONS OF LAW

23.    The Employment Agreement is a valid and binding agreement between Defendant and Greenlight.

24.    The documents and communications described in Paragraphs 5-6, 10-12, 15-17, and 20-21 contained information that meets the definition of "Confidential Information" under the Employment Agreement.

25.    Defendant's transmittal of the information in Paragraph 5 to his personal email address constituted "use [of Confidential Information] for his own benefit or for the benefit of any person other than the Company" that was not "expressly permitted by the Company in writing." This constituted a breach of Section 5(ii) of the Employment Agreement.

26.    Defendant's retention and failure to return the information in Paragraphs 5 and 6 following the termination of his Employment constituted a breach of Section 5(iii) of the Employment Agreement.

27.    Defendant's transmittal of the information in Paragraphs 10-12, 15-17, and 20-21 to third parties constituted "disclos[ure] to any person not connected with the Company" and "use

for his own benefit or for the benefit of any person other than the Company" that was not "expressly permitted by the Company in writing." This constituted a breach of Section 5(ii) of the Employment Agreement.[3]

28.    Section 11 of the Employment Agreement states:

Rights and Remedies: Each of the parties to this Agreement will be entitled to enforce his or its rights under this Agreement specifically, to recover damages (including, without limitation, reasonable fees and expenses of counsel) by reason of any breach of any provision of this Agreement and to exercise all other rights existing in his or its favor. The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach or threatened breach of Sections 2, 3, 5 or 8 of this Agreement and that, notwithstanding the provisions of Section 12 of this Agreement, the Company may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive relief in order to enforce or prevent any violations of such provisions. Such injunction or decree shall be available without the posting of any bond or other security.

Employment Agreement § 11.

29.    Pursuant to Section 11 of the Employment Agreement, and due to Defendant's breaches of the Employment Agreement, Plaintiffs were and are "entitled to enforce [their] rights under this [Employment] Agreement…to recover damages (including, without limitation, reasonable fees and expenses of counsel)…." *Id.*

30.    Pursuant to Section 11 of the Employment Agreement, Defendant "acknowledge[d] that money damages may not be an adequate remedy for any breach or threatened breach of" Section 5 of the Employment Agreement. *Id.* Section 11 also provides that Plaintiffs are entitled to "injunctive relief in order to enforce or prevent any violations of" Section 5 of the Employment Agreement. *Id.*

31.    Plaintiffs have succeeded on the merits by establishing the foregoing breaches of

---

[3] With respect to Paragraphs 17(f) and 20, sharing a purported track record, even one that is inaccurate, is a violation of the Employment Agreement.

Section 5 of the Employment Agreement.

32.    Plaintiffs have established that, absent relief, they will suffer irreparable harm.

33.    Plaintiffs have established that the balance of hardships favors Plaintiffs.

34.    Plaintiffs have established that the public interest would not be disserved by the entry of an injunction.

## <u>PERMANENT INJUNCTION AND ORDER</u>

Having considered the pleadings in this matter, and the parties having consented to the permanent injunction set forth below, IT IS HEREBY ORDERED THAT:

1. Defendant is enjoined from possessing, documenting, using, transferring, or disclosing any Greenlight Confidential Information to any person or entity (other than in accordance with the following paragraphs of this Order);

2. Defendant is ordered to, within 5 business days after entry of this order, return to Greenlight any and all physical copies of Greenlight Confidential Information that may be in Defendant's possession, custody, or control, and to return to Greenlight any and all electronic copies of Greenlight Confidential Information (to the extent Defendant has not already returned or produced such electronic copies to Plaintiffs; Defendant's counsel may retain a copy of such information pending any further order of the Court);

3. Defendant is ordered to, within 5 business days after entry of this Order, but only after completing the actions set forth in Paragraph 2 of this Order, remove and permanently delete any electronic copies of Greenlight's Confidential Information from any electronic devices, systems, email accounts, cloud storage, or other electronic storage sites belonging to Defendant or within Defendant's use, possession, custody, or control;

4. Plaintiffs shall not be required to post a bond in connection with this stipulated injunction.

5. Plaintiffs' entitlement to damages in the form of legal fees and costs will be determined as set forth in a subsequent order;

6. The Court shall have continuing jurisdiction to enforce the provisions of this Order, and impose sanctions for violations of this Order. In the event that Defendant violates any of the terms of this Order, Plaintiffs shall be entitled, consistent with the Employment

Agreement and in addition to all other available remedies, to obtain an order for specific performance and/or injunctive relief, without posting any bond, and to recover from Defendant their expenses, including reasonable fees and expenses of counsel, associated with the enforcement of the terms of this Order.

**SO ORDERED.**

_____, 2025

_____
The Honorable Paul A. Engelmayer
United States District Court Judge

## CONSENT

All parties to this action hereby stipulate and consent to the making and entry, without further notice, of the foregoing permanent injunction and order.

ATTORNEYS FOR PLAINTIFFS
**AKIN GUMP STRAUSS HAUER & FELD**

By: */s/ Stephen M. Baldini*
Stephen M. Baldini
One Bryant Park
New York, New York 10036
Tel: (212) 872-1062
Fax: (212) 872-1002

*Counsel for Plaintiffs Greenlight Capital, Inc.
and DME Capital Management, LP*

ATTORNEYS FOR DEFENDANT
**ABRAMS FENSTERMAN, LLP**

By: */s/ Justin T. Kelton*
Justin T. Kelton
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
Tel: (718) 215-5300
Fax: (718) 215-5304

*Counsel for Defendant James T. Fishback*