**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Greenlight Capital, Inc., DME Capital Management, LP,<br><br>                    Plaintiffs,<br><br>        v.<br><br>James T. Fishback,<br><br>                    Defendant. | Case No. 1:24-cv-04832-PAE |

**DECLARATION OF STEPHEN M. BALDINI IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

Stephen M. Baldini, declares as follows pursuant to 28 U.S.C. § 1746:

1.      I am an attorney duly licensed to practice in the State of New York and the United States District Court for the Southern District of New York, and I am a partner at Akin Gump Strauss Hauer & Feld LLP ("Akin"), attorneys for the Plaintiffs Greenlight Capital, Inc. ("Greenlight") and DME Capital Management, LP ("DME," and collectively with Greenlight, "Plaintiffs"), in the above-captioned action.

2.      I submit this declaration (the "Declaration") in support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Motion") from Defendant, James T. Fishback ("Fishback"). This Declaration is based on my personal knowledge and based upon reviewing client files.

**Fee and Cost Overview**

3.      In their operative complaint, Plaintiffs asserted a claim against Fishback for breach of contract. *See* ECF No. 18. Specifically, Plaintiffs asserted a claim for breach of Fishback's employment agreement by and between Greenlight and Fishback, dated February 8, 2021 (the

"Employment Agreement").  Attached hereto as Exhibit 1 is a true and correct copy of the Employment Agreement.

4.    On September 24, 2025, the Court entered the Stipulated Order Entering Injunction (the "Injunction Order").  ECF No. 70.  The Injunction Order provided that Fishback committed numerous breaches of the Employment Agreement, *see id.* ¶¶ 24-27, entered injunctive relief in favor of Plaintiffs, and held that "[p]ursuant to Section 11 of the Employment Agreement, and due to Defendant's breaches of the Employment Agreement, Plaintiffs were and are 'entitled to enforce [their] rights under this [Employment] Agreement…to recover damages (including, without limitation, reasonable fees and expenses of counsel)….'" *See id.* ¶ 29.

5.    In the instant Motion, Plaintiffs seek to recover legal fees and costs incurred in connection with Akin's work in litigating this action pursuant to the Injunction Order and Employment Agreement.  Akin became involved in this matter in May 2024, shortly before this litigation was commenced, and has represented Plaintiffs in all aspects of this litigation since then.

6.    Throughout the course of this litigation, Akin maintained contemporaneous time records of its services rendered on behalf of Plaintiffs.  Akin timekeepers entered billing information often daily or within days of the work being performed.

7.    Attached hereto as Exhibit 2 are true and correct copies of billing entries and disbursements that are being sought as part of Plaintiffs' Motion, for work performed from May 1, 2024, through September 30, 2025.  The billing entries in Exhibit 2 were taken from the firm's time records, which were made contemporaneously with the rendering of legal services.  The disbursements (i.e., costs) primarily consist of customary research fees and e-discovery and deposition expenditures.  Exhibit 2 also contains the biographies of the attorneys that billed time to this matter.

8.     I hereby certify and represent to this Court that all of the billing entries and disbursements by my firm as set forth in Exhibit 2 are true and accurate, and were incurred for the periods of time set forth therein.

9.     In the instant Motion, Plaintiffs are seeking a total of $1,867,803.26, comprised of (a) $1,747,626.75 in fees resulting from a total of 1,462.8 hours billed to this matter; and (b) $120,176.51 in costs.  These fees and costs are all reflected in Akin's billing entries in Exhibit 2.

10.     Akin has been paid all billed fees and costs reflected in Exhibit 2 from the inception of this matter through June 30, 2025.  That the amounts reflected in the invoices for the months of July 2025 through September 2025 are outstanding is attributable to normal course delay between bill issuance, billing and payment.

**Akin's Firm and Matter Team**

11.     Akin is an AmLaw 100 leading international law firm with more than 900 lawyers in offices throughout the United States, Europe, Asia, and the Middle East.  One of its primary focus areas is complex commercial litigation, a group that currently has over 130 lawyers.  Akin attorneys are highly qualified advocates, with extensive experience in litigating commercial matters similar to this case.  They have ample ability, training, education, experience, and professional standing to justify the hourly rates customarily charged by Akin to its clients.

12.     I served as lead counsel from the outset of the litigation, advising Plaintiffs on various strategic decisions and supervising the work of others.  I have worked at Akin since 1994, and I have more than 30 years of experience resolving high-stakes disputes involving hedge funds, and have represented companies, investors, and boards of directors in state, federal, and cross-border litigation and arbitration worth billions of dollars.  I graduated from Georgetown University

Law Center in 1990.  I was admitted to practice law in the State of New Jersey in 1990 and the State of New York in 1991.

13.    Three other Akin attorneys billed time to this matter for which Plaintiffs seek to recover fees: (1) Daniel Slemmer; (2) Hannah Reichelscheimer; and (3) Maria Hershey.[1]

14.    Attorney Slemmer served as the "day-to-day" associate on this litigation, taking primary responsibility for pleadings, discovery, and motion practice.  He represents both domestic and international clients in a variety of complex litigation matters, and he received his J.D. from Brooklyn Law School in 2020.  Attorney Reichelscheimer is an associate at Akin specializing in labor and employment matters, and she received her J.D. from the Benjamin N. Cardozo School of Law, Yeshiva University in 2022.  Attorney Reichelscheimer worked on this case since its inception, and participated in drafting pleadings, motion papers, and discovery requests.  Attorney Hershey is an associate at Akin who joined this matter and began assisting with day-to-day tasks in May 2025, shortly before the parties began producing documents and Plaintiffs prepared to begin taking depositions.  She received her J.D. from the Columbus School of Law, Catholic University of America in 2023.

15.    Akin's customary hourly rates for the attorneys that worked on this matter are shown below:

| **Attorney Name** | **2024 Hourly Rate** | **2025 Hourly Rate** |
|---|---|---|
| Baldini | $1,975 | $2,175 |
| Slemmer | $1,090 | $1,310 |
| Reichelscheimer | $925 | $1,095 |
| Hershey | - | $995 |

---

[1] Certain of the invoices in Exhibit 2 originally contained billing entries from two other attorneys for work performed for Greenlight that Plaintiffs do not seek to recover in the instant Motion.  These entries, aside from the monthly fee totals for each of the attorneys, have been redacted.  The total amount billed on the invoices by these attorneys was $27,387.45 after the 10% fee reduction, which is not included in the total amount of fees sought or shown herein.

16.     For all work performed on this matter, Akin billed at these customary hourly rates and then discounted the fees billed to Plaintiffs by 10%. Attorney Hershey did not bill any time to this matter in 2024, so only her 2025 rate is included in the table above.

17.     Plaintiffs also seek the recovery of fees for time billed to this matter by paralegals, electronic discovery and research specialists, and a trial services manager. Those non-attorney personnel include: (a) Jennifer Langmack and Risa Slavin, paralegals who assisted with preparing filings and discovery materials; (b) Massai Leonard and Jim Ma, electronic discovery specialists who assisted with managing the document database that housed the discovery productions in this case; (c) Mike Greer; a trial services manager who assisted with the collection and storage of certain key documents; and (d) Carly Roché, a research specialist who assisted with various information gathering tasks.

18.     These non-attorney timekeepers billed at hourly rates from $337.50 to $459 over the course of this matter, which were also discounted by 10%. A table showing the total hours billed to this matter by each of the attorney and non-attorney timekeepers listed above appears below.

| Timekeeper Name | Total Hours |
|---|---|
| **Attorneys** | |
| Baldini | 262.4 |
| Slemmer | 803.3 |
| Reichelscheimer | 215.6 |
| Hershey | 129.9 |
| **Non-Attorneys** | |
| Langmack | 2.6 |
| Slavin | 6.2 |
| Leonard | 6.9 |
| Ma | 34.0 |
| Greer | 1.4 |
| Roché | 0.5 |

19.     Akin staffed this matter leanly and distributed work such that the fees would remain relatively low.  And despite this litigation spanning seventeen billable months, Plaintiffs only seek recovery for time spent by four attorneys totaling 1,411.2 hours, or less than 85 hours per month on average.

20.     Workstreams were generally delegated to junior attorneys at lower billing rates, with associates billing approximately 83% of the attorney hours worked in this case, and the only partner on the case, myself, billing the remaining 17% of the hours.  Tasks were also delegated to non-attorneys, where appropriate.

21.     There was no duplication of litigation efforts amongst tasks.  For the first 12 months of the case, almost all of the "day-to-day" tasks were performed by attorneys Slemmer and Reichelscheimer, and I would oversee and advise accordingly.  Attorney Hershey only began working on the matter in May 2025 in order to help expeditiously conduct significant discovery, while attorney Reichelscheimer was preparing for and attending a multi-week trial in another case. Each of the depositions and conferences in this case (discussed in further detail below) were attended only by myself and attorney Slemmer.

**Akin and Plaintiffs' Relationship**

22.     Greenlight is a longtime client of Akin's, and Akin has worked on a host of matters for Greenlight in a relationship that has spanned more than 25 years.

23.     In the instant Motion, Plaintiffs seek recovery of fees and costs incurred from Akin in this action only, beginning in May 2024.  For context, however, this action is just one of multiple disputes between Plaintiffs and Fishback, and Akin has represented Plaintiffs in all of their matters involving Fishback since October 2023, shortly after Fishback left the company.  That involvement is summarized below:

- After Fishback's employment with Greenlight terminated, Akin drafted and transmitted demand letters to Fishback which demanded repayment of outstanding loan amounts due under promissory notes executed by Fishback in favor of Greenlight, and made other demands with respect to Fishback's theft of Confidential Information (as defined in the Employment Agreement) and tortious misrepresentations regarding his role and work with Greenlight.

- Fishback sued Greenlight in New York State Supreme Court for defamation in October 2023 (the "NYS Defamation Action"). *See Fishback v. Greenlight Capital, Inc.*, Index No. 160289/2023, (N.Y. Sup. Ct., N.Y. County). Akin represented Greenlight in that action, which Fishback voluntarily discontinued in favor of arbitration in January 2024.

- Fishback also filed a complaint against Greenlight with the New York State Division of Human Rights in October 2023. Akin also represented Greenlight in that action, which Fishback voluntarily discontinued in favor of arbitration in January 2024.

- In March 2024, Greenlight filed suit against Fishback in this district, seeking recovery of amounts due pursuant to one of the promissory notes discussed above (the "Note Action"). *See Greenlight Capital, Inc. v. Fishback*, No. 24-2299 (S.D.N.Y.). Greenlight was awarded summary judgment in its favor in that action and its motion for attorneys' fees remains pending. Akin represents Greenlight in that action.

- In September 2024, Fishback commenced an arbitration against Plaintiffs (the "Arbitration"). That arbitration remains pending, and Akin represents Plaintiffs in that action.

- Akin has represented Greenlight in all other miscellaneous matters pertaining to Fishback, which have involved drafting and transmitting letters to Fishback demanding that he refrain from interfering with Greenlight events, and drafting and transmitting letters to third parties to correct Fishback's public misrepresentations.

24.     Because Akin became involved with Plaintiffs' disputes with Fishback more than seven months before this matter officially began, and has continued its involvement in all Fishback-related disputes since, it has a critical understanding of the overall dispute between Plaintiffs and Fishback that was helpful in litigating this case.

**Tasks Performed by Akin**

25.     Akin worked on this case from start to finish over the period of seventeen billable

7

months.  During that time, Akin's work has included significant tasks such as (but not limited to) the following:

- Researching substantive and procedural issues related to the assertion of Plaintiffs' claim, and coordinating with Plaintiffs to develop an accounting of Confidential Information taken and/or retained by Fishback.

- Drafting and filing the original complaint (ECF No. 1); analyzing Fishback's motion to dismiss, to strike, and to compel arbitration (ECF No. 13); and responding to the same.

- Drafting and filing the amended complaint (ECF No. 18); analyzing Fishback's second motion to strike (ECF No. 20); and responding to the same.

- Analyzing Fishback's answer.  ECF No. 28 ("Answer").

- Preparing the joint letter dated January 24, 2025 (ECF No. 29) and Proposed Case Management Order (ECF No. 30), and coordinating with Fishback's counsel with respect to schedular concerns (e.g., extensions, subsequent requests to the Court, etc.).

- Analyzing Fishback's Offer of Judgment that was inappropriately filed with the Court (ECF No. 33) and drafting Plaintiffs' motion to strike the same. ECF No. 35.

- Drafting interrogatories and requests for production and responding to Fishback's 11 interrogatories and 76 requests for production.[2]

- Collecting and reviewing more than 16,000 documents from Plaintiffs in response to Fishback's requests for production, and producing more than 2,600 documents to Fishback in seven rolling productions.

- Reviewing more than 10,900 documents produced by Fishback.

- Preparing and serving subpoenas on four third parties, and reviewing nearly 500 documents produced by three of those third parties.

---

[2] True and correct copies of Plaintiffs' interrogatories and requests for production of documents are attached hereto as Exhibits 3 and 4, respectively.  True and correct copies of Fishback's interrogatories and requests for production of documents are attached hereto as Exhibits 5 and 6, respectively.  True and correct copies of Fishback's responses and objections to Plaintiffs' interrogatories and requests for production of documents are attached hereto as Exhibits 7 and 8, respectively.  True and correct copies of Plaintiffs' responses and objections to Fishback's interrogatories and requests for production of documents are attached hereto as Exhibits 9 and 10, respectively.

- Preparing for and conducting the depositions of: (1) Fishback on June 5, 2025; (2) third-party witness, Mr. Jeffrey Rehm on July 10, 2025; and (3) third-party witness, Mr. Jason Hathaway on July 17, 2025.

- Assessing settlement offers from Fishback and engaging in settlement discussions with Fishback's counsel at various points in the case.

- Drafting the August 8 Pre-Motion Letter (ECF No. 54) and analyzing Fishback's response to the same.  ECF No. 55.

- Drafting the September 3 Pre-Motion Letter (ECF No. 57) and preparing for the September 4 Pre-Motion Conference.

- Drafting the September 10 Letter Reply in support of Plaintiffs' Motion to Compel.  ECF No. 64.

- Preparing and negotiating the Proposed Stipulated Injunction Order.  ECF No. 69-1.

26.    The discovery process in this case was particularly time- and labor-intensive. Following Fishback's deposition on June 5, 2025 and Akin's review of documents that he had produced, Akin drafted and sent a series of discovery letters to Fishback regarding issues with his document production on June 16, 2025, July 15, 2025, July 24, 2025, July 30, 2025, and August 26, 2025.  A few of the notable discovery issues in this action included:

- Port Sheet Email:  In the Injunction Order, Fishback acknowledged that he retained possession of the Port Sheet Email (defined therein) and attachment containing the entire portfolio of Greenlight's investments after his employment ended and into the pendency of this case. *See* Injunction Order ¶¶ 5, 8.  Prior to his deposition, Fishback produced the Port Sheet Email, but did not produce the attachment containing Greenlight's portfolio of investments.  Akin's June 16, 2025 letter observed this issue and requested that Fishback produce the attachment.  He only produced the attachment after the deadline for the close of discovery.  A July 2, 2025 letter from Fishback's counsel explained that the document had not been produced because it was password protected.  But Fishback testified in his deposition that the password was in the cover email itself.[3]  A true and correct copy of excerpts from pages 18-19, 172-182, and 210-229 of the transcript of the deposition of Mr. Fishback, conducted on June 5, 2025 in this action, is attached hereto as Exhibit 11. *See* Ex. 11 at 174:6-19.

---

[3] In fact, the password is in the cover email.

- <u>IRR Sheet</u>:  In the Injunction Order, Fishback acknowledged that he retained possession of and disclosed to third parties the IRR Sheet (defined therein) and admitted that he disposed of the hardcopy of the IRR Sheet in late summer 2024. *See* Injunction Order ¶¶ 6, 21.  Akin's June 16, 2025 letter observed that Fishback produced email communications with a third party referencing the IRR Sheet, but failed to produce documents showing how the IRR Sheet was transmitted.  Fishback only produced communications showing that the IRR Sheet was transmitted to third parties after the deadline for the close of discovery, and as reflected in the Injunction Order, only after Plaintiffs informed him that they had subpoenaed a third party with whom he had shared the IRR Sheet and obtained a version of their communications showing the IRR Sheet from that third party. *Id.* ¶ 21.

- <u>Text Messages</u>:  Fishback did not produce any text messages prior to his deposition.  He testified in his deposition that he did not personally search his text messages, and that he did not use text messages often.  *See* Ex. 11 at 19:5-10.  After a third-party witness produced numerous relevant text messages with Fishback, on July 15, 2025, Akin sent Fishback a letter demanding that he collect and produce responsive text messages.  On July 17, 2025, Fishback's counsel replied agreeing to produce some, but not all, of the text messages demanded by Akin.  Akin sent a letter to Fishback on July 24, 2025 reiterating its prior demand for text messages.  On July 25, 2025, Fishback's counsel replied, agreeing to produce all texts demanded by Akin, but explaining that the discovery vendor had encountered an issue with text message collection that was being rectified by a new vendor.  Fishback ultimately produced 389 text messages (with thousands of attachments) after the close of fact discovery between July 31, 2025 and August 6, 2025.  These text messages constitute more than half of the 60 violations detailed in the Injunction Order.

### Discovery Regarding Improper and Vexatious Litigation Tactics

27.     Discovery in this action was complicated by Fishback's vexatious litigation tactics. Discovery has shown, among other things, that Fishback created two false reference checks for the sole purpose of developing claims against Greenlight and that Fishback employed litigation tactics as a means of driving up Greenlight's costs and in order to coerce a settlement payment from Greenlight.

28.     For example, one of the parties to whom Fishback disclosed Confidential Information was Legacy Wealth Advisors ("<u>Legacy</u>").  Discovery in this matter has shown that Fishback took advantage of his relationships at Legacy to create a false defamation claim against

Greenlight and that he intended to use that claim to seek millions of dollars in damages from Greenlight and to force Greenlight to spend legal fees defending itself.

29.    Prior to Plaintiffs commencing this suit, Fishback commenced the NYS Defamation Action against Greenlight in the Supreme Court of the State of New York by filing a complaint on October 23, 2023. *See Fishback v. Greenlight Capital, Inc.*, Index No. 160289/2023 (N.Y. Sup. Ct., N.Y. County), NYSCEF No. 2.  A true and correct copy of that complaint (the "NYS Defamation Complaint") is attached hereto as Exhibit 12.

30.    In the NYS Defamation Complaint, Fishback alleged that Greenlight had communicated with "a preeminent family office that was considering investing in Mr. Fishback's new hedge fund, Azoria Partners" and "[w]hen that potential investor asked Greenlight to confirm basic  background and employment information about Mr. Fishback, Greenlight (through its Chief Operating Officer, Daniel Roitman) falsely responded that Mr. Fishback was never Head of Macro." Ex. 12 ¶ 4.

31.    On November 22, 2023, Greenlight moved in the NYS Defamation Action to compel arbitration of Fishback's claims asserted in the NYS Defamation Complaint, or in the alternative, dismiss the NYS Defamation Complaint.  *See Fishback v. Greenlight Capital, Inc.*, Index No. 160289/2023 (N.Y. Sup. Ct., N.Y. County), NYSCEF No. 5.

32.    On December 15, 2023, Fishback filed a memorandum of law in opposition to Greenlight's motion to dismiss described in the preceding paragraph.  *See Id.*, NYSCEF No. 19. Fishback signed and filed a sworn affidavit in support of that opposition ("NYS Defamation Affidavit").  *See Id.*, NYSCEF No. 15.  A true and correct copy of that NYS Defamation Affidavit is attached hereto as Exhibit 13.  In that affidavit, Fishback stated, in relevant part:

> 3.  Soon after starting Azoria Partners, I spoke with Legacy Wealth Advisors ("Legacy"), which was considering a substantial

investment with Azoria Partners. Upon information and belief, based on my knowledge of Legacy, of Azoria's business, and of such investments generally, the investment that Legacy was considering would likely have been in an amount of $5 million or more. During my discussions with Legacy, I truthfully stated that while at Greenlight, the last title that I held was Head of Macro.

4.    Since Jeffrey Rehm ("Mr. Rehm") is responsible for due diligence on behalf of Legacy, he contacted Daniel Roitman ("Roitman"), Chief Operating Officer of Greenlight to confirm certain details, including that my position was as the Head of Macro prior to the end of my employment with Greenlight.

5.    To my surprise, Roitman denied that I was the Head of Macro. Specifically, on September 28, 2023, Roitman stated to Mr. Rehm in an email that "[James Fishback] was not Head of Macro. We do not have Heads at Greenlight as David Einhorn makes all portfolio management decisions."

. . .

7. As a direct result of Roitman's statement that I was "not Head of Macro" at Greenlight, Legacy decided to not proceed with its investment in Azoria Partners, dealing a major blow to my new hedge fund's ability to get off the ground.

NYS Defamation Affidavit ¶¶ 3-7.

33.    Because Legacy was one of the parties to whom Fishback disclosed Confidential Information, Plaintiffs obtained discovery in this action from Fishback and third-party discovery from Legacy showing communications between Fishback and Legacy.    That discovery demonstrated that Fishback intended to use litigation tactics to drive up costs for Greenlight.

34.    A true and correct copy of a document produced by Fishback in this action bearing Bates number FISHBACK029963 is attached hereto as Exhibit 14.    Exhibit 14 is an email communication from Fishback to Mr. Asaf Abramovich dated September 27, 2023.    In this communication, the body of the email reads:

Email: droitman@greenlightcapital.com

12

> Hi Daniel,
>
> I hope this finds you well. My firm is looking at James Fishback's new hedge fund (Azoria Partners) and I'm hoping to confirm some information with you.
>
> 1. Was James employed at Greenlight from February 2021 until his resignation in August 2023?
>
> 2. What were James' responsibilities as Greenlight's Head of Macro?
>
> 3. In aggregate over his employment, did James' investments contribute positively to Greenlight's returns?

35.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK043047-043051 is attached hereto as Exhibit 15.  Exhibit 15 is a text message exchange between Fishback and his father, Mr. Jay T. Fishback, dated September 27, 2023.  In this communication, one text message sent from Fishback to his father (timestamped 12:48:46) reads:

> Hi Daniel,
>
>  I'm writing with respect to your former colleague James Fishback. My firm is considering seeding his new hedge fund (Azoria Partners), and I'd like to confirm some information with you.
>
> 1. Was James Greenlight's "Head of Macro"?
>
> 2. Was James primarily tasked with global macro investing at Greenlight?
>
> 3. Did James resign from Greenlight with an effective date of August 15, 2023?

36.    Immediately following this text message above, Fishback sent the following four text messages to his father in the same document:  "We can have Asaf's assistant send this," "We need them to DEFAME us," "Which THEY WILL," and "That's another $1 MM right there."  The

remainder of the message includes several additional drafts of the message quoted in the preceding paragraph.

37.     A true and correct copy of a document produced by Legacy in this action bearing Bates number LWA_0000116 is attached hereto as Exhibit 16.   Exhibit 16 is an email communication from Mr. Asaf Abramovich to Mr. Jeffrey Rehm dated September 27, 2023.   In this communication, Mr. Abramovich forwarded the email that he had received from Mr. Fishback described above bearing Bates number FISHBACK029963 (Ex. 14) to Mr. Rehm with no additional content in the email.

38.     A true and correct copy of a document produced by Legacy in this action bearing Bates numbers LWA_0000286-287 is attached hereto as Exhibit 17.  Exhibit 17 is an email thread containing multiple emails to and from multiple parties between September 27 and September 29, 2023.  The first email in the thread is from Mr. Rehm to Mr. Daniel Roitman on September 27, 2023.  The body of the email was identical to the body of the email that Mr. Rehm had received from Mr. Abramovich bearing Bates number LWA_0000116 (Ex. 16), and in turn, identical to the body of the email Mr. Fishback had sent to Mr. Abramovich bearing Bates number FISHBACK029963 (Ex. 14).  The body of the email read:

> I hope this finds you well. My firm is looking at James Fishback's new hedge fund (Azoria Partners) and I'm hoping to confirm some information with you.
>
> 1. Was James employed at Greenlight from February 2021 until his resignation in August 2023?
>
> 2. What were James' responsibilities as Greenlight's Head of Macro?
>
> 3. In aggregate over his employment, did James' investments contribute positively to Greenlight's returns?

39.     The second email in the thread in document LWA_0000286 is from Mr. Roitman

to Mr. Rehm on September 29, 2023.  The body of the email reads:

> Sorry for the late reply but I was on a business trip.
>
> 1.  James was employed at Greenlight as a Research Analyst from February 2021 through August 2023.
>
> 2.  He was not Head of Macro. We do not have Heads at Greenlight as David Einhorn makes all portfolio management decisions. James responsibilities were to suggest macro trading ideas to David that could be standalone good risk-adjusted bets where we had a variant perception, or that could hedge areas of the portfolio where we wanted to minimize our exposure to macro factors.
>
> 3.  We generally do not comment on an individual analyst's ideas as David has trading discretion over the portfolio.

40.     The third email in the thread in document LWA_0000286 is from Mr. Rehm to Mr.

Abramovich on September 29, 2023, forwarding the second email with only "FYI" in the body of

the email.

41.     A true and correct copy of a document produced by Legacy in this action bearing

Bates number LWA_0000291 is attached hereto as Exhibit 18.  Exhibit 18 includes a text message

exchange between Mr. Asaf Abramovich and Mr. Jeffrey Rehm dated September 30, 2023.  In this

communication Mr. Rehm texted Mr. Abramovich "You see Fishback email?  You want me to reply

with anything?" and Mr. Abramovich responded "No I send fish the e-mail.  All good."

42.     A true and correct copy of excerpts from pages 33-52 of the transcript of the

deposition of Mr. Rehm, conducted on July 10, 2025 in this action is attached hereto as Exhibit

19.

43.     A true and correct copy of excerpts from pages 22-24 and 44-64 of the transcript of

the deposition of Mr. Hathaway, conducted on July 17, 2025 in this action is attached hereto as

Exhibit 20.

15

44.    A true and correct copy of a document produced by Fishback in this action bearing Bates number FISHBACK029074 is attached hereto as Exhibit 21.  Exhibit 21 is an email communication between Fishback and Mr. Asaf Abramovich, Mr. Jason Hathaway, and Mr. Jeffrey Rehm, dated August 2, 2023, which is the only communication that Fishback produced between himself and Mr. Rehm or Mr. Hathaway between his resignation from Greenlight on July 31, 2023, and the reference check emails described in the preceding paragraphs.

45.    After Greenlight moved to compel arbitration of Fishback's defamation claims in the NYS Defamation Action, Fishback agreed to dismiss the claims in favor of arbitration, (*see* NYS Defamation Action, NYSCEF No. 22).  Fishback reasserted those defamation claims in his pleadings commencing the Arbitration in September 2024, but later amended his pleading to remove those claims in August 2025, after significant discovery had been conducted in this action and the documents discussed in this subsection had been produced to Plaintiffs.

### Discovery Regarding Scott Levitt Reference Check

46.    Another party to whom Fishback disclosed Confidential Information was Mr. Scott Levitt.  Discovery with respect to Mr. Levitt showed additional vexatious tactics employed by Fishback against Greenlight, as Fishback convinced Mr. Levitt to impersonate a potential Azoria investor and conduct another sham reference check with Greenlight, in similar fashion to how Fishback arranged the reference check from Legacy.

47.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK000693-695 is attached hereto as Exhibit 22.  Exhibit 22 is an email thread between Mr. Scott Levitt and Fishback dated March 14, 2024 through March 15, 2024.  In this communication, Fishback and Mr. Levitt discussed Fishback's dispute with Greenlight.

48.     A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040209-040211 is attached hereto as Exhibit 23.  Exhibit 23 is a text message exchange between Fishback and his father dated March 17, 2024.  In this communication, Fishback sent his father a text message that began with "Draft Scott email," and the remainder of that text message read:

> John, Andrew, Dan: I'm not sure who I should connect with at Greenlight about this, but my name is Scott Levitt and am looking at making a substantial investment in James Fishback's new hedge fund. As such I am interested in learning more about his time and contributions at Greenlight.
>
> Can you tell me about more about [sic] his' [sic] contributions as head of macro? I read in Greenlight's q4 of 2022 letter that macro had its best year ever. What role did James play in this? Did James also serve as David's personal macro advisor for 2019/20?

49.     In the remainder of the communication, Fishback sends his father several additional drafts of the same "Draft Scott email," with slight edits across the drafts.

50.     A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040207-040208 is attached hereto as Exhibit 24.  Exhibit 24 is a text message exchange between Fishback and Mr. Levitt dated March 17, 2024.  In this communication Fishback sent a text message to Mr. Levitt containing a draft that was substantially similar to the messages Fishback had sent to his father in document bearing Bates number FISHBACK040209 (Ex. 23) discussed above, and read:

> John, Andrew, Daniel: I'm not sure who I should connect with at Greenlight about this, but my name is Scott Levitt and am looking at making a substantial investment in James Fishback's new hedge fund. I am interested in learning more about his time and contributions at Greenlight.
>
> Could you tell me about his contributions as your head of macro? I read in Greenlight's letter that macro had its best year ever in 2022.

17

> What role did James play in this? How did it work when James served as David's personal macro consultant for 2019/20?

51.    Fishback's following text message contained the email addresses of several Greenlight employees.  Mr. Levitt replied "I will get to this tomorrow or Tuesday at the latest … I will send you what I write them prior to sending it so you can give me feedback."

52.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040221-040226 is attached hereto as Exhibit 25.  Exhibit 25 is a text message exchange between Fishback and his father dated March 19, 2024.  In this communication Fishback sent his father a text message that read:

> John, Andrew, Daniel,
>
> Hi all. I'm not sure who to contact at Greenlight regarding this, so I apologize for reaching out to multiple people.
>
> My name is Scott Levitt, and I am considering a significant investment in James Fishback's new hedge fund, Azoria. As part of my due diligence, I'm seeking information about his tenure and contributions at Greenlight, including a general reference check. My main goal in the end is to gain macro investment exposure and verify Azoria's credibility in this area.
>
> I understand that James, as the head of macro, was primarily focused on macro investments at Greenlight. Could you elaborate on his specific role and contributions in this capacity?
>
> Additionally, I came across a CNBC interview with David discussing Greenlight's performance in 2022 (or 2023) and read his letter about the firm's record year, highlighting the macro investments. Did James have a significant impact on these investments during his time at Greenlight?
>
> Lastly, I also understand that James personally consulted David on macro during 2019 and 2020. How did this work?
>
> Thank you for assisting me in my due diligence process.
>
> Scott Levitt

53.    Fishback's following text message stated "This is Scott's version.  Any edits?" Fishback's father replied in two subsequent text messages stating, "Wow" and "He da GOAT." Fishback texted "SCOTT IS DA REAL ONE" in response.  Fishback's father replied, "DAY 1 HOMEBOY".  Fishback texted "HOLDING IT DOWN FOR THE GANG" in response.

54.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040217-040220 is attached hereto as Exhibit 26.  Exhibit 26 is a text message exchange between Fishback and Mr. Levitt dated March 19, 2024.   In this communication, Mr. Levitt first texted Fishback "I took a stab at rewriting the letter just to have it a bit more in my voice. Take a look at the following and let me know when you are free to chat.  I will be driving in my car in a bit and happy to call then."  Mr. Levitt sent a subsequent text message that was substantively identical to the message that Fishback had sent his father discussed above in document bearing Bates number FISHBACK040221 (Ex. 25) that Fishback had referred to as "Scott's version."

55.    In the remainder of the communication, Fishback sent a text to Mr. Levitt containing a modified version of the draft that Mr. Levitt had initially sent, and then subsequently texted him:  "Hi Scott – I think it's excellent. Hits all the main points with sepcificity [sic]… I made a small edit around the macro consulting language."

56.    Fishback then sent Mr. Levitt a text that read "If you'd [sic] ready, I think this is great to send out to the emails…" before listing six Greenlight email addresses.

57.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040233-040234 is attached hereto as Exhibit 27.  Exhibit 27 is a text message exchange between Fishback and Mr. Levitt dated March 22, 2024.  Mr. Levitt sent two texts to Fishback saying "No response from greenlight," and "I will give them until Monday

19

evening before I email them back."   Fishback replied, "Thank you Scott! Gotta send oyu [sic] something."

58.    A true and correct copy of documents produced by Fishback in this action bearing Bates numbers FISHBACK040235 and FISHBACK040236 are attached hereto as Exhibits 28 and 29, respectively.  Both documents are attachments to the document above bearing Bates number FISHBACK040233 (Ex. 27).

59.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040240-040242 is attached hereto as Exhibit 30.  Exhibit 30 is a text message exchange between Fishback and Mr. Levitt dated March 25, 2024.  Fishback texted Mr. Levitt: "Hi Scott! Nothing from Greenlight?"  Mr. Levitt replied: "Nothing. I have a reminder to email them at the end of today if I don't hear back from them. This would be the end of the third business day that they have had my request."  Mr. Levitt sent a second text saying: "In fairness, I'm not sure how long it would take them to typically reply to something like this."  Fishback replied: "Disappointing that they continue doing this. This should only take them 10 mins. I think following up today would be a good idea."

60.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040247-040248 is attached hereto as Exhibit 31.  Exhibit 31 is a text message exchange between Fishback and Mr. Levitt dated March 26, 2024.    Mr. Levitt texted Fishback saying: "Danielle [sic] responded and said that they can confirm you were a former employee at greenlight but can't provide any further information at this time."  Fishback replied: "Hmm…can you share screenshot?"  Mr. Levitt responded by sending an image via text.

61.    A true and correct copy of a document produced by Fishback in this action bearing Bates number FISHBACK040249 is attached hereto as Exhibit 32.  The image shows a screenshot

20

of the response from Greenlight's Mr. Roitman referred to above by Mr. Levitt and Fishback in document bearing Bates number FISHBACK040247 (Ex. 31).

62.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK043100-043101 is attached hereto as Exhibit 33.  Exhibit 33 is a text message exchange between Fishback and Mr. Levitt dated March 27, 2024.  In this communication, Fishback's first text to Mr. Levitt reads: "Hi Scott – I think we should hold off on contacting them further. I have an idea that I'd like your feedback on. Are you around tomorrow evening to chat?"

63.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK034802-034804 is attached hereto as Exhibit 34.  Exhibit 34 is an email from Mr. Levitt to Fishback dated March 27, 2024.  In this communication, Mr. Levitt forwards the reference check email thread between himself and Greenlight containing multiple emails to and from Mr. Levitt and Mr. Roitman between March 19, 2024 and March 26, 2024.  The first email in the thread is from Mr. Levitt to Mr. Roitman and others at Greenlight on March 19, 2024. The body of the email was nearly identical to the draft email that Mr. Levitt had received from Fishback bearing Bates number FISHBACK040217 (Ex. 26).  The body of the email reads:

> Hi John, Andrew, and Daniel,
>
> I hope this message finds you well. I'm not sure who to contact at Greenlight regarding my inquiry below, so I apologize for reaching out to multiple people.
>
> My name is Scott Levitt, and I'm considering investing a significant amount of money in James Fishback's new hedge fund, Azoria. As part of my due diligence, I'm looking for information about his tenure and contributions at Greenlight. Specifically, I'm seeking a general reference check to confirm James' credibility in the macro-investing space.

I understand that James was the head of macro at Greenlight, and I would appreciate it if you could elaborate on his specific role and contributions in this capacity. Moreover, I came across a CNBC interview with David Einhorn discussing Greenlight's performance in 2022 (or 2023) and read his letter about the firm's record year, highlighting the macro investments. Did James have a significant impact (or role) on these investments during his time at Greenlight?

Lastly, it is my understanding that James personally consulted David on macro during 2019 and 2020. I would like to confirm if this is accurate information.

I appreciate any insights and your help in my due diligence process.

Regards,

Scott Levitt

64.     The second email in the thread in document FISHBACK034802 is from Mr. Levitt to Mr. Roitman and others at Greenlight on March 25, 2024.  The body of the email reads:

Hi all,

I hope you all had a nice weekend.

To follow up with my email below, who might be able to help in my due diligence efforts?

Thank you in advance for any help or feedback you can provide.

TY

Regards,

Scott Levitt

65.     The third email in the thread in document FISHBACK034802 is from Mr. Roitman to Mr. Levitt on March 26, 2024.  Mr. Roitman's email reads:

Dear Scott,

22

> We confirm that James Fishback is a former employee of Greenlight Capital. We are unable to provide any further information at this time.
>
> Regards,
>
> Daniel Roitman

66.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040388-040391 is attached hereto as Exhibit 35.  Exhibit 35 is a text message exchange between Fishback and Mr. Levitt dated April 17, 2024.  In this communication, Fishback first texted Mr. Levitt stating: "Thank you Scott – I've shared your number with Katherine from Bloomberg."  Fishback provided Mr. Levitt with direction for speaking with a reporter in subsequent text messages, including instructing Mr. Levitt to represent himself as "a prospective investor in Azoria, and in doing [his] due diligence, [he] reached out to Greenlight to confirm basic details about [Fishback's] employment and [his] prior consulting."

67.    After asking several questions about speaking with the reporter, Mr. Levitt texted Fishback: "Let's chat later today or tomorrow.  The more I think about this approach with the Bloomberg reporter, the more I'm not sure if it's the right approach."  Fishback replied in three subsequent messages: "Kk! What are you thinking?," "She thinks it's a huge story," and "My lawyer likes the angle," and continued to explain at length why it would "deliver[] a quick win" in a fourth text message.

68.    A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040764-040765 is attached hereto as Exhibit 36.  Exhibit 36 is a text message exchange between Fishback and Mr. Levitt dated May 17, 2024.  In this communication, Fishback texted Mr. Levitt, "Scott, if there's a time to talk to a reporter anonymously, it's now,"

and the parties continued discussing contacting media, with Fishback concluding the conversation by sending Mr. Levitt a message stating:

> Draft:
>
> I'm investing in James Fishback's new hedge fund, but I still always do my due diligence. I reached out to Greenlight and asked them to confirm that James was a paid macro consultant to David Einhorn for 2 years prior to joining the firm. They refused to tell me. Why?

69. A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040829-040831 is attached hereto as Exhibit 37. Exhibit 37 is a text message exchange between Fishback and Mr. Levitt dated May 18, 2024. In this communication, Fishback and Mr. Levitt exchange iterative drafts of a message, the last of which reads:

> Hi James. I've been following the twitter posts. Pretty crazy.
>
> Don't forget that about a month ago, as part of my due diligence on your new fund, I reached out to Greenlight and asked them to confirm that you consulted Einhorn before he hired you and they refused to tell me.
>
> thx for sending proof of their cashed check. I'm in your corner 100%

70. The remainder of this communication does not include any statements addressing how these draft messages were to be used or circulated.

71. A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK043103-043107 is attached hereto as Exhibit 38. Exhibit 38 is a text message exchange between Fishback and Mr. Levitt dated May 20, 2024. In this communication, Fishback and Mr. Levitt continued to discuss Fishback's dispute with Greenlight.

72. In Fishback's Answer, he acknowledged that he made a social media post on X (formerly Twitter) referring to Mr. Einhorn and a purported invite to debate Mr. Einhorn on a podcast on May 17, 2024. *See* Answer ¶ 97.

73.     A true and correct copy of a document produced by Fishback in this action bearing Bates numbers FISHBACK040557-040600 is attached hereto as Exhibit 39.  Exhibit 39 is a text message exchange between Fishback and an Azoria employee, Mr. Alex Munguia, dated May 16, 2024.  In this communication, Fishback sent Mr. Munguia an image containing what appears to be a list of contact information for several journalists, and stated:

> Email these people in a mail merge
>
> Subject: FIRST NAME, Einhorn Tesla debate…
> Body: Hey FIRST NAME, did you see this? david einhorn will be debating Tesla with his former employee (james fishback), who's called him crazy for being short.  link: https://twitter.com/j_fishback/status/1791073358852792447

74.     The link was to Fishback's X social media page.  The next two text messages from Fishback stated: "From an ANON email ok?" and "Need this done in the next 30 mins."

75.     A true and correct copy of a document produced by Fishback in this action bearing Bates number FISHBACK040622 is attached hereto as Exhibit 40.  Exhibit 40 is an attachment to the text message thread in document bearing Bates number FISHBACK040557 (Ex. 39) above sent by Mr. Munguia to Mr. Fishback.  The email shows Mr. Munguia contacting a Mr. Gregory Zuckerman from an email address using the name "Richard Lopez," sending the email with the subject and body that Fishback instructed him to send in FISHBACK040557.  After Mr. Zuckerman replied: "Oh nice," Mr. Munguia sent a second email reading:  "On background:  I am an investor in Greenlight (since 2021) and I've owned Tesla (since 2014)[.] I am happy to provide comment anonymously.  I can't stand that David is short Tesla again (he disclosed this to me at the partner dinner in January).  With Tesla planning to unveil robotaxi on August 8, this debate with his ex-trader Fishback (who I've met before – smart cookie – he's a college dropout that david hired) needs to happen."

25

76.    Certain of the documents and testimony referenced herein and attached as exhibits were originally designated as "confidential" by the producing parties.  Prior to filing this motion, Akin conferred with counsel to each of the producing parties for such documents and testimony, and notified those parties that Plaintiffs did not consider the documents and testimony to be confidential and intended to file the same in connection with the instant Motion.  Counsel for the respective producing parties agreed that they would not oppose the filing of such documents and testimony as non-confidential.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on October 10, 2025

*/s/ Stephen M. Baldini* _____
Stephen M. Baldini