# Exhibit 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | | |
|---|---|---|
| Greenlight Capital, Inc., DME Capital Management, LP, | : | |
| | : | Case No.: 24-cv-04832-PAE |
| Plaintiffs, | : | |
| | : | |
| – against – | : | **DEFENDANT'S FIRST SET OF DOCUMENT DEMANDS TO PLAINTIFFS** |
| | : | |
| James T. Fishback, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------X

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP") and Local

Rules 26.2 and 26.3 of this Court, Defendant James T. Fishback hereby requests that Plaintiffs

Greenlight Capital, Inc. ("Greenlight") and DME Capital Management, LP. ("DME") (together,

"Plaintiffs"), produce the documents and things described below for inspection and copying within

30 days at the law office of Abrams Fensterman, LLP, 1 Metrotech Center, Suite 1701, Brooklyn,

New York 11201.

## DEFINITIONS

The definitions and rules of construction set forth in Rules 26 and 34 of the FRCP and Rule

26.3 of the Local Rules for the Southern District of New York (the "Local Rules") shall apply to

these demands. All terms not otherwise defined shall have their ordinary and common meanings.

In addition, and unless a contrary meaning appears in context, the following definitions shall apply:

1.      "Document" refers to paper documents, electronically stored information,

including writings, drawings, graphs, charts, photographs, sound recordings, images, and other

data or data compilations, stored in any medium from which information can be obtained either

directly or indirectly or, if necessary, by subpoena, or after translation by responding party into a

1

reasonably usable form. "Communications" refers to information transmitted (whether in the form of letter, fax, e-mail, telephone, text message, social media message, WhatsApp message, any app message, ideas, inquiries, or otherwise) from one person to another.

2. "Communications" refers to information transmitted (whether in the form of letter, fax, e-mail, telephone, text message, social media message, WhatsApp message, any app message, ideas, inquiries, or otherwise) from one person to another.

3. "E-mails" means any transmissions (sent or received) of electronic mail, including but not limited to mailing lists, address books, memorandums, letters, file attachments, and metadata.

4. "ESI" (Electronically Stored Information) means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, CC, BCC, custodian, source, file creation date, file modification date, sent date, subject extracted text or OCR where extracted text unavailable, file name, attachments) and user-generated metadata (e.g. spreadsheet formulas). "ESI" further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) mail messages from X (Twitter), Slack, Google Chat/Gchat, Facebook, Instagram, Skype, LinkedIn, Microsoft Teams, and all similar programs and social media, (iv) audio and video files, (v) internal (intranet) or external websites, (vi) activity listings of electronic information or data wherever it resides, including, without limitation, (i) an active file on a computer network or individual computer hard drive, (ii) in a deleted file or file fragment, (iii) backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, (v) on a smartphone, tablet, or personal digital assistant, and (vi) on a

home or personal device. The term "ESI" also includes documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

5.    "Person" or "persons" means natural persons as well as legal entities, including without limitation, firms, companies, proprietorships, corporations, partnerships, limited liability companies, associations, unincorporated associations, and governmental bodies, agencies, and officials, and every other type of organization or entity.

6.    "Relating to" or "Relate to" means directly or indirectly mentioning, describing, pertaining to, being connected with, or reflecting upon the subject matter of the specific request.

7.    "Complaint" means the First Amended Complaint filed by Plaintiff in the above-captioned action (the "Action") on or about September 23, 2024.

8.    "Greenlight" means plaintiff, Greenlight Capital, Inc., and all of its past or present parents, subsidiaries, divisions, departments, affiliates, assignors, assignees, members, officers, directors, employees, executives, attorneys, accountants, agents, advisors, consultants, representatives, predecessors, or any persons or entities purporting to act for or on its behalf or under its control.

9.    "DME" means plaintiff, DME Capital Management, LP, and all of its past or present parents, subsidiaries, divisions, departments, affiliates, assignors, assignees, members, officers, directors, employees, executives, attorneys, accountants, agents, advisors, consultants, representatives, predecessors, or any persons or entities purporting to act for or on its behalf or under its control.

10.    "You", "Your," or "Plaintiffs" means Greenlight and DME, collectively, and all of their past or present parents, subsidiaries, divisions, departments, affiliates, assignors, assignees,

3

members, officers, directors, employees, executives, attorneys, accountants, agents, advisors, consultants, representatives, predecessors, or any persons or entities purporting to act for or on its behalf or under its control.

11.    "Mr. Fishback" or "Defendant" means defendant in this action, James T. Fishback and any persons or entities purporting to act for or on his behalf.

12.    "Azoria" means Azoria Partners and all of its past or present parents, subsidiaries, divisions, departments, affiliates, assignors, assignees, members, officers, directors, employees, executives, attorneys, accountants, agents, advisors, consultants, representatives, predecessors, or any persons or entities purporting to act for or on its behalf or under its control.

13.    "Employment Agreement" means the employment agreement between Greenlight and Mr. Fishback dated February 8, 2021.

14.    "Confidential Information" has the same meaning as defined in the Complaint.

15.    Capitalized terms that are not defined herein have the same meaning as in the Complaint.

16.    The use of the singular form of any word or words includes the plural. The use of the plural form of any word includes the use of the singular.

**INSTRUCTIONS**

1.    Each request for production of Documents contained herein extends to all Documents in Your possession, custody or control or in the possession, custody or control of anyone acting on Your behalf. A document is to be deemed in Your possession, custody or control (a) if it is in Your physical custody or (b) if it is in the physical custody of any other person and You (i) own such document in whole or in part, (ii) have a right, by contrast, statute or otherwise to use, inspect, examine, or copy such document on any terms, (iii) have an understanding, express

4

or implied, that you may use, inspect, examine, or copy such document on any terms or (iv) have as a practical matter, been able to use, inspect, examine or copy such Document when You sought to do so.

2.      If the production of a Document is requested that is no longer in Your possession, custody, or control, the answer should state (a) when the Document was most recently in Your possession, custody, or control, (b) the disposition made of the Document and (c) the identity, address, and telephone number of the person, if any, presently in the possession, custody, or control of each Document.

3.      Provide the following information for each Document withheld on the basis of an assertion of privilege: (i) its date; (ii) its title; (iii) its author; (iv) its addressee(s); (v) the claim of privilege under which it is withheld; (vi) its general subject matter; (vii) its present custodian; and (viii) a description of the Document that You would consider adequate to support Your contention that it was privileged.

4.      If You cannot provide some or any of the requested Documents after exercising due diligence to secure them, state so and provide the documents requested to the extent possible, specifying the reason(s) for Your inability to produce the remainder of the Documents and state whatever information or knowledge You have as concerning the documents not produced.

5.      These Requests shall be continuing so as to require further production of documents responsive to the request until the time of trial without further notice.

6.      Unless expressly stated otherwise herein, the relevant time period for these requests is six years prior to the initiation of this lawsuit to present.

7.      If there are no Documents responsive to any particular request, please state so in writing.

8.      Mr. Fishback reserves the right to serve additional Requests.

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

1.      All Documents and Communications supporting Your allegation that You implemented confidentiality measures, including "information access protocols regarding how employees may access sensitive Company information," as alleged in ¶ 28 of Your Complaint.

2.      All Documents and Communications concerning, regarding, or relating to the confidentiality obligations Plaintiffs impose on employees, as referenced in ¶ 28 of Your Complaint.

3.      The Offer Letter dated January 27, 2021, as referenced in ¶ 30 of Your Complaint.

4.      The Employment Agreement.

5.      All Documents and Communications concerning, regarding, or relating to Section 5 of the Employment Agreement.

6.      All Documents and Communications supporting Your allegation that Plaintiffs' investments, performance, track record, methodologies, and recommendations fall within the definition of Confidential Information under the Employment Agreement.

7.      All Documents and Communications supporting Your allegation that Mr. Fishback failed to meet performance expectations, as alleged in ¶ 33 of Your Complaint.

8.      All Documents and Communications supporting Your allegation that Mr. Fishback "failed to devote appropriate time and effort to his job responsibilities and was notified repeatedly that his work product was unacceptably delayed, undeveloped, or otherwise incomplete," as alleged in ¶ 33 of Your Complaint.

9.      All Documents and Communications supporting Your allegation in ¶ 33 that Mr. Fishback "showed a lack of accountability, and even dishonesty about his performance issues and his outside personal ventures."

10.      All Documents and Communications supporting Your allegation that in October 2021 Mr. Fishback was on "thin ice," as alleged in ¶ 34 of Your Complaint.

11.      All Documents and Communications supporting Your allegation that Plaintiffs indicated to Mr. Fishback that "his failure 'to make himself more valuable to the firm' had 'left himself with a smaller margin of error," as alleged in ¶ 34 of Your Complaint.

12.      All Documents and Communications supporting Your allegation in ¶ 36 that "Mr. Fishback's substandard performance continued into 2022."

13.      All Documents and Communications supporting Your allegation in ¶ 36 that "in the first quarter of 2022, Fishback made careless errors in his own work on multiple occasions, but attempted to blame others in order to avoid personal accountability."

14.      All Documents and Communications concerning, regarding, or relating to the incident in January 2022 regarding a macro derivative transaction executed by Mr. Fishback in which Mr. Fishback allegedly "sent an email with the details of the trade to Greenlight's operations staff informing them that the required initial margin for the transaction was $1.4 million," but "the counterparty had requested $4.1 million of initial margin," as alleged in ¶ 36 of Your Complaint.

15.      All Documents and Communications concerning, regarding, or relating to the transaction discrepancy, as alleged in ¶ 38 of Your Complaint.

16.      All Documents and Communications in which Mr. Fishback stated that the discrepancy was a "bank error," as alleged in ¶ 39 of Your Complaint.

17.    All Documents and Communications supporting Your allegation that "[a]fter the notational amount of the trade had changed, the counterparty had correctly recalculated the amount of the required initial margin of $4.1 million," as alleged in ¶ 39 of Your Complaint.

18.    All Documents and Communications supporting Your allegation that Greenlight provided Mr. Fishback with notice that he was not meeting expectations in 2022, as alleged in ¶ 40 of Your Complaint.

19.    All Documents and Communications reflecting Mr. Fishback's formal year-end performance assessment for 2022, as alleged in ¶ 41 of Your Complaint.

20.    All Documents and Communications supporting Your allegation that Mr. Fishback's performance issues persisted into 2023, as alleged in ¶ 45 of Your Complaint.

21.    All Documents and Communications supporting Your allegation that Incubate Debate was interfering with Mr. Fishback's job duties at Greenlight, as alleged in ¶ 45 of Your Complaint.

22.    All Documents and Communications supporting Your allegation that "on April 13, 2023, Greenlight learned for the first time that Fishback was managing five full-time employees at Incubate Debate," as alleged in ¶ 46 of Your Complaint.

23.    All Documents and Communications supporting Your allegation that Mr. Fishback's failure to disclose his efforts with Incubate Debate was in "violation of [Greenlight's] internal compliance and conflicts policies that require disclosure of such outside engagements," as alleged in ¶ 46 of Your Complaint.

24.    All Documents and Communications between senior management at Greenlight and Mr. Fishback regarding Mr. Fishback's involvement with his personal endeavors and the impact of that involvement on his performance at Greenlight, as alleged in ¶ 47 of Your Complaint.

8

25.     All Documents and Communications supporting Your allegation that "Fishback acknowledged that Greenlight's criticisms were valid, and apologized and communicated that he had resolved the issue by hiring an executive director for Incubate Debate that would be starting soon," as alleged in ¶ 48 of Your Complaint.

26.     All Communications between Mr. Einhorn and Mr. Fishback in or around May 29, 2023, where Mr. Einhorn "pointed out that Fishback had failed to provide a daily email summary of macro events that Mr. Einhorn had requested and stated that it appeared Fishback had ignored his direction," as alleged in ¶¶ 49-50 of Your Complaint.

27.     All Communications between and among Mr. Einhorn, Mr. Fishback, and Mr. Roitman regarding Mr. Fishback's performance at Greenlight, including, without limitation,  Mr. Einhorn's and Mr. Roitman's "doubts" that Mr. Fishback was working as a full-time employee, as alleged in ¶ 51 of Your Complaint.

28.     All Documents and Communications supporting Your allegation that Mr. Fishback was on "thin ice" in or about June of 2023, as alleged in ¶ 52 of Your Complaint.

29.     All Documents and Communications regarding the "Jelly Donut Assignment," as referenced in ¶¶ 54-58 of Your Complaint.

30.     All Documents and Communications regarding the contemplated, potential, or actual decision to terminate Mr. Fishback's employment.

31.     All Documents and Communications regarding the Zoom call that was scheduled for Monday, July 31, 2023, as alleged in ¶ 59 of Your Complaint.

32.     All Documents and Communications regarding Mr. Fishback's resignation from Greenlight, and/or Mr. Fishback's reason(s) for resigning.

9

33. All Documents and Communications regarding Mr. Fishback's resignation email, as alleged in ¶ 62 of Your Complaint.

34. All Documents and Communications regarding the part-time consulting arrangement between Mr. Fishback and Greenlight before he became an employee of Greenlight.

35. All Documents and Communications regarding Mr. Fishback's alleged intent to use Greenlight's reputation and Confidential Information to "jumpstart his own venture," as alleged in ¶ 63 of Your Complaint.

36. All Documents and Communications supporting Your allegation that Mr. Fishback disclosed any Confidential Information to any third-party.

37. All Documents and Communications supporting Your allegation that Mr. Fishback disclosed any information to any third-party, which information was not known or disclosed outside of Greenlight prior to its alleged disclosure by Mr. Fishback.

38. All Documents and Communications supporting Your allegation that any Confidential Information that is the subject of Your claims in this lawsuit was not known or disclosed outside of Greenlight prior to its alleged disclosure by Mr. Fishback.

39. All Documents and Communications supporting Your allegation that Mr. Fishback sent Confidential Information to his personal email accounts, as alleged in ¶ 65 of Your Complaint.

40. All Documents and Communications reflecting Mr. Fishback's titles, roles, and responsibilities at Greenlight.

41. All Documents and Communications regarding the Citi Conference, referenced in ¶¶ 66-71 of Your Complaint.

42.    All Documents and Communications concerning, regarding, or relating to Mr. Fishback's alleged intention to use Azoria to directly compete with Plaintiffs, as alleged in ¶ 72 of Your Complaint.

43.    All Documents and Communications relating to Plaintiffs' alleged discovery that "on August 15, 2023… Fishback forwarded an 'End of Day Package' that had been circulated internally at Greenlight on July 28, 2023… to his personal non-Greenlight email address from his Greenlight email account.

44.    All Documents and Communications supporting Your allegation that the information in Mr. Fishback's "End of Day Package" was confidential.

45.    A copy of the End of Day Package.

46.    All Documents and Communications concerning, regarding, or relating to any investigation into Mr. Fishback's alleged retention of Confidential Information, as alleged in ¶¶ 76-77 of Your Complaint.

47.    All Documents and Communications concerning the public statements that Mr. Fishback made since leaving Greenlight that purportedly show that Mr. Fishback still has possession of Plaintiffs' confidential information, as alleged in ¶ 78 of Your Complaint.

48.    Any and all drafts of the August 15, 2023 letter that Mr. Roitman sent to Mr. Fishback, as alleged in ¶ 79 of Your Complaint.

49.    All Documents and Communications regarding the August 15, 2023 letter that Mr. Roitman sent to Mr. Fishback, as alleged in ¶ 79 of Your Complaint.

50.    All Documents and Communications regarding Mr. Fishback's role as Greenlight's head of macro (or any similar role or title).

11

51. Documents and Communications sufficient to show who else at Greenlight, if anyone, worked on macro investing during the timeframe that Mr. Fishback worked for Greenlight, and the nature of those individuals' macro investing work.

52. All Documents and Communications regarding the GLG event referenced in ¶¶ 80-81 of Your Complaint.

53. All Documents and Communications concerning, regarding, or relating to Mr. Roitman's decision to tell GLG that Mr. Fishback was the head of macro at Greenlight.

54. All drafts of the October 11, 2023 letter referenced in ¶ 84 of Your Complaint.

55. All Documents and Communications concerning, regarding, or relating to the October 11, 2023 letter referenced in ¶ 84 of Your Complaint.

56. All drafts of the October 19, 2023 letter referenced in ¶ 85 of Your Complaint.

57. All Documents and Communications concerning, regarding, or relating to the October 19, 2023 letter referenced in ¶ 85 of Your Complaint.

58. All Documents and Communications concerning, regarding, or relating to Mr. Fishback's alleged "threat" to attend Greenlight's annual dinner, as alleged in ¶¶ 91-94 of Your Complaint.

59. All letters sent to Mr. Fishback or to Mr. Fishback's counsel relating to Mr. Fishback's alleged threats, as alleged in ¶ 95 of Your Complaint.

60. All Documents and Communications regarding Mr. Fishback's alleged attempt to "hoodwink" the hosts of the "Wall Street Skinny" podcast by extending an invite to Mr. Einhorn to debate Mr. Fishback on their podcast, as alleged in ¶ 96 of Your Complaint.

61. All Documents and Communications relating to the Wall Street Skinny Podcast invitation.

62.     All social media posts relating to the Wall Street Skinny Podcast invitation, as alleged in ¶¶ 97 and 100 of Your Complaint.

63.     All Documents and Communications supporting Your allegation that Mr. Fishback approached Ms. Saarbach regarding the debate, as alleged in ¶ 98 of Your Complaint.

64.     All social media posts relating to Greenlight's investment positions in Tesla, as alleged in ¶ 99 of Your Complaint.

65.     All Documents and Communications relating to the "Forward Guidance Podcast," and any Confidential Information that was allegedly disclosed on that podcast, as alleged in ¶ 102 of Your Complaint.

66.     All Documents and Communications regarding Mr. Fishback's alleged statements about Plaintiffs' positions or investments, as alleged in ¶ 104 of Your Complaint.

67.     All Documents and Communications relating to the authority Mr. Fishback had to make trades while employed by Greenlight.

68.     All Documents and Communications relating to coverage by any media outlets about the dispute between Mr. Fishback and Mr. Einhorn, and/or other Greenlight personnel, as alleged in ¶ 106 of Your Complaint.

69.     All Documents and Communications relating to the "harm to Greenlight," allegedly caused by Mr. Fishback's statements to the media, as alleged in ¶¶ 107-109 of Your Complaint.

70.     To the extent not produced in response to the foregoing requests, all Documents or Communications concerning Mr. Fishback's job performance at Greenlight including, without limitation, any formal performance reviews or informal analysis of or discussion about his performance.

71.     To the extent not produced in response to the foregoing requests, all Documents or Communications concerning Mr. Fishback's profitability at Greenlight including, without limitation, any formal performance reviews or informal analysis of or discussion about his profitability.

72.     To the extent not produced in response to the foregoing requests, all Documents or Communications concerning the trade in which Mr. Fishback was involved at Greenlight including, without limitation, any formal or informal analysis of or discussion about those trades and their value to Greenlight.

73.     To the extent not produced in response to the foregoing requests, all Documents and Communications concerning, regarding, or relating to Greenlight's Confidential Information allegedly in the possession of or disclosed by Mr. Fishback.

74.     To the extent not produced in response to the foregoing requests, all Documents or Communications referenced or cited in Your Complaint.

75.     To the extent not produced in response to the foregoing requests, all Documents or Communications supporting, corroborating, or evidencing any damages that You seek in connection with this action.

76.     To the extent not produced in response to the foregoing requests, all Documents that You intend to introduce as evidence or otherwise use in connection with any dispositive motion or at trial of this action.

Dated: February 14, 2025

**ABRAMS FENSTERMAN, LLP**

By:  */s/ Justin T. Kelton*
Justin T. Kelton
Mordecai Geisler
Amanda P. Small
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
Tel: (718) 215-5300 x 501
Fax: (718) 215-5304
Email: jkelton@abramslaw.com
Email: mgeisler@abramslaw.com
Email: asmall@abramslaw.com
*Attorneys for Defendant James T. Fishback*

TO:    **AKIN GUMP STRAUSS HAUER & FELD LLP**
Stephen M. Baldini, Esq.
One Bryant Park
New York, NY 10036
Tel: 212-872-1000
Fax: 212-872-1002
sbaldini@akingump.com
*Counsel for Plaintiffs Greenlight Capital,*
*Inc. and DME Capital Management, LP*