UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GREENLIGHT CAPITAL, INC., et al,

Plaintiff,

v.

24 Civ. 4832 (PAE)

JAMES T. FISHBACK,

Conference

Defendant.

------------------------------x

New York, N.Y.
September 4, 2025
11:02 a.m.

Before:

HON. PAUL A. ENGELMAYER,

District Judge

APPEARANCES

AKIN GUMP STRAUSS HAUER & FELD LLP (NYC)
Attorneys for Plaintiff
BY: STEPHEN BALDINI
DANIEL SLEMMER

ABRAMS FENSTERMAN FENSTERMAN EISMAN FORMATO FERRARA AND WOL
Attorneys for Defendant
BY: JUSTIN KELTON

THE COURT: Good morning, everyone. I'm calling the case of *Greenlight Capital, Inc., et al. v. James T. Fishback*. 24 cv. 4832.

Who do I have for the plaintiffs, which I'll refer to as Greenlight?

MR. BALDINI: Good morning, your Honor. Steve Baldini, Akin Gump, and with me is my colleague Daniel Slemmer.

THE COURT: Good morning to you, Mr. Baldini. And good morning to you, Mr. Slemmer.

And who do I have for the defendant Mr. Fishback?

MR. KELTON: Good morning, your Honor. I'm Justin Kelton from Abrams Fensterman for James Fishback.

THE COURT: Good morning, Mr. Kelton. And good morning as well to our court reporter.

Let me begin, Mr. Kelton, by confirming on the record that your client, as indicated in the written correspondence, has foregone his bid to proceed pro se and that you are remaining as his retained counsel?

MR. KELTON: Yes, Judge.

THE COURT: Very good. Very happy to have you in that role.

MR. KELTON: Thank you very much, your Honor. Happy to be here.

THE COURT: With that, we have a few orders of business to take up, and I propose to proceed in the following

order.

The bigger picture question here involves the summary judgment briefing process and the implications for it of the letter I received yesterday by Mr. Kelton, to the effect that Mr. Fishback wishes to, as it's put in the letter, waive his potential defenses and so forth.

After we work through all of that, there's a separate issue involving certain discovery items and redactions, which we'll take up, but it seems to me that that is probably best deferred until we've taken up the big picture issue.

So, Mr. Kelton, I want to make sure I understand what it is your client is offering to do. The plaintiff is proposing to move for summary judgment as to liability. You are offering, as I understand it, to effectively not oppose that motion, and beyond that, to concede, or exceed, to the entry of the injunctive relief that is sought.

MR. KELTON: Yes, Judge.

THE COURT: Do I have all that right?

MR. KELTON: Yes, your Honor.

THE COURT: Okay. And, from your perspective, what that would then leave up would be the issue of money damages. And based on the colloquy at our July conference, you understand money damages to be limited to attorneys' fees?

MR. KELTON: Correct, Judge.

THE COURT: Okay. And then assuming that this works

out as you're envisioning, I would then be setting up a mechanism by which the fees issue could be litigated?

MR. KELTON: Yes, Judge.

THE COURT: So let me then turn to you, Mr. Baldini. I assume this is good news.

MR. BALDINI: It would appear to be, your Honor, yes.

THE COURT: All right. So, look, I want to work with all of you.

MR. BALDINI: Yeah.

THE COURT: Let me ask you to move a little bit over so I can see.

MR. BALDINI: Sorry.

THE COURT: Yeah, why don't -- solved by Mr. Kelton having relocated. So you, Mr. Baldini, are welcome to resume your position.

MR. BALDINI: Okay.

THE COURT: I want to just work through this with you.

What I have in mind is that the form that this relief should take should be a stipulation between the parties that effectively installs a finding of liability by Mr. Fishback on all the open claims, and grants the injunctive relief requested.

I don't dare draft up something like that by myself. There's every possibility that, in the drafting, I would inadvertently leave something consequential out.

So what I would envision would be to set a deadline promptly by which the parties can enter such a stipulation, and if it is not entered by that date, I would have also set a briefing schedule for summary judgment so that we're not detained by any hiccup getting the -- with the stipulation.

Does that make sense?

MR. BALDINI: It does, your Honor. And if I could give you a little context, I think it will help.

THE COURT: Sure.

MR. BALDINI: And Mr. Kelton can jump up and down if I say anything that impinges on settlement negotiations.

THE COURT: Sorry. Come a little closer to the mic.

MR. BALDINI: If I say anything that impinges on settlement negotiations, but I will be very careful.

The way you are thinking about it is the way we are thinking about it as well. And we have discussed with Mr. Kelton a stipulation of that very nature, findings of fact and then a written injunction to which both parties would agree and submit to you jointly as an agreement.

There are, to my mind, just two flies in that ointment. The first fly is, as we were leaving for court this morning, we received a markup of the draft that we have been working on. We haven't had a chance to review it yet. One of our client's principals is overseas until next week. So for the next couple of days, it'll be a little bit up in the air as

to whether -- how close we are to being able to agree to something. But I suspect with you giving us a deadline, that will allow us to work through that process and see if we can reach agreement or not.

THE COURT: May I ask you, just before we go any farther, perhaps it's just because the letter from Mr. Kelton is a short form letter, but I understood him to be exceeding to what you had requested in your letter. It says that the defense will not oppose the injunctive relief requested by plaintiffs in their letter. At least that formulation didn't suggest that this is a matter of negotiation. It sounded as, that it was intended to exceed to what has already been requested by plaintiffs to the Court.

MR. BALDINI: I think so. Again, so just the way you had framed it is the way we were thinking about it. A section of finding of facts that form the basis of the written injunction.

I don't -- I haven't had a chance to review it because it just came in. I don't understand that there are suggested changes to the injunctive relief, but I think we are going to negotiate over the findings of fact and what's in there and what's not.

THE COURT: I see.

MR. BALDINI: So I said there were two flies in the ointment. The first is we just haven't had a chance to look at

the revisions to that section.

THE COURT: And they may or may not be consequential.

MR. BALDINI: Correct. The second fly is -- and I don't want to jump ahead of you -- but we do have this motion to compel. To the extent that the Court is inclined to compel production of any of those texts, it's possible that some of the substance of those texts need to be put into the findings of fact. Does that make sense?

THE COURT: Theoretically.

MR. BALDINI: Theoretically. And I don't know because I'm swinging in the dark a little bit upon that issue. It's theoretically that they might not. And it's also theoretical that you will say they're properly redacted and go about your business.

THE COURT: Right.

MR. BALDINI: I, just, I don't know.

THE COURT: Okay. What timeframe do you have in mind for a deadline that I would set by when the stipulation we'll call it, that includes findings of fact and injunctive order, what deadline did you have in mind?

MR. BALDINI: Couple of weeks, your Honor. I'm sorry to be a little bit vague on that, just because I haven't had a chance to talk with the client.

THE COURT: Okay. Look, today is, what, September the 4th. Let us say two weeks from Friday, something like that,

September 19th.

MR. BALDINI: Sure.

THE COURT: As a working date.

MR. BALDINI: That works.

THE COURT: So supposing I was to set a deadline of September 19th for the stipulation, what I would have in mind would be as follows, which would be to set a summary judgment briefing schedule that would trip off the assumption that you weren't able to get to yes by September 19th.

But I want to set a fairly aggressive schedule, frankly, to keep the pressure on, and also because Mr. Kelton's letter, you know, implies that there really isn't a lot of daylight on the important issues here. I would have in mind something like two weeks, two weeks, one week, or thereabouts. And the ideal here would be to use the same schedule in the event you do reach agreement on the injunction to litigate what I take it to be the fees issue that is outstanding.

And so before we commit to a schedule, I wanted you to understand that that's what I had in mind so that you know what you'd be buying into.

Therefore, let me take up the fees issue just to understand what it looks like. To begin with, Mr. Baldini, at the conference we had in July, you had indicated that as to money damages, you were limiting yourself or expected to limit yourself just to attorneys' fees. That whether or not, you

know, with all the world and time you could have proven up some other form of damages, you were refraining from doing so.

Is that still your intention?

MR. BALDINI: It is. Correct, your Honor.

THE COURT: So the only money damages here that you would pursue would be attorneys' fees?

MR. BALDINI: Correct.

THE COURT: And are those attorneys' fees limited to work in connection with this federal case? Or is there some theory under which fees in connection with something else would be countable?

MR. BALDINI: Yes, your Honor. They are limited to this case. As you know, there are a number of disputes among the parties and we have done our best to sequester those disputes into different buckets.

THE COURT: Okay. I mean, in other words, I understand that at some point or other there have been other proceedings brought or contemplated. You're telling me that you have segregated your work streams such that the fee request here would be limited to the federal case before me?

MR. BALDINI: Correct.

THE COURT: All right. And is the nature of the fee entitlement under the contract here as simple as the reasonably incurred hours, times the reasonable billing rate of the lawyer or paralegal, plus out-of-pocket disbursements, or is there

something more to it?

MR. BALDINI: I believe that's correct, your Honor. That's certainly what we would contemplate a fee application that involves submission of bills, with hourly rates, time spent, and disbursements, et cetera.

THE COURT: Is there any room in that analysis for an assessment of intentionality, vexatiousness, frivolity, or, at the end of the day, is it really just a reasonable math exercise?

MR. BALDINI: We've gone through this exercise before in another proceeding with the defendant. Mr. Kelton is entitled to object as unreasonable billing rates, unreasonable amount of time. I can't remember the full nature of his objection, but it wasn't tabular as to this number is too high it should be lower. He was permitted to go through the bills.

THE COURT: Oh, no, of course. But that's true whether a fee dispute --

MR. BALDINI: Yeah.

THE COURT: -- is based on a prevailing party statute, which I have all the time, where somebody is one in a Fair Labors Standards Act or a civil rights case. Or here, where the attorneys' fees are a contractual entitlement.

I'm really trying to understand a little more what would be -- what I would be doing here. I fully expect that there would be some disputes about whether somebody's rate is

unreasonably high.

MR. BALDINI: Yeah.

THE COURT: Or whether some work was unreasonably undertaken by your law firm. That's the standard debate and I'll sort that out issue by issue.

But there's a reason I'm asking this. Can you envision a world in which Mr. Fishback's state of mind, his intentionality, his litigation tactics, any of that stuff plays any role in the fee calculation exercise?

MR. BALDINI: I can. I can.

THE COURT: What is that?

MR. BALDINI: For this reason. I think what you will find -- and, again, I'm getting far ahead of ourselves until we actually make the application. But I think what you will find is to the extent there's dispute about the amount of time spent, the avenues that were run down, et cetera, we will contend that to the extent there's pushback on the amount of discovery, chasing down this, third-party discovery and the like, that that was the result of Mr. Fishback's failings, Mr. Fishback's improper actions, et cetera, that caused us to do the work that we need to do in a methodical matter to get to the point that we are right now.

Does that answer your question?

THE COURT: Yes. This begins to bleed over a little bit into the redaction issue, and take as an assumption that

the redactions would shed light at various points on Mr. Fishback's state of mind or reasons for sharing certain documents with certain nonlawyers. And the question is whether any communications of that nature, insofar as they weren't shared with you at the time you were making any legal staffing or strategic decisions, whether there's any world in which that could bear on the fee award.

Where I'm going is I'm trying to figure out, in thinking about the redactions issue, if you've in fact successfully resolved this case by means of a stipulation and entry of an injunction, and the only issue is the fee award, whether there's a world in which communications unbeknownst to you by Mr. Fishback with others could have any bearing on the fee award.

MR. BALDINI: So I'm going to try as best as I can to answer your question by giving you a concrete example. Okay.

So in the course -- when we last came to you, we said that we had nine open issues, give or take, on discovery. We've narrowed it down, as you can see, to one. It's been a very iterative meet-and-confer process. We tried to keep it off your bench, but...

THE COURT: It's appreciated.

MR. BALDINI: But it reached an impasse. One of the issues was other text messages. And in other text messages, we saw communications that we previously hadn't seen between

Mr. Fishback and his father that bore directly upon some of the issues that you see in the complaint, what we are calling the fraudulent reference check, and discussions among them about drafting the reference check and having somebody else send it and what they could get out of Greenlight from doing it.

So that caused additional work for us, because we looked into it. We had to see where it would fit into our summary judgment. We had to see where it would fit into our findings of fact. We had to check the, you know, the law around it, et cetera. And it also sort of bears on the issue in front of you on the motion to compel, is this a representative of the client -- of the party, is this work product, and the like.

So that's the best way I can say to you, yes, some of these issues have caused us additional work. If that makes sense.

THE COURT: In other words, there's a world in which if there's a debate about the validity of your undertaking certain work, you might be potentially assisted by such insight as might be given in terms of the commentary that Mr. Fishback gives in sharing quote, unquote work product with people outside the privilege umbrella?

MR. BALDINI: You said it much better than I did.

THE COURT: Okay. All right. Let me come back to you, Mr. Kelton.

First of all, on the schedule, just to begin with, is it reasonable to set September 19th as a deadline by which the parties will enter into a stipulation as to facts and injunctive relief?

MR. KELTON: Yes, Judge, on that point. But with respect to the later deadline, if I could just refer to my calendar on my phone. I have a trial in October and I don't remember exactly the dates.

THE COURT: Okay. Fair enough. I'll certainly give you that opportunity.

On the redactions issue, I want to just make sure I'm appreciating the relationship between these points.

Mr. Baldini says, look, there's a world in which if he's allowed to see the material that has not been produced, it potentially could bear on a factual stipulation between the parties.

Having no idea what the factual stipulations are going to look like, I'm not in a position to gauge based on my review of the redacted materials whether that's possible or not. But I'm giving you an opportunity to respond.

MR. BALDINI: You know, obviously I have seen the redacted materials and I don't think it's going to have any impact on the liability, the findings of fact, or anything else. I guess that's what I would say about that.

THE COURT: What about the separate issue of whether

it might have some bearing potentially on some aspect of the fee dispute?

MR. KELTON: Again, I don't think it -- I don't think it will. I mean, we did have a fee motion between these parties before in a prior federal lawsuit, and, you know, the things that we looked at were what your Honor referred to as sort of the standard things, the hourly rates number of hours spent, staffing, whether -- I'll just give your Honor an example because it's at the top of my head.

I remember that there was one deposition in that case of Mr. Fishback, and the prep time for that deposition was quite a lot, and so we objected to that.

We may see a similar thing here. I don't know. But I know these lawyers work very hard, so it's possible that there are a lot of hours.

THE COURT: Do you have any -- without sharing the number -- do you at this point have a ballpark understanding of what the likely fee request is to be?

MR. KELTON: I do not, no.

THE COURT: Okay. Look, on the redaction issue, it would have been my expectation -- just one moment. To give you an opportunity to submit a letter that addresses the applicability of what I take it is really the work product privilege not the attorney/client privilege --

MR. KELTON: Right.

THE COURT: -- with respect to each text message. I appreciate because there are multiple factors that that doctrine implicates, it's not as simple as were draft legal materials shared with people outside the privilege umbrella. There's a little more to it than that, and I want to make sure you have an opportunity, which you haven't yet had, to brief that before I make a decision. I'm certainly not going to rule today. At the same time, I would like to get that over with quickly because if plaintiff's counsel is destined to receive some or all of that material, the sooner he gets it, the sooner if it has any relevance to your factual stipulations, he can factor that in.

How quickly would you be able to get me a letter that applies, from your perspective, the work product doctrine to the redactions here?

MR. KELTON: So, your Honor, today is Thursday. If I could submit it Monday, that would be great.

THE COURT: And you'll file it with me, and then making such redactions as are appropriate so that, you know, for the public and for plaintiff's counsel, so that the underlying material isn't revealed to them.

MR. KELTON: Yes, Judge. So I just have a question about that procedurally.

So what I was envisioning initially when I thought about this letter was more, you know, case citations, legal

argument, and sort of summaries of what's in this -- in redaction information without actually disclosing it. But if your Honor would like us to attach the redacted copies that we've provided or do something more than that, we're happy to do it.

THE COURT: On the theory that some argument you might make might reveal content, that if you prevail on the redactions, wouldn't be revealed, I'm offering you the opportunity to redact as necessary, but only as necessary, the portions of your analysis that are, you know, quoting or revealing too much.

MR. KELTON: Okay.

THE COURT: But September 8th is great. And then, Mr. Baldini, I want to give you an opportunity to respond. And what I'm trying to do is setup a short letter writing exchange so that my law clerk and I can promptly resolve the redaction issue with a little more time left on the clock in the event that if you receive anything from that process, it bears on the factual stipulations.

I will tell you that my own instinct on reading the material here is that it has greater potential to bear on some aspect of the fee analysis and less likelihood to bear on primary issues of liability. But you know the case better than I.

MR. BALDINI: Sure, your Honor. If you're asking us

to respond, we will do so in very short order, within a day or two, whatever.

THE COURT: All right. So if the defense letter, if it comes in on September 8th, can I get a letter from you on September 10th?

MR. BALDINI: Yes.

Sorry.

THE COURT: Why don't you...

MR. BALDINI: Can we?

Yes.

THE COURT: Right. That was the right thing to do, to consult.

MR. BALDINI: Sorry.

THE COURT: Very good. So let's go with September 8th and September 10th.

Mr. Kelton, I don't need a reply on this. This is simple enough. And I'll have, I expect, a decision on this that will be by order and rather brief. It will be an up or down, or a part up and a part down. But it will be short and sweet and resolve the issue. And, Mr. Kelton, to the extent you're obliged to produce some or all of the redacted material, I expect you to do it forthwith --

MR. KELTON: Sure.

THE COURT: -- to Mr. Baldini so he can factor it in.

Mr. Baldini, I don't think this is going to rock your

world if you get any of this material. So just as you and your client prepare, I think you can probably safely assume that this is more at the margin than game changing and more than likely to have something to do with a dimension of the fee analysis than, you know, an "ah ha" moment as to liability.

MR. BALDINI: Appreciate it, your Honor. Thank you.

THE COURT: So I will endeavor then to get you an answer on the reactions shortly after September 10th.

Mr. Kelton, why don't you check your calendar now as to a summary judgment briefing schedule. And before you start doing that, let me just say, what I'm intending is that that schedule would, assuming a stipulation, become the schedule for briefing on the fee issue.

In each event, whether it's a summary judgment motion or a fee application, I'm expecting a trilogy of briefs with the plaintiff's opening brief with whatever factual support is necessary, the defendant's opposition, and a reply by the plaintiff.

MR. KELTON: Understood. Thank you, Judge.

THE COURT: Why don't you take a look at your calendar.

MR. KELTON: So, Judge, it looks like my trial, which is in New York County, a jury trial, scheduled to start October 6th. That's jury selection. And, you know, I'm guessing it could go, you know, two days of jury selection and

then possibly a week of trial. So maybe by -- it should be done by the end of the following week that ends the 17th.

So if it would be possible to get a little bit past that for the briefing so I could focus on it.

THE COURT: Sure. Happy to.

MR. KELTON: Thank you.

THE COURT: So let's suppose that your opposition brief is due say a week after the outside end of the trial. So say October 24th.

Mr. Baldini, could you get your opening motion, whether it's for summary judgment or fees, on October the 10th?

MR. BALDINI: Yes, your Honor.

THE COURT: If it's summary judgment, it'll be the usual, memo of law and 56.1 statement. In many cases, as both of you may or may not be aware, where a case is proceeding by summary judgment, I'll precede the opening brief by asking the parties to submit what we call a JSF, or jointly stipulated facts. That tends to benefit the Court by giving me a clear exposition of the undisputed facts and benefit the parties by thinning the herd in terms of your 56.1 statements.

MR. BALDINI: Yeah.

THE COURT: I'm not going to bother with that here. It seems to me sufficient and unlikely that we're going to get to that stage. And it seems that there's probably sufficient agreement on the facts here that I don't think asking you to go

through the regular 56.1 process is going to be a material add to your burden.

MR. BALDINI: Understood, your Honor. We're aware of that in your rules, and if we get to that point, I think this is going to be one of those instances where many of the facts are agreed to.

THE COURT: Are?

MR. BALDINI: Agreed to.

THE COURT: Yeah.

MR. BALDINI: Among the parties.

THE COURT: So I am trusting that the collegiality that has been evident here, between the two of you anyway, will be on display. So you might want to informally run by Mr. Kelton, you know, the statements you're going to be making in your 56.1 filing, just to --

MR. BALDINI: For sure.

THE COURT: -- make sure. And, look, you're also at liberty to jointly stipulate to facts. I'm thrilled if you choose to do that. I'm just not going to impose that extra burden. Seems probably not worth my imposing on you on that.

MR. BALDINI: Understood. Thanks.

THE COURT: So October 10th for the opening brief by the plaintiff. October 24th for the opposition by the defense. And then as to a reply, can I give you a week? If you've got some conflict, I'll give you more, but I would think a week

should otherwise be okay.

MR. BALDINI: It's okay with us, your Honor.

THE COURT: So October 31 for the reply.

To the extent that it is a, as is most likely going to be, a fees motion, anything out of the ordinary here? I resolve a lot of them in the context of prevailing party cases, but I take it it's the same exercise, it's just a contractual right.

MR. BALDINI: Correct. I don't think there's anything out of the ordinary, your Honor.

THE COURT: And so you'll be getting me your billing records. And when you say fees, I take it that includes out-of-pocket disbursements as well?

MR. BALDINI: Correct. Correct.

THE COURT: Okay. Can you, Mr. Kelton, envision anything out of the ordinary in that phase of litigation?

MR. KELTON: Not out of the ordinary, but for the fact that I could see the idea that Mr. Fishback offered to stipulate to injunctive relief a long time ago being relevant to the analysis.

THE COURT: In effect -- tell me more about that.

MR. KELTON: So, your Honor may recall we filed an offer of judgment. We shouldn't have filed it. It was stricken. But the offer of judgment was for the exact complete injunctive relief that was being requested in the case. And,

you know, plaintiffs chose, rather than to pursue that, to go forward with many more months of litigation and more many months of fees and costs. And Mr. Fishback may want to raise that in response to a fee application when you're talking about reasonableness.

THE COURT: I remember the fact of the offer of judgment. Remind me what caused it to be withdrawn, just refresh my memory.

MR. KELTON: So it was not withdrawn. It was rejected. But I think that the dispute was, at the time, Mr. Fishback was consenting to the relief, but Greenlight also wanted a specific finding of breach, and there was a dispute about that, I believe.

THE COURT: I see. And so you might make an argument, you're saying, that had Greenlight exceeded to exactly what was offered at the time, no finding of liability, but the entry of what you're saying would be substantively identical injunctive relief, a lot of time and money wouldn't have been spent?

MR. KELTON: It's possible, Judge.

THE COURT: And that Greenlight has not ultimately proven up any money damages other than its attorneys' fees and, therefore, the fee spigot should have either be treated as shutdown or reduced to a trickle after the date of that offer?

MR. KELTON: Yes.

THE COURT: As a preview, Mr. Baldini, what would your

response be?

MR. BALDINI: We are prepared to defend that argument.

THE COURT: Right. Understood. But what's the -- on what ground?

MR. BALDINI: We -- this is not Rule 68 issue. The offer of judgment was improper on its face. We rejected a settlement offer for good and valid substantive reasons. And those were reasons that were fundamental to what the client wanted.

We --

THE COURT: Meaning it was important to you to get a determination of liability?

MR. BALDINI: Correct.

THE COURT: And that that was never offered until now?

MR. BALDINI: Correct. And I think the discovery that has been taken since that time has proven to be extremely fruitful and very helpful to determining liability in this case.

THE COURT: And why is it that -- you'll have every opportunity to brief the issue. But why is it that the determination of liability, as opposed to a -- the entry of substantially the same injunctive relief but without an acknowledgment of liability, why does that matter to you?

MR. BALDINI: So for a few reasons. One is we assume that a finding of liability is going to be fundamental to the

entry of injunctive relief. Just from a procedural matter and being able to say to you, your Honor, in order for you to enter this injunctive relief, this is what it is based upon.

THE COURT: In other words, otherwise it's -- there isn't a basis for me to do it. You can agree to something, but if to the extent you want the imprimatur of the Court and the availability of a contempt sanction for its violation, I need to have the legal authority to impose it. And without the concession of the facts, I may not have it.

Is that your point?

MR. BALDINI: That is. And back when we were at a point where there was no concession of liability, that's what one of the things we were arguing about.

Secondly, this is an important business issue for the client. The client has other NDAs out there. The client has other employees out there. The client has a business reputation, et cetera, and needs to be able to demonstrate to the market that it was right and it enforces its rights and that it cares about its contracts and its confidentiality.

So that is something that the client is very interested in as well. And then, you know, as you said, this will go to the fees. We spent --

THE COURT: This will?

MR. BALDINI: This will go to the fee application.

We spent a good amount of time running liability down,

and a lot of that time was after the instances that we're talking about now.

THE COURT: Right. But, look, the issue that Mr. Kelton raises is one that sounds meaty, which is to say, was it reasonable in effect to turn away if in fact the offer was made, an offer of substantively identical injunctive relief but without a concession of liability, and there are multiple arguments you've foreshadowed now as why you contend it was reasonable.

One was I might not have had the legal authority to impose the injunction. Another is without establishing the liability, it may have disserved important business interests of your client or had some impact on the durability of the injunction.

In any event, I expect both of you to thoughtfully litigate that. That's obviously an important issue here.

MR. BALDINI: That's a, once again, a better assessment, a better statement than the way I framed it.

THE COURT: May I ask you, is it clear to you that the offer with respect to injunctive relief back then, back months ago, is the same as the injunctive relief that's sought now, or is there some daylight?

MR. BALDINI: Your Honor, I would have to check the records. I don't -- what I can tell you is at that point we had not gone through the exercise with Mr. Kelton of drafting a

proposed injunction. Whereas we now have done that.

So I can't say it's identical. I can say that, theoretically, Mr. Kelton was offering to negotiate injunctive relief. But we hadn't gotten into the guts of chapter and verse what that -- how that reads out.

THE COURT: So you may or may not have the argument available to you that it's conjectural, whether the injunctive relief that you hypothetically may get on September 19th or so, is coextensive with what had emerged from earlier negotiation?

MR. BALDINI: Correct.

THE COURT: Okay. Well, obviously food for thought.

All right. One moment, let me just confer with my law clerk.

Mr. Baldini, one of the thoughts that may be germane to me in ruling on the redactions will be whether there is any relevance to any of anything before -- any part of your negotiating or the fee application of what a person might conclude are hostile or vexatious attitudes.

Again, I'm not saying that I'm making that fact finding, but there's hypothetically grist on which somebody might draw a conclusion like that.

And one of the questions is, had this material been provided to you at an earlier date, would it have informed any part of your litigation judgment, might it have played any role in either the facts stipulated to or the way you're litigating

these issues and the like. And so I want to be careful not to reveal specifics, because Mr. Fishback has a right unless and until I override the redactions, for me not to reveal it. But, on the other hand, I want to get informed briefing.

You can reasonably draw the conclusion that you would view some of the communications here as indicative of attitudes like that. And I offer that to you because it will be useful for me to get your perspective as to whether communications that could be argued to reflect a litigant's attitude in that space is germane.

MR. BALDINI: It is, your Honor. And I don't have the ability to right now go through the specific portions. But you'll -- our complaint does discuss a vexatious litigation plan in order to wear Greenlight down and get ransom money out of Greenlight. But there are portions of our complaint that talk about the filing of actions in other matters, et cetera, in order to incur -- to put Greenlight on the heels and cause Greenlight to incur costs fighting those actions.

THE COURT: Would that have played any role in your insistence in holding Mr. Fishback to a finding of liability as opposed to accepting a settlement on a no-admit basis?

MR. BALDINI: For sure. Yes.

THE COURT: You should address that in your response --

MR. BALDINI: Yeah.

THE COURT: -- with respect to the redactions issue, because I need to give thought to how these communications fit in. One question is whether the analysis ought to be *nunc pro tunc* as to the time these ought to be produced or disclosed. And another separate issue is should I assess it under the current circumstances under which the parties are closing in on a settlement. But your analysis should help guide me as to whether --

MR. BALDINI: Yeah.

THE COURT: -- on either timing, there's some way in which documents of that nature would have assisted or potentially assisted the plaintiff.

MR. BALDINI: Thank you. Understood, your Honor.

THE COURT: And look, Mr. Kelton, insofar as Mr. Baldini will have the last word on that point, you're well counseled in your September 8th letter to take your best shot on that point as well.

MR. KELTON: Thank you.

THE COURT: You're welcome to try to explain to me why any premise that Mr. -- of an attitude like that by Mr. Fishback is incorrect. But it's probably worth your while to assume that a reasonable person might draw a conclusion along those lines, and then explain why it has no bearing on anything in this litigation.

MR. KELTON: Sure.

THE COURT: Okay. Very good. I'm going to go around the horn now to see if there's anything else. But, if not, I will be issuing an order that memorializes the dates we set.

Mr. Baldini.

MR. BALDINI: Your Honor, one question. The September 8th and September 10th letter, three pages, stick with your rules?

THE COURT: No. I want to give you a little more latitude because there may be a need for a document specific assessment.

So, look, keep it short.

MR. BALDINI: Yeah.

THE COURT: But I'm not putting a cap on it. But in particular for Mr. Kelton where he may want to go document by document, a little harder for you to do that, but I want to give you each a little more latitude.

So, no, I'm not going to cap you that way. Thanks for asking.

MR. BALDINI: Thank you, your Honor.

THE COURT: Anything else from you?

MR. BALDINI: No, sir.

THE COURT: Mr. Kelton, anything else from you?

MR. KELTON: No. Thank you, Judge.

THE COURT: Very good. Be well. This is very helpful. And, look, it's always worth saluting counsel who are

on the brink of at least very significant partial settlement. I applaud that. I appreciate counsel here working well together.

Mr. Kelton, I was delighted to learn that you were remaining in the case.

MR. KELTON: Thank you so much, your Honor.

THE COURT: Thank you. We stand adjourned.

(Adjourned)