UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

Greenlight Capital, Inc., DME Capital     :
Management, LP,     :

                                    :     Case No.: 24-cv-04832-PAE

               Plaintiffs,     :
                                      :

     – against –     :
                                      :

James T. Fishback,     :
                                      :

               Defendant.     :

-------------------------------------------------------------X

---

## DEFENDANT JAMES FISHBACK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

---

**ABRAMS FENSTERMAN, LLP**
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
Tel: (718) 215-5300
Fax: (718) 215-5304
*Attorneys for Defendant*
*James Fishback*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................................................................... 1

II. THIS CASE WAS NOT UNUSUALLY COMPLEX......................................... 2

III. APPLICABLE LEGAL STANDARD .............................................................. 5

IV. ARGUMENT AND AUTHORITIES................................................................ 6

    A. Plaintiffs Seek More Than Ten Times The Amount Awarded In Highly Similar Cases In This District............................................................................ 6

    B. A Reasonably Thrifty Client Would Have Opted For Less Costly Representation For A Case Of This Nature. .................................................................... 7

    C. The Requested Hourly Rates Of Up To $2,175/Hour Are Unreasonable For This Simple Contract Case Involving Zero Damages And Stipulated Relief................ 8

        1. The Requested Rate For Partners Is Excessive For This Type Of Matter. . 9

        2. The Requested Rates For Associates Is Excessive For This Type Of Matter. .................................................................................................. 11

        3. The Requested Rates For Support Staff Excessive For This Type Of Matter. .................................................................................................. 12

    D. Akin's Expenditure Of 1,411 Attorney Hours And Almost $2 Million On This Simple Contract Case Was Grossly Excessive. ..................................... 13

        1. Plaintiffs' Expenditure Of More Than $210,000 Before The Complaint Was Filed Was Excessive. ................................................................... 15

        2. Plaintiffs' Expenditure Of $30,730 To Amend Their Complaint Was Excessive.............................................................................................. 17

        3. For A Case Involving 14,000 Documents Produced And 3 Depositions, It Was Unreasonable To Spend More Than $1.1 Million On Discovery..... 17

            a. Plaintiffs Overspent on a Costly and Inefficient Approach To E-Discovery Management. ............................................................ 18

            b. Plaintiffs' Expenditure Of More Than $350,000 To Prepare For And Attend 12.7 Hours Of Depositions Was Excessive............... 19

            c. Plaintiffs' Spending On The Motion To Compel Was Excessive And Unnecessary. ....................................................................... 21

i

4.      The Court Should Exclude Time Spent By Plaintiffs On Their Never-Filed Motion For Summary Judgment. .............................................................. 21

5.      Plaintiffs' Fees And Costs Incurred In Connection With The Parties' Unsuccessful Private Mediation, Which Addressed Several Different Cases And Disputes, Should Be Excluded. ............................................... 22

6.      Plaintiffs Unreasonably Spent Attorney Time, At Top-Of-Market Rates, Performing Low-Level Administrative Tasks. .......................................... 23

7.      Plaintiffs' Fee Request Improperly Includes Work Related To Other Matters. .................................................................................................... 24

E.      Plaintiffs' Assertion That Mr. Fishback Caused This Case To Be Complex Is Meritless. ................................................................................................... 24

F.      The Court Should Deny Fees For Time Records That Are Block-Billed Or Vague. ........................................................................................................... 25

G.      The Court Should Deny Fees For Time Records That Are Redacted. .................. 26

H.      Plaintiffs Overstaffed This Matter, Warranting A Reduction. ............................. 27

I.      Plaintiffs' Fee Request Should Be Reduced Because They Failed To Obtain Any Damages, And Thus, Obtained Only Partial Success. .......................................... 28

J.      Plaintiffs Improperly Seek Fees-On-Fees. ........................................................... 30

K.      Plaintiff Improperly Seeks Reimbursement For Non-Compensable Or Unsupported Costs. ............................................................................................... 30

L.      Plaintiffs' Allegations About Conduct By Mr. Fishback Outside Of This Case Are Not Relevant To Plaintiffs' Fee Application. ....................................................... 32

V.      CONCLUSION ................................................................................................................ 35

**Cases**

*1979 Fam. Tr. Licensor, LLC v. Darji*,
    2020 WL 9596279 (S.D.N.Y. Sept. 30. 2020) ........................................................... 12

*Abraham v. Leigh*,
    2020 WL 5512718 (S.D.N.Y. Sept. 14, 2020) .......................................................... 13

*An v. Despins*,
    2024 WL 1157281 (S.D.N.Y. March 18, 2024) ....................................................... 10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008) ..................................................................................... 8

*ATX Debt Fund 1, LLC v. Paul*,
    2024 WL 2093387 (S.D.N.Y. May 9, 2024) ........................................................... 10

*Barfield v. New York City Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008) ................................................................................... 29

*Campbell v. Mark Hotel Sponsor, LLC*,
    2012 WL 4360011 (S.D.N.Y. Sept. 13, 2012) ................................................. 30, 34

*Carco Grp., Inc. v. Maconachy*,
    718 F.3d 72 (2d Cir. 2013) ....................................................................................... 5

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*,
    934 F.3d 238 (2d Cir. 2019) ................................................................................... 29

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*,
    2021 WL 1222159 (S.D.N.Y. Mar. 31, 2021) ....................................................... 26

*Crye Precision LLC v. Bennettsville Printing*,
    2019 WL 6388636 (E.D.N.Y. Aug. 13, 2019) ...................................................... 27

*Diamond D Enters. USA, Inc. v. Steinsvaag*,
    979 F.2d 14 (2d Cir. 1992) ................................................................................. 5, 29

*Essar Steel Algoma Inc. v. S. Coal Sales Corp.*,
    2023 WL 8530346 (S.D.N.Y. Nov. 17, 2023) ....................................................... 15

*EZ Pawn Corp. v. City of New York*,
    2024 WL 3431007 (E.D.N.Y. July 15, 2024) ........................................................ 32

*F.H. Krear & Co. v. Nineteen Named Trs.*,
 810 F.2d 1250 (2d Cir. 1987)................................................................. 30

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
 2025 WL 1901973 (S.D.N.Y. July 10, 2025) ........................................ 12

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
 2022 WL 413229 (S.D.N.Y. Feb. 9, 2022) ..................................... passim

*Francois v. Mazer*,
 523 F. App'x 28 (2d Cir. 2013)............................................................. 14

*Francois v. Victory Auto Grp. LLC*,
 2025 WL 2699991 (S.D.N.Y. Sept. 23, 2025) ............................ 11, 16, 17

*Ginsberg v. Valhalla Anesthesia Assocs., P.C.*,
 1998 WL 19997 (S.D.N.Y. Jan. 20, 1998)............................................. 32

*Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*,
 2020 WL 9762874 (S.D.N.Y. May 29, 2020)..................................... 8, 31

*Greyhawk Hawthorne Lender, LLC v. Vella*,
 2025 WL 2172228 (S.D.N.Y. July 31, 2025) ................................... 10, 11

*Gulino v. Bd. of Edu. of City School Dist. of City of N.Y.*,
 2022 WL 17478295 (S.D.N.Y. Nov. 30, 2022) ..................................... 13

*Gupta v. Headstrong, Inc.*,
 2020 WL 5764389 (S.D.N.Y. Sept. 28, 2020),
 *aff'd*, 2021 WL 4851396 (2d Cir. Oct. 19, 2021)................................. 29

*Gursslin v. City of Rochester*,
 2023 WL 11916331 (W.D.N.Y. May 11, 2023) ..................................... 20

*Gurung v. Malhotra*,
 851 F. Supp. 2d 583 (S.D.N.Y. 2012)..................................................... 5

*Holick v. Cellular Sales of New York, LLC*,
 8 F.4th 101 (2d Cir. 2022)..................................................................... 29

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*,
 291 F.Supp.3d 554 (S.D.N.Y. 2018)..................................................... 25

*Houston v. Cotter*,
 234 F. Supp. 3d 392 (E.D.N.Y. 2017).................................................... 27

*Hudson v. Am. Fed'n of Gov't Emps.*,
 2023 WL 4053394 (D.D.C. June 16, 2023) .......................................... 23

*Husain v. Springer*,
  579 F. App'x 3 (2d Cir. 2014) ........................................................................... 14

*IME Watchdog, Inc. v. Gelardi*,
  2024 WL 4287244 (E.D.N.Y. Sept. 25, 2024) ................................................... 32

*In re Agent Orange Prod. Liab. Litig.*,
  818 F.2d 226 (2d Cir. 1987) ............................................................................... 8

*Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*,
  397 F. Supp. 3d 482 (S.D.N.Y. 2019) ......................................................... 16, 22

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ........................................................................ 29, 34

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ............................................................... 14, 26, 30

*Lenzi v. Systemax, Inc.*,
  2025 WL 2774785 (E.D.N.Y. Sept. 10, 2025) ......................................... 16, 20, 22

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
  2022 WL 832025 (S.D.N.Y. Mar. 21, 2022) ..................................................... 20

*Lochren v. County of Suffolk*,
  344 F. App'x 706 (2d Cir. 2009) ....................................................................... 27

*LV v. New York City Dept. of Educ.*,
  700 F. Supp. 2d 510 (S.D.N.Y. 2010) ............................................................... 28

*Marchuk v. Faruqi & Faruqi LLP*,
  104 F. Supp. 3d 363 (S.D.N.Y. 2015) ................................................................. 5

*Marshall v. Randall*,
  2013 WL 12347282 (E.D.N.Y. Jan. 24, 2013) .................................................. 20

*Matusick v. Erie County Water Authority*,
  757 F.3d 31 (2d Cir. 2014) ......................................................................... 14, 26

*Medina v. Buther*,
  2019 WL 4370239 (S.D.N.Y. Sept. 12, 2019) ................................................... 23

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .......................................................................................... 23

*Morisseau v. Glob. A Brands, Inc.*,
  2025 WL 2109378 (S.D.N.Y. July 3, 2025) ...................................................... 12

*Mugavero v. Arms Acres, Inc.*,
    2010 WL 451045 (S.D.N.Y. Feb. 9, 2010) ............................................................ 20

*National Helicopter Corp. of Am. v. City of N.Y.*,
    1999 WL 562031 (S.D.N.Y. July 30, 1999) ......................................................... 28

*Ni v. Bat-Yam Food Servs. Inc.*,
    2016 WL 369681 (S.D.N.Y. Jan. 27, 2016) ......................................................... 15

*Osterweil v. Bartlett*,
    92 F. Supp. 3d 14 (N.D.N.Y. 2015) .................................................................... 27

*Penzo v. Consol. Edison Co. of New York, Inc.*,
    2024 WL 3966694 (S.D.N.Y. Aug. 28, 2024) ...................................................... 29

*Phyto Tech Corp. v. Givaudan SA*,
    2023 WL 1437714 (S.D.N.Y. Jan. 31, 2023) ..................................................... 2, 7

*Polk v. New York State Dep't of Corr. Servs.*,
    722 F.2d 23 (2d Cir. 1983) ................................................................................. 8

*Proimmune Co., LLC v. Holista Colltech Ltd.*,
    2024 WL 54281 (S.D.N.Y. Jan. 4, 2024) ............................................... 10, 13, 15

*Protoons Inc. v. Reach Music Publ'g, Inc.*,
    2016 WL 680543 (S.D.N.Y. Feb. 19, 2016) ........................................................ 27

*Santander Consumer USA, Inc. v. City of Yonkers*,
    2025 WL 2673773 (S.D.N.Y. Sept. 18, 2025) ............................................... 11, 12

*Sigalit v. Kahlon*,
    2025 WL 2831193 (S.D.N.Y. Oct. 6, 2025) ....................................................... 8, 9

*Simmonds v. N.Y.C. Dep't of Corr.*,
    2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008) ............................................. 1, 7, 30

*Simmons v. New York City Transit. Auth.*,
    575 F.3d 170 (2d Cir. 2009) ......................................................................... 4, 7, 33

*Stratakos v. Nassau County*,
    574 F. Supp. 3d 154 (E.D.N.Y. 2021) ................................................................. 14

*Swiss Skies AG v. Air Luxor, S.A.*,
    2010 WL 3219295 (S.D.N.Y. Aug. 13, 2010) ..................................................... 16

*Tatum v. City of New York*,
    2010 WL 334975 (S.D.N.Y. Jan. 28, 2010) ........................................................ 32

*Teradek LLC v. Shenzhen Hollyland Tech Co. Ltd*,
    2025 WL 1475604 (S.D.N.Y. May 22, 2025) ........................................................ 18

*Thor 725 8th Ave. LLC v. Goonetilleke*,
    2015 WL 8784211 (S.D.N.Y. 2015) ....................................................... 5, 6, 9, 13

*Top Jet Enterprises, Ltd. v. Kuloweic*,
    2022 WL 1184245 (S.D.N.Y. Apr. 21, 2022) ........................................................ 10

*Townsquare Media, Inc. v. Regency Furniture, Inc.*,
    2025 WL 903764 (S.D.N.Y. Mar. 25, 2025) ........................................................ 20

*U.S. for Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr.*
    *Corp.*, 95 F.3d 153 (2d Cir. 1996) ........................................................ 31

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
    2018 WL 3104631 (S.D.N.Y. May 24, 2018) ................................................ 23, 25

*VR Optics, LLC v. Peloton Interactive, Inc.*,
    2021 WL 1198930 (S.D.N.Y. Mar. 30, 2021) ........................................................ 13

*Wells Fargo v. 5615 N. LLC*,
    2023 WL 7394340 (S.D.N.Y. May 4, 2023) ................................................ 10, 11

*Wu v. Sushi Nomado of Manhattan, Inc.*,
    2024 WL 3650294 (S.D.N.Y. July 10, 2024) ........................................................ 24

*Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*,
    2024 WL 3409278 (S.D.N.Y. July 15, 2024) ........................................................ 10

Defendant James Fishback respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for attorneys' fees and costs (Dkt. Nos. 72-74).

## I.     <u>PRELIMINARY STATEMENT</u>

In this case, a multibillion-dollar hedge fund[1] retained a multibillion-dollar law firm[2] and spent almost $2 million to litigate a single contract claim against one individual, Mr. Fishback. Although Plaintiffs sought "substantial monetary damages" and "punitive damages," they proved none.  Moreover, while Plaintiffs asserted that Mr. Fishback was improperly using or sharing Plaintiffs' sensitive and confidential information, they never sought any interim relief throughout the proceedings, underscoring the lack of any ongoing violation or urgency.

Mr. Fishback repeatedly offered to stipulate to the full permanent injunctive relief requested by Plaintiffs.  Tellingly, they declined, preferring instead to continue litigating and incurring gargantuan fees and costs.  Plaintiffs made these strategic choices while operating with virtually limitless resources, with the goal of punishing Mr. Fishback by using a contractual fee-shifting provision to obtain an enormous money judgment despite the absence of any damages.

The central question on this motion is:  was Plaintiffs' extravagant expenditure *reasonable* for this case?  Clearly, it was not.  "[A] reasonably thrifty client . . . would have opted for less costly representation."  *Simmonds v. N.Y.C. Dep't of Corr.*, 2008 WL 4303474, at *4 (S.D.N.Y. Sept. 16, 2008).  A prudent client aims to spend the minimum amount required to effectively litigate a case.  Here, the almost $2 million spent is far more than the minimum required to obtain zero compensatory damages, zero punitive damages, and an injunction that was long unopposed.

---

[1]   https://fintel.io/i/greenlight-capital
[2]   https://www.akingump.com/en/insights/media-mentions/akin-achieves-record-financial-results-in-2024

Plaintiffs deployed a litigation approach that can be best described as maximalist, in everything from their choice of counsel and approval of some of the highest rates in the world, to preparing an overlength and overzealous complaint crammed with irrelevant allegations, to spending far more hours on projects than needed, to taking an inflexible my-way-or-the-highway approach to negotiations even after Mr. Fishback agreed to the injunction they sought, to pursuing a motion to compel completely irrelevant information even *after* Mr. Fishback had conceded the entire case. These optional decisions caused Plaintiffs to spend far more than the minimum needed for this simple contract case.

While Plaintiffs had the right to hire expensive counsel and pursue an aggressive "boil the ocean" litigation strategy costing a princely sum, no reasonable client seeking to spend the minimum necessary would agree to such spending for a case with no damages and stipulated relief.

Accordingly, Mr. Fishback respectfully submits that Plaintiffs' fee request is unreasonable and excessive by several multiples, and the Court should substantially reduce the requested award.

## II.   THIS CASE WAS NOT UNUSUALLY COMPLEX

Despite what Plaintiffs argue, this case was relatively simple and straightforward, centering on a single cause of action for breach of a confidentiality provision in an employment contract.[3] *See Phyto Tech Corp. v. Givaudan SA*, 2023 WL 1437714, at \*9 (S.D.N.Y. Jan. 31, 2023) (describing a similar case as "a standard and straightforward claim for the breach of a confidentiality provision.").

The factual discovery was limited, and there was no expert discovery, evidentiary hearing, or trial, as the case was resolved by stipulation. The motion practice was neither unusually extensive nor unusually complex. Aside from scheduling motions, it consisted of:

---

[3]   As noted above, Plaintiffs had asserted additional causes of action in their original complaint, but withdrew them from their Amended Complaint, leaving only a single claim for breach of contract.

1. Mr. Fishback's motion to dismiss various claims and compel arbitration (Dkt. No. 13), which Plaintiffs declined to oppose. Instead Plaintiffs amended their complaint (Dkt. No. 18), withdrawing all claims except the breach of contract claim.

2. Mr. Fishback's motion to strike irrelevant and prejudicial allegations from the Amended Complaint (Dkt. Nos. 19-20), which was granted in part and denied in part (Dkt. No. 24).

3. Plaintiffs' uncontested motion to strike Mr. Fishback's offer of judgment (Dkt. No. 34). This motion was four and a half pages, and consented to by Mr. Fishback (Dkt. No. 37).

4. Mr. Fishback's uncontested letter motion to proceed *pro se* (Dkt. No. 47), which was subsequently withdrawn. This was uncontested.

5. Greenlight's letter motion to compel production of certain documents (Dkt. No. 57), which was granted in part and denied in part.

Thus, of the five motions, three were unopposed, underscoring the fact that this action was neither heavily litigated nor complicated. The fourth motion, Greenlight's motion to compel, involved short letters that were not time-intensive, was made after Mr. Fishback already conceded to breach, an injunction, and liability for fees, and focused on irrelevant documents that the Court described as "more at the margin than game changing" and not "an 'ah ha' moment as to liability." (Tr. of Conf. Sept. 4, 2025 at 19:3-5). Both sides achieved partial victories. As for the fifth motion (Mr. Fishback's motion to strike prejudicial and irrelevant allegations from the pleading), that motion was necessitated due to Plaintiffs' overlength and overzealous pleading, and Mr. Fishback secured some of the relief he sought.

The true cause of the fees incurred by Plaintiffs was their unnecessarily heavy-handed approach to litigation, exemplified by their excessively broad 246-paragraph initial complaint, in which three of the four causes of action were quickly withdrawn after Mr. Fishback moved to dismiss them. Plaintiffs' 121-paragraph Amended Complaint was similarly inflated, and despite asserting only a single contract claim, it too was filled with unnecessary allegations. Neither of these tomes can reasonably be said to be anything close to "the ***minimum*** necessary" to plead a

single contract claim. *Simmons v. New York City Transit. Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (emphasis added). Plaintiffs' lengthy and expensive pleadings set the stage for an unnecessarily costly, scorched-earth campaign in which Plaintiffs vastly over-spent and over-litigated at every stage.

Mr. Fishback consistently sought an efficient, cost-effective resolution of this action. Right from the outset, Mr. Fishback requested a referral to a Magistrate for an early settlement conference, but Plaintiffs dismissed the idea, claiming settlement prospects were too remote to even try. (Dkt. No. 29 ("Defendant has expressed that he is interested in pursuing settlement negotiations, and he believes that a referral to a Magistrate or mediator for purposes of negotiations relating to the specific issues involved in this case would be beneficial. However, Plaintiffs have indicated that they are not interested in pursuing negotiations.")). When Plaintiffs indicated they would not join in a request for a settlement conference with a Magistrate (*id.*), Mr. Fishback made a unilateral request, reiterating his clear desire to settle this case despite Plaintiffs' refusals. (Tr. of Conf. Jan. 28, 2025 at 29:18-29:5 ("I would make a unilateral request. Mr. Fishback is very interested in a referral to, especially, a magistrate. . . . Mr. Fishback wants to resolve these cases . . . .")).

In addition to Mr. Fishback's repeated attempts to cooperate, his participation in this litigation was focused to an unusual degree on minimizing costs. While Plaintiffs ran up greater and greater fees at every turn, Mr. Fishback took a reasonable and moderate approach to litigation designed to streamline and minimize the process. Mr. Fishback waived his rights to take any depositions, made no discovery motions, and agreed to all stipulated findings and conclusions demanded by Plaintiffs.

In short, Mr. Fishback made repeated, reasonable, and diligent efforts to reduce the costs required to litigate this case, and he ultimately conceded the case entirely without even the need for a dispositive motion. By contrast, Plaintiffs showed virtually no interest in resolution, cooperation, or moderation, and instead maximized their spending wherever possible. Under these circumstances, Plaintiffs' request for nearly $2 million in attorneys' fees and costs is excessive and should be substantially reduced.

### III.  APPLICABLE LEGAL STANDARD

"[T]he touchstone for an award of attorneys' fees pursuant to a contract is reasonableness." *Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013). "Because a fee-shifting clause can produce perverse incentives for a litigant (and his attorneys), courts must scrutinize fee requests to ascertain whether they are reasonable." *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (citation omitted); *see also Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2022 WL 413229, at *6 (S.D.N.Y. Feb. 9, 2022) (same). These "perverse incentives" have been on full display in this action, and Mr. Fishback respectfully submits that Plaintiffs' outsized fee application warrants the Court's closest scrutiny.

Fee shifting is "not a license to expend limitless resources on litigation simply because the defendant foots the bill." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 370 (S.D.N.Y. 2015). The fact that Plaintiff negotiated or paid its lawyers based on a particular billing rate is not conclusive of the rate's reasonableness. *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596-97 (S.D.N.Y. 2012) ("The issue thus is not what well-heeled clients might be willing to pay, but the 'hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney' for the services that Gibson Dunn provided."); *Thor 725 8th Ave. LLC v. Goonetilleke*, 2015 WL 8784211, at *10 (S.D.N.Y. 2015) ("That [plaintiff] opted to pay the high rates requested by [its law firm] does not mean that the [defendants] should be required to

reimburse fees that exceed those which, based on the standards reflected in case law in this District, a reasonable objective client would be willing to pay."), *aff'd*, 675 F. App'x 31 (2d Cir. 2017).

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiffs Seek More Than Ten Times The Amount Awarded In Highly Similar Cases In This District.

Plaintiffs' fee application far exceeds what courts in this District award in cases closely mirroring this one. Two decisions in particular are exceptionally persuasive, as they involve similar claims for breach of contract, a similar scope of discovery, similar complexity, and similar duration.

The first is this Court's decision in *Thor*, 2015 WL 8784211, at *10. As here, *Thor* involved a breach of contract claim that "did not implicate exceptionally challenging questions of either law or fact" nor did it involve "hotly contested damages determinations." 2015 WL 8784211, at *10. In fact, like *Thor*, the parties stipulated to the amount of actual damages (here, zero). *Id.* In both *Thor* and this case, "relatively few documents were exchanged in discovery." *Id.* *Thor* involved four depositions, whereas this case involved only three. *Id.* Neither *Thor* nor this case proceeded to trial (*Thor* was resolved on a motion for summary judgment, while this case was resolved through stipulation). Both cases were resolved within 15 months of the commencement of the action. (*Compare Thor* at *10 *with* Dkt. Nos. 1 and 70 (the original complaint in this action was filed on June 25, 2024, and the Court issued the stipulated order resolving this action on September 24, 2025)). In *Thor*, this Court substantially reduced the plaintiff's fee application request, and approved a total of 463.3 attorney hours and a total of $165,544.78 in fees and costs.[4] *Id.* at *16.

---

[4] The comparison between this case and *Thor* is even more apt given that the partner and main associate in *Thor* had nearly the same number of years' experience as the partner and main associate here—Matalon (26 years) and Levy (5 years), as compared to Baldini (30 years) and Slemmer (5 years).

Next, there is *Phyto Tech Corp.*, 2023 WL 1437714, at *1.  Like here, *Phyto Tech Corp.* involved a cause of action for breach of contract based on alleged violation of a confidentiality agreement.  *Id.* at *2.  Like here, the plaintiff in *Phyto Tech Corp.* proved a breach of contract, but did not prove any damages.  *Id.*  Like here, the plaintiff in *Phyto Tech Corp.* was represented by a large global law firm (Dechert LLP) and the representation extended to multiple other disputes involving the same parties.  In *Phyto Tech Corp.*, the plaintiff's counsel reviewed over 20,000 documents in discovery, and here, they reviewed around 27,000.  Significantly, *Phyto Tech Corp.* proceeded past a motion for summary judgment, through a four day trial, and to post-trial briefing—and thus, went substantially further than this case.  Nevertheless, Judge Koeltl substantially reduced the plaintiff's request for $675,176.87 in fees and costs, instead approving only $105,882.91 in fees and expenses.  *Id.* at *14.

Here, Plaintiffs seek 10 to 17 times the amounts approved in *Thor* and *Phyto Tech Corp.*  Such a request is indefensible given the significant similarities between this case and *Thor* and *Phyto Tech Corp.*, and should be rejected for the reasons discussed below.

**B.**     **A Reasonably Thrifty Client Would Have Opted For Less Costly Representation For A Case Of This Nature.**

On a fee-shifting application, the governing test of reasonableness is objective: whether the plaintiff "spen[t] the minimum necessary to litigate the case effectively."  *Simmons*, 575 F.3d at 174 (citation omitted).  It is not dictated by a particular client's tolerance for spending.  *See Simmonds*, 2008 WL 4303474, at *4 (reducing fee award where "a reasonably thrifty client . . . would have opted for less costly representation").

This case involved "a standard and straightforward claim for the breach of a confidentiality provision."  *Phyto Tech Corp.*, 2023 WL 1437714, at *9.  Yet Plaintiff selected one of the largest and most expensive law firms in the world.

The Second Circuit has cautioned that fee awards must be "just high enough 'to attract competent counsel,'" but cannot produce windfalls to attorneys. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (*citing Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23 (2d Cir. 1983) and *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226 (2d Cir. 1987)). Plaintiffs' request for nearly $2 million in legal fees and costs to enforce a short and simple employment agreement in a procedurally uncomplicated case comes nowhere near meeting this requirement.

As set forth below, Plaintiffs' counsel's rates and hours expended are unreasonable for this type of matter and, therefore, are substantially in excess of the minimum necessary to litigate the case effectively.

C.  **The Requested Hourly Rates Of Up To $2,175/Hour Are Unreasonable For This Simple Contract Case Involving Zero Damages And Stipulated Relief.**

Plaintiffs' counsel seeks extraordinarily high hourly rates—up to $2,175/hour for partner Stephen Baldini and up to $1,310/hour for associates.[5] (Baldini Decl. ¶ 15). These would be among the highest hourly rates entertained in this District, even in the most recent matters. *Sigalit v. Kahlon*, 2025 WL 2831193, at *7 (S.D.N.Y. Oct. 6, 2025) ("Courts in this District have held that hourly rates ranging from $250 to $1,260 for attorneys practicing commercial litigation were reasonable.").

Rates approaching these may arguably be justifiable in multibillion-dollar bet-the-company litigation, cross-border disputes, or cases requiring rarefied expertise, but they are grossly excessive in a simple contract case involving one defendant, one cause of action, no experts, no

---

[5]  Akin's rates were apparently subject to a 10% discount, but even still, they are unreasonably high by a wide margin. *See Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, 2020 WL 9762874, at *8 (S.D.N.Y. May 29, 2020) (granting substantial reduction to fee request even though counsel applied a 10% reduction), *report and recommendation adopted*, 2020 WL 13823745 (S.D.N.Y. Aug. 4, 2020).

hearings, no trial, no money at stake (aside from Plaintiffs' self-determined attorneys' fees), and a stipulated injunction. All of these factors weigh heavily in favor of substantially reducing counsel's rates.

As this Court found in substantially reducing requested fees in a garden-variety contract case:

> As a threshold matter, based on the relevant factors—including the difficulty of the questions involved, the duration and trajectory of the litigation, and the lawyers' experience, ability and reputation, this case is not one in which higher than ordinary rates are warranted. It is a garden-variety breach-of-contract case. It did not implicate exceptionally challenging questions of either law or fact. Nor were there hotly contested damages determinations; rather, the parties, for the most part, stipulated to the amount of damages . . . . Further, relatively few documents were exchanged in discovery, only four depositions were held, the case did not proceed to trial, and the motions for summary judgment were resolved within 15 months of the commencement of the action. . . . [T]he circumstances of this relatively routine commercial landlord-tenant dispute present no basis for departing from the generally accepted rates in this District.

*Thor*, 2015 WL 8784211, at *10 (awarding $165,544.78 in attorneys' fees and costs).

While some recent decisions have approved unusually high rates in certain complex matters, those cases involved unique circumstances or particularly specialized expertise. This case, while requiring some diligence, was fundamentally a straightforward breach of contract action involving a confidentiality provision. It is more akin to standard employment litigation than complex bet-the-business matters.

## 1.    The Requested Rate For Partners Is Excessive For This Type Of Matter.

For partner Stephen Baldini, Plaintiff seeks hourly rates of up to $2,175 (subject to a 10% discount). This rate far exceeds what is reasonable, even for experienced commercial litigators in this District. *See Sigalit*, 2025 WL 2831193, at *7 ("Courts in this District have held that hourly rates ranging from $250 to $1,260 for attorneys practicing commercial litigation were reasonable."); *see also Greyhawk Hawthorne Lender, LLC v. Vella*, 2025 WL 2172228, at *2

(S.D.N.Y. July 31, 2025) (evaluating fee application from Kelley Drye & Warren LLP, and holding that partner rates between $936 and $1,095 "are unreasonably high, even for experienced partners."); *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, 2024 WL 3409278, at *6 (S.D.N.Y. July 15, 2024) ("Courts have recently held that hourly rates of $500 to $700 an hour are reasonable for experienced partners at large firms handling complex civil litigation.").

Indeed, Plaintiff's proposed rate for Mr. Baldini is substantially more than courts in this District generally award for straightforward contract cases like this one. *See, e.g.*, *Proimmune Co., LLC v. Holista Colltech Ltd.*, 2024 WL 54281, at *3 (S.D.N.Y. Jan. 4, 2024) (holding that partner rate of $895/hour "slightly exceeds the typical range for partners in breach of contract actions"); *Zero Carbon Holdings, LLC*, 2024 WL 3409278, at *6 (awarding $600 per hour for partners and $500 for counsel in commercial litigation); *Wells Fargo v. 5615 N. LLC*, 2023 WL 7394340, at *8 (S.D.N.Y. May 4, 2023) (awarding average hourly rate of $606 for partner work in mortgage foreclosure action); *Top Jet Enterprises, Ltd. v. Kuloweic*, 2022 WL 1184245, at *3 (S.D.N.Y. Apr. 21, 2022) (awarding $825 per hour for partners and $655 per hour for counsels who prevailed on post-judgment discovery motion in complex commercial case); *Flatiron Acquisition Vehicle, LLC*, 2022 WL 413229, at *14 (in case involving alleged breach of complex acquisition agreement, with long and involved procedural history, and which continued through trial, approving rates "from $742 to $910 for partners" at Pillsbury Winthrop Shaw Pittman LLP).[6]

---

[6]    The cases cited by Plaintiffs seeking higher rates were either more complex or involved higher stakes than this one.  For example, *ATX Debt Fund 1, LLC v. Paul*, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) involved 5 years of contentious litigation, spanning 264 docket entries, and resulted in $47 million in damages.  Unlike here, *ATX* involved counterclaims and third-party practice involving several third-party defendants, and there were disputes over jurisdiction, multiple motions for reconsideration, reargument, and to vacate, motions for summary judgment, and appellate practice.  And notably, Gibson Dunn billed $1.6 million—*less* than Akin billed here in only 15 months for a case with much lower stakes and far less complexity than *ATX*.  *An v. Despins*, 2024 WL 1157281, at *2-4 (S.D.N.Y. March 18, 2024) was also far more complex than this breach of contract case, involving claims of allegedly violating the Foreign Agents Registration Act.  There, the court approved higher rates because lead counsel, Greg Andres, had niche

In light of these authorities, and given the straightforward nature of this case, Mr. Baldini's rate should be reduced substantially.

### 2. The Requested Rates For Associates Is Excessive For This Type Of Matter.

For associates with between 2 and 5 years' experience, Plaintiffs seek rates of up to $1,310 (subject to a 10% discount). Those rates are more than courts in this District normally approve for *partners*, and are materially excessive for junior associates in this type of case which, again, involved a simple breach of contract claim and which was ultimately decided by stipulation.

Courts approve associate rates at a level far lower than the rate for partners. *See, e.g.*, *Francois v. Victory Auto Grp. LLC*, 2025 WL 2699991, at *4 (S.D.N.Y. Sept. 23, 2025) ("Recent decisions from courts in this District reflect 'a range of reasonable hourly rates for midlevel and junior associates between $225 and $325.'"); *Santander Consumer USA, Inc. v. City of Yonkers*, 2025 WL 2673773, at *5 (S.D.N.Y. Sept. 18, 2025) ("courts regularly award associates with approximately four years' experience between $250 and $350 per hour."); *Greyhawk Hawthorne Lender, LLC*, 2025 WL 2172228, at *3 ("The associates here [from Kelley Drye & Warren LLP] are inexperienced, and the complexity of the case does not justify an unusual rate award. The Court holds that an hourly rate of $300 is reasonable for the junior associates."); *5615 N. LLC*, 2023 WL 7394340, at *8 (approving average hourly rate of $454 for associate work in contract dispute); *Flatiron Acquisition Vehicle, LLC*, 2022 WL 413229, at *14 (finding that associate rates

---

expertise and a unique set of credentials not present here, including that he was "among the prosecutors assigned to Special Counsel Robert Mueller's successful prosecution of Paul Manafort for, inter alia, failing to register as a foreign agent under FARA." *See* 22-cv-10062, Dkt. No. 31. Additionally, the decision in *An* addressed sanctions, not contractual fee shifting, and focused on the fact that the Plaintiffs "hailed the defendant into court"—the opposite of what happened here, where Plaintiffs' own decision-making drove a great portion of their fees. Plaintiffs' citations to bankruptcy court decisions are inapposite because bankruptcy cases generally involve greater complexity and a niche specialty practice.

"rang[ing] from $405 to $660" per hour were "within the spectrum [of] hourly rates approved in this district for attorneys at large New York City law firms").

Thus, the rates requested by Plaintiff for associate work are excessive both as compared to what courts generally approve in this District, and for the relatively simple contract claim involved in this case. The associate rates should be reduced substantially.

### 3.    The Requested Rates For Support Staff Excessive For This Type Of Matter.

For Akin's non-attorney support staff, Plaintiffs also seek excessive rates, and a substantial reduction from these rates is merited.

For paralegals Jennifer Langmack and Risa Slavin, Plaintiff seeks rates of $480/hour and $510/hour, respectively (before the applied discount). (Baldini Decl. Ex. 2 pp. 36, 25). But Courts in this District typically award hourly rates for paralegals and other administrative professionals of between $100 and $200. *See, e.g.*, *Santander Consumer USA, Inc.*, 2025 WL 2673773, at *5 (approving $200/hour for paralegal); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2025 WL 1901973, at *3 (S.D.N.Y. July 10, 2025) (approving $150 for paralegal), *appeal withdrawn sub nom. Fashion Exch., LLC v. Nat'l Stores, Inc.*, 2025 WL 2709519 (2d Cir. Sept. 3, 2025); *Morisseau v. Glob. A Brands, Inc.*, 2025 WL 2109378, at *4 (S.D.N.Y. July 3, 2025) (approving $175/hour for paralegal with "over 25 years of paralegal experience"), *report and recommendation adopted*, 2025 WL 2105806 (S.D.N.Y. July 28, 2025); *1979 Fam. Tr. Licensor, LLC v. Darji*, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30. 2020) (noting that courts in this District typically approve paralegal rates between $150 and $200). Thus, the requested rates are excessive and should be reduced.

Plaintiffs' requested rates for non-attorney "electronic discovery specialists" Massai Leonard and Jim Ma, for whom Plaintiff requests $550/hour and $475/hour, respectively, are also unsupportable, even with the 10% discount. (Baldini Decl. Ex. 2 at p. 47). Indeed, courts have

"generally analogized" litigation support personnel "to paralegals and awarded comparable hourly rates." *Abraham v. Leigh*, 2020 WL 5512718, at *10-11 (S.D.N.Y. Sept. 14, 2020) (awarding $250 to e-discovery expert); *see also Gulino v. Bd. of Edu. of City School Dist. of City of N.Y.*, 2022 WL 17478295, at *4 (S.D.N.Y. Nov. 30, 2022) (recommending award of $175 hourly rate for litigation support professional); *VR Optics, LLC v. Peloton Interactive, Inc.*, 2021 WL 1198930, at *5 (S.D.N.Y. Mar. 30, 2021) (noting that courts in this District "have been loath" to award billing rates "in excess of $200" for "support staff"). Thus, the rates requested for electronic discovery specialists are also higher than appropriate.

Plaintiff also seeks $435/hour for Mike Greer, a trial services manager who assisted with the collection and storage of certain documents, and $375/hour for Carly Roché, a research specialist who assisted with various information gathering tasks. (Baldini Decl. Ex. 2 p. 10). Again, these rates exceed the appropriate rates for support staff.

Plaintiff provides no information suggesting that its non-attorney personnel had particular skill, training, or experience that might justify their requested rates in this matter. *Flatiron Acquisition Vehicle, LLC*, 2022 WL 413229, at *15. Accordingly, the rates requested for Plaintiffs' support staff should be substantially reduced.

**D.** **Akin's Expenditure Of 1,411 Attorney Hours And Almost $2 Million On This Simple Contract Case Was Grossly Excessive.**

In addition to seeking exorbitant rates, Plaintiff's counsel spent a staggeringly excessive 1,411 attorney hours on this matter. (Baldini Decl. ¶ 19). This number of hours is unjustifiable in a case which, again, involved a single cause of action, relatively modest document discovery, no experts, few motions (most of which were uncontested), no motion for summary judgment, and no trial. *See Thor*, 2015 WL 8784211, at *16 (approving 463.3 hours in similar contract case with uncontested damages); *see also Proimmune Co., LLC*, 2024 WL 54281, at *3 (approving 235.6

hours to litigate contract dispute through cross-motions for summary judgment in litigation that lasted more than 4 years and involved counterclaims and appeals, and involved roughly 10,500 documents exchanged in discovery, multiple sets of discovery demands, and 3 depositions[7]).

Plaintiff bears the burden of establishing that the number of hours for which compensation is sought is "reasonable." *Stratakos v. Nassau County*, 574 F. Supp. 3d 154, 160 (E.D.N.Y. 2021). It has failed to meet that burden here.

A court must use its experience to exclude hours that are "excessive, redundant, or otherwise unnecessary," and in dealing with such surplusage, have discretion simply to deduct a reasonable percentage of the number of hours claimed. *Kirsch v. Fleet St., Ltd*., 148 F.3d 149, 173 (2d Cir. 1998). For example, in *Matusick v. Erie County Water Authority*, the Second Circuit upheld a district court's 50 percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." *Matusick v. Erie County Water Authority*, 757 F.3d 31, 64-65 (2d Cir. 2014); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (upholding 40 percent across-the-board reduction in hours).

This case was not particularly complex by the standards of commercial litigation in this district. The core issue was straightforward: whether Mr. Fishback breached a confidentiality provision in his employment agreement. While discovery revealed multiple instances of breach, the legal analysis remained simple. No novel legal theories were advanced, no complex statutory schemes were interpreted, and no specialized technical knowledge was required beyond understanding basic financial information. *Husain v. Springer*, 579 F. App'x 3, 6 (2d Cir. 2014) (case "concerned a 'straightforward' application of existing law, calling into question [Plaintiff's] attorney's enormous expenditure of time"). The procedural history, while involving some

---

[7]    Certain details not referred to in the court's order were identified by reference to the docket and the fee application. *See* 20-cv-01247, at Dkt. No. 109 p. 7.

discovery disputes (almost all of which were resolved quickly and informally via meet-and-confers), was typical of employment litigation and does not justify premium rates or extensive hours. There was simply no need to bill anywhere near 1,411 hours to litigate it. *See Proimmune Co., LLC*, 2024 WL 54281, at *3 (approving 235.6 hours to litigate contract dispute for more than 4 years); *Essar Steel Algoma Inc. v. S. Coal Sales Corp.*, 2023 WL 8530346, at *3 (S.D.N.Y. Nov. 17, 2023) (finding 297 hours reasonable to enforce a settlement agreement through post-judgment litigation), *report and recommendation adopted sub nom. Essar Steel Algoma Inc. v. Nevada Holdings, Inc.*, 2023 WL 8529067 (S.D.N.Y. Dec. 8, 2023); *Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, 2020 WL 9762874 (S.D.N.Y. May 29, 2020) (reducing request for 340.6 hours by 25% and approving 246.1 hours in case involving breach of a license agreement).[8]

Moreover, attorneys at elite firms charging top-of-market rates should be *more* efficient at completing required work, and should therefore require fewer total hours. Here, the opposite occurred. Counsel charged among the highest rates charged by lawyers anywhere, and then spent many more hours than necessary to obtain a stipulated injunction and no damages. No reasonably discerning client responsible for paying its own bills (without fee-shifting) would allow this.

### 1. Plaintiffs' Expenditure Of More Than $210,000 Before The Complaint Was Filed Was Excessive.

Plaintiffs submit invoices reflecting 181 hours in May and June 2024 through date that the complaint was filed (June 25, 2024). (Kelton Decl. Ex. A). For this period, Plaintiffs seek a

---

[8]    Even in employment litigations more complex and procedurally involved than this one, far fewer hours are appropriate. For example, in *Ni v. Bat-Yam Food Servs. Inc.*, 2016 WL 369681, at *8 (S.D.N.Y. Jan. 27, 2016), a Court in this District found that 176.3 hours were reasonable in a case which lasted more than two years and which pled eight plaintiffs pursuing distinct FLSA claims, multiple motions to compel, a contested motion to file an amended answer, translation of documents from Chinese to English, and a motion for summary judgment.

staggering $202,639.50 in fees (*after* the 10% discount) and $11,301.65 in costs, for a total of $213,941.15, all of which was incurred before this lawsuit was even initiated. These fees and costs are objectively excessive to draft and file a complaint. *See Swiss Skies AG v. Air Luxor, S.A.*, 2010 WL 3219295, at *6 (S.D.N.Y. Aug. 13, 2010) (finding 142 hours was an excessive amount of time to spend on complaint), *report and recommendation adopted*, Dkt. No. 57 (S.D.N.Y. Sept. 7, 2010) (Sullivan, J.). Even though Rule 11 "requires counsel to conduct 'an inquiry reasonable under the circumstances' . . . . [g]iven the nature of this action, which presents no novel questions of law or complicated facts, the amount of time expended by the plaintiff's counsel is exorbitant." *Id.*; *see also Francois v. Victory Auto Grp. LLC*, 2025 WL 2699991, at *7 (S.D.N.Y. Sept. 23, 2025) (finding 43.4 hours for work on the initial and amended complaints excessive for experienced attorney).

Moreover, a substantial portion of this more than $210,000 expenditure was work performed to research and draft a motion for a preliminary injunction, but Plaintiffs never filed any such motion. (Kelton Decl. Ex. A). Those amounts should be disallowed. *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 497 (S.D.N.Y. 2019) ("[C]ourts may disallow billing for hours spent working on submissions that were never filed."); *Lenzi v. Systemax, Inc.*, 2025 WL 2774785, at *10 (E.D.N.Y. Sept. 10, 2025) (reducing fees requested for excessive work that was never completed).

Similarly, Plaintiffs spent substantial sums to research and draft claims for unfair competition, tortious interference, defamation and defamation *per se*, all of which were withdrawn by Plaintiffs in their Amended Complaint.[9] Plaintiffs' legal research, factual investigation, and

---

[9]   Those claims were reasserted by Greenlight in the parties' pending arbitration, and Greenlight is seeking attorneys' fees and costs in connection with the arbitration, creating a risk of double-dipping if those fees are shifted to Mr. Fishback here.

drafting for claims that were withdrawn almost immediately should not be shifted to Mr. Fishback. *Francois v. Victory Auto Grp. LLC*, 2025 WL 2699991, at *7 (S.D.N.Y. Sept. 23, 2025) (reduction was warranted because "plaintiff's initial complaint included two claims that she later dropped from her amended complaint, after defendants had moved to dismiss those claims.") (citation omitted).

### 2. Plaintiffs' Expenditure Of $30,730 To Amend Their Complaint Was Excessive.

In response to Mr. Fishback's motion to dismiss Plaintiffs' original complaint, Plaintiffs filed an Amended Complaint (Dkt. No. 18) in which they withdrew Plaintiffs' causes of action for unfair competition, tortious interference, defamation and defamation *per se*. (Kelton Decl. Ex. B). The preparation of the Amended Complaint should not have required $30,730 in fees. To the extent that Plaintiffs revised some of the language or allegations, those revisions were legally unnecessary, and were not required to sustain Plaintiffs' already-pleaded breach of contract cause of action. The added language and allegations did not affect the outcome of this case, and Plaintiffs do not claim that it did. Plaintiffs' request for 25.2 hours' worth of attorney time to draft and file their Amended Complaint, the main thrust of which was to withdraw certain claims, should be disallowed or, in the alternative, substantially reduced.

### 3. For A Case Involving 14,000 Documents Produced And 3 Depositions, It Was Unreasonable To Spend More Than $1.1 Million On Discovery.

Discovery in this case was not unusually substantial by the standards of commercial litigation involving electronically stored information in this District. There were a total of only about 14,000 documents produced, and 3 depositions, and the discovery period lasted about 8 months.

No reasonable litigant in this type of case would authorize counsel to spend 936.3 hours on discovery for fees of $1,141,500.15 (after the 10% discount). (Kelton Decl. Ex. D); *see*

*Teradek LLC v. Shenzhen Hollyland Tech Co. Ltd*, 2025 WL 1475604, at *11 (S.D.N.Y. May 22, 2025) (finding that 76.1 hours of compensation for reviewing approximately 20,000 technical documents was reasonable); *Proimmune Co., LLC*, 2024 WL 54281, at *3 (approving 235.6 hours to litigate contract dispute that involved roughly 10,500 documents exchanged in discovery, multiple sets of discovery demands, and 3 depositions).

In addition, Plaintiffs' invoices contain costs of $35,879 in May and July 2025 for "Professional Fees – Legal" which appear to relate to the hiring of an outside document review team. (Kelton Decl. Ex. L). These references indicate that counsel's enormous $1.1 million discovery bill is even more inflated than it might initially appear, because a substantial portion of the document review was apparently handled by an outside vendor. (*See generally* Kelton Decl. Ex. D (entries referring to Consilio or document review vendor)). Given this fact, it is incomprehensible that Akin spent $1.1 million during 8 months of discovery involving one short letter-motion to compel, and 3 depositions.

Set forth below is an illustrative and non-exhaustive list of some examples of significant overbilling during discovery.

### a. Plaintiffs Overspent on a Costly and Inefficient Approach To E-Discovery Management.

Plaintiffs spent far too much time and money on e-discovery management issues and other administrative discovery tasks. For example, Plaintiffs submit time entries that mention preparing a "document review protocol" for a total of 47.7 hours and $52,238.25 in fees (after applying the discount), including attorney time at nearly $1,000 an hour spent on "[p]roofread[ing] document review protocol" (MJH, 5/29/2025). In addition, Plaintiffs' counsel billed at sky high rates for logistics related to the document review team, including: "[c]orrespondence with D. Slemmer and M. Joseph re document review team quotes" (HJR, 4/18/2025); "[c]oordinate with M. Holness re

e-binder of reference documents for document reviewers" (HJR, 4/22/2025); "correspondence with D. Slemmer and Consilio re review team kick-off call" (HJR, 4/24/2025); "provide additional batches to review team" (DS, 4/30/2025); "review document review team time entries" (HJR, 4/28/2025); "[r]eview and approve Consilio time entries" (HJR, 5/1/2025); "[a]pprove time entries for Consilio document review team." (HJR, 5/12/2025); "coordinate confirmation of deposition logistics" (DS, 6/4/2025); "coordinate hiring of review team to review documents" (DS, 5/28/2025); "correspond with J. Ma re workflow and process for contract review team" (DS, 5/29/2025).

Plaintiffs' attorneys also billed for non-legal time that administrative professionals should have handled, such as redacting documents (MJH, 6/6/2025, 6/7/2025, 7/17/2025); "[c]oordinat[ing] with Research to get addresses for subpoena deponents" (MJH, 6/17/2025); and booking court reporters (HJR, 5/27/2025, MJH 7/3/2025). As shown in these entries, Plaintiffs incurred tens of thousands of dollars in costly attorney time for administrative tasks related to the discovery process.

### b. Plaintiffs' Expenditure Of More Than $350,000 To Prepare For And Attend 12.7 Hours Of Depositions Was Excessive.

Another example of Plaintiffs' counsel's overbilling is the time spent relating to the depositions in this matter (those of Mr. Fishback, third-party witnesses Jeffrey Rehm and Jason Hathaway, and the deposition of Mr. Einhorn which never took place). (Baldini Decl. ¶ 25). These were not lengthy depositions. Mr. Fishback's deposition took only 5.7 hours (inclusive of breaks) and the depositions of Mr. Rehm and Mr. Hathaway took no longer than 3.5 hours each. (Kelton

Decl. ¶ 7(c)). Yet, Plaintiffs' counsel's invoices reveal a multitude of time entries referencing depositions, spanning 265.6 hours. (Kelton Decl. Ex. C).[10]

Many of these entries are block-billed and, therefore, it is not possible to tell exactly how much of this time directly related to the depositions, but it is clear that Plaintiffs' counsel billed far more time than reasonable. *See Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *11 n.10 (S.D.N.Y. Feb. 9, 2010) (eight hours spent preparing for four-hour deposition reasonable); *Marshall v. Randall*, 2013 WL 12347282, at *7 (E.D.N.Y. Jan. 24, 2013) (finding 17.5 and 20.35 hours spent preparing for two depositions that took a total of five hours excessive and, accordingly, reducing award to eight and twelve hours, respectively).

Courts regularly find that an appropriate ratio of deposition preparation time to actual deposition time is 2:1 or less. *See, e.g.*, *Townsquare Media, Inc. v. Regency Furniture, Inc.*, 2025 WL 903764, at *2 (S.D.N.Y. Mar. 25, 2025) (finding that 1:1 ratio of preparation time to deposition time was reasonable); *see also Lenzi*, 2025 WL 2774785, at *10 ("Plaintiff contends that VKV spent 18.5 hours to prepare for the depositions of two witnesses, while the depositions of both witnesses combined totaled only 8.5 hours. In light of these issues, the Court concludes that a reduction in fees is appropriate."); *Mugavero*, 2010 WL 451045, at *11 n.10 (determining that eight hours spent preparing for four-hour deposition was reasonable); *Gursslin v. City of Rochester*, 2023 WL 11916331, at *5 (W.D.N.Y. May 11, 2023) (concluding that one hour of witness deposition preparation was reasonable); *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2022 WL 832025, at *7 (S.D.N.Y. Mar. 21, 2022) (holding that a preparation to deposition ratio of 1.78:1 was reasonable).

---

[10] Notably, this count includes only time entries that specifically mention the word "deposition" and, therefore, likely captures less than all the entries that actually relate to the deposition (such as those vaguely referencing "discovery," document review, etc.).

Here, Plaintiffs' counsel apparently spent somewhere in the range of 240 hours preparing for about 12.7 hours' worth of actual depositions.[11]  This is a ratio of almost 19 to 1, indicating that Plaintiffs spent about 10 times more than appropriate on depositions.

### c. Plaintiffs' Spending On The Motion To Compel Was Excessive And Unnecessary.

Plaintiffs submit time entries spanning 79.5 hours and nearly $100,000 (after the discount) relating to their letter motion to compel production of unredacted text messages.  (Kelton Decl. Ex. D (highlighted in blue)).  This motion was immaterial because Mr. Fishback agreed that he would concede a finding of breach, the full injunctive relief that Plaintiffs requested, and liability for attorneys' fees.  (Dkt. No. 58).  Moreover, the information Plaintiffs sought to compel had no bearing on this case.  As the Court observed, the documents were "more at the margin than game changing" and not "an 'ah ha' moment as to liability."  (Tr. of Conf. Sept. 4, 2025 at 19:3-5). Further, Plaintiffs only achieved limited success on this motion since the Court agreed with Mr. Fishback as to multiple redactions.  (Dkt. No. 66).  Finally, Plaintiffs' letter-motion briefing was not extensive, consisting of only a 3-page initial letter and a 8-and-a-half-page reply letter. From this context it is clear that Plaintiffs' fees of 79.5 hours and nearly $100,000 in connection with this short letter motion were unreasonable.

### 4. The Court Should Exclude Time Spent By Plaintiffs On Their Never-Filed Motion For Summary Judgment.

Plaintiffs spent 77.7 hours, and billed $88,885.35, for time relating to a motion for summary judgment that was never filed.  Notably, they incurred a substantial amount of these fees *after* Mr. Fishback filed a letter on September 3, 2025 (Dkt. No. 58), stating that he would stipulate

---

[11]   To arrive at this calculation, we subtracted 12.7 hours twice from 265.6 because both Baldini and Slemmer attended each deposition.

to the full relief requested, and would work with Plaintiffs to craft and agree to specific factual findings if needed.  (Kelton Decl. Ex. E).

Under those circumstances, it was not reasonable for Plaintiffs to push forward with summary judgment briefing instead of dedicating their efforts toward the cooperative resolution that Mr. Fishback had repeatedly offered.  The amounts Plaintiffs spent on their never-filed summary judgment motion should be excluded from any fee award.  *Indep. Project, Inc.*, 397 F. Supp. 3d at 497 ("[C]ourts may disallow billing for hours spent working on submissions that were never filed.");  *Lenzi, Inc*., 2025 WL 2774785, at *10 (reducing fees requested for excessive work that was never completed).

### 5. Plaintiffs' Fees And Costs Incurred In Connection With The Parties' Unsuccessful Private Mediation, Which Addressed Several Different Cases And Disputes, Should Be Excluded.

Plaintiffs also request $85,976.55 in fees incurred in preparing for and participating in a private mediation that the parties conducted through JAMS, and which was unsuccessful.  (Kelton Decl. Ex. F).  This mediation was not focused on this lawsuit, and instead, dealt with all of the parties' ongoing disputes including: (i) Greenlight's claims in the loan note case pending in this District, (ii) Mr. Fishback's defamation claims that had been asserted in the New York State Court Action, (iii) Mr. Fishback's discrimination claims that had been asserted in the New York State Division Of Human Rights, and (iv) Mr. Fishback's claims for defamation *per se* and defamation (based on the assertion of Plaintiffs' principal David Einhorn that Mr. Fishback had not performed equity analysis) and tortious interference (based on Greenlight's efforts to prevent Mr. Fishback from appearing at various economic forums and speaking engagements), which were to be asserted in the parties' arbitration.  Under these circumstances, it would be inappropriate for Plaintiffs to recoup fees or costs relating to this global mediation.

Even if the Court were to find that Plaintiffs can recoup fees or costs for the mediation, the amount requested by Plaintiffs is plainly grossly excessive for an informal and brief mediation. At most, the Court should only attribute to this case a small fraction of any time deemed reasonable, given that the parties were also mediating other disputes during the same session. *See Hudson v. Am. Fed'n of Gov't Emps.*, 2023 WL 4053394, at *7 (D.D.C. June 16, 2023) ("[T]he Court agrees that attributing 50 hours to this case alone is far too many given the multiple matters involved in the global settlement efforts and the mediation's lack of success."), *reconsideration denied*, 2023 WL 9226932 (D.D.C. Sept. 21, 2023), *and aff'd*, 2024 WL 5232691 (D.C. Cir. Dec. 27, 2024).

6. **Plaintiffs Unreasonably Spent Attorney Time, At Top-Of-Market Rates, Performing Low-Level Administrative Tasks.**

Plaintiff's counsel also spent costly time on low-level administrative tasks that should not be billed at top-of-market rates at or surpassing $1,000 an hour. These include, for example: "[c]ompile exhibit binders" (DS, 8/22/24); "locate paralegal for case," (DS, 8/28/2024); "[c]oordinate with billing team to obtain summary of bills" (DS, 10/15/2024); "[c]alendar deadlines" (DS, 1/29/2025); "[o]btain copy of conference transcript" (DS, 7/22/2025); and "[c]reate binder cover pages and indexes" (MJH, 9/3/2025).

These tasks are routine and could be handled quickly by support staff. They should not command premium rates and excessive time. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal or lawyer rate, regardless of who performs them"); *Medina v. Buther*, 2019 WL 4370239, at *13 (S.D.N.Y. Sept. 12, 2019) (secretarial tasks are considered part of a firm's overhead and are not to be included as part of an award for costs and fees); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 2018 WL 3104631, at *10 (S.D.N.Y. May 24, 2018) (holding same, and granting substantial reduction based on inclusion of clerical work, including in block-billed entries).

**7.    Plaintiffs' Fee Request Improperly Includes Work Related To Other Matters.**

Plaintiffs' fee request should also be closely scrutinized and substantially reduced because it fails to properly segregate work related to this case from work on other matters.

Plaintiffs' counsel seeks thousands of dollars for work having nothing to do with this case. (Kelton Decl. Ex. G.)  This includes for example, reviewing materials pertaining to other potential matters and claims asserted by Mr. Fishback, summary judgment briefing in the Loan Note Action, preparation of a fee application in the Loan Note Action, reviewing "discovery materials" months before the commencement of discovery in this action, multiple entries billed toward the parties' separate Arbitration, and judgment enforcement in the Loan Note Action.  *Id.*  All of this time should be excluded.

Given these entries, it is highly likely that other charges by Plaintiffs' counsel are unrelated to this case, although it is impossible to tell due to the vagueness of many of the descriptions (*e.g.*, those that lack detail as to the subject matter of meetings, correspondence, and research), block billing issues, and redactions on the invoices.  But the fact that there are numerous incorrect entries should "raise questions about the accuracy of the billing records submitted to the Court."  *Wu v. Sushi Nomado of Manhattan, Inc.*, 2024 WL 3650294, at *10 (S.D.N.Y. July 10, 2024) (granting across the board reduction of 25% where time entries did not reflect work performed in the case), *report and recommendation adopted as mod.*, 2024 WL 3594564 (S.D.N.Y. July 30, 2024).  The inclusion of charges for other matters, in combination with the ambiguity of counsel's vague descriptions, the block billing, and the redactions, justifies a significant across-the-board reduction.

**E.    Plaintiffs' Assertion That Mr. Fishback Caused This Case To Be Complex Is Meritless.**

Plaintiffs attempt to justify their grossly excessive billing by claiming that Mr. Fishback's defense of this case caused it to become complex and expensive.  Not so.  The discovery

negotiations, iterations, and disputes that Plaintiffs complain about are routine in commercial litigation and do not justify the extraordinary fees sought. Further, counsel's invoices reflect only 3.5 hours' worth of work expressly related to either Mr. Fishback's answer or affirmative defenses, indicating that his pleading was not a significant driver of costs. (Kelton Aff. Ex. H).[12]

Moreover, Plaintiffs themselves inflated the litigation by pursuing an aggressive discovery strategy and pursuing issues far afield from the actual contract claim at issue here, rather than focusing on the core elements needed to establish a breach. The fact that Mr. Fishback quickly requested a referral to a Magistrate for resolution and later stipulated to the full injunctive relief requested suggests that a more targeted, efficient approach by Plaintiffs could have resolved the case much earlier and with significantly fewer hours and costs incurred.

F.       **The Court Should Deny Fees For Time Records That Are Block-Billed Or Vague.**

The billing records submitted by Plaintiffs are rife with block billing and vague descriptions. Courts have consistently held that block billing that impedes judicial review warrants reductions. *See Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F.Supp.3d 554, 563-64 (S.D.N.Y. 2018) (reducing hours by 15% because "block billing interferes with the ability of a court to evaluate the reasonableness of attorney hours."); *Vista Outdoor Inc.*, 2018 WL 3104631, at *7-8 (reducing fees due to pervasive block billing). To illustrate how rampant the block billing problem was in this case, representative examples of block billing by Plaintiffs' counsel are set forth in Exhibit I to the Kelton Declaration.

"Courts look unfavorably on such vague entries, because they limit courts' ability to decipher whether the time expended has been reasonable." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 2021 WL 1222159, at *9 (S.D.N.Y. Mar. 31, 2021); *see, e.g.,*

---

[12]   This includes 0.8 hours of time (for a charge of $1,580) on May 31, 2024 for "Review answer and discuss with team," which cannot be related to this lawsuit because the complaint was only filed in June.

*Kirsch*, 148 F.3d at 172 (affirming 20% reduction in fees due to, *inter alia*, entries that were too vague to sufficiently document the hours claims).

Here, block billing and vague billing were pervasive, preventing the Court from determining how much time was actually allocated for each task. Exhibit I to the Kelton Declaration includes a representative and non-exhaustive list of some of the most significant examples of block billing by Plaintiffs' counsel. A substantial across-the-board reduction is needed because of this rampant block billing, which obscures many of the other infirmities in Plaintiffs' billing that are discussed above, and because of the likelihood that at least some of these block billed entries include unidentifiable amounts of time for matters other than this case or which are otherwise excessive or non-compensable.

Additionally, many of the entries involve "unspecified conferences, telephone calls, email correspondence, and reviews," further underscoring the need for a substantial reduction. *Matusick, 757 F.3d at 64-65* (50 percent across-the-board reduction for, inter alia, vague entries). As one representative example, an entry on April 22, 2025 for 6.2 hours and $8,122 in fees includes five mentions of internal team correspondence along with vague discovery tasks. A close review of Exhibit I shows that there are many more entries with this problem, and a significant across the board reduction is appropriate.

## G.     The Court Should Deny Fees For Time Records That Are Redacted.

Many of Plaintiffs' time records are redacted either in whole or in substantial part such that it is impossible to tell what the charges are for. (Kelton Decl. Ex. J). These redacted entries span 118.2 hours and involve $ $142,432.65 in requested fees, after the discount. (*Id.*).

The Court should exclude these redacted entries from any award. *Protoons Inc. v. Reach Music Publ'g, Inc.*, 2016 WL 680543, at *13 (S.D.N.Y. Feb. 19, 2016) (finding a reduction appropriate where redactions on invoices rendered in difficult "to comprehensively assess the

reasonableness of the fees and expenses"), *aff'd*, 718 F. App'x 8 (2d Cir. 2017); *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 30 (N.D.N.Y. 2015) (finding that "redacted time entries [were] impermissibly vague and thus not compensable."); *Crye Precision LLC v. Bennettsville Printing*, 2019 WL 6388636, at *9–10 (E.D.N.Y. Aug. 13, 2019) ("[T]he redacted nature of the records creates a separate problem . . . .  These infirmities render it impossible to accept that the amount of time reflected in Bennettsville's invoices constitutes a 'presumptively reasonable' amount."), *report and recommendation adopted*, 2019 WL 4463298 (E.D.N.Y. Sept. 18, 2019).

## H.   Plaintiffs Overstaffed This Matter, Warranting A Reduction.

Plaintiff chose to deploy a larger than needed team of four attorneys (without including an unspecified number of outside document review attorneys) plus six support staff in this single-claim, single-defendant contract action, with limited discovery, no experts, no dispositive motions, and no trial.  (Baldini Decl. ¶ 18).  That staffing was patently unreasonable, and resulted in substantial duplication and inefficiency.

Courts reduce fee awards where a matter is overstaffed.  *See Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017); *see also, e.g.*, *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (affirming reduction "because plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel"); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010) (reduction for overstaffing and inefficiency); *National Helicopter Corp. of Am. v. City of N.Y.*, 1999 WL 562031, at *7 (S.D.N.Y. July 30, 1999) (Sotomayor, J.) ("It is also apparent that this matter was staffed with more attorneys, at higher rates, than necessary and that in certain respects, these attorneys either duplicated each other's efforts or performed services unnecessary to this litigation.").

Here, the Court should grant a substantial reduction in light of the manifest overstaffing of this case.  Plaintiffs assigned multiple high-billing attorneys to attend conferences and depositions,

and spent substantial amounts of time and money on overlapping work, checking and reviewing each others' work, preparing and updating "talking points" for each other, and miscellaneous conferences and meetings. Plaintiffs also assigned multiple high-billing staff to assist attorneys in document staging and review, but there is no explanation given for why a document universe of this modest size required a multi-person document management team. Thus, a substantial reduction is warranted because of Plaintiff's overstaffing of this case.

## I.  Plaintiffs' Fee Request Should Be Reduced Because They Failed To Obtain Any Damages, And Thus, Obtained Only Partial Success.

In Plaintiffs' original complaint, they demanded "substantial damages including, without limitation, the loss of economic advantage" plus punitive damages. (Dkt. No. 1 ¶¶ 206, 223, 237, Prayer for Relief). Similarly, in Plaintiffs' Amended Complaint, they sought "substantial damages" in "an amount to be determined at trial," plus punitive damages. (Dkt. No. 18 ¶¶ 118, Prayer for Relief). But Plaintiffs did not prove, and ultimately dropped, their claims for compensatory damages and punitive damages. Moreover, as noted above, Plaintiffs prevailed on only one of the claims they asserted in the original complaint, withdrawing the others (tortious interference, unfair competition, and defamation) in response to Mr. Fishback's motion to dismiss. Plaintiffs thus achieved only a partial victory.

"Courts look to both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint." *Holick v. Cellular Sales of New York, LLC*, 48 F.4th 101, 106 (2d Cir. 2022) (cleaned up) (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)). Here, "Plaintiff's limited success counsels in favor of a significant reduction in [their] requested attorneys' fees." *Penzo v. Consol. Edison Co. of New York, Inc.*, 2024 WL 3966694, at *10 (S.D.N.Y. Aug. 28, 2024).

In *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 245 (2d Cir. 2019), the Second Circuit affirmed a fifty-percent discount where plaintiff achieved only injunctive relief and no damages. A similar discount is warranted here, where Plaintiffs achieved stipulated injunctive relief but failed to support a claim for compensatory or punitive damages.

A substantial reduction is also warranted because this case was pursued in a manner disproportionate to the nature of the controversy. "The rule in New York is that an award of fees in excess of the amount involved in a litigation would normally appear to be unreasonable." *Diamond D Enters. USA, Inc.*, 979 F.2d at 19. "[T]he amount reasonably in controversy in a litigation . . . is generally the ceiling on the fees that may be awarded pursuant to a fee-shifting clause. *Id.*; *see also Flatiron Acquisition Vehicle*, 2022 WL 413229, at *6 (same); *Gupta v. Headstrong, Inc.*, 2020 WL 5764389, at *7 (S.D.N.Y. Sept. 28, 2020), *aff'd*, 2021 WL 4851396 (2d Cir. Oct. 19, 2021) (same, and reducing fees by 30% where "the damages at stake in this action were just a fraction of the fees that [plaintiff] now seeks").

This rule makes sense. At least one Circuit court has observed that "[e]xcept in grudge litigation, no client, however wealthy, pays a lawyer more than a dollar to pursue a dollar's worth of recovery." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986); *Campbell v. Mark Hotel Sponsor, LLC*, 2012 WL 4360011, at *2 (S.D.N.Y. Sept. 13, 2012) (reducing fee award because the number of hours billed was "unreasonable," and no client "would pay over $3.3 million in fees and expenses for the mere possibility of securing a $4.68 million down payment"). Indeed, no reasonable client would pay more than the total amount in controversy to litigate a case. *See Simmonds*, 2008 WL 4303474, at *4 (reducing fee award where "a reasonably thrifty client made aware of the adequacy of [plaintiff's] core claims would have opted for less costly representation").

These authorities support a substantial reduction here. Mr. Fishback always contended that Plaintiffs would be unable to identify quantifiable damages, and his position on that issue was fully borne out. In the context of a contract case with no actual damages, Plaintiffs' expenditure of almost $2 million in fees and costs was plainly unreasonable. *Kirchoff*, 786 F.2d at 325.

## J.     Plaintiffs Improperly Seek Fees-On-Fees.

Plaintiffs' request should also be denied to the extent that it seeks fees-on-fees. It is well-settled that "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1266 (2d Cir. 1987); *Flatiron Acquisition Vehicle, LLC*, 2022 WL 413229, at *6 (same). "Of course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement." *F.H. Krear & Co.* (quoting *Swiss Credit Bank v. Int'l Bank Ltd.*, 200 N.Y.S.2d 828, 831 (Sup. Ct. 1960)); *Flatiron Acquisition Vehicle, LLC*, 2022 WL 413229, at *6.

Here, the parties' agreement does not contain specific language providing Plaintiffs with a right to fees-on-fees. (*See* Baldini Decl. Ex. 1 ¶ 11). Yet, Plaintiffs' request includes at least 39.5 hours' worth of entries related to its motion for fees, at a cost of $43,470.00. (Kelton Aff. Ex. K). All of those charges should be excluded.

## K.     Plaintiff Improperly Seeks Reimbursement For Non-Compensable Or Unsupported Costs.

Many of the costs requested by Plaintiffs are not chargeable to Mr. Fishback. *See U.S. for Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). For example, Plaintiffs' greatest single cost appears to have been on electronic research services—totaling $55,059.05. (Kelton Decl. Ex. L (adding Westlaw, Lexis, and other research charges)). This is not compensable. The Second Circuit has determined that

"computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *Id.*

Additionally, Plaintiff has failed to substantiate these research costs. *See Glob. Brand Holdings*, 2020 WL 9762874, at *9 (denying claim for legal research fees and other costs because claimant "has not substantiated these cost items with contemporaneous documentation, such as receipts or invoices . . . ."). And many of these costs are problematic on their face. For example, where a date has been provided for Westlaw charges, there is often no corresponding time entry for legal research. (Baldini Decl. Ex. 2 (*compare* charges for Westlaw dated 8/28/2024 attributed to DS, 9/25/2024 attributed to DS, 10/30/2024 attributed to HJR, and 11/17/2024 attributed to DS *with* corresponding invoices). Notably, in December 2024, there are Westlaw charges of $7,117.92 even though Akin only recorded 1.1 hours of time on this matter during that month, and that time involved *no* research. On November 1, 2024, there are more than $880 in Westlaw charges that appear to be related to a paralegal doing a cite check. There is no reason that confirming cites that lawyers already found and vetted should generate such a large charge. In addition, there is a Westlaw charge of $205.95 attributed to someone named Sarah Lehrke, who is not identified as one of the team members on this matter. For many Westlaw charges (totaling many thousands of dollars), no date is given, rendering it impossible to confirm what the charges relate to. (*See, e.g.*, invoices for June 2024, October 2024, December 2024, January 2025, April 2025, May 2025, June 2025, July 2025, September 2025). And as noted above, the charges cannot be presumed to be proper since Plaintiffs have included substantial amounts of time for work unrelated to this case on their invoices. For all these reasons, Plaintiffs' request for electronic research costs should be denied.

Plaintiffs also seek a variety of other costs that are not properly chargeable to Mr. Fishback, such as $12,600 for "Color Copy," $39.4 for "Duplication – In House," $124.50 for meals, $353.59 for transportation, and $232.83 for couriers. (*See* Kelton Decl. Ex. L). Again, these should be excluded. *See, e.g.*, *Ginsberg v. Valhalla Anesthesia Assocs., P.C.*, 1998 WL 19997, at *4 n.3 (S.D.N.Y. Jan. 20, 1998) ("[T]here is no reason that defendant should pay for plaintiff's counsel's meals or secretarial work. If the [] firm chooses to reimburse its attorneys' meals or pay secretarial overtime, that is a fine benefit, but not one for which defendant should be liable."); *Tatum v. City of New York*, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) ("[M]eals that are not required by out-of-town travel are not compensable."); *IME Watchdog, Inc. v. Gelardi*, 2024 WL 4287244, at *9 (E.D.N.Y. Sept. 25, 2024) (same); *EZ Pawn Corp. v. City of New York*, 2024 WL 3431007, at *7 (E.D.N.Y. July 15, 2024) (agreeing that "internal copying costs for undescribed documents are not compensable.").

**L.** **Plaintiffs' Allegations About Conduct By Mr. Fishback Outside Of This Case Are Not Relevant To Plaintiffs' Fee Application.**

Plaintiffs' motion focuses heavily on unrelated litigation and disputes with Mr. Fishback, which are irrelevant to Plaintiffs' claim for contractual fee shifting in this action, and appear intended to prejudice the Court. The Court's task is to determine a reasonable fee for work performed in this case, not to referee broader disputes or collateral proceedings.

Moreover, contractual fee shifting is not a punishment for unproven allegations of misconduct in other proceedings. Plaintiffs have admitted that the fees sought are "limited to work in connection with this federal case." (Tr. of Conf. Sept. 4, 2025 at 9:8-15). Therefore, the issue here is whether Plaintiffs "spen[t] the ***minimum*** necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (citation omitted; emphasis added).

Plaintiffs repeatedly invoke collateral disputes, many of which have been resolved, to cast Mr. Fishback in a negative light. Plaintiffs emphasize that "this action is just one of multiple disputes between Fishback and Plaintiffs," listing: (i) a defamation action in New York Supreme Court (the "NYS Defamation Action"), (ii) a New York State Division of Human Rights complaint (the "NYS DHR Complaint"), (iii) a promissory note action in this District, and (iv) an arbitration commenced in September 2024. Plaintiffs further refer to other "miscellaneous matters" involving demand letters and communications with third parties. (Mot. pp. 13–14).

The NYS Defamation Action and the NYS DHR Complaint were withdrawn by agreement of the parties. For a time, those issues were moved to the parties' pending arbitration, but they were withdrawn from that action too. These withdrawn claims have no bearing on whether the amount spent by Plaintiffs to litigate this contract action was the minimum amount necessary to obtain their stipulated injunction.[13] Plaintiffs never sought sanctions in either of those actions and should not be permitted to use this application for contractual fee shifting as a backdoor attempt to get this Court to punish Mr. Fishback for unrelated conduct. Plaintiffs' attempt to use prior withdrawn proceedings and discontinued claims to obtain grossly inflated fees here invites this Court to extend its jurisdiction into matters that were litigated before other adjudicative bodies, which have been fully withdrawn, and which concern issues far outside the scope of the breach of a confidentiality clause that was the core of this action.

---

[13] Plaintiffs devote several pages to describing an alleged scheme to "manufacture false pretenses" for the defamation lawsuit—including discussion of text messages, reference check emails, testimony from third parties, and Fishback's motives. (Mot. pp. 22–23). This entire narrative, which is being litigated in the pending arbitration but has never been decided, concerns an unrelated and withdrawn action, is irrelevant to Plaintiffs' fee application in this case, and is merely included in an attempt by Plaintiffs to use other proceedings to color the Court's view of Mr. Fishback here. (Mot. p. 23). Contractual fee shifting is about reasonableness, not punishment, and the Court should decline to wade into these issues that are being litigated elsewhere when reviewing Plaintiffs' spending in this particular case.

Plaintiffs also reference their lawsuit against Mr. Fishback in March 2024 for repayment of a loan, in which Plaintiff obtained summary judgment, and have a fee application pending. (Mot. pp. 13–14). Nothing about Plaintiffs' loan note lawsuit supports Plaintiffs' claim for an outsized fee award here because nothing about Plaintiffs' prior loan note lawsuit supports Plaintiffs' contention that *this* case was unusually difficult or complicated. In fact, Plaintiffs' conduct in the loan note lawsuit supports Mr. Fishback's contention that Plaintiffs are abusing fee-shifting provisions in their agreements to vastly overspend so that they can try to stick Mr. Fishback with an absurdly large bill. In the loan note case, Plaintiffs spent a staggering $475,000 in attorneys' fees and costs on a simple note collection lawsuit with only $230,000 at stake, and which involved one cause of action, no counterclaims, only 1,100 documents produced, just a single deposition (that of Mr. Fishback), and just a single motion. (*Greenlight Capital, Inc. v. Fishback*, S.D.N.Y. Case No. 24-cv-02299-LTS, at Dkt. No. 39). Like here, there was no trial, no evidentiary hearing, no expert discovery, and few facts in dispute. Like here, Plaintiffs' spending in the loan note action was grossly disproportionate and unreasonable, since "[e]xcept in grudge litigation, no client, however wealthy, pays a lawyer more than a dollar to pursue a dollar's worth of recovery." *Kirchoff*, 786 F.2d at 325; *Campbell*, 2012 WL 4360011, at *2 (reducing fee award because the number of hours billed was "unreasonable," and no client would pay fees in an amount disproportionate to the amount in controversy).

Thus, if anything, Plaintiffs' reference to the loan note action strongly supports Mr. Fishback's contention that Plaintiffs have taken an approach against Mr. Fishback of maximizing cost and complexity rather than narrowing issues because Plaintiffs hope to use their limitless resources to punish him.

Plaintiffs' reference to the ongoing arbitration is also irrelevant to Plaintiffs' fee application here. (Mot. at 13). That proceeding, in which the parties are each pursuing claims against the other, is separate from this action and has no bearing on whether fees were reasonably incurred here.

In sum, none of the extraneous matters Plaintiffs complain about have any bearing on the narrow question before the Court: whether Plaintiffs' spending in this case was no more than necessary to litigate this case. The Court should assess Plaintiffs' fee application based on its knowledge of this case, its experience with law firms and attorneys' fees, and the billing records provided by Plaintiffs' counsel.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny or dramatically reduce Plaintiffs' motion for fees and costs, and award to Defendant James Fishback such other and further relief as the Court deems just and proper.


Dated:      Brooklyn, New York
              October 24, 2025


                                        **ABRAMS FENSTERMAN, LLP**

                                         _/s/ Justin T. Kelton_
                                        Justin T. Kelton
                                        Amanda P. Small
                                        1 MetroTech Center, Suite 1701
                                        Brooklyn, NY 11201
                                        Tel: (718) 215-5300
                                        Fax: (718) 215-5304
                                        Email: jkelton@abramslaw.com
                                        Email: asmall@abramslaw.com
                                        *Attorneys for Defendant*
                                        *James Fishback*