UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREENLIGHT CAPITAL INC. *et al.*,

                              Plaintiffs,                          24 Civ. 4832 (PAE)

                    -v-
                                                                   OPINION & ORDER
JAMES T. FISHBACK,

                              Defendant.

PAUL A. ENGELMAYER, District Judge:

        This decision resolves a motion to recover attorney's fees and costs, pursuant to a

contract.  Plaintiffs Greenlight Capital, Inc. and DME Capital Management, LP (collectively,

"Greenlight") sued defendant James T. Fishback for breaching his employment agreement with

Greenlight by misappropriating and disseminating Greenlight's confidential information.  Fifteen

months later, after discovery and the resolution of pretrial motions, Fishback stipulated that he

had breached the confidentiality provisions of the agreement more than 60 times, and consented

to a permanent injunction against future such violations.

        Pending now is Greenlight's motion for attorney's fees and costs—the only open issue in

this case.  Greenlight seeks $1,747,626.75 in fees and $120,176.51 in costs.  Fishback agrees that

Greenlight is entitled to reasonable fees and costs, but opposes the amounts Greenlight seeks as

excessive.  For the following reasons, the Court finds appropriate a reduced award of

$1,198,464.02 in fees and $120,052.01 in costs.

## I.    Background

### A.    Factual Background[1]

***The parties and employment agreement***:  In 1996, David Einhorn founded Greenlight, an investment management firm.  In 2024, DME Capital Management ("DME") became the successor in interest to Greenlight's business.  Einhorn is president of both Greenlight and DME. Dkt. 70 ("stipulation" or "Stip.") at 1.

On February 8, 2021, Fishback and Greenlight entered into an employment agreement. Under it, Fishback agreed, during his Greenlight employment and after, not to disclose to anyone outside Greenlight, or to use to benefit anyone or any entity besides Greenlight, any "confidential information" gained during his employment with Greenlight.  Such information included, but was not limited to, "all investor lists," "investment track records," and Fishback's "performance records."  Fishback also agreed, if his employment were terminated, to "promptly" return to Greenlight any of its confidential information.  *Id.* at 1–3.

The agreement also stated, as to "Rights and Remedies":

> Each of the parties to this Agreement will be entitled to enforce his or its rights under this Agreement specifically, to recover damages *(including, without limitation, reasonable fees and expenses of counsel) by reason of any breach of any provision of this Agreement* and to exercise all other rights existing in his or its favor.

*Id.* at 11 (emphasis added).[2]

---

[1] The Court draws this account from the parties' joint stipulated facts and order entering a permanent injunction.  Dkt. 70 ("Stip.").

[2] This provision further stated:

> The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach or threatened breach of Sections 2, 3, 5 or 8 of this Agreement and that, notwithstanding the provisions of Section 12 of this Agreement, the Company may in its sole discretion apply to any court of law or

***Fishback's misappropriation of Greenlight's confidential information***:  On multiple occasions during Fishback's employment at Greenlight, he sent the company's confidential, proprietary information concerning its investments to his personal email addresses, without authorization.  These materials included a summary of Greenlight macroeconomic investment positions and their performance (sent April 20, 2022); year-to-date profits and losses (sent March 2, 2023); and "Greenlight's entire portfolio of investments," *i.e.*, its portfolio sheet (sent August 15, 2023).  Fishback also removed from Greenlight's offices a hardcopy of an "internal rate of return sheet" ("IRR sheet") containing other confidential information.  *Id.* at 3–4.

On at least 33 occasions during Fishback's employment at Greenlight, Fishback sent confidential information to, and discussed those materials with, an individual outside the firm.  This information consisted of Greenlight's macroeconomic investments, performance, methodologies, and recommendations.  Fishback also sent confidential information, such as economic analyses and summaries of Greenlight's investment positions and performance, to other individuals, who were employed by another Florida investment firm.  *Id.* at 5–6.

***Fishback's early 2023 attempt to form a hedge fund***:  In early 2023, Fishback attempted to form a new hedge fund with a former professor.  On three occasions between February 7 and March 27, 2023, Fishback sent documents and communications containing Greenlight's confidential information (*e.g.*, its current macro investments and their profitability) to the professor.  Ultimately, Fishback did not form this hedge fund.  *Id.* at 7–8.

---

equity of competent jurisdiction for specific performance and/or injunctive relief in order to enforce or prevent any violations of such provisions.  Such injunction or decree shall be available without the posting of any bond or other security.

*Id.*

3

*Fishback founds Azoria Partners*:  As early as June 28, 2023—while still employed at Greenlight—Fishback began taking steps to form his own hedge fund, Azoria Partners ("Azoria").  On July 4, 2023, for example, Fishback registered the domain name "azoriapartners.com," the website later used by Azoria, and, the same day, sent confidential images of Greenlight's IRR sheet to an individual outside the firm.  On August 2, 2023, Fishback emailed three individuals at another Florida investment firm, stating that he had resigned from Greenlight and would be "starting a macro fund in the coming months (Azoria Partners)."  *Id.* at 8–9.  On August 6, 2023, Fishback solicited two potential Azoria investors, and disclosed confidential information to them concerning Greenlight's profitability during Fishback's employment there.  *Id.* at 9.

*Fishback's resignation from Greenlight*:  On July 31, 2023, Fishback tendered his resignation from Greenlight, and scheduled his last day for August 15, 2023.  On August 14, 2023, Greenlight's chief operating officer, Daniel Roitman, sent Fishback an email reminding him of his confidentiality obligations under the employment agreement.  On his last day, however, Fishback sent Greenlight's portfolio sheet to his personal email address.  Greenlight communicated to him that such violated his confidentiality obligations, and instructed him to delete the portfolio sheet.  Fishback falsely represented that he had done so.  *Id.* at 4.

*Fishback's conduct after leaving Greenlight*:  To promote Azoria, Fishback disclosed his purported track record at Greenlight, in both "aggregate dollar amounts and percentage returns per year."  He also sent images of the IRR sheet to a third party, although at a later deposition, he falsely denied doing so.  *Id.* at 9–10.

### B.    Relevant Procedural History

On June 25, 2024, Greenlight initiated this action.  Dkt. 1 ("Original Compl.").  The original complaint alleged that Fishback had misappropriated Greenlight's confidential information to launch Azoria, and damaged Greenlight and Einhorn's reputations by disparaging them and lying about his former responsibilities at Greenlight.  *Id.* ¶ 1.  It claimed breach of contract, unfair competition, tortious interference with prospective economic advantage, and defamation.  It sought a permanent injunction barring Fishback from violating the confidentiality provisions of the employment agreement, and from making false representations related to Fishback's work on Greenlight's macroeconomic trading.  *Id.* at 57.  It also sought compensatory monetary damages for Fishback's alleged contract breach and for losses from his alleged unfair competition and tortious conduct.  *Id.*

On December 19, 2024, after Greenlight filed an Amended Complaint (the "AC"), the Court largely denied Fishback's motion to strike nearly 50 paragraphs in the AC.  Dkt. 24 ("MTS Decision").  It struck, as extraneous, a small number of allegations related to Fishback's character and a prior lawsuit by Fishback against Greenlight.  *Id.* at 1, 6.

On January 28, 2025, the Court held an initial conference and approved the parties' proposed case management plan.  Dkt. 30 at 1.

On April 2, 2025, Fishback filed an offer of judgment on the docket, purportedly under Federal Rule of Civil Procedure 68.  Dkt. 33 ("offer of judgment").  In it, Fishback agreed to a permanent injunction (1) barring him from retaining any confidential information from Greenlight and requiring that he destroy any such information still in his possession, and (2) barring him from disclosing or otherwise using such information.  *Id.* at 1.  It stated that it was "not to be construed as an admission that Fishback is liable in this action or that [Greenlight]

suffered any injury." *Id.* On April 16, 2025, Greenlight moved to strike the offer of judgment because it had not accepted the offer. Dkt. 35. Fishback did not oppose. Dkt. 37 at 4. On April 23, 2025, the Court granted the motion. Dkt. 38.

On June 18, 2025, the Court granted the parties' request to extend fact discovery to July 18, 2025. *See* Dkt. 45 at 1.

On July 10, 2025, Fishback's attorney moved to withdraw, stating that Fishback wished to proceed *pro se*. Dkt. 47. On July 21, 2025, the Court held an in-person conference, attended by Fishback and counsel for both sides. The next day, the Court issued an order, stating that it would not rule on the motion to withdraw until (1) Fishback obtained permission to participate in electronic case filing and (2) Greenlight certified that all outstanding fact discovery issues had been resolved. Dkt. 52. On August 15, 2025, Fishback and his attorneys withdrew their respective requests to proceed *pro se* and to be relieved as counsel. Dkt. 58.

On September 3, 2025, Greenlight moved to compel unredacted copies of 10 text message threads, which Fishback had produced in discovery in redacted form. Dkt. 57. The next day, the Court held a conference, which had earlier been scheduled to discuss anticipated motions for summary judgment. At it, the Court took up the pending motion to compel and set a summary judgment briefing schedule. On September 8, 2025, Fishback opposed the motion to compel, invoking the work product doctrine. Dkts. 58, 61–63. On September 15, 2025, in a written decision, the Court largely granted Greenlight's motion. Dkt. 66 ("MTC Decision").

On September 24, 2025, the parties submitted, and the Court approved, the joint factual stipulation and permanent injunction against Fishback. Dkt. 70. The stipulation left unresolved the amount of reasonable attorney's fees; the Court converted the summary judgment briefing schedule to one concerning this fees motion. On October 10, 2025, Greenlight moved for

attorney's fees and costs, attaching a declaration and exhibits.  Dkts. 72–74.  On October 24,

2025, Fishback opposing, attaching a declaration and exhibits.  Dkts. 79–80.  On October 31,

2025, Greenlight replied.  Dkt. 81.

### C.  Stipulated Legal Conclusions and Injunctive Relief

The parties have jointly stipulated to the following as conclusions of law:

- The employment agreement is a valid and binding agreement between Fishback and Greenlight.

- Fishback breached the confidentiality provisions of the agreement by, *inter alia*, sharing the confidential information described above with third parties; transmitting such to his personal email address; and retaining and failing to return such after termination of his employment at Greenlight.

- Greenlight succeeded on the merits of this action by establishing Fishback's breaches of the employment agreement.

- Greenlight established the remaining injunction factors (to wit, irreparable harm absent relief, the balance of hardships favoring it, and no disservice to the public interest).

Stip. at 10–11.

On this basis, the Court entered the proposed permanent injunction, barring Fishback

from future violations of the employment agreement, including its confidentiality provisions.  *Id.*

at 13–14.

## II.  Applicable Legal Standards

*Attorney's fees*:  "[T]he touchstone for an award of attorneys' fees pursuant to a contract

is reasonableness."  *Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013).  A

presumptively reasonable fee is the "lodestar"—to wit, a reasonable hourly rate, multiplied by

the reasonable number of hours required by the case.  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154,

166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522

F.3d 182, 183, 189–90 (2d Cir. 2008) ("*Arbor Hill*"); *LeBlanc-Sternberg v. Fletcher*, 143

F.3d 748, 764 (2d Cir. 1998). The relevant "community" for purposes of this calculation is "the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In determining the reasonable amount of fees, a court must broadly consider case-specific variables. The Second Circuit, in *Arbor Hill*, clarified the relationship between the lodestar method and another widely used multifactor test (the "*Johnson* factors"). 522 F.3d at 188–91 (recapping development of award-calculation methods). The Circuit concluded:

> We think the better course—and the one most consistent with attorney's fees jurisprudence—is for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 190; *see also Lilly v. City of New York*, 934 F.3d 222, 228–31 (2d Cir. 2019). A district court has "broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011); *see also HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 589 (S.D.N.Y. 2021) (Engelmayer, J.).

The party seeking fees bears the "burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (citation omitted). The fee application must therefore be supported by time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. Ass'n for Retarded Children, Inc. v. Carey*,

8

711 F.2d 1136, 1148 (2d Cir. 1983).  A claimant may only be compensated for "hours reasonably expended on the litigation"—not for hours "that are excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).  Where the number of hours stated is greater than should have been required for the work performed, the court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co.*, 311 F.3d 477, 487 (2d Cir. 2002).  If the court cannot make line-item reductions to adjust for excessive billing, it "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted); *see also Carey*, 711 F.2d at 1142, 1146 (allowing percentage reductions to address deficiencies in fee application, such as "excessive claims for certain tasks" and "inadequate detail in documentation").

*Costs*:  Attorney's fees awards include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg*, 143 F.3d at 763 (citation omitted).  As with attorney's fees, the moving party must substantiate the request for costs.  *See CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513, 2012 WL 4714820, at *2 (S.D.N.Y. Oct. 3, 2012) (denying reimbursement for undocumented costs).  Court fees reflected on the docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts.  *See Abel v. Town Sports Int'l LLC*, No. 09 Civ. 10388, 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012).  A sworn statement or declaration under penalty of perjury that certain amounts were spent on particular items also suffices.  *Id.*

## III.    Discussion

The parties agree that Fishback breached the confidentiality provisions of his employment agreement, and that Greenlight is entitled to reasonable attorney's fees and costs associated with its enforcement of those obligations in this action.  They disagree on the amount

9

of reasonable fees and costs.  Greenlight seeks $1,747,626.75 in fees and $120,176.51 in costs.

Fishback challenges these amounts as excessive and unreasonable, arguing that Greenlight's

outside counsel, the Akin law firm, billed at above-market rates and spent too much time on the

work it performed.  He also argues that Greenlight unnecessarily prolonged this litigation; that

Greenlight obtained only partial success; and that certain categories of Akin's hours and

requested costs are not properly charged to him.

The Court first addresses counsels' billing rates, and then the reasonableness of the hours

counsel expended on particular projects.

### A. Whether Akin's Hourly Rates Were Reasonable

Greenlight bears the burden of showing that Akin's hourly rates were reasonable and "in

line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

"[C]ourts should generally use the hourly rates employed in the district in which the reviewing

court sits in calculating the presumptively reasonable fee."  *Restivo v. Hessemann*, 846 F.3d 547,

590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

The current market rate in the district for "similar services by lawyers of reasonably comparable

skill, experience, and reputation" is generally considered reasonable.  *Reiter v. MTA N.Y.C.*

*Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006); *see also Gierlinger v. Gleason*, 160 F.3d 858,

882 (2d Cir. 1998).  Courts should consider "all case-specific variables," including the *Johnson*

factors, to determine the reasonable hourly rate.  *Arbor Hill*, 522 F.3d at 190.

*Attorney rates*:  Greenlight seeks fees for the work of four Akin attorneys.  Their titles,

years of experience, and respective rates (after Akin applied a 10% discount in this matter) were:

(1) partner Stephen M. Baldini, 30 years, between $1,778 and $1,958/hour; (2) associate Daniel

10

Slemmer, six years, between $981 and $1,179/hour; (3) associate Hannah Reichelscheimer, three years, between $833 and $986/hour, and (4) associate Maria Hershey, two years, $896/hour. *See* Dkt. 74 ("Baldini Decl.") ¶ 15; Dkt. 74-2 at 86–95.[3]

The Court agrees that a reduction in these attorneys' hourly rates is warranted, albeit not as substantial as Fishback seeks. This matter was relatively complex, although it did not present novel or cutting-edge issues. It involved a disgruntled former employee's having retained and disseminated confidential, proprietary information, evidently motivated to enrich himself and harm Greenlight by using such information to launch a competing firm. Fishback also brought separate actions against Greenlight in multiple judicial and administrative fora. Greenlight's retention of Akin, a large firm capable of handling complex litigation, for all these matters was not unreasonable. The rates of its attorneys, however, requires trimming to bring them into line with prevailing community standards for this case in particular.

As to Baldini, even as of 12 years ago, partner billing rates exceeding $1,000 had become common for complex commercial litigation in this District. *Themis Cap. v. Dem. Rep. Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014). But Baldini's discounted rate of $1,778 to $1,958 per hour, notwithstanding reasonable rate increases and inflation, is still relatively high compared to those of similar practitioners in this District today. *ATX Debt Fund 1, LLC v. Paul*, No. 19 Civ. 8540, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (reducing Gibson Dunn partner rates by 10%, resulting in range of rates from $1,382–$1,778/hour); *see, e.g.*, *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19 Civ. 2523, 2022 WL 17834945, at *2 (S.D.N.Y. Nov. 29, 2022) (approving 2021 senior partner rate of

---

[3] Their standard rates, before any discount, were: Baldini ($1,975–$2,175); Slemmer ($1,090–$1,310); Reichelscheimer ($925–$1,095), and Hershey ($995). *See id.*

$1,600/hour, *see id.* Dkt. 151-7 at 17), *report and recommendation adopted*, 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023); *Wells Fargo Trust Co. v. Fast Colombia S.A.S.*, No. 23 Civ. 603, 2023 WL 8591953, at *6, 9 (S.D.N.Y. Oct. 16, 2023) (approving partner rates up to $1,400/hour), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023); *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (approving partner rates of $1,260/hour in 2018).  The rates of the three associates here likewise exceed the norms set by recent cases.  *See, e.g.*, *Adstra, LLC v. Kinesso, LLC*, No. 24 Civ. 2639, 2025 WL 1070034, at *7 (S.D.N.Y. Apr. 9, 2025) (approving associate rates of $554–$883/hour); *StoneX Grp. v. Shipman*, No. 23 Civ. 613, 2025 WL 1212165, at *3 (S.D.N.Y. Apr. 25, 2025) (approving $800/hour senior associate rate); *An v. Despins*, No. 22 Civ. 10062, 2024 WL 1157281, at *2–4 (S.D.N.Y. Mar. 18, 2024) (approving associate rates of $796–$895/hour).

The Court is unpersuaded by Greenlight's argument that its willingness to pay these rates establishes that they are reasonable.  The test of reasonableness is objective—to wit, whether the moving party "spen[t] the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation omitted).  It is not gauged by Greenlight's "subjective desires or tolerance for spending." *Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 Civ. 4968 (PAE), 2015 WL 8784211, at *10 (S.D.N.Y. Dec. 15, 2015), *aff'd*, 675 F. App'x 31 (2d Cir. 2017).  This case was clearly important to Greenlight, but did not present "bet-the-house" stakes or require specialized legal experience that might justify above-market rates.

The Court accordingly reduces Akin's requested attorney rates by 20%, to align with prevailing rates in this District for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11; *see also Fox v. Vice*, 563 U.S. 826, 838

(2011) (to determine attorney's fees award, district courts "should not[] become green-eyeshade accountants" and instead "may use estimates" in calculating fees, because "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection"); *ATX Debt Fund 1, LLC*, 2024 WL 2093387, at *5 (imposing "10% cut across the board" to attorney rates, to align them with district standards).

*Support staff rates*:  Akin also seeks fees for the work of the following non-attorney support staff, although these timekeepers billed less than 4% of the total hours on this matter. Baldini Decl. ¶¶ 17–18.  Their positions and rates, after the 10% discount that Akin applied, were: (1) paralegals Jennifer Langmack ($423/hour) and Risa Slavin ($459/hour); (2) electronic discovery specialists Massai Leonard ($459/hour) and Jim Ma ($428/hour); (3) trial services manager Mike Greer ($392/hour); and (4) research specialist Carly Roché ($338/hour).  *Id.* ¶ 17; Dkt. 74-2 at 25, 36, 41, 47.  These rates, even after Akin's discount, are well above those typically approved by courts for comparable support staff.  *See, e.g.*, *Bisnow LLC v. Lopez-Pierre*, No. 20 Civ. 3441, 2022 WL 17540573, at *23 (S.D.N.Y. Nov. 2, 2022) (as of 2022, typical hourly rate for "paralegals in commercial litigation" in this District was $150–$250), *report and recommendation adopted*, 2022 WL 17540349 (S.D.N.Y. Dec. 5, 2022); *Top Jet Enters. v. Kulowiec*, No. 21 Misc. 789, 2022 WL 1184245, at *4 (S.D.N.Y. Apr. 21, 2022) (same); *Billybey Marina Servs. v. Bouchard Transp. Co.*, No. 12 Civ. 4922, 2021 WL 4950835, at *4 (S.D.N.Y. Oct. 25, 2021) (in 2021, $265/hour paralegal "on the high end for paralegals" but reasonable).  Litigation support staff—such as Leonard, Ma, Greer, and Roché—are "generally analogized to paralegals and awarded comparable hourly rates."  *Abraham v. Leigh*, No. 17 Civ. 5429, 2020 WL 5512718, at *11 (S.D.N.Y. Sept. 14, 2020).  And Akin has not adduced evidence supporting that these personnel (or Langmack and Slavin) had special

13

experience or training to justify substantially above-market rates.  *See Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17 Civ. 8987, 2022 WL 413229, at \*15 (S.D.N.Y. Feb. 9, 2022).

The Court thus finds warranted a 30% reduction in the rates of these support staff warranted.  *See, e.g.*, *Bisnow LLC*, 2022 WL 17540573, at \*23; *Top Jet Enters.*, 2022 WL 1184245, at \*4; *Billybey Marina Servs.*, 2021 WL 4950835, at \*4.

### B.    Whether Akin Spent a Reasonable Number of Hours on This Case

The Court next assesses the reasonableness of the amount of time Akin billed to this case.

"[A]ll hours reasonably expended on the litigation" may be awarded, particularly where, as here, attorneys have obtained "excellent results."  *Hensley*, 461 U.S. at 435.  "[H]ours that are excessive, redundant, or otherwise unnecessary," however, should be excluded.  *Id.* at 434.  The moving party must support its fee application with contemporaneous time records, affidavits, or other substantiating materials.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

Greenlight seeks fees based on 1,411.2 attorney hours (and 51.6 support staff hours) worked in connection with this matter.  Baldini Decl. ¶¶ 18–19.  To support this request, Akin submitted copies of detailed, contemporaneously recorded billing entries and disbursements, dated between May 1, 2024 and September 30, 2025.  *Id.* ¶ 7.  Fishback challenges the number of hours billed on multiple grounds.  First, he argues that Greenlight unnecessarily prolonged this litigation, and ultimately obtained only partial success.  Second, he argues that Akin overstaffed this case, and billed too many hours for drafting the original and amended complaints, reviewing documents and taking depositions, and moving to compel production of the unredacted text messages.  Third, he argues that any time billed for the following tasks is not chargeable to

14

Fishback: (1) an unfiled motion for summary judgment; (2) an unsuccessful private mediation, which addressed not only this dispute but also others between these parties; (3) administrative tasks conducted by attorneys; (4) work that did not relate to this case; (5) block-billed or vaguely described tasks; (6) tasks with redacted descriptions; and (7) this motion for fees. The Court addresses these issues in turn, identifying for each to what extent, if any, reasonableness requires pruning the hours expended.

### 1.    Whether Greenlight Unnecessarily Prolonged This Litigation and/or Obtained Only Partial Success

Fishback argues that Greenlight rebuffed his early attempts to settle this case, such that he should not be held responsible for fees Akin billed thereafter. He claims that he "repeatedly offered to stipulate to the full permanent injunctive relief requested by" Greenlight. In support, he points to his January 24, 2025 letter, which stated that he believed "referral to a magistrate judge or mediator" for a settlement conference would be "beneficial," and to his counsel's representations at a conference four days that Fishback was "very interested" in such a referral. Opp'n at 12 (quoting Dkt. 29).

A "district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded." *Raishevich v. Foster*, 247 F.3d 337, 347 (2d Cir. 2001) (quoting *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992)). And, absent "a showing of bad faith, a party's declining settlement offers should not operate to reduce an otherwise appropriate fee award." *Ortiz*, 980 F.2d at 140 (cleaned up). Here, Fishback's generalized statement of "interest[]" in settlement talks with a third-party neutral was a far cry from a formal settlement offer. And he has not adduced any evidence that Greenlight declined in bad faith to engage in such discussions earlier. On the contrary, Greenlight's counsel reasonably stated, at the January 28, 2025 conference, that

he believed settlement talks in this matter would not be fruitful then because the parties had failed to reach a global resolution of the various actions between them. Dkt. 31 ("Jan. 28, 2025 Tr.") at 24; *see also* Baldini Decl. ¶ 23 (listing actions).

Moreover, as late as April 2, 2025, Fishback had refused to admit liability for past breaches of his confidentiality obligations. His ostensible offer of judgment under Federal Rule of Procedure 68, filed April 2, 2025 (and later stricken because Greenlight had not accepted it), maintained that it was "not to be construed as an admission that Fishback is liable in this action or that [Greenlight has] suffered any injury." Dkt. 33 ("Stricken Offer") at 1. Without such admissions—which Fishback later conceded—Greenlight would have needed to litigate whether it was entitled, at all, to attorney's fees and costs. *See* Stip. at 11 (employment agreement shifted fees "by reason of any breach" of the agreement). Fishback's argument that he would have settled earlier, on terms that should have been acceptable to Greenlight, is thus legally and factually meritless.

Fishback next argues that Akin only secured a "partial victory," warranting a fee reduction. He notes that the stipulated permanent injunction against him did not involve monetary damages, which Greenlight's Original Complaint had sought. But a reduction in fee award is not warranted where "the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997) (collecting cases). And it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested"—for example, "a plaintiff who failed to recover damages but obtained injunctive relief . . . may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n.11. Here, the injunctive relief obtained by Greenlight—barring Fishback from continuing to retain and

16

disseminate its confidential information—rested overwhelmingly on the same evidence as its claims for damages. The claims brought for unfair competition and tortious interference, on which Greenlight had sought damages, turned on much the same evidence supporting the permanent injunction: to wit, Fishback's breaches of the confidentiality provisions of the employment agreement, to benefit himself and harm Greenlight. *See, e.g.*, Original Compl. at 57; AC at 31–32.

The one exception is minor. It involved the Original Complaint's defamation claim. It alleged that Fishback had made "false claims" that Greenlight was "a politically charged environment" and had retaliated against him based on "his political views." Original Compl. ¶¶ 172–98. The evidence supporting this claim would not have fully overlapped with that concerning Fishback's confidentiality breaches. A minor fee reduction on this point is thus warranted, but only a very modest one, as Akin secured the vast majority of the relief it initially sought for Greenlight. *See, e.g.*, *Abel*, 2012 WL 6720919, at *33 ("modest reduction" of 10% warranted where fee applicant "only partially succeeded" on its claims); *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 173 (S.D.N.Y. 2003) (10% reduction for similar); *Reiter v. Metro. Transp. Auth. of State of New York*, No. 01 Civ. 2762, 2007 WL 2775144, at *17 (S.D.N.Y. Sept. 25, 2007) (same); *Lynch v. Town of Southampton*, 492 F. Supp. 2d 197, 215 (E.D.N.Y. 2007) (same).

### 2. Whether Akin Overstaffed and/or Spent Too Long on Certain Tasks

The Court next addresses Fishback's challenges to Akin's staffing decisions and time its attorneys spent during various stages of the case.

*Overstaffing*:  Fishback argues that Akin's team was unreasonably large given the nature of this action, resulting in duplicative work.  The team mainly consisted of four attorneys.[4] Baldini Decl. ¶¶ 12–14.  Of these, associate Slemmer accounted for more than half the attorney hours (803.3 hours, *i.e.*, 56.9%), trailed by partner Baldini (262.4 hours, *i.e.*, 18.6%) and associates Reichelscheimer (215.6 hours, *i.e.*, 15.3%) and Hershey (129.9 hours, *i.e.*, 9.2%).  *Id.* ¶ 18.  The Court does not find the number of attorneys assigned to constitute overstaffing.  The case was complex and hard fought, for the reasons set out above, and culminated in Fishback's admitting liability based on more than 60 discrete breaches of the confidentiality provisions of the agreement.  *See, e.g.*, *Tucker v. City of New York*, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("nothing inherently wrong with using two or more attorneys to handle a lawsuit if its scope suggests that such staffing is appropriate"); *Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880, 2019 WL 6998563, at *7 (S.D.N.Y. Dec. 20, 2019) (reasonable to staff two partners and two associates on matter, notwithstanding absence of "particularly novel or complex issues"); *Riley v. City of New York*, No. 10 Civ. 2513, 2015 WL 9592518, at *5 (E.D.N.Y. Dec. 31, 2015) ("merely tallying the number of attorneys who worked on a case is not enough to prove the case was overstaffed" (citation omitted)).  And neither the staffing nor the billing practices here were remotely "top-heavy."  *HomeAway.com, Inc.*, 523 F. Supp. 3d at 592.  Akin staffed one partner to the case—notwithstanding that it is commonplace for two partners to work on a challenging commercial litigation—and the three associates billed some 83% of the total attorney hours in this matter.  Baldini Decl. ¶ 19.  And Fishback does not identify any instances of duplicative work by the Akin team.  The unsupported examples he offers instead reflect routine, and

---

[4] Six support staff also contributed, but the time they billed totaled 51.6 hours—less than 4% of the total hours billed.  Baldini Decl. ¶¶ 17–18.

appropriate, coordination and preparation within a properly sized litigation team. *See* Opp'n at 27–28 (multiple attorneys participating in depositions, "checking and reviewing each others' work," and "preparing and updating 'talking points' for each other"). A fee reduction based on ostensible duplication is thus unwarranted. *See, e.g.*, *305 E. 24th Owners Corp. v. Parman Co.*, 799 F. Supp. 353, 361 (S.D.N.Y. 1992) (denying fee reduction request based on "conclusory" allegation of duplication by multiple attorneys); *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870, 2015 WL 2078385, at *4 (S.D.N.Y. May 4, 2015) (same, noting that attorneys "coordinating their efforts [] is not unreasonable" or duplicative).

*Greenlight's pleadings*: Fishback next argues that the 181 hours that Akin timekeepers spent on this matter before filing the Original Complaint on June 25, 2024, and the 25.2 hours they later spent in connection with amending that pleading, were unreasonably excessive.

As to the pre-complaint period, Greenlight counters that the detailed, 58-page complaint required substantial investigation and research. It also notes that roughly half of the 181 hours billed before the filing date are attributable not to drafting the complaint, but to "monitoring factual developments," given Fishback's "ongoing public statements" that partly formed the basis of that pleading, and research concerning a potential motion for a preliminary injunction. Mem. at 5–7. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Given the urgent and fraught circumstances Greenlight faced—a recent former employee, apparently with an axe to grind, possessing and actively disseminating its proprietary information—the Court cannot find Akin's pre-filing hours unreasonable. *See, e.g.*, *Robinson v. NYC Transit Auth.*, 2024 WL 4150818, at *13–14 (S.D.N.Y. Aug. 16, 2024) (550 hours spent

19

before filing case mostly "useful to advance the [] claims subsequently asserted therein"), *report and recommendation adopted*, 2024 WL 4150102 (S.D.N.Y. Sept. 11, 2024); *Barclays Cap. Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908, 2010 WL 2640095 (S.D.N.Y. June 30, 2010) (declining to reduce fees based on 176.1 hours billed by multiple attorneys to prepare complaint, which were attributable "primarily" to defendant's "decision to vigorously contest its liability," while reducing fees for excessive time entries related to summary judgment).[5]

Fishback's argument that the 25.2 hours Akin spent amending the Original Complaint was unreasonable is likewise without merit. The Amended Complaint did not merely delete portions of the original complaint. It instead put in place a substantially revised pleading that synthesized the relevant earlier allegations into a single contract claim seeking injunctive relief, while accounting for issues concerning potential arbitrability. *See* Reply at 7. These hours were reasonable under the circumstances.

***Document review and depositions***: Fishback challenges as excessive the 936.3 hours—totaling $1,151,500.15—that Akin spent during eight months of discovery. Of those, 265.6 related to three depositions (including of Fishback), which took less than 13 hours combined. In that period, Akin also reviewed more than 14,000 documents (spanning 55,000 pages). Reply at 8. Fishback also notes that Akin billed $35,879 for an outside document review team, which, he argues, further supports that Akin attorneys spent too much time on discovery.

The Court finds a modest reduction in these claimed hours warranted, for two reasons. First, Akin does not justify the amount of document work review done by its higher-billing

---

[5] The Original Complaint's inclusion of a defamation claim, which Greenlight omitted in the Amended Complaint, does not warrant a reduction in fees here. The allegations unique to that claim comprised a miniscule portion of the 58-page original pleading. Any hours attributable only to that claim are already discounted by the Court's decision to modestly reduce the fee award based on Greenlight's lack of success on that claim.

associates, given the participation and availability of a lower-cost outside document review team, which appears to have conducted only limited review.  Akin has not, for example, developed why document review in this case presented technical or unusually complex issues.  Second, the invoices reflect outsized time spent on internal coordination regarding document review, *see* Dkt. 79-4 at 11–17, 26–28, 30–35, 42–44 (dozens of hours on meetings, calls, and email correspondence), and preparation of a review protocol, *see* Dkt. 79-4 at 8–9, 12–14, 21 (highlighting 47.7 hours' worth of entries).  That said, these shortcomings are very far from systemic.  Together, they support a modest reduction in the hours by non-partner personnel.  *See, e.g.*, *Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18 Civ. 3668, 2020 WL 5904357, at *5, 9–10 (S.D.N.Y. Oct. 6, 2020) (reducing fees based on inefficient review of discovery), *report and recommendation adopted*, 2020 WL 6363960 (S.D.N.Y. Oct. 29, 2020); *HomeAway.com, Inc.*, 523 F. Supp. 3d at 591 (similar).

A material reduction is warranted in the hours Akin associates allocated to preparation for the three depositions.  Combined, these took less than 13 hours: Fishback's deposition lasted less than six hours (including breaks); the two third-party depositions each lasted approximately three and a half hours.  Akin, however, spent more than 18 times those hours preparing for these depositions.[6]  To be sure, these depositions—particularly Fishback's—involved contentious issues and required mastery of the evidentiary record.  But the issues presented, which essentially involved Fishback's repeatedly sending to himself proprietary information of his employer, were not so complex, or factually intricate, to require quite so much preparation, on top of voluminous time already spent on document review.  And the cases Greenlight cites, in ostensible support of

---

[6] This calculation is based on 240.2 hours' preparation for 12.7 hours of depositions, as both Baldini and Slemmer attended each deposition.

the reasonableness of the deposition preparation hours, actually favor Fishback. *See Manzo v. Sovereign Motor Cars, Ltd.*, No. 08 Civ. 1229, 2010 WL 1930237, *9 (E.D.N.Y. May 11, 2010) (less than 65 hours' preparation for two depositions reasonable), *aff'd*, 419 F. App'x 102 (2d Cir. 2011); *Serricchio v. Wachovia Secs., LLC*, 706 F. Supp. 2d 237, 256-57 (D. Conn. 2010) (141.25 hours' preparation reasonable for four depositions), *aff'd*, 658 F.3d 169 (2d Cir. 2011); *Innis Arden Golf Club v. Bowes*, No. 06 Civ. 1352, 2012 WL 1108527, at *2 (D. Conn. Mar. 30, 2012) (adopting magistrate judge's ruling that 189 hours' preparation per day of expert depositions was reasonable, but noting that the court "might well have found" such unreasonable because these figures, billed by a "small army" of lawyers, were "startling" and "nothing in the time records submitted gives indication of any effort at restraint or efficiency").

*Motion to compel*:  Greenlight spent 79.5 hours on a motion to compel production of text messages which Fishback withheld, invoking the attorney work product doctrine.  The Court granted Greenlight's motion in substantial part. *See Greenlight Cap., Inc. v. Fishback*, No. 24 Civ. 4832 (PAE), 2025 WL 2642583, at *3–7 (S.D.N.Y. Sept. 15, 2025).  Fishback argues that this time expenditure was unreasonable because the underlying text messages did not prove to strengthen Greenlight's position substantially.  But, as Greenlight rightly notes, it had no way of knowing that *ex ante*.  On the contrary, it had sound reason to believe these text messages were relevant, and potentially central, to its claims, because Fishback at other times sent Greenlight's confidential information to, or discussed launching his competing firm with, some of these recipients. *Compare id.* at *3 (Fishback sent text messages to his father and Scott Levitt, among others), *with* Stip. at 7 (Fishback "discussed the launch of Azoria with his father via text message" and "sent Third Party C a text message containing an image of Greenlight's investment positions and their performance," per document identified as "LEVITT000076").  Greenlight had

22

good reason to view with skepticism Fishback's representations that the discovery he had made had been adequate. For example, Fishback testified at his deposition that he did not send Greenlight's IRR sheet to "Third Party C" and omitted any images of such from his productions to Greenlight of communications with that individual, but Greenlight later obtained emails between Fishback and "Third Party C," via third-party discovery, containing images of the IRR sheet, contradicting this testimony. The time Greenlight spent on the motion to compel was thus reasonable. *See Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, No. 18 Civ. 6626, 2020 WL 4287360, at *3, 5 (S.D.N.Y. July 27, 2020) (finding reasonable "nearly 80 hours" spent by three attorneys on "routine discovery motion").

### 3.    Whether Akin's Time on Certain Tasks Is Chargeable to Fishback

Fishback next argues that a fee award should not recompense Greenlight for Akin's hours on the following tasks.

***Unfiled motion for summary judgment***: Fishback seeks to exclude all fees associated with Akin's preparation of an unfiled motion for summary judgment. He argues that he is not properly held responsible for these, because his stipulation of liability ultimately obviated the need for such briefing.

"A prevailing party is entitled to reasonable fees spent preparing a non-frivolous motion that was not ultimately filed where its adversary should have been . . . aware that the party was working on the motion." *HomeAway.com, Inc.*, 523 F. Supp. 3d at 593. Here, the Court set a schedule for summary judgment in parallel with the parties' settlement discussions as to liability. *See* Dkt. 77 ("Sept. 4, 2025 Tr.") at 8. It was entirely reasonable for Akin to dual-track its negotiations with Fishback's counsel as to the contours of the joint stipulation and permanent injunction, while simultaneously researching and drafting its summary judgment papers in the

23

event that the parties could not reach agreement.  Akin's work on this motion is properly included in the fee award.  *See, e.g.*, *HomeAway.com, Inc.*, 523 F. Supp. 3d at 593 (hours spent preparing summary judgment briefing, shortly before settlement, were reasonable); *Mawere v. Citco Fund Servs.*, No. 09 Civ. 1342, 2011 WL 744898, at *6–7 (S.D.N.Y. Feb. 7, 2011) (same, while soliciting additional documentation from fee applicant), *report and recommendation adopted*, 2011 WL 744894 (S.D.N.Y. Mar. 1, 2011).

*Mediation*:  Fishback seeks to exclude the $85,976.55 in fees Akin billed in preparing for and participating in an August 2024 private mediation.  He argues that these are not compensable because the mediation addressed not only this action, but "all of the parties' ongoing disputes," including, among others, a separate action by Greenlight against Fishback concerning a loan note (the "loan note action").  Opp'n at 22.  By August 2024, however, the only ongoing actions were this one and the loan note action.  Reply at 11; *see, e.g.*, *Fishback v. Greenlight Capital, Inc.*, No. 160289/2023, Dkt. 23 (N.Y. Sup. Ct. Feb. 6, 2024) (noting "parties' settlement of the action" some six months before mediation).  And Greenlight separately accounted (and does not here seek reimbursement) for the time it spent on mediation for the loan note action.  *See* Reply at 11. The Court thus awards Greenlight's reasonable requested fees for the August 2024 mediation. *See, e.g.*, *Murray v. UBS Sec., LLC*, No. 14 Civ. 927, 2020 WL 7384722, at *23 (S.D.N.Y. Dec. 16, 2020) ("extensive, good-faith efforts to mediate the case and avoid trial" reasonable); *Shabazz v. City of New York*, No. 14 Civ. 6417, 2015 WL 7779267, at *5 (S.D.N.Y. Dec. 2, 2015) ("no basis to exclude the hours expended in connection with mediation").

*Administrative tasks*:  Fishback argues that Akin associates improperly spent time on "low-level administrative tasks," citing six instances.  *See* Opp'n at 23 ("[c]ompile exhibit binders" (DS, 8/22/24); "locate paralegal for case," (DS, 8/28/2024); "[c]oordinate with billing

team to obtain summary of bills" (DS, 10/15/2024); "[c]alendar deadlines" (DS, 1/29/2025); "[o]btain copy of conference transcript" (DS, 7/22/2025); and "[c]reate binder cover pages and indexes" (MJH, 9/3/2025)). There is nothing improper about associates having conducted these tasks instead of delegating them to support staff. But the more cost-effective approach would have been to so delegate. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal or lawyer rate, regardless of who performs them"). The Court will accordingly recompense Greenlight for the 7.4 hours associated with this work at the rates it has found appropriate for paralegal work.[7] *See Vista Outdoor Inc.*, 2018 WL 3104631, at *10 (reducing fee award based on administrative work by attorneys, including in block-billed entries). Fishback has not, however, shown any systemic pattern of administrative tasks done by Akin attorneys. Other than in connection with these six entries, no reduction in fees on this basis is warranted.

*Unrelated work*: The parties agree that 27.5 hours unrelated to this action were errantly included in the fee application. *See* Opp'n at 24; Reply at 18. The Court thus excludes these— representing $36,972.90 in total fees, after Akin's 10% discount—from the award. Fishback has not, however, identified other time entries wrongly attributed to this action. There is thus no basis to regard these discrete entries as bespeaking systemically problematic practices, so as to require a broader reduction in the claimed fees. *See HomeAway.com, Inc.*, 523 F. Supp. 3d at 594 ("isolated [instances of deficient billing practices] do not supply a basis for reducing the fee request").

---

[7] Several of these clerical tasks are described in block-billed time entries that also describe tasks compensable at attorney rates. Because the time entries do not disaggregate the hours by task, the Court, out of solicitude for Fishback, treats the hours for the entire time entry as if spent on the clerical task.

**Block-billing**:  Fishback argues that instances of block-billing and other "vague" descriptions of time spent by Akin attorneys should be excluded or substantially reduced, attaching a chart of representative examples.  *See* Opp'n at 25–26; Dkt. 79-9 (chart).  The Court, having reviewed Fishback's chart and Akin's other billing entries, finds that the Akin attorneys' descriptions of how they spent their time are, in the main, sufficiently specific.[8]  They are far afield from the block-billing that this Court has found to supply a basis for fee reductions.  *See, e.g.*, *Benihana Inc. v. Benihana of Tokyo, LLC*, No. 15 Civ. 7428 (PAE), 2017 WL 6551198, at *5 (S.D.N.Y. Dec. 22, 2017) (reducing hours based on billing entries "often far too terse and inexact, and [] almost always rounded to the nearest hour" (citation omitted)); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *10 (S.D.N.Y. Sept. 19, 2014) (same, where "[s]ingle entries cover as much as 16 hours of work yet provide only a brief description of the tasks completed during that time").  No exclusions or reductions are warranted on this point.

**Redacted time entries**:  Fishback seeks exclusion of fees related to tasks for which Akin redacted, or partly redacted, its billing entries.  The descriptions of 27 entries are fully redacted, and Greenlight did not submit unredacted copies to the Court.  *See* Dkt. 79-10 at 1.  The Court thus cannot assess the reasonableness of these entries.  The Court therefore excludes this time

---

[8] Fishback's ostensibly representative examples include: Slemmer's June 13, 2024 entry for 3.9 hours ("Attend meeting with Greenlight team regarding potential claims; review comments from Greenlight team to factual background document; perform legal research regarding potential claims; draft outline of scenarios and strategy for litigation and send to S. Baldini"); Reichelscheimer's October 29, 2024 entry for 1.3 hours ("Revise opposition to Defendant's motion to strike in line with client comments; proofread and further revise; correspondence with client, S. Baldini, and D. Slemmer re same"); and Slemmer's March 10, 2025 entry for 2.3 hours ("Draft document collection plan; correspond with H. Reichelscheimer re edits to discovery responses; review and revise the same and send to S. Baldini; email opposing counsel re deadlines for the same and settlement offer; correspond with S. Baldini re the same.").

26

entirely by subtracting the 29.7 total hours billed under these entries.  *See Teradek LLC v. Shenzhen Hollyland Tech Co. Ltd.*, No. 20 Civ. 9170, 2025 WL 3227344, at *6 (S.D.N.Y. Nov. 19, 2025) ("When a party submits heavily redacted billing records in a fee application, district courts can withhold fees entirely for affected entries or reduce the total awarded fees by a fixed percentage.").  As to the other entries Fishback listed, Akin's redactions were minimal enough "that the Court [could] determine and assess the nature of the work performed." *D'Amico Dry D.A.C. v. Primera Maritime (Hellas) Ltd.*, 433 F. Supp. 3d 576, 579 (S.D.N.Y. 2019).[9]  No further reductions are appropriate due to these partial redactions.

*Fee application*:  Fishback seeks to exclude the time Akin spent on this application, arguing that the employment agreement did not authorize attorney's fees for time spent seeking such fees (*i.e.*, "fees-on-fees").  Opp'n at 30.  "[A] general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1266 (2d Cir. 1987) (citation omitted).  "Of course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement." *Id.* at 1267 (citation omitted).  Here, the employment agreement provided:

> Each of the parties to this Agreement will be entitled to enforce his or its rights under this Agreement specifically, to recover damages (including, without limitation, reasonable fees and expenses of counsel) by reason of any breach of any provision of this Agreement and to exercise all other rights existing in his or its favor.

---

[9] *See, e.g.*, Dkt. 79-10 at 1 ("Research case law on [REDACTED] in defamation suit; correspondence with D. Slemmer re same"), 3 ("Review discovery responses and protocol; review research re: [REDACTED]"), 4 ("Review Rehm deposition materials; [REDACTED] Attend call with Rehm counsel to discuss deposition; Summarize meeting in email to D. Slemmer and S. Baldini; Draft email for A. Weinfeld on Rehm deposition").

Stip. at 11.  Courts have routinely held such language—expressly authorizing reasonable fees to enforce rights created by agreement, in contrast with the more general fee-shifting agreements discussed in *F.H. Krear & Co.*—sufficiently specific to authorize applications covering work on the fee application itself.  *See, e.g.*, *Billybey Marina Servs.*, 2021 WL 4950835, at *5 (agreement authorizing "reasonable attorneys' fees" in connection with "legal action . . . to enforce this Agreement" entitled movant to fees for fee application); *SA Luxury Expeditions, LLC v. Schleien*, No. 22 Civ. 3825, 2023 WL 8072914, at *2, 4 (S.D.N.Y. Nov. 21, 2023) (same); *Sidley Holding Corp. v. Ruderman*, No. 08 Civ. 2513, 2009 WL 6047187, at *23 (S.D.N.Y. Dec. 30, 2009) (same), *report and recommendation adopted*, No. 08 Civ. 2513, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010); *LaSalle Bank, N.A. v. Capco Am. Securitization Corp.*, No. 02 Civ. 9916, 2006 WL 1227539, at *2 (S.D.N.Y. May 5, 2006) (same).  The Court thus finds Greenlight entitled to the requested fees associated with this motion, and that such are reasonable.

### 4.    Overall Assessment

As to attorney's fees (excluding those of support staff), Greenlight seeks $1,723,161.15, based on 262.4 hours worked by Baldini (totaling $500,094) and 1,148.8 hours worked by the associates (totaling $1,223,067.15).  From these, the Court excludes the following: 7.4 hours (associate attorney time spent on administrative tasks); 26 hours (attorney tasks unrelated to this matter, comprising 12.6 hours by Baldini and 13.4 hours by associates); and 29.7 hours (fully

redacted attorney billing entries, comprising 1.9 hours by Baldini and 27.8 hours by associates).[10]  This leaves 247.9 hours worked by Baldini and 1100.2 hours by associates.[11]

As to Baldini, the Court finds his hours reasonable, but imposes a 20% reduction in his discounted hourly rate, yielding $379,456.20.  As to the associates, the Court reduces their hours by 15%, for the reasons above, based mainly on excessive time spent on document discovery and depositions (plus, in minor part, Greenlight's lack of success on its initial, non-overlapping claim of defamation).  This yields 935.17 hours.[12]  The Court then applies a 20% reduction of the associates' hourly rates, which yields $799,903.35.  The total amount of fees, for Baldini and the associates, is $1,179,359.55.

As to support staff fees, Greenlight seeks an additional $24,465.60, based on 51.6 hours of time spent by such staff.  The Court excludes 1.5 hours (the time paralegal Slavin billed for tasks unrelated to this matter), which equals $688.50 as invoiced.  Fishback did not otherwise challenge the remaining 50.1 hours spent by support staff, which the Court finds reasonable.[13]  To these, the Court adds the 7.4 hours it subtracted from those billed by attorneys for

---

[10] Based on Akin's invoices, and accounting for these timekeepers' changing billing rates and 10% discount, these hours resulted in invoiced amounts of $5,390.89 in associate attorney time spent on administrative tasks; $36,284.40 in attorney tasks unrelated to this matter ($22,396.50 by Baldini and $13,887.90 by associates); and $30,837.15 for fully redacted attorney billing entries ($3,377.25 by Baldini and $27,459.90 by associates).

[11] The corresponding fee amounts, before any reductions in hourly rates, are thus $474,320.25 for Baldini and $1,176,328.46 for the associates.

[12] This equals $999,879.19, accounting for the associates' changing rates and the 10% discount Akin imposed.

[13] Based on their respective rates, Akin support staff billed $23,777.10 for these hours.

administrative tasks, for a total of 57.5 support staff hours.  As for hourly rates, the Court

reduces these by 30%.  This yields $19,104.47 in support staff fees.[14]

Combining the attorney and support staff fees, the Court awards Greenlight a reduced fee

award of $1,198,464.02.

### C. Whether Greenlight's Costs Were Reasonable and Properly Charged to Fishback

In addition to fees, Greenlight seeks $120,176.51 in costs under the employment

agreement, mainly for outside document review services, electronic legal research fees,

electronic discovery, and deposition expenses.  Fishback challenges certain portions of this

figure.  He argues that electronic legal research is not compensable generally and that Greenlight

has not substantiated such costs in any event.  He also argues that certain administrative costs

(*e.g.*, color copies, couriers, transportation, and meals) are not compensable.

*Electronic research*:  Costs of electronic research are compensable, provided they are not

already reflected in the attorneys' hourly rates and thus do not duplicate their fees.  *See Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir.

2004) ("in the context of a fee-shifting provision, the charges for [] online research may properly

be included in a fee award"; if law firm "normally bills its paying clients for the cost of online

research services, that expense should be included in the fee award").  Greenlight's submissions

here adequately reflect that Akin treated electronic research charges as separate disbursements

from its hourly rates and fees.  *See, e.g.*, Dkt. 74-2 at 4 (separating hourly rates and time entries

from costs, the latter including "Computerized Legal Research – Westlaw").  As to

---

[14] This figure is the sum of $16,643.97 ($23,777.10 x 30% reduction in hourly rate) and $2,460.50 (7.4 hours x $332.50/hour, *i.e.*, average support staff rate of $475/hour x 30% reduction).

reasonableness, these costs were adequately keyed to, and substantiated by, Akin's detailed timekeeping records, as reviewed above.[15]  They are thus both compensable and reasonable.

*Administrative costs*:  Recoverable disbursements include photocopying and transportation.  *See HomeAway.com, Inc.*, 523 F. Supp. 3d at 598.  Fishback's objection to these charges as non-compensable is meritless.  Costs related to meals not required by out-of-town travel, however, are not properly charged to Fishback.  *See, e.g.*, *Tatum v. City of New York*, No. 06 Civ. 4290, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) (excising meals from shifted costs); *IME Watchdog, Inc. v. Gelardi*, No. 22 Civ. 1032, 2024 WL 4287244, at *9–10 (E.D.N.Y. Sept. 25, 2024) (same).  The Court thus excludes the $124.50 in such costs challenged by Fishback.

*Overall assessment*:  Akin's costs are well-documented and consist of ordinary litigation expenses, including for outside document review, electronic legal research, depositions, and electronic discovery.  The Court thus finds these costs— $120,052.01, after subtracting meals— reasonable.  *See, e.g.*, *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (courts "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients" (citation omitted)); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09 Civ. 3312, 2018 WL 2766139, at *19 (E.D.N.Y. June 8, 2018) ($318,254.67 in costs reasonable, where such documented for discovery, depositions, and other necessary expenses), *aff'd*, 790 F. App'x 289 (2d Cir. 2019).

---

[15] Although Fishback notes that Akin invoiced a $7,117.92 charge for legal research in November 2024, during which no research tasks were described (and minimal time was billed), this charge appears reasonably billed as a pass-through charge from the previous month, the invoice for which reflects substantial time spent on legal research.  *See* Dkt. 74-2 at 24–28.

## CONCLUSION

For the above reasons, the Court grants Greenlight's motion for attorney's fees and costs, but sets the award at $1,198,464.02 in fees and $120,052.01 in costs. The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: June 23, 2026
      New York, New York

32